UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GE HFS HOLDINGS, INC.,<br>*formerly known as*<br><br>HELLER HEALTHCARE FINANCE, INC.,<br><br>Plaintiff,<br>and<br><br>MICHAEL INGOLDSBY,<br><br>Intervenor Plaintiff,<br>v.<br><br>NATIONAL UNION FIRE INSURANCE<br>COMPANY OF PITTSBURGH, PA. and<br>INTERNATIONAL INSURANCE GROUP, LTD.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. 05-CV-11128 NG |

**PLAINTIFF GE HFS HOLDINGS, INC.'S OPPOSITION TO MOTION OF
MADELEINE ESTABROOK, ESQ. AND DEFENDANT NATIONAL UNION FIRE
INSURANCE COMPANY OF PITTSBURGH, PA TO QUASH SUBPOENA AND/OR
<u>FOR A PROTECTIVE ORDER</u>**

Plaintiff GE HFS Holdings, Inc., formerly known as Heller Healthcare Finance, Inc.

("<u>Heller</u>"), by its undersigned counsel, Sullivan & Worcester LLP, hereby opposes the motion of

Madeleine Estabrook, Esq. ("<u>Estabrook</u>") and Defendant National Union Fire Insurance

Company of Pittsburgh, PA. ("<u>National Union</u>") to Quash Subpoena and/or for a Protective

Order (the "<u>Motion to Quash</u>").

**INTRODUCTION**

National Union is seeking to frustrate Heller's efforts to obtain testimony and documents

from a percipient fact witness based on an overbroad and untenable use of another party's

attorney-client privilege.  National Union also seeks, without basis, to conflate the issues

necessitating the disqualification of Edwards Angell Palmer & Dodge LLP ("E&A") as counsel for National Union with the Motion to Quash.

On June 29, 2006, Heller served a subpoena *duces tecum* on Estabrook requiring Estabrook to produce certain documents on July 7, 2006 and to appear for deposition on July 12, 2006 (the "Subpoena"). Estabrook produced no documents on July 7, 2006. On July 10, 2006, counsel for National Union objected to all 28 of the categories of documents on the grounds that they purportedly seek documents "protected by the attorney-client and attorney work product privileges with respect to Estabrook's and EAP&D's representation of Managed Health Care Services, Inc." See Exhibit A to the Affidavit of Jeffrey E. Francis ("Francis Aff."), which has been submitted herewith (emphasis added). National Union and Estabrook seek, through a blanket assertion of Managed Health Care Services, Inc.'s ("MHCS") attorney-client privilege, to prevent Heller from taking the deposition of Estabrook and to refuse to produce a single document in response to Heller's subpoena. Indeed, National Union refused even to discuss its blanket objection and, instead, insisted that the Subpoena be withdrawn in its entirety. Francis Aff. Exh. B. National Union and Estabrook's objections are baseless and, therefore, the Motion to Quash should be denied.

## BACKGROUND

National Union in consideration for the premiums duly paid in full by MHCS, issued a Directors & Officers Insurance Policy bearing a policy number 873-87-52, with an effective date of August 4, 2001 to August 4, 2002, which was a renewal of policy number 473-16-30 (the "D&O Policy"). Indy Edwards ("Edwards") was, at all times relevant hereto, the President and Chief Operating Officer of MHCS. Pamela Jones ("Jones", and with Edwards, the "Insureds")

{B0539995; 1}

was, at all times relevant hereto, the Vice President of Finance and Chief Financial Officer of MHCS.

On February 23, 2001, MHCS filed a petition for reorganization under Chapter 11 of the United States Bankruptcy Code. On February 28, 2001, Heller entered into a $3 million revolving credit facility (the "DIP Loan") with MHCS. Under the terms of the DIP Loan, the amount of the $3 million revolving line of credit that could be drawn upon at any time was equal to eighty-five percent (85%) of qualified accounts due and owing from any Medicaid/Medicare, insurance or other account (the "Qualified Accounts"). This constituted the MHCS' Borrowing Base. Qualified Accounts were delineated and defined by the terms of the DIP Loan agreement and could not include any account or receivable "subject to any defense, set-off, counterclaim, deduction, discount, credit chargeback, freight claim, allowance or adjustment of any kind." Any such account would be deemed ineligible accounts (the "Ineligible Accounts") and would not be included in the Borrowing Base.

The Borrowing Base would be reported to Heller in monthly Borrowing Base Certificates which would be prepared by Jones and signed by either Jones or Edwards. In the Borrowing Base Certificates Jones and/or Edwards represented to Heller MHCS' total amount of Qualified Accounts and Ineligible Accounts. Edwards relied entirely upon Jones in preparing these Borrowing Base certificates. However, due to a "perfect storm" of factors, Jones negligently lost track of MHCS' Ineligible Accounts. The result was that Jones and Edwards negligently misrepresented the amount of the Qualified Accounts to MHCS, i.e. the Insureds' Wrongful Acts described above.

The Insureds' Wrongful Acts resulted in Heller loaning MHCS approximately $402,000 more than Heller would have loaned MHCS had the Insureds not negligently misrepresented the

{B0539995; 1}

collateral available to satisfy these loans by Heller to MHCS.  As a result of the Insureds'
Wrongful Acts, MHCS converted from a Chapter 11 reorganization to a Chapter 7 liquidation
and MHCS lost its going concern value and its continued ability to service the various debts it
owed to Heller, which debts totaled approximately $1,401,553.69.  Since that time, Heller has
not received the $1,401,553.69 due Heller from MHCS.

On or about August 1, 2002, Heller initiated a lawsuit in the United States District Court
for the District of Massachusetts, entitled <u>Heller Healthcare Finance, Inc. v. Michael Ingoldsby,
Mary Lee Ingoldsby, Pamela Jones and Indy Edwards</u>, Civil Action No. 02-11553-NG (the
"<u>D&O Litigation</u>").  In its complaint in the D&O Litigation (the "<u>D&O Complaint</u>"), Heller
asserted a single claim against Edwards and Jones for negligent misrepresentation arising from
the Insureds' Wrongful Acts.

### The D&O Litigation

The Insureds, for over two years, strenuously litigated the claims asserted by Heller in the
D&O Litigation.  By December of 2004, the Insureds could no longer bear the costs and burdens
of the D&O Litigation.  Having repeatedly but unsuccessfully sought National Union's
assistance in defending the D&O Litigation and through the course of discovery having
determined that there was sufficient evidence to prove their liability for the negligent
misrepresentation claim asserted by Heller, the Insureds entered into a settlement agreement (the
"<u>Settlement Agreement</u>") with Heller.

Pursuant to the terms of the Settlement Agreement, the Insureds admitted joint and
several liability for the negligent misrepresentation claim asserted by Heller in the D&O
Litigation and agreed to enter into and execute an Agreement for Judgment.  Pursuant to the
terms of the Settlement Agreement, the Insureds absolutely and unconditionally assigned,

- 4 -

{B0539995; 1}

transferred, conveyed and set over to Heller any and all claims, interests, causes of action and/or rights of any kind, without limitation, that they may have against National Union and against the D&O Policy.  The Settlement Agreement appointed Heller as Jones and Edwards attorney-in-fact.

On January 31, 2005, the United States District Court for the District of Massachusetts entered judgment, pursuant to Fed. R. Civ. P. 54 and 58, in favor of Heller against the Insureds in the amount of $1,401,553.69, plus $70,000 in attorneys' fees and costs up and through the date of the filing of the judgment. (the "Judgment").

National Union refused the repeated requests by its Insureds that National Union defend them against Heller's claim for negligent misrepresentation.  National Union cannot now object to the reasonable settlement the Insureds reached with Heller.  The only question remaining, is whether or not Heller's claim for negligent misrepresentation fell within the coverage which National Union contracted to provide the Insureds.  It is categorically clear that Heller's claim falls well within the scope of that coverage.  However, National Union has asserted a number of baseless defenses to Heller's claims in this matter which the documents and testimony of Estabrook are, possibly, relevant to or are likely to lead to further discoverable information.

### *Estabrook's Role as Counsel for MHCS and Edwards*

Estabrook was general corporate counsel to MHCS.  See Affidavit of Pamela Jones ("Jones") at ¶ 4, which has been submitted herewith.  After MHCS filed for bankruptcy protection, Estabrook requested and received permission from the Bankruptcy Court for MHCS' bankruptcy to act as MHCS's "Special Healthcare Regulatory Counsel. Francis Aff. at ¶ 4, Exh. C.  In addition, Estabrook negotiated MHCS' DIP Loan with Heller.  Jones Aff. at ¶ 5.

{B0539995; 1}

Although Estabrook now denies it in an affidavit filed with this Court, Estabrook also acted as Edwards' personal counsel in her efforts to purchase the business of MHCS out of bankruptcy.  See Affidavit of Indy Edwards ("Edwards Aff.") at ¶¶ 4-8, which has been submitted herewith; Jones Aff. at ¶ 6; and Francis Aff. at ¶¶ 5-11, Exhs. D to J.  Indeed, in one document Estabrook identified herself as Edwards "attorney-in-fact" and represented that her firm "**represents Indy Edwards**.".[1]  Francis Aff. at 5, Exh. D (emphasis added).  Of key importance, Estabrook attended on Edwards behalf, the various hearings in bankruptcy court where Jones' and Edwards' negligent misrepresentations came to light and the Court converted MHCS' bankruptcy from a Chapter 11 reorganization to a Chapter 7 liquidation.  Edwards Aff. at ¶ 6.

