UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GE HFS HOLDINGS, INC.,<br>*formerly known as*<br><br>HELLER HEALTHCARE FINANCE, INC.,<br><br>           Plaintiff,<br>and<br><br>MICHAEL INGOLDSBY,<br><br>           Intervenor Plaintiff,<br>v.<br><br>NATIONAL UNION FIRE INSURANCE<br>COMPANY OF PITTSBURGH, PA. and<br>INTERNATIONAL INSURANCE GROUP, LTD.<br><br>           Defendants. | Civil Action No. 05-CV-11128 NG |

**PLAINTIFF GE HFS HOLDINGS, INC.'S MEMORANDUM
IN SUPPORT OF ITS MOTION TO DISQUALIFY
EDWARDS ANGELL PALMER & DODGE LLP AS COUNSEL TO DEFENDANT
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA**

Plaintiff GE HFS Holdings, Inc., formerly known as Heller Healthcare Finance, Inc. ("Heller"), by its undersigned counsel, Sullivan & Worcester LLP, respectfully submits this memorandum of law in support of its motion to disqualify Edwards Angell Palmer & Dodge LLP ("E&A") as counsel to Defendant National Union Fire Insurance Company of Pittsburgh, PA. ("National Union").

**BACKGROUND**

Pursuant to Massachusetts Rules of Professional Conduct Rule 1.9 and Rule 1.10, Heller seeks the disqualification of E&A as counsel to National Union in the above-captioned action, due to E&A's prior representation of Indy Edwards ("Edwards") in a substantially related matter.

Specifically, Madeleine Estabrook ("Estabrook"), then a partner of E&A and now an of counsel attorney with E&A, represented Edwards during, at least, the first half of 2002, when Edwards was attempting to acquire the business of Managed Health Care Systems, Inc. ("MHCS") out of bankruptcy. Affidavit of Indy Edwards ("Edwards Aff.") at ¶¶ 4-8, Affidavit of at Pamela Jones ("Jones Aff.") ¶ 6; and Affidavit of Jeffrey E. Francis ("Francis Aff.") at ¶¶ 5-11, Exhs. D to J, all of which were previously submitted with Heller's Opposition (Docket No. 43) to National Union's Motion to Quash (Docket No. 39). It was during that same period of time when Edwards and Pamela Jones' ("Jones") negligent misrepresentations came to light which gave rise to Edwards and Jones making their claims for defense and indemnification against the Directors and Officers Policy issued by National Union (the "D&O Policy"). It was also at this time that MHCS' bankruptcy was converted from a Chapter 11 reorganization to a Chapter 7 liquidation. These events are at the very heart of the present matter.

On June 27, 2006, Heller requested that E&A withdraw as counsel to National Union in this matter due to E&A's prior representation of Edwards. See Exhibit A hereto. On July 7, 2006, E&A refused Heller's request that it withdraw. See Exhibit B hereto. In that July 7, 2006 letter, E&A asserts that:

> Your assertion regarding a conflict is premised entirely on Madeleine Estabrook's former representation of Indy Edwards ("Edwards") and Managed Healthcare (*sic*) Systems, Inc. ("MHCS"). As you are well aware, however, neither Edwards nor MHCS are parties to the instant litigation. Moreover, your letter does not allege, nor could it, that Ms. Estabrook's former representation of either Edwards or MHCS had anything to do with the insurance coverage issues that are being litigated in this case. In fact, Ms. Estabrook never represented or provided advice to Edwards or MHCS on insurance coverage issues. . . .

See id. (emphasis added). E&A's response simply misstates the issue. E&A has attempted to raise a number of purported defenses to Heller's prosecution of Edwards and Jones' claims which go well beyond the simple insurance coverage dispute which is at the true center of this

{B0541664;1}

matter. Estabrook's representation of Edwards concerned and was substantially related to the allegations underlying these purported defenses.

In direct contradiction to E&A's own statements in its July 7, 2006 letter, Estabrook filed an affidavit in connection with National Union's Motion to Quash Heller's subpoena for testimony and documents from Estabrook, asserting that Estabrook never represented Edwards. Affidavit of Estabrook at ¶ 8. However, Estabrook's own correspondence on behalf of Edwards belies this belated reversal in position. Indeed, in one document Estabrook identified herself as Edwards "attorney-in-fact" and represented that her firm "**represents Indy Edwards**." Francis Aff. at 5, Exh. D (emphasis added).

