UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

GE HFS HOLDINGS, INC.,
*formerly known as*
HELLER HEALTHCARE FINANCE, INC.,

    Plaintiff,

and

MICHAEL INGOLDSBY,

    Intervenor Plaintiff,

v.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA. and
INTERNATIONAL INSURANCE GROUP, LTD.,

    Defendants.

**Civil Action No. 05-11128-NG**

### DEFENDANT NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER

Pursuant to Federal Rule of Civil Procedure 26(c), Defendant National Union Fire Insurance Company of Pittsburgh, PA. ("NUFIC") hereby submits this memorandum in support of its Motion for Protective Order providing that further discovery be stayed until after the Court's ruling on that portion of NUFIC's Motion for Summary Judgment against Intervenor-Plaintiff Michael Ingoldsby ("Ingoldsby") that deals with Ingoldsby's failure to schedule his claim for coverage as an asset of his bankruptcy estate.

There is no dispute that Ingoldsby failed to schedule his claim against NUFIC as an asset of his bankruptcy estate. Those schedules are part of the public record and were submitted by NUFIC in support of its Motion for Summary Judgment. It is now a question of law as to whether Ingoldsby is judicially estopped from asserting those claims. NUFIC, and the other

parties, should not be subject to costly discovery when the case may well be resolved on this purely legal issue without the need for further discovery.

## I.     FACTUAL BACKGROUND

### A.     The Undisputed Facts Concerning the Bankruptcy Estoppel Argument

The instant action was commenced by Heller, as the assignee of Pamela Jones ("Jones") and Indy Edwards ("Edwards"). Ingoldsby was allowed to intervene and brought claims against NUFIC for the alleged wrongful denial of insurance coverage under a Directors and Officers Insurance and Company Reimbursement Policy issued by NUFIC (the "Policy"). NUFIC had issued the Policy to Managed Health Care Systems, Inc. ("MHCS") effective August 4, 2001 to August 4, 2002. Ingoldsby, who was the Chairman of the Board of MHCS, was an Insured under the Policy. Ingoldsby sought coverage under the Policy for a lawsuit brought by Heller Healthcare Finance, Inc. ("Heller"), which arose out of a $3,000,000 Revolving Credit Loan (the "Loan") provided to MHCS by Heller.

Under the terms of the Loan, MHCS was obligated to "keep accurate and complete records of its accounts and all payments and collection thereon, and [to] submit to Lender on such periodic basis as Lender will request a sales and collections report ..." The Loan Agreement further required that MHCS, Ingoldsby, Jones, and Edwards prepare Borrowing Base Certificates that accurately represented the eligible Medicaid, Medicare, and other receivables of MHCS. Heller claims to have loaned money to MHCS under the Loan based on the level of receivables MHCS reported to Heller on the periodic Borrowing Base Certificates.

On August 1, 2002, Heller sued Ingoldsby, Jones and Edwards, claiming that MHCS had failed to accurately track and report to Heller MHCS' Medicare receivables, resulting in a decision by Heller to loan MHCS approximately $400,000 more under the Loan than it would

have advanced had the figures been correct. Heller asserted two counts against Ingoldsby: the first for negligent misrepresentation, alleging that Ingoldsby supplied false information to Heller regarding the borrowing base of the eligible accounts and receivables of MHCS, and the second for Ingoldsby's alleged breach of his guaranty. Ingoldsby provided NUFIC with notice of the suit. By letters dated October 11, 2002 and March 6, 2003, NUFIC, denied coverage for the litigation and associated defense costs on account of the Policy's contractual liability exclusion.

On December 13, 2002, Ingoldsby filed for bankruptcy under Chapter 7 of Title 11 of the United States Code in the United States Bankruptcy Court for the Middle District of Florida. On January 2, 2003, Ingoldsby filed his Schedules and his Statement of Financial Affairs as required by 11 U.S.C. § 521. Although Ingoldsby stated in his Statement of Financial Affairs that he was a defendant in the Heller Litigation, he did not disclose his claims against NUFIC on Schedule B, under which Ingoldsby was required to list "[o]ther contingent and unliquidated claims of every nature." Instead, he reported "None." On April 18, 2003, Ingoldsby gave notice of filing the original signature of his schedules and Statement of Financial Affairs, and again failed to disclose any claim against NUFIC. On May 5, 2004, Ingoldsby was issued a discharge from bankruptcy.[1]

As undisputable evidence that Ingoldsby failed to schedule his coverage claims against NUFIC as an asset of his bankruptcy estate, NUFIC filed an Affidavit of Counsel in Support of its Motion for Summary Judgment ("Aff."), which included certified copies of the Schedules and Statement of Financial Affairs submitted by Ingoldsby to the U.S. Bankruptcy Court for the Middle District of Florida (Aff., at ¶3, Ex. B), a certified copy of Ingoldsby's Notice of Filing Schedules and Statement of Financial Affairs with Original Signatures filed with the U.S.

