UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

GE HFS HOLDINGS, INC.
*Formerly known as*
HELLER HEALTHCARE FINANCE, INC.,
    Plaintiff,

and

MICHAEL INGOLDSBY,

    Intervenor/Plaintiff,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and INTERNATIONAL INSURANCE GROUP, LTD.,

    Defendants.

CIVIL ACTION No: 05-CV-11128-NG

**PLAINTIFF-INTERVENOR MICHAEL INGOLDSBY'S MEMORANDUM OF REASONS IN OPPOSITION TO NATIONAL UNION FIRE INSURANCE COMPANY 'S MOTION FOR PROTECTIVE ORDER AND IN SUPPORT OF MOTION TO COMPEL**

### INTRODUCTION

The Defendant National Union Fire Insurance Company of Pittsburgh, PA ("National Union")has repeatedly thwarted the Plaintiff-Intervenor's attempts to conduct the Rule 30(b)(6) Deposition of Defendant National Union (the "deposition").  Now National Union is attempting to use the jurisdiction of the Court to further avoid the deposition and force the Plaintiff-Intervenor to oppose summary judgment without the opportunity to fully conduct discovery.

In addition, the Defendant also appears to suggest that the Court will likely dispose of the case on the issue of judicial estoppel. However, contrary to the assertions of National Union, several issues of material fact exist relating to Mr. Ingoldsby's nondisclosure of his claim in bankruptcy, thereby preventing the Court from granting summary judgment on the judicial estoppel issue. In light of the above circumstances, the Defendants' Motion for Protective Order should be denied and the Plaintiff-Intervenor's Cross-Motion to Compel granted.

## PROCEDURAL HISTORY

The Plaintiff-Intervenor Michael Ingoldsby ("Ingoldsby" or "Plaintiff-Intervenor") originally noticed the Rule 30(b)(6) Deposition of National Union Fire Insurance Company of Pittsburgh, PA ("National Union") for April 25, 2006. *See* Affidavit of Gregory J. Aceto, Esq. ("Aceto Affidavit"), ¶ 3 and *Exhibit 1* attached thereto. On or about April 20, 2006, counsel for Ingoldsby received email correspondence from counsel for National Union requesting that the Rule 30(b)(6) Deposition of National Union be postponed pending mediation, which was then scheduled for May 4, 2006. *See* Aceto Affidavit, ¶ 4 and *Exhibit 2* attached thereto. Pursuant to counsel for National Union's request and counsel's representations that National Union hoped to successfully mediate this case, counsel for Ingoldsby agreed to postpone the above-referenced deposition and subsequently re-noticed it for May 18, 2006. *See* Aceto Affidavit, ¶ 5.

Thereafter, on or about May 11, 2006, counsel for Ingoldsby received email correspondence from counsel for National Union requesting that he again continue the Rule 30(b)(6) Deposition of National Union (the "deposition") pending mediation re-

scheduled for May 19, 2006. Counsel for National Union again represented that it was hopeful that the case would settle at mediation and, based on these representations with regard to settlement, counsel for Ingoldsby agreed to postpone the deposition until June 8, 2006. *See* Aceto Affidavit, ¶ 6-11. Although a mediation in this matter was held on May 19, 2006, the case was not resolved at mediation. *See* Aceto Affidavit, ¶ 10. In addition, although the deposition was rescheduled for June 8, 2006, counsel for Ingoldsby was forced to continue it when a trial in another matter proceeded longer than anticipated. *See* Aceto Affidavit, ¶ 11.

On or about June 27, 2006, National Union filed its Motion for Summary Judgment Against Intervenor-Plaintiff Michael Ingoldsby. *See* Aceto Affidavit, ¶ 12. On or about July 13, 2006, the Plaintiff-Intervenor filed an Assented to Request for Continuance of Fire Insurance Company of Pittsburgh, PA's Motion for Summary Judgment. Therein, the parties set forth an agreed to briefing schedule with regard to the Motion for Summary Judgment. Pursuant to the agreement of the parties, the deadline for opposing summary judgment was extended to September 1, 2006 and the deposition was to take place no less than two (2) weeks prior thereto. The Court (Gertner, J.) allowed the above-referenced motion and adopted the briefing schedule set forth therein. *See* Aceto Affidavit, ¶ 13-15.