Estabrook, E&A and National Union have taken the position that E&A is conflict free in representing National Union in the defense of the claims by Heller, in Heller's capacity as assignee of another former client of E&A, i.e. Edwards, for National Union's failure to defend and indemnify Edward regarding the  claims asserted by Heller in the D&O Litigation.  Now, wearing its hat as counsel to National Union, the insurer under the D&O Policy for MHCS and its officers and directors, E&A claims that the Judgment Heller holds against Edwards is not covered under the Policy.  Of course, the Judgment relates to negligence concerning regulatory accounting, the very matters that the bankruptcy court appointed E&A to advise MHCS, Edward and Jones with respect to.  Francis Aff. at Exh. C.

---

[1] By letter dated June 28, 2006, Heller requested that Estabrook turn over all of Edwards' client files to Heller.  Heller made this request as Edwards' attorney-in-fact.  Heller copied Edwards on the letter.  Despite having provided E&A with the Settlement Agreement many months prior, Estabrook refused to transfer the Edwards' client files to Heller claiming that Heller had failed to provide any documents which would establish Heller as Edwards' attorney-in-fact.

*Managed Health Care Services, Inc.*

Although National Union and Estabrook seek to stand in the shoes of MHCS (in order to assert MHCS attorney-client privilege), National Union and Estabrook fail to disclose that MHCS' Chapter 7 Bankruptcy case is closed. By the effect of the Chapter 7 liquidation proceedings, MHCS has dissolved.

## ARGUMENT

It is well established that "relevancy must be broadly construed at the discovery stage such that information is discoverable if there is any possibility it might be relevant to the subject matter of the action." EEOC v. Electro-Term, 167 F.R.D. 344, 346 (D. Mass. 1996). Indeed, the United States Supreme Court has explained that:

> The key phrase in this definition- 'relevant to the subject matter involved in the pending action – has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case. . . .Consistently with the notice-pleading system established by the Rules, discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues. . . . Nor is discovery limited to the merits of a case, for a variety of fact-oriented issues may arise during litigation that are not related to the merits.

Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978) (citations omitted). Here, as Estabrook is a percipient fact witness to numerous events underlying or related to this matter, it is indisputable that Estabrook has relevant documents and testimony and, therefore, National Union and Estabrook's Motion to Quash should be denied.

A.    **National Union and Estabrook Have Failed to Establish that all documents and testimony called for by the subpoena would violate Estabrook's duty to maintain the attorney-client privilege owed to MHCS, not National Union.**

Here, National Union and Estabrook seek to quash the subpoena in its entirety because they assert a blanket objection that to comply in anyway with the subpoena to produce any documents or to have Estabrook provide any testimony whatsoever would violate Estabrook's

- 7 -

duty to maintain the attorney-client privilege owed to MHCS, not National Union.  Indeed,

National Union and Estabrook assert that: "[i]n the absence of a formal waiver from [**the now

dissolved**] MHCS, Estabrook has an obligation to resist the deposition and to protect MHCS'

confidential and privileged information."  Estabrook Memorandum at p. 7.  However, neither

Estabrook nor National Union produced any privilege log or other explanation of what possible

privileged or confidential information is to be protected on behalf of the now dissolved MHCS.[2]

The party opposing production must establish that the information is protected by the

attorney-client privilege or work-product doctrine:

> The burden of establishing the existence of the attorney-client privilege and the
> applicability of the work product doctrine rests with the party resisting discovery.
> . . the party must supply the court with sufficient information from which it could
> reasonably conclude that the communication: (1) concerned the seeking of legal
> advice, (2) was between a client and an attorney acting in his professional
> capacity; (3) was related to legal matters; and (4) is at the client's instance
> permanently protected.

Digital Equip. Corp. v. Currie Enters., 142 F.R.D. 8, 15 (D. Mass. 1991) (Court denied motion to

quash when movant failed to provide necessary basis and relied on a blanket assertion of

privilege.) (citation omitted).  Here, National Union and Estabrook have not even attempted to

make the required showing or even to produce a privilege log.

National Union and Estabrook's failure to produce a privilege log is fatal to their

objection to the Subpoena.  Fed. R. Civ. P. 45(d)(2)  specifically provides that:

> [w]hen information subject to a subpoena is withheld on a claim that it is
> privileged or subject to protection as trial materials, the claim shall be made
> expressly and shall be supported by a description of the nature of the documents,
> communications or things not produced that is sufficient to enable the demanding
> party to contest the claim.

---

[2] Apparently, it is Estabrook's position that only her firm's current clients, National Union, may enjoy the
benefit of MHCS' confidential information.

{B0539995; 1}

Fed. R. Civ. P. 45(d)(2). The First Circuit has held that: "the rule requires a party resisting

disclosure to produce a document index or privilege log." In re Grand Jury Subpoena, 274 F.3d

563, 575-76 (1st Cir. 2001) (citations omitted). National Union and Estabrook have failed to

meet their burden of proof or to comply with the requirements of Fed. R. Civ. P. 45(d)(2) and,

therefore, their motion to quash should be denied.

### B. The Attorney-Client Privilege Does Not Protect All Documents in Estabrook's possession and Does Not Absolutely Bar the Taking of Estabrook's Deposition

Estabrook is a percipient fact witness. National Union has raised numerous defenses to

Heller's claims in this matter which defenses purport to arise out of MHCS's bankruptcy,

MHCS' conversion from a Chapter 11 reorganization to a Chapter 7 liquidation and the terms of

MHCS' DIP Loan with Heller. Estabrook negotiated, on behalf of MHCS, the DIP Loan with

Heller. Jones Aff. at 5. Estabrook was present at numerous bankruptcy court hearings, including

the hearings which concerned the disclosure of Edwards and Jones' negligent misrepresentations

and the conversion MHCS' conversion from a Chapter 11 reorganization to a Chapter 7

liquidation. Edwards Aff. at ¶ 6. In addition, Estabrook was deeply involved with MHCS'

operations during bankruptcy. Jones Aff. at ¶¶ 4-5. Moreover, as counsel to MHCS appointed

by the bankruptcy Court, Estabrook's billing records are not privileged. See In re Eddy, 304

B.R. 591, 596-97 (Bankr. D. Mass. 2004).

National Union and Estabrook argue that the attorney-client privilege and work product

doctrine mandate the issuance of a protective order preventing Estabrook's deposition. This

position misunderstands the law of privilege. Indeed, in Carey v. Textron, Inc., 224 F.R.D. 530,

531-32 (D. Mass. 2004), the Massachusetts District Court rejected this precise argument. In

Carey, the defendant in a wrongful death suit sought to compel the deposition of former attorney

- 9 -

of the Administrator of the estate of the deceased who had brought the suit. Id. The Carey court rejected the claim of attorney client privilege because the privilege "does not apply to 'all information' that [the former] attorney has concerning the matter." Id; see also In re Crescent Beach Inn, 37 B.R. 894, 896 (Bankr. D. Me. 1984) (Motion for protective order denied as " it is unlikely that *all* records in a client's file are so protected.") (emphasis in original). The defendant further claimed that the former attorney could not be deposed due to the application of the work product doctrine. Carey, 224 F.R.D. at 532. The Carey court also rejected that argument stating that as the former counsel would not have "information concerning Plaintiff's current litigation strategy." Id. Therefore, as in Carey, Estabrook and National Union's Motion to Quash should be denied.

### C.    The Subpoena Has Not Been Interposed To Merely Harass Estabrook Or National Union

Improperly conflating the Motion to Quash with Heller's objection to E&A's representation of National Union due to E&A's prior representation of Edwards, National Union and Estabrook argue that the Subpoena has been proffered merely to "gather evidence about a theoretical conflict." The conflict to which National Union alludes, the impropriety of E&A representing National Union after having so long represented MHCS, although appropriate in and of itself to disqualify E&A, is not the only conflict upon which Heller seeks to disqualify E&A. Heller seeks to disqualify E&A due to E&A's prior, although now denied by E&A, representation of Edwards. Heller is the assignee of Edwards claims against National Union and has been appointed as Edwards attorney-in-fact.

It was during the time when Estabrook was representing Edwards that the Insured's Wrongful Acts came to light which gave rise to Edwards making a claim against the D&O Policy issued by National Union. It was also at this time that, MHCS' bankruptcy was converted from a

- 10 -

Chapter 11 reorganization to a Chapter 7 liquidation. Both of these events are at the very heart of the present matter and Estabrook was there to observe it all first-hand.

Regardless, although there are numerous other relevant topics, as described above, on which Heller can and does seek testimony and documents from Estabrook, Heller is perfectly entitled to discovery concerning E&A's conflicts which necessitate its withdrawal from this matter. Therefore, the Motion to Quash should be denied.

## CONCLUSION

For all of the above described reasons, National Union and Estabrook's Motion to Quash should be denied. In addition, Heller respectfully requests that the Court grant Heller its costs and attorneys' fees in opposing this frivolous attempt to frustrate Heller's appropriate exercise of its right to pursue discovery from a percipient fact witness.