Again and again in document after document Estabrook acted as Edwards' attorney. For example, in an e-mail dated March 4, 2002, Estabrook attempted to negotiate an indemnification against claims from Heller on behalf of Edwards in a Letter of Intent for Edwards' purchase of MHCS' business out of bankruptcy. Francis Aff. at Exh. E. David Tatge responded that: "In terms of indemnities, GE Capital does not give them. There may be D&O insurance for whatever claims in questions that Indy may have in mind. . . . " Id. Estabrook countered, on behalf of Edwards, that "the statement that GE does not give [indemnifications], gives me pause and I am not sure what my client's response will be." Id.

On March 19, 2002, Estabrook again wrote to David Tatge that "Indy and I continue to negotiate with you and Mike in good faith. . . ." Francis Aff. at Exh. G. Indeed, as in any attorney-client relationship, Estabrook and Edwards worked collaboratively to negotiate Indy Edwards' purchase of MHCS' business out of bankruptcy: "I have forwarded your changes to Indy and we have been working on them. . . I have asked Indy to speak with Mike Gardullo about this and I, of course, will do as she directs me." Francis Aff. at Exh. H. Finally, late in the

{B0541664; 1}

evening on March 19, 2002, Estabrook argued that the terms of the Letter of Intent were becoming too harsh for Edwards' new company to be successful:

> These are typical conditions for any deal and Indy should be able to form a company that is going to work. I don't understand why we can't come out of this with assets that are truly going to start a new going concern. . . . We need the opportunity to put together a successful company.

Francis Aff. at Exh. I. Of key importance, Estabrook attended on Edwards behalf, the various hearings in the bankruptcy court where Jones and Edwards' negligent misrepresentations came to light and the Court converted MHCS' bankruptcy from a Chapter 11 reorganization to a Chapter 7 liquidation. Edwards Aff. at ¶ 6.

> Finally, Edwards is certain that Estabrook represented her:
>
> During parts of the last quarter of 2001 and into the first quarter of 2002, I attempted to purchase the business of MHCS through proceedings in the Bankruptcy Court. Pursuant to these efforts, Madeleine Estabrook, who was a partner at the law firm of Edwards & Angell LLP, represented me and conducted negotiations with counsel for MHCS and for Heller Healthcare Finance, Inc. ("Heller") on my behalf. Ms. Estabrook attended numerous hearings in the Bankruptcy Court with me pursuant to these efforts. . . .
>
> Of note, Ms. Estabrook attended, on my behalf, the hearing in the Bankruptcy Court which ended my efforts to purchase the business of MHCS and heralded the conversion of MHCS' bankruptcy from a Chapter 11 reorganization to a Chapter 7 liquidation. The liquidation caused MHCS to loose its going concern value and to loose its continued ability to service the various debts it owed to Heller . . .
>
> I relied upon Ms. Estabrook's advice and counsel throughout this troubling period which was caused by the discovery of Pamela Jones' mistakes in the borrowing Base Certificates, which mistakes I failed to discover or prevent, and which mistakes resulted in Heller loaning MHCS approximately $402,000 more than Heller would have advanced had the Borrowing Base Certificates and DIP Operating Reports, which included the same mistakes by Ms. Jones, correctly stated the total amount of Qualified Account receivables. . . .
>
> At these times, I entrusted Ms. Estabrook with my full confidence and trust as she encouraged me to treat her as more than merely my attorney but as my close friend and confidant. . . .

Edwards Aff. at ¶¶ 5-8. It is patently improper for E&A to act as counsel to National Union in defense against Edwards' claims under the D&O Policy.

## ARGUMENT

E&A's bad faith efforts[1] to deny E&A's prior representation of its former client, Edwards, merely to facilitate its representation of its present client, National Union, is simply not tenable in light of Estabrook's own actions and correspondence on behalf of Edwards. See Francis Aff. at ¶¶ 5-11, Exhs. D to J; Edwards Aff. at ¶¶ 5-8. E&A's subsequent representation of National Union in a matter substantially related to E&A's prior representation of Edwards is simply not permissible under Massachusetts Rules of Professional Conduct 1.9(a) and 1.10. Therefore, the Court should disqualify E&A from representing National Union in this matter.