---

[1] The court papers supporting these undisputed assertions were previously filed in connection with NUFIC's Motion for Summary Judgment.

Bankruptcy Court for the Middle District of Florida (Aff., at ¶4, Ex. C), and a certified copy of the Discharge of Debtor Ingoldsby issued by the U.S. Bankruptcy Court for the Middle District of Florida (Aff., at ¶5, Ex. D). NUFIC also attached as Exhibit 2 to its Statement of Undisputed Facts a copy of Ingoldsby's Response to NUFIC's Request for Admissions ("Ingoldsby's Response"), which acknowledge that Ingoldsby failed to schedule the claims against NUFIC as an asset of his bankruptcy estate. (Ingoldsby's Responses at Nos. 34-36 & 38).

### B. Ingoldsby's Refusal to Stay Additional Discovery Pending a Ruling on NUFIC's Judicial Estoppel Argument.

On June 27, 2006, NUFIC filed its Motion for Summary Judgment against Ingoldsby. NUFIC argued first that Ingoldsby was judicially estopped from bringing his claims against NUFIC and alternatively that summary judgment should be granted based on the Policy's contract exclusion. The latter argument, unlike the judicial estoppel argument, applied equally to Heller.

During the same period, Rule 30(b)(6) depositions were noticed separately by both Heller and Ingoldsby. Because the Motion for Summary Judgment would not resolve the claims brought by Heller, NUFIC had no choice but to proceed with those depositions. The two Rule 30(b)(6) deposition notices covered many of the same topics and involved a tremendous amount of overlap. Moreover, the designated witnesses were all located in New York City and would have to travel to Boston for the depositions. To preserve valuable resources, NUFIC sought agreement between Heller and Ingoldsby to proceed with those depositions jointly. Both Heller and Ingoldsby eventually agreed to review the topics to be covered by each Rule 30(b)(6) deposition and to determine whether there was significant overlap that would merit a joint deposition.

On or about August 23, 2006, NUFIC agreed to consent to a briefing schedule for the Motion for Summary Judgment against Ingoldsby that gave Ingoldsby until October 15, 2006 to file its Opposition. The Joint Motion for Continuance signed by counsel for both Ingoldsby and NUFIC and filed on August 23, 2006 acknowledged that additional discovery was necessary and that the parties would agree to a date for the Rule 30(b)(6) deposition in September. Shortly after that motion was signed, however, a settlement in principle was reach with defendant Heller.

On August 29, 2006, counsel for Heller and NUFIC filed a Joint Status Report upon which they informed the Court that the two parties had reached an agreement in principle upon which to settle their dispute. Ingoldsby was not a party to that agreement. The agreement, however, made it possible for the first time that the case might be fully resolved solely by the judicial estoppel argument that is unique to Ingoldsby.

On August 31, 2006, immediately after Heller and NUFIC reported their settlement, Ingoldsby Re-Noticed the Rule 30(b)(6) Deposition of NUFIC for September 14, 2006. In response to that notice, NUFIC's counsel contacted counsel for Ingoldsby by voice-mail and email asking that the parties agree to go forward with summary judgment on the portion of the NUFIC's Motion for Summary Judgment that deals with the judicial estoppel issue. NUFIC pointed out that the judicial estoppel issue is a question of pure law and requested, therefore, that the parties agree to postpone any further discovery, which could only relate to the contract exclusion argument. NUFIC's counsel pointed out that if the Court disposes of the case under the judicial estoppel argument, then both parties would save money on needless discovery. Naturally, NUFIC's counsel indicated that the parties would need to agree on a time for Ingoldsby to file his opposition papers on the judicial estoppel issue. Ingoldsby, however,

refused to agree to this approach and has indicated that he intends to go forward with the depositions.