In correspondence, dated August 2, 2006, counsel for National Union provided counsel for the Plaintiff-Intervenor with a list of the individuals whom National Union had designated to testify regarding each topic identified on the Notice of Deposition. Counsel for National Union, however, refused to provide dates on which these

individuals would be available to testify. *See* Aceto Affidavit, ¶ 16-17 and *Exhibit 3* attached thereto.

In light of the foregoing, National Union agreed to further extend the time for filing Ingoldsby's opposition to summary judgment and drafted a motion for continuance. *See* Aceto Affidavit, ¶ 18 and *Exhibit 4* attached thereto. On or about August 23, 2006, National Union filed a Joint Motion for Extension of Time to File Response/Reply to Defendant's Motion for Summary Judgment Against Plaintiff-Intervenor, requesting that the response deadline be extended to October 15, 2006, in light of the fact that the deposition had still not been scheduled. The Court (Dein, J.) subsequently granted the above-referenced motion. *See* Aceto Affidavit, ¶ 19-20.

Despite the fact that counsel for National Union agreed that the Rule 30(b)(6) Deposition of National Union would take place prior to the Plaintiff-Intervenor's filing of his Opposition to Summary Judgment, National Union is now seeking a protective order. In doing so, National Union has again sought to delay discovery. Further, National Union has breached the agreement reached by the parties, and adopted by the Court, with regard to the deposition and the briefing schedule for the Motion for Summary Judgment. *See* Aceto Affidavit, ¶ 21-23.

Further discovery is vital to the Plaintiff-Intervenor's Opposition to Summary Judgment. In particular, the Plaintiff-Intervenor wishes to question representatives of National Union with regard to the following issues: (1) National Union's decision to deny the Claim and the basis on which National Union determined that there was no coverage; (2) the timing of the National Union's denial of coverage; (3) ambiguities in the Policy, including National Union's rationale for including in any Directors and Officers

Insurance and Company Reimbursement Policy an exclusion, such as Exclusion 4(h), as amended by Endorsement No. 8, which purportedly excludes coverage for contractual liability of the insured company or any insured; (4) Representations made by National Union to Ingoldsby, MHCS and/or IIG regarding the differences between Policy 416-16-30 and Policy 873-87-52; (5) the negotiations concerning the Policies, including, but not limited to, any representations made by National Union to IIG, Ingoldsby and/or MHCS concerning the benefits, advantages, conditions, and terms of the Policies and negotiation, interpretation, application and/or modification of any exclusion relied upon by National Union to deny the Claim. Specifically, the timing of National Union's denial of coverage has bearing on the judicial estoppel issue. *See* Aceto Affidavit, ¶ 24-26. In light of the foregoing, the deposition will undoubtedly influence the outcome of the pending summary judgment motion. *See* Aceto Affidavit, ¶ 27. Moreover, the Plaintiff-Intervenor has not been able to discover this information previously, despite the Plaintiff-Intervenor's best efforts to schedule and reschedule the deposition. *See* Aceto Affidavit, ¶ 28.

Prior to September 5, 2006, counsel for National Union and counsel for Ingoldsby had never discussed bifurcating the issues set forth in National Union's Motion for Summary Judgment. As such, to force the Plaintiff-Intervenor to do so now would be highly prejudicial. *See* Aceto Affidavit, ¶ 29-30. In addition, contrary to the assertions of National Union, judicial estoppel is not purely a question of law. Rather, several issues of material fact exist relating to Mr. Ingoldsby's nondisclosure of his claim in bankruptcy. Specifically, a factual dispute exists with regard to whether Mr. Ingoldsby's claim and resulting damages against National Union arose post-petition and, therefore,

need not have been disclosed to the bankruptcy court. Also, a factual issue exists as to whether the claim is an asset that must be designated on a debtor's schedules. In addition, a factual dispute exists related to the intent of the Plaintiff-Intervenor in not disclosing the claim. Specifically, the Plaintiff-Intervenor's nondisclosure was pursuant to the advice of his bankruptcy counsel and with the knowledge of the bankruptcy trustee. *See* Aceto Affidavit, ¶ 31-34.