Respectfully submitted,

GE HFS HOLDINGS, INC.,
formerly known as
HELLER HEALTHCARE FINANCE, INC.,

By its attorneys,

\s\ Jeffrey E. Francis
Gayle P. Ehrlich (BBO # 546861)
Jeffrey E. Francis (BBO # 639944)
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2800
jfrancis@sandw.com

{B0539995; 1}

<u>Certificate of Service</u>

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on July 25, 2006.

<u>/s/ Jeffrey E. Francis</u>

{B0539995; 1}

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GE HFS HOLDINGS, INC., <br> *formerly known as* <br><br> HELLER HEALTHCARE FINANCE, INC., <br><br> Plaintiff, <br> and <br><br> MICHAEL INGOLDSBY, <br><br> Intervenor Plaintiff, <br> v. <br><br> NATIONAL UNION FIRE INSURANCE <br> COMPANY OF PITTSBURGH, PA. and <br> INTERNATIONAL INSURANCE GROUP, LTD. <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )    Civil Action No. 05-CV-11128 NG <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**AFFIDAVIT OF JEFFREY E. FRANCIS**

I, Jeffrey E. Francis, first being duly sworn, hereby depose and state:

1.  I make this affidavit based on my personal knowledge.  I am an associate attorney with the law firm of Sullivan & Worcester LLP, which represents the Plaintiff, GE HFS Holdings, Inc., formerly known as Heller Healthcare Finance, Inc. ("Heller"), in this action.  I make this affidavit solely to authenticate documents which have been exchanged by the parties through discovery in this matter and certain correspondence between counsel.

2.  Appended hereto as **Exhibit A** is a true and accurate copy of a letter dated July 10, 2006 which I received from Mary-Pat Cormier, counsel for National Union Fire Insurance Co. of Pittsburgh, PA. ("National Union").

3.   Appended hereto as **<u>Exhibit B</u>** is a true and accurate copy of certain e-mail correspondence between myself and counsel for National Union which is dated July 10, 2006 to July 11, 2006.

4.   Appended hereto as **<u>Exhibit C</u>** is a true and accurate copy of an order, dated July 20, 2001, of the United States Bankruptcy Court for the District of Massachusetts (Carol, J.) allowing Edward & Angell LLP's application to be appointed special healthcare regulatory counsel to Managed Health Care Systems, Inc. ("<u>MHCS</u>") in MHCS' Chapter 11 bankruptcy case.

5.   Appended hereto as **<u>Exhibit D</u>** is a true and accurate copy of a March 19, 2002 draft of an offer letter for Edwards to purchase the business of MHCS out of bankruptcy which contains a path name indicating that the document was prepared by Madeleine Estabrook of Edward & Angell LLP ("<u>Estabrook</u>").

6.   Appended hereto as **<u>Exhibit E</u>** is a true and accurate copy of an e-mail, dated March 4, 2002, from Estabrook to Edwards forwarding an e-mail from Estabrook to David Tatge concerning the drafting of a letter of intent for Edwards to purchase the business of MHCS out of bankruptcy.

7.   Appended hereto as **<u>Exhibit F</u>** is a true and accurate copy of a chain of e-mail communications, dated March 6, 2002 to March 7, 2002, between Estabrook and David Tatge concerning the drafting of a letter of intent for Edwards to purchase the business of MHCS out of bankruptcy.

8.   Appended hereto as **<u>Exhibit G</u>** is a true and accurate copy of a chain of e-mail communications, dated March 19, 2002, between Estabrook and David Tatge concerning

Edwards efforts to purchase the business of MHCS out of bankruptcy in which Estabrook states that "Indy and I continue to negotiate with you and Mike in good faith."

9.   Appended hereto as **Exhibit H** is true and accurate copy of a chain of e-mail communications, dated March 19, 2002, between Estabrook and David Tatge concerning Edwards efforts to purchase the business of MHCS out of bankruptcy and in which Estabrook states that "I, of course, will do as [Edwards] directs me."

10. Appended hereto as **Exhibit I** is true and accurate copy of a chain of e-mail communications, dated March 19, 2002, between Estabrook and David Tatge concerning Edwards efforts to purchase the business of MHCS out of bankruptcy and in which Estabrook states that "These are typical conditions for any deal and Indy should be able to form a company that is going to work. . . .  We need the opportunity to put together a successful company."

11. Appended hereto as **Exhibit J** is a true and accurate copy of an e-mail from Estabrook to Joseph Butler dated March 27, 2002.


Signed under the pains and penalty of perjury this 25th day of July, 2006.


\s\ Jeffrey E. Francis
Jeffrey E. Francis


Certificate of Service

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on July 25, 2006.

/s/ Jeffrey E. Francis

{B0540202; 1}

# EXHIBIT A

{B0504853; 1}



# EDWARDS ANGELL PALMER & DODGE LLP

111 Huntington Avenue   Boston, MA  02199   617.239.0100   *fax* 617.227.4420   eapdlaw.com

Mary-Pat Cormier

617.951.2225
*fax* 888.325.9141
mcormier@eapdlaw.com

July 10, 2006

**VIA E-MAIL AND REGULAR MAIL**

Jeffrey E. Francis, Esq.
Sullivan & Worcester LLP
One Post Office Square
Boston, MA 02109

Re:   **GE HFS Holdings, Inc. ("Heller") v. National Union Fire Insurance Co.**
      **("National Union") U.S.D.C. District of MA Civil Action No. 05-11127-NG**

Dear Mr. Francis:

This letter constitutes the objection of Madeleine Estabrook ("Estabrook") and Edwards Angell Palmer & Dodge LLP ("EAP&D") pursuant to Federal Rule of Civil Procedure § 45(c)(2)(B) to the subpoena served upon Estabrook.  First, Estabrook and EAP&D object to the subpoena on the ground that less than 14 days was provided for compliance with the subpoena.  Further, Estabrook and EAP&D object to the subpoena on the ground that the documents requested in categories 1 through 28 of the subpoena are protected by the attorney-client and attorney work product privileges with respect to Estabrook's and EAP&D's representation of Managed Health Care Systems, Inc.  Finally, Request Nos. 1 through 24 contained in the subpoena are overly broad, unduly burdensome and not likely to lead to the discovery of admissible evidence in the above-referenced litigation.

Thank you for your attention to this matter.

Very truly yours,

Mary-Pat Cormier

MPC:dlb

cc:    Madeleine A. Estabrook, Esq.
       John D. Hughes, Esq.

BOS_544280_1/MCORMIER

BOSTON | FT. LAUDERDALE | HARTFORD | NEW YORK | PROVIDENCE | SHORT HILLS | STAMFORD | WEST PALM BEACH | WILMINGTON | LONDON

# EXHIBIT B

| | |
|---|---|
| **From:** | Francis, Jeffrey |
| **Sent:** | Tuesday, July 11, 2006 6:43 PM |
| **To:** | 'MCormier@eapdlaw.com' |
| **Cc:** | Greg Aceto; CStewart@eapdlaw.com; Ehrlich, Gayle; JHughes@eapdlaw.com; Syd A. Saloman |
| **Subject:** | RE: GE HFS v. National Union et al. |

Dear Mary-Pat:

We will not agree to withdraw the notice and subpoena. It is evident that your objections to the deposition of Ms. Estabrook are asserted in a bad faith attempt to frustrate our client's efforts at seeking appropriate fact discovery and are offered merely to harass our client and to delay the prosecution of this action. Although you are attempting to use your firm's conflict problems and obligation to withdraw to frustrate and impede the progress of this matter, as evidenced by John Hughes' most recent e-mail, regardless of these issues, our client has the right to take the deposition of a percipient fact witness. If you proceed with the threatened motion to quash, we will pursue all appropriate remedies from the Court including the imposition of Rule 11 sanctions.

In addition, you continue to fail to comply with your obligations under Rule 26(a)(1)(A), to provide the address and telephone number of each person identified as having discoverable information. You have promised to provide this information but have failed to do so. Again, your repeated failure to comply with your basic obligations are preventing my client from proceeding with fact discovery. When may we expect to receive this information.

Moreover, you continue to fail to comply with your most basic obligations to proceed with fact discovery. Indeed, your colleague's, Craig Stewart, unilateral declaration that National Union will only produce its 30(B)(6) designee for a single day of deposition to be split between our client and the Intervenor-plaintiff, Mr. Ingoldsby, is wholly unsupportable. Each separate plaintiff has the right to proceed with its own discovery in this matter. To be clear, at this point your firm is refusing to produce any witnesses whatsoever for deposition at any time by our client. If this incorrect, please let me know immediately. Finally, your responses to both my client's document requests and interrogatories were woefully inadequate.

Please be advised that we intend to proceed with a motion to compel if we are unable to resolve your refusal to cooperate in fact discovery including your refusal to produce any witnesses for deposition and your inadequate responses to written discovery.

Despite your efforts to the contrary, discovery will proceed in this matter. We will further address the disqualification issue by separate correspondence.

Thank you,

Jeffrey Francis

-----Original Message-----
**From:** DBert@eapdlaw.com [mailto:DBert@eapdlaw.com]**On Behalf Of** MCormier@eapdlaw.com
**Sent:** Tuesday, July 11, 2006 4:02 PM
**To:** Francis, Jeffrey
**Cc:** Greg Aceto; CStewart@eapdlaw.com; Ehrlich, Gayle; JHughes@eapdlaw.com; MCormier@eapdlaw.com; Syd A. Saloman
**Subject:** RE: GE HFS v. National Union et al.