### *Estabrook and E&A Represented Edwards*

Despite Estabrook's disingenuous denial of an attorney-client relationship with Edwards, there can be no good faith dispute that an attorney-client relationship existed between Edwards and Estabrook. Indeed, the hurdle for establishing such a relationship is necessarily low: "Such a relationship may be established through preliminary consultations, even though the attorney is never formally retained and the client pays no fee." Bays v. Theran, 418 Mass. 685, 690 (1994) (citation omitted). As described above, there can be no question that Estabrook and E&A represented Edwards and that E&A's representation of National Union is substantially related to that prior representation. Therefore, the Court should disqualify E&A from representing National Union in this matter.

---

[1] Indeed, E&A's actions in this matter have created a very real and very substantial appearance of impropriety by E&A.

- 5 -

{B0541664; 1}

### *Estabrook and E&A are Prohibited from Representing National Union in this Substantially Related Matter*

Estabrook and E&A are prohibited from representing National Union in this matter.[2] Pursuant to Massachusetts Rules of Professional Conduct 1.9(a), "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation." The former client need only show that the matters are substantially related because "[t]he Court will assume that during the course of the former representation confidences were disclosed." Kevlik v. Goldstein, 724 F.2d 844, 851 (1st Cir. 1984) (quotation omitted). Indeed, the purpose of Rule 1.9 is to avoid the possibility that "an attorney representing a party adverse to his former client would be tempted to betray confidences of that former client in order to serve the interests of the current client." Dee v. Conference Holdings, Inc., No. 976608, 1998 WL 1247926, at *2 (Mass. Super. July 14, 1998) (counsel disqualified based on representation of former client) [appended hereto as Exhibit C]. Here, based upon the defenses asserted by National Union which rely in whole or in part on the conduct of MHCS' bankruptcy and conversion of MHCS' bankruptcy from a Chapter 11 reorganization to a Chapter 7 liquidation, the scope of Estabrook's representation of Edwards and this matter are substantially related and E&A should be disqualified.

Edwards also has no obligation to show that her confidential information has actually been utilized by National Union. It is well established that:

> [a]n attorney will be disqualified from representing a client if confidential or privileged information obtained during the representation of a prior client <u>could</u> be used to the prior client's disadvantage.

---

[2] Pursuant to Mass. R. Prof. Conduct 1.10(a): "while lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rule 1.7, 1.8(c) or 1.9.

Smith & Nephew, Inc. v. Ethicon, Inc., 98 F.Supp.2d 106, 108 (D. Mass. 2000) (emphasis in original). Here, as Estabrook was Edwards counsel during the exact time period that Edwards and Jones' negligent misrepresentations came to light and because Estabrook was so deeply involved in representing Edwards, there is no question that E&A's present representation of National Union is to Edwards' direct disadvantage.

In addition to the obvious adverse interests of National Union to Edwards (and Heller as Edwards' attorney-in-fact and assignee) there are other harms to Edwards' interests. For example, under the terms of Edwards' Settlement Agreement with Heller, should Heller prevail in prosecuting Edwards and Jones' claims, Edwards is entitled to receive back her costs in defending against Heller's claims against her in the original D&O Litigation. If Estabrook and E&A are permitted the possibility of using her confidential information to frustrate Heller's prosecution of her claims, Edwards will be directly disadvantaged.

## CONCLUSION

For all of the above-described reasons, Heller's motion to disqualify E&A should be granted, Heller should be awarded its costs and attorneys' fees in making this motion and the Court should grant Heller such further and additional relief as it deems just and proper.

Respectfully submitted,

GE HFS HOLDINGS, INC.,
formerly known as
HELLER HEALTHCARE FINANCE, INC.,

By its attorneys,

\s\ Jeffrey E. Francis
Gayle P. Ehrlich (BBO # 546861)
Jeffrey E. Francis (BBO # 639944)
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2800
jfrancis@sandw.com

Certificate of Service

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on August 2, 2006.

/s/ Jeffrey E. Francis

- 8 -

{B0541664; 1}

# EXHIBIT A



Sullivan & Worcester LLP
One Post Office Square
Boston, MA 02109

T 617 338 2800
F 617 338 2880
www.sandw.com

June 27, 2006

John D. Hughes, Esq.
Edwards Angell Palmer & Dodge LLP
111 Huntington Avenue
Boston, MA 02199

Re:  GE HFS Holdings, Inc. ("Heller") v. National Union Fire Insurance Co.
     ("National Union") U.S.D.C. District of MA Civil Action No. 05-11127-NG

Dear John:

Pursuant to Massachusetts Rules of Professional Conduct Rule 1.9 and Rule 1.10, I am writing to request that your firm withdraw as counsel to defendant National Union Fire Insurance Company of Pittsburgh, P.A. in the above action, due to your firm's prior representation of both Indy Edwards and Managed Health Care Systems, Inc. ("MHCS").