## II. ARGUMENT

A district court has broad discretion to decide when a protective order is appropriate and what degree of protection is required. See Poliquin v. Garden Way, Inc., 989 F.2d 527, 532 (1st Cir. 1993). A protective order may issue after a showing that good cause exists for the protection sought. See Public Citizens v. Liggett Group, Inc., 858 F.2d 775, 789 (1st Cir. 1988), cert. denied, 488 U.S. 1030 (1989).

Good cause clearly exists for the issuance of the requested protective order. If the Court agrees that Ingoldsby is judicially estopped from bringing his claim against NUFIC, that should be the end of this action. NUFIC, therefore, should not be subject to costly discovery that may prove completely unnecessary should the Court accept NUFIC's judicial estoppel argument.

As noted above, there can be no dispute that Ingoldsby failed to schedule his claims against NUFIC as an asset of the bankruptcy estate. NUFIC has identified and produced to this Court certified copies of the schedules filed by Ingoldsby with the Bankruptcy Court and a certified copy of the Discharge of Debtor Ingoldsby issued by the Bankruptcy Court. Moreover, Ingoldsby himself has admitted in his Responses to Requests for Admissions that he failed to schedule his claims against NUFIC as an asset of his bankruptcy estate. Based on these undisputed facts, Ingoldsby is judicially estopped from asserting his claims against NUFIC. See Payless Wholesale Distrib., Inc. v. Alberto Culver (P.R.), Inc., 989 F.2d 570 (1st Cir. 1993) (where debtor obtained Chapter 11 relief based on representation that it had no monetary claims other than those listed on petition, debtor judicially estopped from subsequently asserting pre-petition claims); Howell v. Town of Leyden, 335 F.Supp.2d 248 (D. Mass. 2004) (debtors who

declared in their bankruptcy petition that they were party to no suit and had no claims among their assets judicially estopped from later asserting contrary position).

Because Heller has already agreed to a settlement in principal, a decision in NUFIC's favor on this issue should resolve the case altogether, without the need for discovery.[2] If the Court disposes of the case on the judicial estoppel issue, all parties will save considerable resources by not engaging in discovery that in all likelihood will turn out to be unnecessary.

Preparing for and defending the Rule 30(b)(6) deposition alone will take a tremendous amount of time and money. In his Re-Notice of Deposition, Ingoldsby lists thirteen different topics, not including sub-topics, that he wishes to cover during the deposition. These topics concern every aspect of the origin, drafting, construction, negotiation, interpretation, application and/or modification of the Policy. Ingoldsby also plans to seek a vast array of information concerning NUFIC's corporate and claims handling procedures, as well as information concerning policies that are not at issue in this case. Not one of these topics bears any relevance to the judicial estoppel issue. The list of topics in the Re-Notice, therefore, illustrates just how time consuming and, most likely, wasteful the preparation and defense of the Rule 30(b)(6) depositions will be, when this case can and should be resolved against Ingoldsby as a matter of law pursuant to NUFIC's judicial estoppel argument.

There is no legitimate reason why Plaintiff Ingoldsby cannot agree to stay discovery until after the purely legal issue of judicial estoppel is decided by this Court. If the Court disposes of the case based on that issue, then both Ingoldsby and NUFIC will have saved resources by not having to prepare for and participate in needless discovery.

---

[2] The Joint Motion for Continuance, which discussed the need for discovery, was filed when there were still pending claims by Heller. Heller was not susceptible to the judicial estoppel argument and at that time NUFIC was going to have to address the contract exclusion argument anyway.

### III. CONCLUSION

For the foregoing reasons, this Court should grant NUFIC's motion in its entirety.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA

By its attorneys,

Dated: September 11th, 2006

/s/ Joey H. Lee
John D. Hughes (BBO# 243660)
John J. Tumilty (BBO# 560017)
Joey H. Lee (BBO# 663803)
EDWARDS ANGELL PALMER
 & DODGE LLP
111 Huntington Avenue
Boston, MA 02199
Tel: (617) 439-4444
Fax: (617) 439-4170

### CERTIFICATE OF SERVICE

I, Joey H. Lee, hereby certify that on this 11th day of September, 2006, that Defendant National Union Fire Insurance Company of Pittsburgh, PA.'s Memorandum of Law in Support of its Motion for a Protective Order, which was electronically filed through the ECF system, will be sent electronically to all attorneys of record for Plaintiffs GE HFS Holdings, Inc., f/k/a Heller Healthcare Finance, Inc. and Michael Ingoldsby on September 11, 2006.

/s/ Joey H. Lee
Joey H. Lee