In light of the foregoing, this Court will likely not dispose of this case on the issue of judicial estoppel. Therefore, it will, in fact, be more time-efficient for both the Court and the parties to allow the Plaintiff-Intervenor to conduct the Rule 30(b)(6) Deposition of National Union and prepare one opposition to summary judgment and conduct one hearing related to same. *See* Aceto Affidavit, ¶ 35-36.

**FACTUAL BACKGROUND**

On or about December 5, 2005, Ingoldsby intervened and filed a civil action for declaratory judgment, pursuant to 28 U.S.C. § 2201, breach of contract, fraud, and violations of Mass. Gen. Laws ch. 93A, arising from a dispute concerning defense obligations under a directors & officers liability insurance policy issued by National Union Fire Insurance Company of Pittsburgh, PA to Michael Ingoldsby.

*The Heller Action and National Union's Denial of Coverage*

At all times material hereto, the Plaintiff-Intervenor was insured for liability under a policy of insurance issued by National Union to Managed Health Care Systems, Inc., being policy number 873-87-52, effective August 4, 2001, through August 4, 2002 (hereinafter referred to as the "Policy"). *See* Affidavit of Michael Ingoldsby ("Ingoldsby Affidavit"), ¶ 6. On or about August 1, 2002, Heller commenced

a civil action in United States District Court for the District of Massachusetts, Civil Action No. 02CV11553 NG (the "Heller Action") against the Plaintiff-Intervenor Michael Ingoldsby, in which it alleged a claim for Negligent Misrepresentation (Count I) and claim for Breach of Guaranty (Count II) against Michael Ingoldsby. *See* Ingoldsby Affidavit, ¶ 12-13.

On or about August 2, 2002, the Heller Complaint was forwarded to the Defendant, National Union. On or about October 11, 2002, National Union, through counsel, "declined coverage for the *Heller Action* allegations against Michael Ingoldsby, Mary Lee Ingoldsby, and Indy Edwards." *See* Ingoldsby Affidavit, ¶ 14-15. Thereafter, by letter, dated March 6, 2003, counsel for National Union again declined coverage by stating that "there [was] no coverage available under the policy for the claims asserted in the *Heller* action against Michael O. Ingoldsby." Specifically, National Union stated that under Exclusion 4(h), as amended by Endorsement No. 8, it was "not liable to make any payment for loss in connection with any claim or claims made against the Directors or Officers" because the claims allege, arise out of and are based upon the contractual liability of MHCS under the [Debtor-in-Possession Loan and Security Agreement] ("DIP") Agreement. *See* Ingoldsby Affidavit, ¶ 17.

By way of letter from counsel, dated March 17, 2004, Michael Ingoldsby made a formal demand to National Union under Mass. Gen. Laws Ch. 93A. National Union again declined coverage by way of letter from counsel, dated April 16, 2004, and, in doing so, again relied upon Exclusion 4(h), as amended by Endorsement No. 8. *See* Ingoldsby Affidavit, ¶ 18.

*Ingoldsby's Bankruptcy*

On or about December 13, 2002, the Plaintiff-Intervenor to filed a petition for relief pursuant to Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court, Middle District of Florida, Tampa Division, case number 02-24824-8C7. National Union was not a creditor in the Bankruptcy. On or about January 2, 2003, Ingoldsby filed his Schedules and Statement of Financial Affairs. *See* Ingoldsby Affidavit, ¶ 21-23. In his Statement of Financial Affairs, Ingoldsby disclosed that he was a defendant in the Heller Action but did not disclose a potential claim against National Union. However, at that time, he had not contemplated a claim for reimbursement and/or indemnification against National Union because he had not yet incurred any significant legal fees or suffered any other damages. Therefore, there was no reason for him to list any claim against National Union on his Schedules and Statement of Financial Affairs. *See* Ingoldsby Affidavit, ¶ 24-25.