We are refusing to Ms. Estabrook on the grounds that 1) the Subpoena seeks confidential and privileged attorney-client information in connection with Ms. Estabrook's prior, unrelated representation of a non-party to this litigation; and 2) the Subpoena is interposed merely to harass Ms. Estabrook and the Defendant in this action, through the pursuit of a meritless claim that our firm should be disqualified as National Union's counsel.

Pursuant to Rule 7.1 please let me know if you will agree to withdraw the notice and subpoena?

7/24/2006

**"Francis, Jeffrey"**
**<jfrancis@sandw.com>**

07/11/2006 02:27 PM

To:     <MCormier@eapdlaw.com>
cc:     <JHughes@eapdlaw.com>, <CStewart@eapdlaw.com>, "Syd A. Saloman" <sas@ths-law.com>, "Ehrlich, Gayl
         <gehrlich@sandw.com>, "Greg Aceto" <aceto@johnsonaceto.com>
Subject:     RE: GE HFS v. National Union et al.


Upon what basis do you refuse to produce Ms. Estabrook for her deposition?
-----Original Message-----
**From:** MCormier@eapdlaw.com [mailto:MCormier@eapdlaw.com]
**Sent:** Tuesday, July 11, 2006 12:54 PM
**To:** Francis, Jeffrey
**Cc:** JHughes@eapdlaw.com; CStewart@eapdlaw.com; Syd A. Saloman; Ehrlich, Gayle; Greg Aceto
**Subject:** Re: GE HFS v. National Union et al.

We do not intend to produce Ms. Estabrook for her deposition. Will you agree to withdraw
the notice and subpoena? If not, we will file a motion to quash.

Thank you,

Mary-Pat


Mary-Pat Cormier
Edwards Angell Palmer & Dodge LLP
111 Huntington Avenue
Boston, MA  02199
tel.:  617.951-2225  fax. 888.325.9141
mcormier@eapdlaw.com

_____

   ----- Original Message -----
**From:** "Francis, Jeffrey" [jfrancis@sandw.com]
**Sent:** 07/11/2006 11:44 AM
**To:** Mary-Pat Cormier
**Cc:** John Hughes
**Subject:** RE: GE HFS v. National Union et al.


Do you intend to produce Ms. Estabrook for her deposition tomorrow?
-----Original Message-----
**From:** MCormier@eapdlaw.com [mailto:MCormier@eapdlaw.com]
**Sent:** Monday, July 10, 2006 6:51 PM
**To:** Francis, Jeffrey
**Cc:** JHughes@eapdlaw.com; CStewart@eapdlaw.com
**Subject:** GE HFS v. National Union et al.


Hi, Jeff, please see the attached correspondence that was sent today.  I am available for a 7.1 conference tomorrow
between noon and 1 and after 3.

Mary-Pat

Boston, Ft. Lauderdale, Hartford, New York, Providence, Short Hills, Stamford, West Palm Beach, Wilmington, London (Representative office)

Case 1:05-cv-11128-NG     Document 43-2     Filed 07/25/2006     Page 9 of 38

Disclosure Under IRS Circular 230: Edwards Angell Palmer & Dodge LLP informs you that any tax advice contained in this communication, including any attachments, was not intended or written to be used, and cannot be used, for the purpose of avoiding federal tax related penalties or promoting, marketing or recommending to another party any transaction or matter addressed herein.

CONFIDENTIALITY NOTICE
This e-mail message from Edwards Angell Palmer & Dodge LLP is intended only for the individual or entity to which it is addressed. This e-mail may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this e-mail by accident, please notify the sender immediately and destroy this e-mail and all copies of it.

This message is intended to be confidential and may be legally privileged. It is intended solely for the addressee. If you are not the intended recipient, please delete this message from your system and notify us immediately. Any disclosure, copying, distribution or action taken or omitted to be taken by an unintended recipient in reliance on this message is prohibited and may be unlawful.

Communications from our firm may contain or incorporate federal tax advice. Under recently promulgated US Internal Revenue Service (IRS) standards, we are required to inform you that only formal, written tax opinions meeting IRS requirements may be relied upon by taxpayers for the purpose of avoiding tax-related penalties. Accordingly, this communication is not intended or written to be used, and it cannot be used, for the purpose of avoiding tax-related penalties under the Internal Revenue Code. Please contact a member of our law firm's Tax Department if you require a formal, written tax opinion that satisfies applicable IRS requirements, or if you have any other questions regarding federal tax advice.

This message is intended to be confidential and may be legally privileged. It is intended solely for the addressee. If you are not the intended recipient, please delete this message from your system and notify us immediately. Any disclosure, copying, distribution or action taken or omitted to be taken by an unintended recipient in reliance on this message is prohibited and may be unlawful.

Communications from our firm may contain or incorporate federal tax advice. Under recently promulgated US Internal Revenue Service (IRS) standards, we are required to inform you that only formal, written tax opinions meeting IRS requirements may be relied upon by taxpayers for the purpose of avoiding tax-related penalties. Accordingly, this communication is not intended or written to be used, and it cannot be used, for the purpose of avoiding tax-related penalties under the Internal Revenue Code. Please contact a member of our law firm's Tax Department if you require a formal, written tax opinion that satisfies applicable IRS requirements, or if you have any other questions regarding federal tax advice.

# EXHIBIT C



**DOCKETED**

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

In re:                                  )
                                        )
MANAGED HEALTH CARE                     )
SYSTEMS, INC.                           )
                                        )
                                        )          Chapter 11
                                        )          Case No.: 01-11346-CJK
               Debtor                   )
                                        )

## APPLICATION BY DEBTOR TO EMPLOY EDWARDS & ANGELL, LLP AS SPECIAL HEALTHCARE REGULATORY COUNSEL TO THE DEBTOR

To the Honorable Carol J. Kenner, United States Bankruptcy Judge:

Pursuant to 11 U.S.C. § 327, Fed. R. Bankr. P. 2014 and MLBR 2014-1, Managed Health

Care Systems, Inc., the debtor and debtor-in-possession ("Debtor"), respectfully requests this

Court enter an order authorizing it to employ Edwards & Angell, LLP ("E&A") as special

healthcare regulatory counsel in this matter. In support thereof, the Debtor states as follows:

### I.  Factual Background

1.     On February 23, 2001 ("Petition Date"), the Debtor filed a voluntary petition for

relief under chapter 11 of 11 U.S.C. Section 101, *et seq*. ("Bankruptcy Code") in the United

States Bankruptcy Court for the District of Massachusetts (the "Court").

2.     The Debtor is a home health care provider with its headquarters at 99 Derby

Street, Hingham, Massachusetts. The Debtor and a related debtor, Medical Temporaries, Inc.

(each and together, "Debtors"), provide vital home nursing services to in excess of 700

individuals. The Debtors are incorporated under the laws of the Commonwealth of

*July 20, 2001*      *Allowed*

ENTERED ON DOCKET

*Carol J. Ke*      *7-23-01*

(79)

# EXHIBIT D

6174230498
T-81$   P.002/007   F-973

March 19, 2002

BY FACSIMILE:

Alex Rodolakis, Esq.
Hanify & King, PC
One Federal Street
Boston, MA  02110

    Re: Letter of Intent Regarding Purchase of Substantially All of the Assets of Managed Health Care Systems, Inc. and Medical Temporaries, Inc. (collectively, "Managed")

Dear Mr. Rodolakis:

    This firm represents Indy Edwards, the current President of Managed (the "Offeror").

    Managed has asked the Offeror for a definitive proposal for the acquisition of substantially all of the assets of Managed. The Offeror is therefore pleased to propose the following:

    Subject to the satisfaction of the conditions specified in the numbered paragraphs below, the Offeror agrees to acquire, through an entity or entities to be formed by her ("Newco"), free and clear of all debts, liens, claims, charges and encumbrances, all of the assets of Managed (collectively, the "Assets"). The Offeror understands that the Assets shall include, but not be limited to, all of the leaseholds for space occupied by Managed, all fixed assets (property, plant and furniture, fixtures and equipment), equipment leases, computer hardware, software and programs, prepaid expenses, inventory, medical records, employee records, any revenue-generating leases and other contracts insofar as income with respect thereto shall not have been earned or accrued in accordance with generally accepted accounting principles, trade names, present book of business, the accounts receivable, all assets used in connection with Managed's current home care and other operations, and all of the assets evidenced by on Managed's most recent balance sheet, including all such assets and rights acquired by Managed until the Closing Date. The Assets also shall include (i) any and all licenses, permits and records, (ii) all Medicare and Medicaid provider agreements and numbers, relating to any of the activities carried on by Managed, (iii) all personalty, tangible and intangible, associated with Managed and its operations, and (iv) all beneficial contracts, cured of pre-petition defaults. Neither the Offeror nor her designee(s) shall assume any obligation or liability of Managed, except (1) that certain Settlement Agreement by and between Managed and the U.S. Department of Health and Human Services relative to the Medicare liability on terms no less favorable than the draft of the Settlement Agreement

HELLER 00075

MAR-19-2002 07:22PM    FROM-HANIFY&KING    6174230498    T-819  P.003/007  F-973

Alex Rodolakis, Esq.
Managed Health Care Systems, Inc.
Medical Temporaries, Inc.
March 19, 2002
Page 2

provided to Managed's existing secured lender, Heller Healthcare Finance, Inc. ("Heller") on March 8, 2002 and (2) all non-professional administrative trade claims asserted against Managed as of Closing, which claims shall assumed by Newco.