Specifically, Madeleine Estabrook of your firm represented Ms. Edwards during, at least, the first half of 2002, when Ms. Edwards was attempting to acquire the assets of MHCS. It was during that same period of time when Ms. Edwards' negligent misrepresentations came to light which gave rise to Ms. Edwards making a claim against the Directors and Officers Policy issued by National Union. It was also at this time that, MHCS' bankruptcy was converted from a Chapter 11 reorganization to a Chapter 7 liquidation. Both of these events are at the very heart of the present matter.

In addition, your firm was for many years general counsel to MHCS and, in fact, apparently advised MHCS in its negotiation of its DIP Financing with Heller, and may have even advised MHCS and Ms. Edwards on entering into and making claims under the very Directors and Officers Insurance Policy issued by National Union that is at issue in this matter.

Moreover, your firm sought and received permission from the Bankruptcy Court to be special counsel to MHCS during its Chapter 11 bankruptcy case.

The vast scope of your firm's representation of MHCS and your firm's representation of Ms. Edwards only recently came to light for Heller through discovery in this matter. However, your firm must have known from the inception of its involvement in this action of the inappropriateness of representing National Union in this dispute.

In addition to requesting your firm's immediate withdrawal from this matter, we request that Ms. Estabrook, yourself and any other attorneys at your firm who have represented Ms. Edwards, MHCS and/or National Union in the past, provide affidavits describing any and all confidential attorney/client information of Ms. Edwards and/or MHCS which has been provided to National Union in connection with the matter.

{B0528936; 1}
BOSTON   NEW YORK   WASHINGTON, DC

John D. Hughes
Page 2
June 27, 2006

I respectfully request that I receive a response to this letter by July 7, 2006. At that time, should this not be resolved, we will seek appropriate relief from the Court.

Respectfully,

*[signature]*

Jeffrey E. Francis

Direct line: 617 338 2993
jfrancis@sandw.com

JEF:jp

cc: Gregory J. Aceto, Esq.
    Richard E. Heifetz, Esq.
    Mary-Pat Cormier, Esq.
    Gayle P. Ehrlich, Esq.

{B0528936; 1}

EXHIBIT B

# Edwards Angell Palmer & Dodge LLP

2800 Financial Plaza  Providence, RI  02903   401.274.9200   *fax* 401.276.6611   eapdlaw.com

Stephen M. Prignano
401.276.6670
*fax* 888.325.9052
sprignano@eapdlaw.com

July 7, 2006

**VIA E-MAIL AND REGULAR MAIL**

Jeffrey E. Francis, Esq.
Sullivan & Worcester LLP
One Post Office Square
Boston, MA 02109

> Re:   GE HFS Holdings, Inc. ("Heller") v. National Union Fire Insurance Co. ("National Union") U.S.D.C. District of MA Civil Action No. 05-11127-NG

Dear Mr. Francis:

This letter responds to your correspondence of June 27, 2006, wherein you request, for the first time in this litigation, that Edwards Angell Palmer & Dodge LLP ("EAP&D") withdraw its representation of National Union Fire Insurance Company of Pittsburgh, P.A. ("National Union"). After reviewing this matter and the contents of your letter, EAP&D declines your request.

Contrary to the statements contained in your letter, there very clearly is no conflict under Rule 1.9 or Rule 1.10 of the Massachusetts Rules of Professional Conduct. Your assertion regarding a conflict is premised entirely on Madeleine Estabrook's former representation of Indy Edwards ("Edwards") and Managed Healthcare Systems, Inc. ("MHCS"). As you are well aware, however, neither Edwards nor MHCS are parties to the instant litigation. Moreover, your letter does not allege, nor could it, that Ms. Estabrook's former representation of either Edwards or MHCS had anything to do with the insurance coverage issues that are being litigated in this case. In fact, Ms. Estabrook never represented or provided advice to Edwards or MHCS on insurance coverage issues. As you are further aware, Mr. Greg Aceto separately represented Edwards in connection with the insurance coverage matters at issue here.