On or about April 18, 2003, Ingoldsby filed an Amended Schedule and Statement of Affairs. At this time, however, he was still not aware of any potential claim against National Union. On or about July 13, 2003, Heller was granted relief from automatic stay in the Ingoldsby bankruptcy case. As such, the case began to proceed and Ingoldsby began to accumulate legal fees related thereto. *See* Ingoldsby Affidavit, ¶ 26-28. As set forth herein, on or about March 17, 2004, Ingoldsby made a formal demand upon National Union for reimbursement of his defense costs in the Heller Action. On or about April 16, 2004, National Union, via counsel, responded to the formal demand letter and again denied coverage. *See* Ingoldsby Affidavit, ¶ 31-32.

Once it became clear that National Union was not going to reimburse his defense costs related to the Heller Action, the Bankruptcy trustee was notified that there was a

8

potential claim against Nation Union related thereto. Mr. Ingoldsby also discussed the potential claim against National Union with his bankruptcy counsel who advised him that he need not amend his Statement of Financial Affairs to reflect a potential claim for post-petition expenses. As such, Ingoldsby did not omit any claim against National Union from his Statement of Financial Affairs with the intention of defrauding the court or his creditors. *See* Ingoldsby Affidavit, ¶ 31-33.

*Ingoldsby's Damages*

As a result of the failure of Defendant National Union to fulfill its obligations as set forth above related to the coverage afforded by the Policy, Michael Ingoldsby has suffered substantial damages. In litigating the claims asserted by Heller over a two-year period, the Plaintiff-Intervenor expended a substantial amount of money in attorneys' fees and costs. Specifically, Mr. Ingoldsby's incurred legal fees related to the Heller Action in the amount of Nineteen Thousand Three Hundred Ninety Six Dollars and 24/100 ($19,396.24). In addition, pursuant to the Settlement Agreement with Heller, the Plaintiff-Intervenor submitted payment to Heller in the amount of One Hundred Twelve Thousand Seven Hundred Sixty Three Dollars and 71/100 ($112,763.71). *See* Ingoldsby Affidavit, ¶ 34.

The Plaintiff-Intervenor subsequently expended Two Hundred Fifty Thousand Dollars ($250,000.00) to settle the bankruptcy case and expended an additional One Hundred Thousand Seven Hundred Twenty One Dollars ($100,721.00) in legal fees. In order to cover the costs of the bankruptcy settlement, the Plaintiff-Intervenor was forced to sell his residence in Osprey, Florida, for below market price, resulting in a total loss of Five Hundred Thirty Six Thousand Six Hundred Eighty Eight Dollars ($536,688.00).

The Plaintiff-Intervenor was also forced to refinance the mortgage on his residence located in Hingham, Massachusetts, increasing his indebtedness by Two Hundred Fifty Thousand Dollars ($250,000.00). *See* Ingoldsby Affidavit, ¶ 35-36.

## LEGAL ARGUMENT

I.  **The Court should deny the Defendant's Motion because the Defendants have failed to meet the burden imposed by Fed.R.Civ.P. Rule 26(c) and have frivolously brought this motion in an attempt to again delay the Rule 30(b)(6) deposition of National Union.**

Under Rule 26(c) of the Federal Rules of Civil Procedure, "for good cause shown", a party may seek a protective order "which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense". The movant must file a timely motion for a protective order pursuant to Rule 26(c), accompanied by a certification that the movant has "in good faith conferred or attempted to confer with other affected parties". In order to establish that "good cause" exists, the party seeking protection bears the burden of showing that a specific harm will result if a protective order is not granted. "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Beckman Industries, Inc. v. International Insurance Company*, 966 F.2d 470, 476 (9th Cir. 1992) citing *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3rd Cir. 1986). "Rule 26(c) places the burden of persuasion on the party seeking the protective order. To overcome the presumption, the party seeking the protective order must show good cause by demonstrating a particular need for protection." *Id.*

In the instant matter, National Union argues that good cause exists since a favorable ruling on its judicial estoppel claim will render the National Union deposition unnecessary. Therefore, National Union is basically forcing both the Plaintiff-Intervenor

and the Court to address the issue of judicial estoppel now, rather than at summary judgment. In addition, it is attempting to force the Plaintiff-Intervenor to oppose summary judgment without the opportunity to fully conduct discovery. As previously stated herein, the timing of National Union's denial of coverage, among other issues, is relevant to the judicial estoppel issue. *See* Aceto Affidavit, ¶ 24-26. In light of the foregoing, the deposition may influence the outcome of the pending summary judgment motion. *See* Aceto Affidavit, ¶ 27.