The closing for the purchase and sale of the Assets (the "Closing") would occur on a date (the "Closing Date") not later than ten (10) days after the issuance date of the order of the United States Bankruptcy Court approving the sale of the Assets to the Offeror or her designee, provided that, on the Closing Date, the order authorizing the sale shall not have been modified or stayed, and provided, further, that the Closing Date shall occur not later than April 25, 2002. If the Closing occurs, the Offeror, or her designee, would pay Managed a purchase price (the "Purchase Price") equal to the indebtedness owed by the Managed to Heller as of the Closing and the assumption of (i) all non-professional administrative claims against Managed as of Closing and (ii) the assumed liabilities under the Settlement Agreement referred to above, which settlement must close on or before, and as a condition of, the Closing. In no event shall such amount be less than Six Hundred Thousand Dollars ($600,000).

At the Closing, Heller will "carve out" from the proceeds of its liens being released at Closing, pursuant to §363(f), the following: (i) up to $100,000, consistent with the terms of the existing DIP Loan Agreement, such monies to be paid to satisfy "professional" administrative claims against the Debtors'; (ii) a second cash carve-out equal to $30,000, such sum to be paid to the unsecured creditors of the Debtors, *parri passu*. Heller will also, post-Closing, pay the unsecured creditors of Managed a third carve-out equal to 25% of any principal re-payment realized by Heller on that certain Term Loan to Newco, as and when such cash is received by Heller, allocated *parri passu* (in the amount of the carve-out multiplied by a fraction, where the numerator equals the particular administrative trade creditor's allowed claim and the denominator equals the sum of all allowed unsecured claims. The parties shall also file a stipulation with the Bankruptcy Court outlining and agreeing to the carve-outs identified above, and the terms of Heller's conditional forbearance pending Closing.

The obligations of the Offeror under this letter of intent shall be subject to the following:

1.    Heller shall, subject to the terms hereof, and without waiver of any rights it may have, forbear from exercising its default remedies (including the right, without limitation, to seek immediate relief from the automatic stay, and to seek conversion of this case to Chapter 7) and continue lending to Managed for the period through and including the Closing, but no longer than through April 25, 2002.

2.    The Closing shall be subject to the execution and delivery by all relevant parties, not later than March 29, 2002, of a definitive asset purchase agreement containing

HELLER 00076

MAR-19-2002 02:29PM    FROM-ANTIPIKING                    6174230498                    T-818    P.004/007    F-873

Alex Rodolakis, Esq.
Managed Health Care Systems, Inc.
Medical Temporaries, Inc.
March 19, 2002
Page 3

terms and conditions customary in transactions like the ones contemplated in this letter (the "Asset Purchase Agreement"). Among other conditions, the obligations of the purchaser under the Asset Purchase Agreement shall be made subject to final affirmative action by the United States Bankruptcy Court on a motion approving the sale of the Assets under the Code. Further, the Asset Purchase Agreement, in addition to such other terms and conditions as the parties may negotiate, shall provide that the obligations of the purchaser to effect the Closing and to purchase the Assets shall be conditioned on (a) the availability to the purchaser of satisfactory financing for the purchase, (b) the obtaining of all necessary regulatory approvals, licenses and permits, (c) satisfaction of customary environmental requirements, (d) the assignment to the purchaser of all relevant revenue-generating contracts, (e) the execution of employment agreements with such of Managed's current employees as the Offeror or her designated purchaser shall deem necessary or appropriate, and (f) a requirement that the Managed continue operations without material adverse change through the Closing of the purchase.

3.    The Closing shall be subject to the negotiation, execution and delivery of financing arrangements with Heller to finance the payoff of the existing Heller loans to Managed, in full, and for the operations of Newco, under terms and conditions acceptable to the Offeror and Heller and substantially similar to the Term Sheets attached hereto as Exhibits A and B.

4.    The Closing shall be subject to the release of Heller's obligation to fund up to $100,000 in wind-down costs under the March 29, 2001 Order.

5.    The Offeror or her designated purchaser shall not be obligated to hire any individual employee of Managed. Managed has represented to the Offeror that none of Managed's employees is subject to a collective bargaining or similar agreement, and the obligation of the Offeror to proceed under this letter of intent, or the obligation of the purchaser to effect the Closing under the Asset Purchase Agreement, shall be subject to the continued accuracy of that representation.

6.    By the Closing Date, Managed shall have obtained all consents, authorizations and approvals necessary to assign to the purchaser under the Asset Purchase Agreement any revenue-generating contract which the purchaser may desire to assume, and the purchaser shall have received any regulatory or governmental approvals necessary or desirable to effect the Closing.

7.    Managed's business and operations shall have been conducted in its usual and ordinary manner through the Closing Date, and no material adverse change shall have occurred in Managed's business or operations.

HELLER 00077

Alex Rodolakis, Esq.
Managed Health Care Systems, Inc.
Medical Temporaries, Inc.
March 19, 2002
Page 4

8. This letter of intent, immediately after its execution by Managed, shall be transmitted to each and all of the creditors of Managed holding liens or claiming to hold liens of whatever nature or description in the Assets, to the Committee of Unsecured Creditors of Managed, to the Office of the United States Trustee and to counsel for each of the foregoing. This letter may be published in court proceedings or otherwise in the discretion of Managed, or its distribution may be restricted by Managed.

9. The Asset Purchase Agreement shall provide that it is a condition to the obligation of the purchaser to effect the Closing that a form Order under Section 363/365 of the Code (the "Section 363/365 Form Order"), satisfactory to the purchaser, shall have been entered and be final, and shall either (i) not be subject to right of appeal or (ii) be subject only to such appeal as in the reasonable opinion of the purchaser's counsel shall not, if successful, reverse, modify or interfere with the purchaser's legal right to the Assets. The service list must be satisfactory to the purchaser's counsel and will be annexed as part of the Section 363/365 Form Order. The list will be subject to mandatory supplementation at the request of the Offeror or her designated purchaser at any time through the Closing Date.

10. Managed shall cause a form of Asset Purchase Agreement to be filed with the United States Bankruptcy Court not less than one week prior to the sale hearing.

11. Managed shall obtain, not later than April 8, 2002, an order from the United States Bankruptcy Court noticing the proposed sale under the Asset Purchase Agreement, which order shall include, in addition to customary provisions for such orders, the following additional provisions: (a) the Assets will be sold only to the Offeror or her designee, as contemplated in this letter, unless Managed shall have received a bona fide counteroffer from another party that exceeds the Purchase Price proposed by the Offeror by at least ten percent (10%), in which event Managed may sell the Assets to the counterofferor at a hearing upon the proposed sale pursuant to the counteroffer (or any continuance thereof); and (b) if Managed effects the sale of the Assets to a party other than the Offeror or her designee in accordance with the provisions of clause (a), Managed shall pay to the Offeror, at the time of the closing of the Asset sale to the higher bidder, a break-up fee equal to two percent (2%) of the purchase price payable at the closing of the sale of the Assets to the higher bidder. Heller agrees that such break-up fee is an allowed administrative priority claim. Failure of Managed to timely obtain the foregoing order shall relieve the Offeror from any further obligation with respect to the proposal contained in this letter of intent and, if the deficient order is obtained after the parties already have executed and delivered the Asset Purchase Agreement, the Asset Purchase Agreement may be terminated by the purchaser thereunder with no obligation thereafter of any kind to Managed.

12. It is understood that this letter is intended to describe certain general understandings reached between the Offeror and Managed to date concerning the proposed

HELLER 00072

MAR-19-2002  07:26PM  FROM-HANIFY&KING                6174230498                    T-619   P.006/007   F-073

Alex Rodolakis, Esq.
Managed Health Care Systems, Inc.
Medical Temporaries, Inc.
March 19, 2002
Page 5

transactions between them.  This letter is not to be considered a binding or enforceable commitment or agreement of either of the parties (except for the provisions of this paragraph).  Each of the Offeror and Managed understands that this letter of intent does not constitute a complete statement of all matters relating to the proposed transactions between them on which the parties may reach agreement, nor does it constitute a complete statement of those matters on which the parties have come to a general understanding to date.  If and when the parties reach agreement on the proposed transactions between them, a complete statement of those agreements will be set forth only in the Asset Purchase Agreement and in any other documents contemplated thereby, and those agreements will supersede this letter of intent.  Managed understands that the Offeror has no obligation to proceed with any of the proposed transactions unless and until definitive written agreements are executed and delivered by the parties, subject to such terms and conditions as specified herein.

13.    This letter of intent may be executed in any number of counterparts, each of which shall constitute an original, but all of which together shall constitute a single document.

If the terms and conditions above meet with Managed's approval, please fax a signed copy of this letter to Edwards & Angell, to my attention (Facsimile Number: (617) 439-4170).  Please also send the original signed copy by overnight mail or courier services to me at Edwards & Angell, 101 Federal Street, 23rd Floor, Boston, Massachusetts 02110.  This proposal shall terminate at 5:00 p.m. on March 18, 2002 if it has not been accepted by such time by Managed.