Most troubling about your belated assertion of a conflict, however, is your statement that the nature of Ms. Estabrook's representation of Edwards and MHCS "only recently came to light for Heller through discovery in this matter." Nothing could be further from the truth. Heller was a party to the underlying litigation between Heller and Edwards, among others, which was commenced in 2002. On January 6, 2004, Edwards filed initial disclosures with the U.S. District Court and served them upon Heller. Those disclosures very clearly identified Ms. Estabrook as outside counsel for MHCS and accurately described the scope of her representation:

EDWARDS ANGELL PALMER&DODGE LLP

Jeffrey E. Francis, Esq.
July 7, 2006
Page 2

> "11.  **Outside Counsel to Managed Health Care Systems, Inc.**
>
> Madeleine Estabrook, Esq.
> Formally of Edwards & Angell, LLP
>
> Ms. Estabrook was outside counsel for MHCS, and as such has relevant knowledge of the general business of MHCS, the general course of the contractual relationship between Heller and MHCS, and communications between representatives of Heller and MHCS, having been present at certain meetings and conferences. Additionally, Ms. Estabrook has information regarding negotiations between Ms. Edwards and representatives of Heller relating to a buyout of MHCS."

Manifestly, Heller knew of Ms. Estabrook's representation in this matter as early as January of 2004, if not earlier, and never raised an issue regarding this firm's participation in this litigation until now. It is curious that your assertion of a conflict follows closely on the heels of recent discovery requests served by this office on your client. Indeed, given Heller's longstanding knowledge of Ms. Estabrook's representation, we can only conclude that Heller's belated assertion of a conflict is designed to gain a tactical advantage in this litigation. If this matter is further litigated, we are also confident that it will be viewed as such by the Court.

Thank you for your attention to this matter.

Sincerely yours,

Stephen M. Prignano

cc: Madeleine A. Estabrook, Esq.
    John D. Hughes, Esq.

# EXHIBIT C

Westlaw.

Not Reported in N.E.2d                                                                                         Page 1
Not Reported in N.E.2d, 1998 WL 1247926 (Mass.Super.)
**(Cite as: 1998 WL 1247926 (Mass.Super.))**

C
Only the Westlaw citation is currently available.

Superior Court of Massachusetts.
Kenneth S. DEE,
v.
CONFERENCE HOLDINGS, INC. dba The Center for Business Intelligence.
No. 976608.

July 14, 1998.

MEMORANDUM OF DECISION AND ORDER ON PLAINTIFF'S MOTION TO DISQUALIFY DEFENDANT'S COUNSEL

SOSMAN.

*1 Plaintiff Kenneth Dee has moved to disqualify defendant's counsel, Kotin, Crabtree & Strong, LLP ("KC & S"), on the ground that KC & S's representation of defendant would violate Rule 1.9 of the Massachusetts Rules of Professional Conduct. For the following reasons, the motion is ALLOWED.

Background

Plaintiff Dee was employed at IBC USA Conferences, Inc. ("IBC") from October 1991 until February 1995. His compensation included base salary plus commissions, and his employment agreement included a noncompetition clause. In February 1995, Dee left IBC and went to work for defendant Conference Holdings, Inc. In May 1995, IBC filed suit against Dee and Conference Holdings alleging that Dee's employment with Conference Holdings violated his noncompetition agreement.

KC & S represented both Dee and Conference Holdings in the IBC suit. As part of that joint representation, KC & S filed a counterclaim on behalf of Dee complaining that IBC had failed to pay Dee commissions for his 1995 work. That counterclaim, as drafted by KC & S, included the following allegations pertaining to Dee's history of commission earnings at IBC:

32. During the time that Ken Dee worked at IBC as a conference producer, IBC promised to pay him, in addition to his salary, a "commission" equal to 5% of the profit on all of the conferences that he produced, minus an annual overhead charge. The first year of Ken Dee's employment, the annual overhead charge was prorated to the number of months that Ken Dee was actually employed by IBC.

33. When Ken Dee became a manager in the fall of 1992, IBC promised to pay him, in addition to his salary, a "commission" equal to 5% on the profit on all conferences produced by the conference producers he supervised, minus an annual overhead charge.

34. IBC paid Ken Dee the aforesaid 5% "commission" at the end of each calendar year of his employment, in the years 1991, 1992, 1993, and 1994.