Further, National Union's showing of good cause is entirely contingent on its over-stated belief that it will succeed at summary judgment. In fact, it would be more time-efficient and cost-effective for the Court to allow the Plaintiff-Intervenor to conduct the Rule 30(b)(6) Deposition of National Union and prepare one opposition to summary judgment and conduct one hearing related to summary judgment arguments. *See* Aceto Affidavit, ¶ 35-36.

National Union also argues that now that it has reached a settlement in principal with GE HFS Holdings, INC., *formerly known as* Heller Healthcare Finance, Inc. ("Heller"), and the cost and burden of preparing for and attending the deposition is too great. However, National Union has been attempting to avoid the deposition for over five (5) months. *See* Aceto Affidavit, ¶ 13-20. Moreover, National Union's settlement with another party should have no bearing on the Plaintiff-Intervenor's right to conduct its own discovery.

Finally, National Union has not demonstrated good cause, but rather has only demonstrated that it will go to great lengths to delay discovery in this matter. Further, given the fact that National Union has breached the agreement reached by the parties, and

adopted by the Court, with regard to the deposition and the briefing schedule for the Motion for Summary Judgment, it should not be awarded the protection of a stay of discovery.

II.  **The Court should deny the Defendant's Motion because genuine issues of material fact exist relating to Michael Ingoldsby's nondisclosure of his potential claim against National Union and, therefore, National Union will likely not prevail on the judicial estoppel argument.**

The Plaintiff-Intervenor does not dispute that he did not list a claim against National Union on his Schedules and Statement of Financial Affairs filed with the U.S. Bankruptcy Court for the Middle District of Florida. However, this nondisclosure does not bar this suit under the doctrine of judicial estoppel. Specifically, issues of material facts exist related to whether the Plaintiff-Intervenor was required to disclose a potential claim of reimbursement and indemnification against National Union. Further, should the court determine that such a duty existed, issues of material fact also exist related to the Plaintiff-Intervenor's motivation for not disclosing a claim against National Union. In light of the foregoing, it is highly unlikely that the Court will dispose of this case at the summary judgment stage.

   A.  **The Plaintiff-Intervenor's damages arose post-petition and, therefore, his claim need not have been disclosed to the bankruptcy court.**

As a general rule, a debtor's claims that have accrued as of the date that the bankruptcy case commences become part of the bankruptcy estate. *Graupner v. Brookfield*, 2006 WL 2455812, *5 (D.Mass 2006), *citing* 11 U.S.C. § 541(a)(1). In addition, the debtor is responsible for disclosing all assets to the bankruptcy court, including all contingent claims. *Id.*, *citing* 11 U.S.C. § 521(a)(1).

The damages which Ingoldsby has alleged in the instant matter occurred post-petition and, therefore, are not part of the bankruptcy estate. *See* Aceto Affidavit, ¶ 34-36.  Also, Mr. Ingoldsby did not list a claim against National Union in his Statement of Financial Affairs because, at that time, no such claim existed.  *See* Ingoldsby Affidavit, ¶ 24-25.  It was not until Heller was granted relief from automatic stay in the Ingoldsby bankruptcy case and the Heller Action began to proceed that Ingoldsby began to accumulate any substantial legal fees related thereto.  *See* Ingoldsby Affidavit, ¶ 26-28.  Specifically, it was not until March 17, 2004 that Ingoldsby made a formal demand upon National Union for reimbursement of his defense costs in the Heller Action.  In light of the foregoing, the Plaintiff-Intervenor did not breach any duty of disclosure to the bankruptcy court by not scheduling his potential claim of indemnification against National Union and should not be estopped from pursuing it now.