Very truly yours,

Indy Edwards

By: _____
        Madeleine A. Estabrook,
        Attorney-in-fact

Accepted and agreed to:
Managed Health Care Systems, Inc.
Debtor in Possession

By: _____
      Name:
      Title:

BOS_BOS_342467_4.DOC/MESTABROOK

HELLER 00079

Alex Rodolakis, Esq.
Managed Health Care Systems, Inc.
Medical Temporaries, Inc.
March 19, 2002
Page 6


Dated:  March ___, 2002

Medical Temporaries, Inc.
Debtor in Possession

By:_____
   Name:
   Title:

Dated:  March ___, 2002


cc: Indy Edwards

BOS_BOS_342487_4.DOC/MESTABROOK

HELLER 00080

# EXHIBIT E

Page 1 of 3

**Mike**

| | |
|---|---|
| **From:** | <mestabrook@ealaw.com> |
| **To:** | "Indy" <indy3@attbi.com> |
| **Sent:** | Monday, March 04, 2002 5:00 PM |
| **Subject:** | Re: Letter of Intent |

----- Forwarded by Madeleine Estabrook/Boston/EALaw on 03/04/02 03:57 PM -----

Madeleine
Estabrook          To:    "David Tatge" <DTatge@ebglaw.com>
                   cc:
03/04/02 03:59     Subject:   Re: Letter of Intent(Document link: Madeleine Estabrook)
PM

David --
I have forwarded your comments to Indy and have now forwarded this email as
well.  I will be back to you as soon as possible.
Please understand that the indemnification issue is a big one and was
previously discussed with Mike Gardullo.  The statement that GE does not
give them, gives me pause and I am not sure what my client's response will
be.

Madeleine

"David Tatge"
<DTatge@ebglaw       To:    <mestabrook@ealaw.com>
.com>                cc:    <DMeier@hellerfin.com>, <MGardullo@hellerfin.com>,
                            <Rgoodridge@hellerfin.com>, <mdegiacomo@murthalaw.com>
03/04/02 03:38       Subject:   Letter of Intent
PM

Hi, Madeline.

I have spoken further with Mike Gardullo subsequent to our conversation

HELLER 00082

around noon about the DRAFT letter of intent submitted by Management to MHCS and Medical Temporaries last Friday, and the initial legal and business issues that I raised with respect to the same.

As discussed:

1.   The LOI must be clarified to reflect that the $600K is a "minimum" sale price - not the "maximum" sale price.

In this regard, the sale price from MHCS and Medical Temporaries to Heller will equal ALL outstanding debt of these entities to Heller, as of Closing, with such debt to be restructured into two pieces, as to Newco: a) a revolving loan, equal to what the revolver would have been, as of Closing, had the existing revolver been based on the correct borrowing base, with LUPA adjustments [I'll clarify this portion of the financing term sheet for the revolver on this point] and b) a Term Note for the balance, both loans otherwise being on the DRAFT terms previously circulated by Heller.

We'll have to agree on and sort out the exact mechanics of this, but thats the general idea.  Mechanically, my sense is that Newco "assumes" both existing notes, "as is", then Heller immediately restructures, with Newco, as aforesaid.

2.   As discussed, we would like to have Indy attach the proposed terms of the Heller financing to her LOI, so all parties are "clear" what the business deal is on the financing.

3.   In terms of indemnities, GE Capital does not give them.  There may be D&O insurance for whatever claims in question that Indy may have in mind.

4.   Heller is not amenable to reducing the purchase price (assumed Heller debt) by the amount of "cure" costs, a subject never broached before by Management.  First, as to Medicare, it is our understanding that Newco will take the receivables from the Debtors "subject to" an agreed right of recoupment in the maximum amount of $350K, to be recovered via set-off, against Newco, over not less than 5 years.  There will be no reduction of the purchase price (assumed debt) for this, however.

As to other existing vendors, we assume and understand that post-petition debt is being kept, essentially, current.  And, that either these vendors will have to waive payment in full of their pre-petion debts, and consent to their contracts being assumed by Newco, or that Newco will have to find new vendors in the market.  In short, Heller will not pay for the cost of any "cures", itself.

5.   What do you hear from Alex on the break-up fee?

6.  On the Medicare settlement, noted above, please fax Mike Gardullo and I, as soon as possible, or have Indy or Alex fax us, a copy of the term sheet (or better yet, the actual proposed settlement agreement, subject

HELLER 00083

Page 3 of 3

only to bankruptcy court approval) that we understand CMS/Medicare has already reached with the debtors, providing for the $350K capped pre-petition liability, as anoted above.

7.   We really need to nail the LOK down, and the foregoing points also, very, very soon.

Generally, what do you hear from Indy re: the above?

Regards, David


*************************************************************
Confidentiality Note: This e-mail is intended only for the person or entity to which it is addressed and may contain information that is privileged, confidential or otherwise protected from disclosure. Dissemination, distribution or copying of this e-mail or the information herein by anyone other than the intended recipient, or an employee or agent responsible for delivering the message to the intended recipient, is prohibited. If you have received this e-mail in error, please call the Help Desk of Epstein Becker & Green at 212-351-4701 and destroy the original message and all copies.

*************************************************************

EBLIEP 00984

# EXHIBIT F

## victor monge

| | |
|---|---|
| **From:** | "David Tatge" <DTatge@ebglaw.com> |
| **To:** | <mestabrook@ealaw.com> |
| **Cc:** | <indy3@attbi.com>; <amr@hanify.com>; <DMeier@hellerfin.com>; <MGardullo@hellerfin.com>; <Rgoodridge@hellerfin.com>; <mdegiacomo@murthalaw.com>; <JDY@riemerlaw.com> |
| **Sent:** | Thursday, March 07, 2002 2:01 PM |
| **Subject:** | Re: letter to estabrook 3602.DOC |

Hi, Madeline.

Please feel free to remove Pam. As you know, Mike G and I were only told very late last week, on Thursday afternoon, well after the date the term sheets were prepared, that Pam is resigning and Indy is forging ahead on her own.

I am very pleased that her from Mike just now that he and Indy have spoke, and that she is going forward. One note. I have a call in to Jon Yellin, for the Committee, to discuss his request of yesterday for a larger carveout to the unsecureds. Mike G and I tried him on a conference call, but he is still at court. We hope to have a call with Jon as soon as he returns.

If Mike G and Jon can't reach mutually acceptable terms, we are all dead in the water. However, we all hope that will not be the case. I'll call or email you as soon as Mike G has spoken with Jon.

Alex, are the debtors "on board", assuming that Mike G and Jon can reach agreement?

Best regards, David

>>> <mestabrook@ealaw.com> 03/07/02 12:02PM >>>

David --

Thank you for your letter of last night.
It was received this morning and forwarded to Indy immediately.

As you and I discussed when you first reviewed the Letter of Intent, I mistakenly included the $600,00 as a ceiling and it should have read "not less than". Similarly, I assume that the fact that the draft term sheets still include Pam was an inadvertent mistake on your part.
Kindly advise me whether you will be making the change to the term sheets or you will allow me to do so.

Generally, there has been significant confusion over the indemnification issues and the "contents" of the B Note and we have been working to understand Heller's position and evaluate the deal in good faith.

I believe that Indy and Mike Gardullo are speaking now.

Please tell me what should be done about the Term Sheets.
Thank you.
Madeleine

9/29/2005

**EDWARDS 00048**

Madeleine A. Estabrook
Edwards & Angell, LLP
101 Federal Street
Boston, MA 02110, USA

email: mestabrook@ealaw.com
Website: www.ealaw.com

Direct Phone:    (617)951-2286
Direct Fax:       (888)325-9107
General Phone:  (617)439-4444
General Fax:     (617)439-4170

------(Offices in Providence, Newport, New York, Fort Lauderdale, West Palm
Beach, Hartford, Short Hills)------

---------------------------------------CONFIDENTIALITY
NOTICE-----------------------------------------
This message is intended only for the individual or entity to which it is
addressed
and may contain information that is privileged, confidential and exempt
from disclosure
under applicable law.  If you are not the intended recipient, or the
employee or agent
responsible for delivering the message to the intended recipient, you are
hereby
notified that any dissemination, distribution or copying of this
communication is strictly
prohibited, and you are requested to please notify us immediately by
telephone, and
return the original message to us at the above address.
-------------------------------------------------------------------------------------------------------------

          "David Tatge"
          <DTatge@ebglaw      To:     <mestabrook@ealaw.com>
          .com>               cc:     <amr@hanify.com>, <DMeier@hellerfin.com>,
                                      <MGardullo@hellerfin.com>, <Rgoodridge@hellerfin.com>,
          03/06/02 10:11              <mdegiacomo@murthalaw.com>,
<JDY@riemerlaw.com>
          PM              Subject:    letter to estabrook 3602.DOC

9/29/2005

EDWARDS
00049

Letter, for immediate attention, re: Management proposal to buy assets of MHCS and Medical Temporaries.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
Confidentiality Note:  This e-mail is intended only for the person or entity to which it is addressed and may contain information that is privileged, confidential or otherwise protected from disclosure.  Dissemination, distribution or copying of this e-mail or the information herein by anyone other than the intended recipient, or an employee or agent responsible for delivering the message to the intended recipient, is prohibited.  If you have received this e-mail in error, please call the Help Desk of Epstein Becker & Green at 212-351-4701 and destroy the original message and all copies.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