The counterclaim then complained that Dee and/or persons he had supervised had produced conferences in 1995 for which Dee was still owed his commissions. IBC defended against that counterclaim on the theory that commissions were not owed unless Dee was still at the company at the end of the year and that Dee's voluntary departure in February 1995 therefore prevented him from earning any 1995 commissions.

IBC, Conference Holdings and Dee reached a settlement in principle on all claims and counterclaims sometime in early 1996. The final settlement agreement was executed by all parties in September 1996.

Meanwhile, back in May 1996, Conference Holdings had terminated Dee's employment. [FN1] In December 1997, Dee filed the present action against Conference Holdings alleging that Conference Holdings failed to pay him the full commissions owed to him and that his termination was in bad faith to deprive him of said commissions. Conference Holdings, represented by KC & S, filed an answer denying that any commissions were owed. Conference Holdings also filed a counterclaim against Dee alleging that 1) Dee had misrepresented his 1994 earnings when negotiating his compensation package and 2) Dee had engaged in inappropriate conduct with female employees at Conference Holdings that "exposed [Conference Holdings] to potential sexual harassment claims."

FN1. The termination appears unrelated to the settlement of the IBC suit.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d                                                                                                    Page 2
Not Reported in N.E.2d, 1998 WL 1247926 (Mass.Super.)
**(Cite as: 1998 WL 1247926 (Mass.Super.))**

Discussion

*2 "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation." S.J.C. Rule 3:07, 1.9(a) ("Rule 1.9(a)"). Dee contends that the present action and counterclaims are "substantially related" to the former IBC suit and counterclaims and that Rule 1.9(a) therefore precludes KC & S from representing Conference Holdings in this action. Conference Holdings contends that the two matters are not "substantially related." [FN2]

>   FN2. There is no dispute that KC & S previously represented Dee, that KC & S is representing a client with interests "materially adverse" to Dee in this matter, and that Dee has not consented to that representation. Thus, the only aspect of Rule 1.9(a) as to which the parties disagree is whether the two matters are "substantially related."

Courts using the "substantially related" test have taken differing approaches in its application, with some courts focusing on whether the issues involved are similar and other courts focusing on whether there is factual overlap between the two matters. Massachusetts has not yet determined which approach it will take. See *Adoption of Erica,* 426 Mass. 55, 62 (1997), and cases cited therein. Dee argues that the issues in the two matters are similar, as they both involve the subject of commissions and compensation. KC & S argues that the facts are not similar, because the cases involve different employers and different employment agreements. Without resolving the precise formulation of the test for "substantially related matter," the court is satisfied that Dee's claim against Conference Holdings for unpaid commissions is not "substantially related" to his earlier counterclaim against IBC for unpaid commissions but that Conference Holdings' counterclaim against Dee is "substantially related" to Dee's earlier counterclaim against IBC.

The problem addressed by Rule 1.9(a) is that an attorney representing a party adverse to his former client would be tempted to betray confidences of that former client in order to serve the interests of the current client. "[T]he later suit, simply because of its substantial relation to the former one, exposes the attorney to an intolerably strong temptation to breach his duty of confidence to the former client." *Bays v. Theran,* 418 Mass. 685, 691 (1994), quoting Note, Developments in the Law: Conflicts of Interest in the Legal Profession, 94 Harv.L.Rev. 1244, 1318 (1981). Rather than force the former client to identify specific confidential information that might be used against him, **"the 'substantial relationship' test operates by assuming that confidences were transmitted in the former attorney-client relationship."** *Bays,* 418 Mass. at 691.

Where the primary purpose of the "substantially related" test is to preserve client confidences by avoiding an "intolerably strong temptation" to betray them, the assessment of whether matters are "substantially related" must focus on whether the overlap or similarity between the two matters would potentially give rise to such a "temptation." Labeling a similarity as a similarity of "issues" as opposed to a similarity of "facts" is not particularly helpful in that analysis. Rather, the court should focus on whether the relationship between the two matters is such that it is reasonable to assume that confidential information would have been given to the attorney in the first matter that would be helpful to the adverse client in the second matter. Where there is a likelihood that the attorney possesses useful information from that former client, the temptation to make use of that useful information arises. If the similarity between the matters is such that it would potentially give rise to such a temptation, the matters should be viewed as "substantially related."