**B.      The application of judicial estoppel is not appropriate in this case because the Plaintiff-Intervenor did not mislead the bankruptcy court or secure an unfair advantage by not disclosing his claim against National Union.**

"Judicial estoppel is an equitable doctrine that precludes a party from asserting a position in one legal proceeding that is contrary to a position it had previously asserted in another proceeding." *Otis v. Arbella Mut. Ins. Co.,* 443 Mass. 634, 639-40 (2005), quoting *Blanchette v. School Comm. of Westwood,* 427 Mass. 176, 184 (1998). Several factors typically inform the decision whether to apply the doctrine of judicial estoppel in a particular case: whether the party's later position is "clearly inconsistent" with its earlier position, whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled,

and whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *New Hampshire v. Maine*, 532 U.S. 742 (2001).

With regard to the first element, although the Plaintiff-Intervenor did not schedule his potential claim against National Union, he did disclose that he was a defendant in the Heller Action. As such, the fact that he is now seeking reimbursement of his legal fees related to the Heller Action is not "clearly inconsistent" or "directly contrary" with his earlier position. The fact that he incurred damages on a post-petition basis for which he now seeks damages is in no way inconsistent with his filing of schedules in the bankruptcy court. Given the deficiency in the first element, the inquiry could end here. However, an analysis of the additional elements further illustrates that judicial estoppel is inappropriate in this case.

With regard to the second element, the Massachusetts Supreme Judicial Court, in *East Cambridge Sav. Bank v. Wheeler,* 664 N.E.2d 446, 448 (1996), recognized judicial estoppel is only applicable "where the party to be estopped had been successful in its first assertion of its inconsistent position." The Court further reasoned that: "We decline to identify a <u>settlement</u> [in a prior bankruptcy court proceeding] <u>as representing success</u> for the purposes of judicial estoppel. *Id.* In this case, all of the major claims in the Ingoldsby bankruptcy were disputed and ultimately "settled" and, therefore, the Plaintiff-Intervenor cannot be deemed to have been "successful" in asserting an inconsistent position. Further, allowing the Plaintiff-Intervenor to seek reimbursement of his defense costs in the Heller Action will not suggest that the bankruptcy court was "misled" in any way.

14

Most importantly, with regard to the third element, the non-disclosure of the indemnity claim would not allow Ingoldsby to obtain an "unfair advantage" against National Union since National Union was not a creditor in the bankruptcy case and, thus, its position was not altered by the bankruptcy filings.

Finally, the Defendant National Union's reliance on *Payless Wholesale Distrib., Inc. v. Alberto Culver (P.R.), Inc.*, 989 F.2d 570, 571 (1st Cir. 1993) is entirely misplaced. In *Payless,* a Chapter 11 case, the plaintiff/former debtor had filed for bankruptcy, obtained a discharge of its debts, and then filed a lawsuit seeking damages for defendants' wrongful business practices which allegedly caused its bankruptcy. *Id.* Noting that Payless had not referenced the claims in its bankruptcy filings, the First Circuit applied the doctrine of judicial estoppel to bar Payless' claims. The present matter, however, can be distinguished from *Payless.* First, in *Payless,* the debtor's failure to disclose assets deprived creditors of their proper share of assets of the estate and would have been a windfall to the plaintiff had the court allowed the litigation to proceed. *Id.* In this case, the creditors' claims were settled. Mr. Ingoldsby will not receive a windfall if he succeeds in this litigation, but rather will essentially be reimbursed the money he was forced to spend in his defense of the Heller Action, the bankruptcy and his suit against National Union, most, if not all, of which was post-petition date expenses. Conversely, National Union would receive the large windfall if the case was dismissed. Finally, *Payless* is also distinguishable because it involved undisclosed claims against one of the major creditors in the plaintiff's bankruptcy case which is not the case in the instant matter. National Union was not listed as a debtor or creditor in the Ingoldsby

bankruptcy. More to the point, National Union did not have any claims against Ingoldsby and, thus, could not have been harmed by any alleged non-disclosure.

### C. Judicial estoppel is not applicable because the Plaintiff-Intervenor did not attempt to intentionally manipulate the legal system.