(See attached file: letterto.DOC)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
Confidentiality Note:  This e-mail is intended only for the person or entity to which it is addressed and may contain information that is privileged, confidential or otherwise protected from disclosure.  Dissemination, distribution or copying of this e-mail or the information herein by anyone other than the intended recipient, or an employee or agent responsible for delivering the message to the intended recipient, is prohibited.  If you have received this e-mail in error, please call the Help Desk of Epstein Becker & Green at 212-351-4701 and destroy the original message and all copies.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

9/29/2005

**EDWARDS**
**00050**

# EXHIBIT G

## Mike

| | |
|---|---|
| From: | <mestabrook@ealaw.com> |
| To: | "David Tatge" <DTatge@ebglaw.com> |
| Cc: | <amr@hanify.com>; <Dwight.meier@gecapital.com>; <indy3@attbi.com>; <JDY@riemerlaw.com>; <michael.gardullo@gecapital.com> |
| Sent: | Tuesday, March 19, 2002 8:53 PM |
| Subject: | Re: Amended LOI |

I can't make the Committee do anything.
Indy and I continue to negotiate with you and Mike in good faith. We will to appear with the LOI in its fourth iteration, but the Committee and Mr. Yellin will do whatever they will do. We have tried to accommodate all of your requests that are within our control. It's not fair to ask Indy to running a company without funding trade claims or payroll when she has no control over the availability of the Creditor's Committee to tend to this matter. We are trying to keep this together and not cause a wind-down.

Madeleine

"David Tatge"
<DTatge@ebglaw    To:    <mestabrook@ealaw.com>
.com>            cc:    <indy3@attbi.com>, <Dwight.meier@gecapital.com>,
                        <michael.gardullo@gecapital.com>, <amr@hanify.com>,
<JDY@riemerlaw.com>
        03/19/02 07:40    Subject:    Re: Amended LOI
        PM

Madeline, Heller will not fund further without a signed Stip acceptable to Heller, and a signed LOI acceptable to Heller, and the Committee signs off. Once those are in hand, and the Committee approves, Heller wil resume funding under the terms of the revolver, for the next 10 days, provided there is no default under the Stip, and that availability in the revolver exists.

Its not fair, however, to ask Heller to fund more unless and until these documents are signed and the Committee also signs off on them.

David

>>> <mestabrook@ealaw.com> 03/19/02 07:22PM >>>

HELLER 00090

David ---
As we all discussed with Mike on the phone today, Heller must continue to
fund while we finalize the deal. Otherwise nothing makes economic sense.
It appeared to me that that issue was clear to all of us today and agreed
to by Mike who indicated that the funding only payroll was a temporary step
prior to this hearing. If you want a deal and not be facing a wind-down,
then the continuance for 10days to paper the deal that we've made is the
only reasonable solution.

Madeleine


"David Tatge"

<DTatge@ebglaw    To:    <mestabrook@ealaw.com>

.com>         cc:    <indy3@attbi.com>,
<Dwight.meier@gecapital.com>,
<michael.gardullo@gecapital.com>,
<amr@hanify.com>, <JDY@riemerlaw.com>
03/19/02 07:15    Subject:    Re: Amended LOI

PM


Thanks, I'll discuss this with Heller and give you any comments.

I am very concerned that Jon can't get the Committee on board, by
tomorrow's hearing. This is probably a deal breaker, at least if Alex or
the Judge can't agree that Heller does not have to fund, and the Stip is
not effective, until the Committee signs off.

David

>>> <mestabrook@ealaw.com> 03/19/02 06:53PM >>>
David ---

Attached is the revised LOI with the changes we discussed.
Also attached is a clean version.


In an effort to expedite this process, I am forwarding this draft to

HELLER 00099

everyone simultaneously. I must reserve my client's right to make any changes which I have missed.

Thank you.




Madeleine A. Estabrook
Edwards & Angell, LLP
101 Federal Street
Boston, MA 02110, USA

email: mestabrook@ealaw.com
Website: www.ealaw.com

Direct Phone:    (617)951-2286
Direct Fax:      (888)325-9107
General Phone:   (617)439-4444
General Fax:     (617)439-4170

-----(Offices in Providence, Newport, New York, Fort Lauderdale, West Palm Beach, Hartford, Short Hills)------

----------------------------------------CONFIDENTIALITY NOTICE----------------------------------------
This message is intended only for the individual or entity to which it is addressed
and may contain information that is privileged, confidential and exempt from disclosure
under applicable law. If you are not the intended recipient, or the employee or agent
responsible for delivering the message to the intended recipient, you are hereby
notified that any dissemination, distribution or copying of this communication is strictly
prohibited, and you are requested to please notify us immediately by telephone, and
return the original message to us at the above address.
--------------------------------------------------------------------------------------------------------


(See attached file: Loi319.rtf)


   (See attached file: BOS_342467_4.DOC)


HELLER 00190

# EXHIBIT H

Page 1 of 3

## Mike

| | |
|---|---|
| **From:** | "David Tatge" <DTatge@ebglaw.com> |
| **To:** | <mestabrook@ealaw.com> |
| **Cc:** | <indy3@attbi.com>; <Dwight.meier@gecapital.com>; <michael.gardullo@gecapital.com>; <robert.goodridge@gecapital.com>; <amr@hanify.com>; <JDY@riemerlaw.com> |
| **Sent:** | Tuesday, March 19, 2002 2:16 PM |
| **Subject:** | Re: Motion to Appear by phone granted in Boston |

Great news. I just hung up with Judge Kenner's law clerk. The Court has granted our motion to appear by telephone tomorrow AM, at 10 o'clock.

Mike, I told them to call your office, 301-664-9850. I will come out to GE Capital Healthcare in the AM, probably about 9 or so.

David

>>> David Tatge 03/19/02 01:10PM >>>
Not yet. I have called and left a message on the voice mail of Judge Kenner's chambers, as time is obviously now very short to plan travel, etc. No word yet
David

>>> <mestabrook@ealaw.com> 03/19/02 12:42PM >>>

David ---
I'm sorry that I was unable to reach you last night and that I had other commitments this morning which kept me out of the office.

I have forwarded your changes to Indy and we have been working on them. The changes which reflect Heller's deal the Creditors' Committee as to carveouts is fine however you wish to draft it. Since I was not a party to, nor copied on any of those communications, I can't articulate your deal as clearly as you can. However, I am uncomfortable with the commitment by Newco to assume or pay all non-professional trades. We originally entered the deal without any cash obligations. This new requirement, which apparently resonates from your discussions with Mr. Yellin or from GE Capital, creates a very different deal. In an attempt to compromise, we included the cap on the amount in our LOI. Your elimination of the cap is a current concern. I have asked Indy to speak with Mike Gardullo about this and I, of course, will do as she directs me.

In the meantime, can you tell me if the Court has ruled on your motion for telephonic appearance?

Thanks.
Madeleine

HELLER 00088

"David Tatge"
<DTatge@ebglaw    To:    <mestabrook@ealaw.com>
.com>               cc:    <Dwight.meier@gecapital.com>,
<michael.gardullo@gecapital.com>,
                          <robert.goodridge@gecapital.com>, <amr@hanify.com>,
<JDY@riemerlaw.com>
       03/19/02 09:44    Subject:    Status of management letter of intent
       AM

Madeline, as you know, I emailed you yesterday morning at 11 AM comments of
Heller to Management's March 15th draft letter of intent to acquire the
assets of MHCS and Medical Temporaries, as well as a blackline to your
draft of March 15th. I also sent you markups of the proposed Stipulation
with Heller re: the terms of its conditional forbearance, and markups of
term sheets for potential financing from Heller to Newco.

The principal changes in these various documents were to reflect (a) a $30K
carveout offer to the unsecureds, plus a 25% share for them in the
restructured Term Note to Newco, rather than $50K, as before (Management's
LOI of 3/15 had this reduced carve-out paid to administrative trade claims)
and (b) a commitment by Newco to assume or pay all non-professional
adminstrative (capped at $15K in Management's draft LOI of 3/15).

Neither Mike or I have received any comments and my phone message to your
office yesterday at 5:15 or so was not returned. I have not been able to
reach you this morning either.

Please advise, at your earliest convenience, regarding Management's
intentions.

Thanks, David Tatge

****************************************************************
Confidentiality Note: This e-mail is intended only for the
person or entity to which it is addressed and may contain
information that is privileged, confidential or otherwise
protected from disclosure. Dissemination, distribution
or copying of this e-mail or the information herein by
anyone other than the intended recipient, or an employee
or agent responsible for delivering the message to the
intended recipient, is prohibited. If you have received
this e-mail in error, please call the Help Desk of Epstein
Becker & Green at 212-351-4701 and destroy the original
message and all copies.

# EXHIBIT I

## Mike

| | |
|---|---|
| **From:** | <mestabrook@ealaw.com> |
| **To:** | "David Tatge" <DTatge@ebglaw.com> |
| **Cc:** | <amr@hanify.com>; <Dwight.meier@gecapital.com>; <indy3@attbi.com>; <JDY@riemerlaw.com>; <michael.gardullo@gecapital.com> |
| **Sent:** | Tuesday, March 19, 2002 8:47 PM |
| **Subject:** | Re: Amended LOI |

David ---
These are typical conditions for any deal and Indy should be able to form a company that is going to work. I don't understand why we can't come out of this with assets that are truly going to start a new going concern. A material adverse change is not to your benefit or to Indy's. I can't understand why you would want to fund this entity after a material adverse change? We need the opportunity to put together a successful company.