*3 The defense of Conference Holdings in this case would not, by itself, pose that risk. Whatever information Dee provided to KC & S with regard to his claim for commissions from IBC, that information has absolutely no bearing on his claim to commissions from a different employer, under a different employment agreement, and for different work. Indeed, Dee's dispute with IBC about his commissions hinged on a contract interpretation issue in the wake of his voluntary departure (i.e., whether he was only to receive commissions if he were still there at the end of the year or whether he was entitled to commissions for only a partial year's work). His later commission agreement with Conference Holdings is entirely different, and his theory in the present case is that he was wrongfully terminated by Conference Holdings to avoid payment of those commissions. Nothing that Dee may have told KC & S about his contract with and voluntary departure from IBC would be useful to Conference Holdings in defense of Dee's present claim for commissions. [FN3] That both cases concern the subject of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d                                                                                                      Page 3
Not Reported in N.E.2d, 1998 WL 1247926 (Mass.Super.)
**(Cite as: 1998 WL 1247926 (Mass.Super.))**

"commissions" does not raise any temptation for KC & S to use information provided by Dee during the prior representation.

> FN3. Dee argues that the former representation would give KC & S insight into Dee's personality, general objectives, personal background, etc. that might be of some overall strategic benefit to Conference Holdings. However, despite the fact that any former representation of a client gives an attorney those sorts of general insights about the client, Rule 1.9(a) does not preclude an attorney from ever representing any party adverse to a former client. It only precludes representation in "substantially related" matters.

However, Conference Holdings' counterclaim would potentially pose such a temptation. Conference Holdings alleges that, while negotiating his compensation terms with Conference Holdings, Dee misrepresented the amount of his 1994 compensation from IBC. Specifically, Conference Holdings points to a January 11, 1995 memo from a placement firm, which stated that Dee had a base salary of $45,000 plus bonus, "which last year [1994] brought him to $65,000- $70,000." Although Conference Holdings points out that the contract interpretation issue involved in Dee's counterclaim against IBC for his 1995 commissions was not based on his prior earnings history at IBC, information about his prior earnings was clearly given to KC & S. A history of Dee's commissions in prior years, plus some information about how they had been calculated, was recited in Dee's counterclaim against IBC as drafted by KC & S. That history may ultimately have been irrelevant once the basis of IBC's defense was announced, but it was important enough at the outset to have Dee give KC & S some detailed background on the subject.

Despite this overlap between the present counterclaim for misrepresentation and the earnings history Dee previously confided in KC & S for purposes of his counterclaim against IBC, KC & S argues that there is in fact no risk of any betrayal of client confidences. At the time KC & S represented Dee, it represented him jointly with Conference Holdings. The attorney-client privilege does not apply to disputes between joint clients. See *Beacon Oil Co. v. Perelis*, 263 Mass. 288, 293 (1928); Liacos, *Handbook of Massachusetts Evidence,* § 13.4.7 at 733 (1994 ed.). In the earlier joint representation, KC & S was free to share with Conference Holdings whatever information Dee provided, and free to share with Dee whatever information Conference Holdings provided. There is no confidential information from Dee for KC & S to betray, as the information was never intended to be kept confidential from Conference Holdings.

*4 Viewed solely as a matter of preserving client confidences, there would be no problem in KC & S' representation of Conference Holdings on this counterclaim. However, Rule 1.9(a) does not make any exception or carve out a different test in cases where joint clients later become adversaries. The factual basis for Conference Holdings' misrepresentation counterclaim overlaps with the factual background recited in Dee's earlier counterclaim against IBC. Thus, the present counterclaim is "substantially related" to the earlier counterclaim, and Rule 1.9(a) precludes KC & S from representing Conference holdings on the misrepresentation counterclaim. That disqualification is not necessary to serve the principal purpose underlying Rule 1.9(a) does not allow this court to rewrite Rule 1.9(a).

Accordingly, KC & S may not represent Conference Holdings in the present matter, as Conference Holdings' counterclaim against Dee is "substantially related" to Dee's prior counterclaim against IBC within the meaning of Rule 1.9(a). [FN4]

> FN4. Where only the misrepresentation counterclaim is "substantially related" to the prior matter, KC & S could continue to represent Conference Holdings if Conference Holdings voluntarily dismissed that counterclaim. Absent that counterclaim, there would be no violation of Rule 1.9(a).

ORDER

For the foregoing reasons, plaintiff's motion to disqualify defendant's attorney is ALLOWED.

Not Reported in N.E.2d, 1998 WL 1247926 (Mass.Super.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.