Application of judicial estoppel is a matter of the court's discretion, and its purpose "is to prevent the manipulation of the judicial process by litigants." *Id.* at 640, quoting *Canavan's Case,* 432 Mass. 304, 308 (2000). The primary discretionary factor considered by the Court is the intent or motive of the litigant. *Cordeiro v. O'Connor*, 2006 WL 696560 (Mass.Super. 2006). Because the primary purpose of judicial estoppel is to protect the integrity of the court and to prevent a litigant from "playing fast and loose with the courts," the court will often look to see if the litigant is intentionally trying to manipulate the judicial system. *Otis v. Arbella Mut. Ins. Co.,* 443 Mass. 634, 642, quoting *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.,* 374 F.3d 23, 33 (1st Cir.2004); see also *Patriot Cinemas, Inc. v. General Cinema Corp.,* 834 F.2d 208, 212 (1st Cir. 1987). As such, courts have held that the doctrine should only be applied where a party has adopted one position, secured a favorable decision, and then taken a contradictory position <u>in search of legal advantage</u>. *InterGen N.V. v. Grina,* 344 F.3d 134, 144 (1st Cir. 2003) (emphasis added). As such, the doctrine should not be applied "where the party's prior position was asserted in good faith, and where the circumstances provide a legitimate reason--other than sheer tactical gain--for the subsequent change in that party's position." *Otis v. Arbella Mut. Ins. Co.,* 443 Mass. 634 at 642. Further, it may be appropriate to resist application of judicial estoppel when a party's prior position was

based on inadvertence or mistake. *New Hampshire v. Maine*, 532 U.S. 742, 753 (2001); *see also Barger v. City of Cartersville*, 348 F 2d 1289 ((11th Cir. 2003).

In the present matter, the Plaintiff-Intervenor's nondisclosure of his claim against National Union was proper in motive. The fact that the trustee knew of the potential claim, and that his bankruptcy counsel advised him that he did not need to include his potential claim against National Union illustrate Mr. Ingoldsby's good faith with respect to this issue. *See* Ingoldsby Affidavit, ¶ 31-33. Further, it also shows that Mr. Ingoldsby's nondisclosure of the claim was based on a good faith belief based on advice of counsel and not an intentional manipulation of the judicial system. In any event, Mr. Ingoldsby's nondisclosure of the claim was certainly not a fraud on the court or a "cat and mouse tactic" as alleged in National Union's Motion for Summary Judgment.

**D.    Should the Court estop the Plaintiff-Intervenor from pursuing his claim, National Union will receive a windfall by avoiding all liability for its wrongful denial of coverage.**

Even where courts have found that a party did indeed mislead the court by failing to disclose a claim in bankruptcy, courts are reluctant to impose the doctrine of judicial estoppel because it is such a severe remedy. *Graupner v. Brookfield*, 2006 WL 2455812, *9 (D.Mass 2006). Moreover, courts are particularly reluctant to dismiss a claim on judicial estoppel grounds where to do so would create a potential windfall for the defendant or allow it to avoid liability for its wrongdoing altogether. *Id.* Furthermore, courts have also found that dismissal of the claims, at least in theory, may be unfair to the debtor's creditors, who should have an appropriate opportunity to apply any proceeds of those claims to satisfy debts. *Id.*

Here, even if the Court determines that Ingoldsby did mislead the bankruptcy court, it should still not impose judicial estoppel because dismissal of Ingoldsby's claims will certainly lead to a windfall for National Union. Specifically, the application of judicial estoppel would allow National Union to escape all liability for its wrongful denial of insurance coverage.

In light of the foregoing, it is very unlikely that the Court will dispose of this matter on the basis of judicial estoppel. Further, to force the Plaintiff-Intervenor to proceed solely on the issue of judicial estoppel without the opportunity to conduct the deposition which National Union has been aggressively "avoiding" for over five (5) months would be both inequitable and prejudicial.

**WHEREFORE**, the Plaintiff-Intervenor respectfully requests that this Honorable Court deny the Defendant's Motion for a Protective Order, allow his Cross-Motion to Compel Discovery and award all fees and expenses incurred by Plaintiff-Intervenor under Fed.R.Civ.P. 37(a)(4).

> Respectfully submitted,
> MICHAEL INGOLDSBY,
> By his attorney,
>
> /s/ Gregory J. Aceto, Esq.
> Gregory J. Aceto, Esq.
> BBO No. 558556
> JOHNSON & ACETO, LLP
> 67 Batterymarch Street, Suite 400
> Boston, MA 02110
> (617) 728-0888

Dated: September 21, 2006