It seems to me that these conditions protect us both ona going forward basis.

Madeleine


       "David Tatge"
       <DTatge@ebglaw    To:   <mestabrook@ealaw.com>
       .com>       cc:   <indy3@attbi.com>, <Dwight.meier@gecapital.com>,
                     <michael.gardullo@gecapital.com>, <amr@hanify.com>,
<JDY@riemerlaw.com>
       03/19/02 07:38    Subject:   Re: Amended LOI
       PM




Madeline, skimming this, I see that the material adverse change clause is still in the document, which Heller found objectionable, and that the closing condition that Indy have negotiated acceptable employment contracts with employees, which Heller also found objectionable, is also still in. I'll be looking further for other stuff like this.

Can Heller assume, to start with, that these two clauses will be coming out?

David

>>> <mestabrook@ealaw.com> 03/19/02 06:53PM >>>
David ---

Attached is the revised LOI with the changes we discussed.
Also attached is a clean version.

In an effort to expedite this process, I am forwarding this draft to
everyone simultaneously.  I must reserve my client's right to make any
changes which I have missed.

Thank you.

Madeleine A. Estabrook
Edwards & Angell, LLP
101 Federal Street
Boston, MA 02110, USA
email: mestabrook@ealaw.com
Website: www.ealaw.com

Direct Phone:    (617)951-2286
Direct Fax:      (888)325-9107
General Phone:   (617)439-4444
General Fax:     (617)439-4170

------(Offices in Providence, Newport, New York, Fort Lauderdale, West Palm
Beach, Hartford, Short Hills)------

---------------------------------------CONFIDENTIALITY
NOTICE------------------------------------------
This message is intended only for the individual or entity to which it is
addressed
and may contain information that is privileged, confidential and exempt
from disclosure
under applicable law.  If you are not the intended recipient, or the
employee or agent
responsible for delivering the message to the intended recipient, you are
hereby
notified that any dissemination, distribution or copying of this
communication is strictly
prohibited, and you are requested to please notify us immediately by
telephone, and
return the original message to us at the above address.
------------------------------------------------------------------------------------------------------------------------

(See attached file: Loi319.rtf)

EELLEP 00192

# EXHIBIT J

## Mike

| | |
|---|---|
| **From:** | <mestabrook@ealaw.com> |
| **To:** | "Joseph Butler" <jgb@barronstad.com> |
| **Cc:** | <amr@hanify.com>; <dgrass@becket-lee.com>; <DTatge@ebglaw.com>; <JDY@riemerlaw.com>; <j.esher@rileyesher.com>; <mcoppock@rubinrudman.com>; <michael.gardullo@gecapital.com>; "Indy" <indy3@attbi.com> |
| **Sent:** | Wednesday, March 27, 2002 1:45 AM |
| **Attach:** | 217714_1.doc |
| **Subject:** | Re: SETTLEMENT AGREEMENT, Managed Health Care and Medical Temporaries |

Joe ---
As we discussed, I must object to the inclusion of the following portion of subparagraph 2(d) on Page 5 of the Settlement Agreement:

"however, that this release from Heller does not include and Heller does not waive or release either the Debtors or any officer, director, employee or agent of either Debtor from any legal or equitable claims Heller may have or from any damages suffered by Heller arising from the default under the DIP Loan Agreement which created the over-advance of approximately $405,000, which was referred to in Heller's Notice of Event of Default (except that, as to the Debtors, Heller waives the right to recover any dividend from the Chapter 7 estate of either Debtor, as noted above)."

I am concerned to see this exception being taken.. Candidly, I am amazed and surprised to see it raised especially in light of the significant efforts put forth by Indy Edwards working with Heller, in good faith, to purchase the Company assets.

Madeleine A. Estabrook
Edwards & Angell, LLP
101 Federal Street
Boston, MA 02110, USA

email: mestabrook@ealaw.com
Website: www.ealaw.com

Direct Phone:    (617)951-2286
Direct Fax:      (888)325-9107
General Phone:   (617)439-4444
General Fax:     (617)439-4170

------(Offices in Providence, Newport, New York, Fort Lauderdale, West Palm Beach, Hartford, Short Hills)------

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GE HFS HOLDINGS, INC.,<br>*formerly known as*<br><br>HELLER HEALTHCARE FINANCE, INC.,<br><br>                                Plaintiff,<br>and<br><br>MICHAEL INGOLDSBY,<br><br>                                Intervenor Plaintiff,<br>v.<br><br>NATIONAL UNION FIRE INSURANCE<br>COMPANY OF PITTSBURGH, PA. and<br>INTERNATIONAL INSURANCE GROUP, LTD.<br><br>                                Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. 05-CV-11128 NG<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**AFFIDAVIT OF INDY EDWARDS**

I, Indy Edwards, hereby depose and state:

1. I make this affidavit based on my personal knowledge.

2. On or about May 12, 1995, I joined Managed Health Care Systems, Inc. and its wholly

owned subsidiary Medical Temporaries, Inc. (collectively, "MHCS") as MHCS' Branch

Director, and later as Director of Operations.   On or about July 1 of 1998, I became the

President and Chief Operating Officer of MHCS.  On or about March 31, 2002, I left MHCS.

3. On or about February 23, 2001 (the "Petition Date"), MHCS filed a voluntary petition

for relief under Chapter 11 of Title 11, United States Code in the United States Bankruptcy Court

for the District of Massachusetts (the "Bankruptcy Court").

4. During parts of the last quarter of  2001 and into the first quarter of 2002, I attempted

to purchase the business of MHCS through proceedings in the Bankruptcy Court.  Pursuant to

{B0536803; 1}

these efforts, Madeleine Estabrook, who was a partner at the law firm of Edwards & Angell LLP, represented me and conducted negotiations with counsel for MHCS and for Heller Healthcare Finance, Inc. ("Heller") on my behalf. Ms. Estabrook attended numerous hearings in the Bankruptcy Court with me pursuant to these efforts.

5. I paid Ms. Estabrook no fees for her efforts, advice and guidance because she understood that she would continue on as counsel to the new and reorganized entity which would have emerged from my efforts to buy MHCS' business out of its bankruptcy case.

6. Of note, Ms. Estabrook attended, on my behalf, the hearing in the Bankruptcy Court which ended my efforts to purchase the business of MHCS and heralded the conversion of MHCS' bankruptcy from a Chapter 11 reorganization to a Chapter 7 liquidation. The liquidation caused MHCS to loose its going concern value and to loose its continued ability to service the various debts it owed to Heller

7. I relied upon Ms. Estabrook's advice and counsel throughout this troubling period which was caused by the discovery of Pamela Jones' mistakes in the borrowing Base Certificates, which mistakes I failed to discover or prevent, and which mistakes resulted in Heller loaning MHCS approximately $402,000 more than Heller would have advanced had the Borrowing Base Certificates and DIP Operating Reports, which included the same mistakes by Ms. Jones, correctly stated the total amount of Qualified Account receivables.

8. At these times, I entrusted Ms. Estabrook with my full confidence and trust as she encouraged me to treat her as more than merely my attorney but as my close friend and confidant.

Signed under the pains and penalty of perjury this 12th day of July, 2006.

\s\ Indy Edwards
Indy Edwards

- 2 -

{B0536803; 1}

Certificate of Service

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on July 25, 2006.

/s/ Jeffrey E. Francis

{B0536803; 1}

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GE HFS HOLDINGS, INC.,<br>*formerly known as*<br><br>HELLER HEALTHCARE FINANCE, INC.,<br><br>      Plaintiff,<br>and<br><br>MICHAEL INGOLDSBY,<br><br>      Intervenor Plaintiff,<br>v.<br><br>NATIONAL UNION FIRE INSURANCE<br>COMPANY OF PITTSBURGH, PA. and<br>INTERNATIONAL INSURANCE GROUP, LTD.<br><br>      Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )   Civil Action No. 05-CV-11128 NG |

**AFFIDAVIT OF PAMELA JONES**

I, Pamela Jones, hereby depose and state:

1. I make this affidavit based on my personal knowledge.

2. I was employed as vice-president of finance of Managed Health Care Systems, Inc. (hereinafter referred to as "MHCS").

3. In my capacity as an officer of MHCS, I observed Madeline Estabrook's extensive dealings with the officers and directors of MHCS.

4. Specifically, Ms. Estabrook acted as outside corporate counsel to MHCS. After MHCS filed a voluntary petition for bankruptcy protection, Ms. Estabrook's involvement with MHCS increased substantially.

{B0537825; 2}

5.  Indeed, Ms. Estabrook's advice was instrumental in our management of MHCS in bankruptcy and included Ms. Estabrook's advice and guidance on MHCS' entry into its financing agreement with Heller Healthcare Finance, Inc.

6.  I also observed Ms. Estabrook take an active role in assisting and advising Indy Edwards in her efforts to purchase the business of MHCS out of bankruptcy.

Signed under the pains and penalties of perjury this  24th day of July, 2006.

\s\ Pamela Jones
Pamela Jones

Certificate of Service

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on July 25, 2006.

/s/ Jeffrey E. Francis

{B0537825; 2}