UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GE HFS HOLDINGS, INC., f/k/a HELLER HEALTHCARE FINANCE, INC., <br><br> Plaintiff, <br><br> And <br><br> MICHAEL INGOLDSBY, <br><br> Intervenor/Plaintiff, <br><br> v. <br><br> NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., and INTERNATIONAL INSURANCE GROUP, LTD., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )  Civil Action No. 05-CV-11128-NG |

**STATEMENT OF UNDISPUTED MATERIAL FACTS SUBMITTED BY
DEFENDANT NATIONAL UNION FIRE INSURANCE COMPANY OF
PITTSBURGH, PA. IN SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT AGAINST INTERVENOR-PLAINTIFF MICHAEL INGOLDSBY**

Pursuant to Local Rule 56.1 of the United States District Court for the District of

Massachusetts, Defendant National Union Fire Insurance Company of Pittsburgh, PA ("National

Union") submits the following Statement of Undisputed Material Facts in Support of its Motion

for Summary Judgment Against Intervenor-Plaintiff Michael Ingoldsby ("Mr. Ingoldsby").

**I.    The Parties**

1.    Mr. Ingoldsby is an individual who resides at 1863 San Silvestro Drive, Venice,

Florida. (Mr. Ingoldsby's First Amended Complaint in Intervention ("Compl.") at ¶ 1).

2.      Defendant National Union is an insurance company with its principal place of business at 175 Water Street, New York, New York. (Id. at ¶ 2). National Union is licensed to provide insurance in Massachusetts. (Id.).

## II.      Undisputed Material Facts

### The D&O Insurance Policy

3.      Managed Health Care Systems, Inc. ("MHCS") was, at all times relevant hereto, a Massachusetts corporation with its principal place of business in Hingham, Massachusetts. (Id. at ¶ 1).

4.      MHCS was a provider of health care services to Medicare beneficiaries in Massachusetts' South Shore and Cape Cod areas. Complaint in Heller Healthcare Finance, Inc. v. Michael Lee Ingoldsby, Pamela Jones and Indy Edwards, C.A. No. 02-11553-NG ("Heller Lit. Compl.") at ¶ 9, attached to Affidavit of Counsel in Support of National Union's Motion for Summary Judgment ("Aff.") at ¶ 6 and Ex. E).

5.      Mr. Ingoldsby was, at all times relevant hereto, the Chairman of the Board of MHCS. (Compl. at ¶ 1).

6.      National Union issued to MHCS a Director and Officers Insurance Policy bearing a policy number 473-16-30, effective August 4, 2000 to August 4, 2001 (the "Prior Policy"). (Aff. at ¶ 11 and Ex. J). The Prior Policy excluded coverage for any claim:

> alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of the Company or any other Insured under any express contract or agreement . . .

(Id.).

7.      Mr. Ingoldsby received a copy of the Prior Policy, including the contractual liability exclusion. (Id.)

BOS_542087_4.DOC

8.      On or about February 23, 2001, MHCS filed a voluntary petition for relief under

Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the

District of Massachusetts.  (Aff. at ¶ 7 and Ex. F).

9.      National Union issued to MHCS a Directors & Officers Insurance Policy bearing

a policy number 873-87-52, effective August 4, 2001 to August 4, 2002 (the "Policy").  (Aff. at ¶

7 and Ex. F, at No. 1).  The Policy excluded coverage for any claim:

> alleging, arising out of, based upon or attributable to any actual or alleged
> contractual liability of the Company or an Insured under any express (written or
> oral) contract or agreement . . .

(Aff. at ¶ 2 and Ex. A (under "For-Profit Health Care Organization Amendatory

Endorsement," § II)).

10.     Mr. Ingoldsby received a draft copy of the Policy, including the

contractual liability exclusion.  (Aff. at ¶ 12 and Ex. K).

11.     MHCS was informed of the Policy's contractual liability exclusion by

means of a fax communication to MHCS Vice President of Finance and Chief Financial

Officer Pamela Jones ("Ms. Jones") from Nicholas Sciotto of International Insurance

Group, Ltd. ("IIG"), MHCS' insurance broker, dated July 31, 2001.  (Aff. at ¶ 2 and Ex.

A).

12.     In that fax communication, IIG forwarded to MHCS National Union's

proposed terms for the Policy, including the explicit language of the contractual liability

exclusion.  (Id.).

13.     The Policy, under which Mr. Ingoldsby was insured, was subsequently

issued to MHCS by National Union.  (Compl. at ¶ 6; Plaintiff-Intervenor Michael

BOS_542087_4.DOC

Ingoldsby's Responses to Defendant National Union's First Request for Admissions

("Mr. Ingoldsby's Admissions") at No. 1, Aff. at ¶ 7 and Ex. F).

### MHCS Borrows from Heller

14.    Heller Healthcare Finance, Inc. ("Heller") was a pre-petition lender to MHCS on

a number of loans, including one pursuant to a Loan and Security Agreement dated August 4,

2000, which secured a Revolving Credit Note in the maximum amount of $3,000,000. (Heller

Lit. Compl. at ¶ 17, Aff. at ¶ 6 and Ex. E).

15.    Post-petition, on February 28, 2001, Heller, as lender, and MHCS entered into a

$3,000,000 Revolving Credit Loan (the "DIP Loan"), which refinanced the pre-petition

Revolving Credit Note. (Id. at ¶ 18).   The DIP Loan was evidenced by a Debtor-in-Possession

Loan and Security Agreement (the "DIP Loan Agreement"). (Id.).

16.    Heller alleged that Mr. Ingoldsby personally guaranteed the obligations of MHCS

under the DIP Loan Agreement. (Id. at ¶ 19).

17.    The DIP Loan Agreement obligated MHCS to "keep accurate and complete

records of its accounts and all payments and collections thereon, and [to] submit to Lender on

such periodic basis as Lender will request a sales and collections report . . . ." (Id. at ¶ 22).

18.    The DIP Loan Agreement also obligated MHCS, Mr. Ingoldsby, Ms. Jones, and

MHCS President and Chief Operating Officer Indy Edwards ("Ms. Edwards") to prepare

Borrowing Base Certificates that represented the eligible Medicaid, Medicare and other

receivables of MHCS. (Id. at ¶ 23).

19.    Heller loaned money to MHCS under the DIP Loan based upon the level of

receivables MHCS reported to Heller on the periodic Borrowing Base Certificates. (Id. at ¶ 25).

BOS_542087_4.DOC

20.    The Borrowing Base Certificates specified that they were "given to the Lender [Heller] in order to induce the Lender … to make an advance to the Borrower in the principle [sic] amount of … pursuant to the terms and conditions of the Loan Agreement." (Aff. at ¶ 10 and Ex. I).

21.    According to Heller, the Borrowing Base Certificates were "supplied to Heller with the intent, knowledge, and expectation that Heller would rely on the level of eligible receivable collateral reported therein in determining whether, and to what extent, Heller would re-advance the collections it received back to MHCS[.]" (Heller Lit. Compl. at ¶ 25, Aff. at ¶ 6 and Ex. E).

22.    Heller also stated that it "reasonably relied on the accuracy of the Borrowing Base Certificates submitted by MHCS in connection with the DIP Loan[.]" (Id. at ¶ 28).

23.    Heller also has asserted that MHCS owed duties to prepare any Borrowing Base Certificates submitted by MHCS in a manner that currently reported its Medicare receivables, since such receivables formed the basis of funding provided under the DIP Loan. (Id. at ¶ 23).

### Heller Sues Mr. Ingoldsby

24.    Heller claimed that, in January of 2002, it discovered through an audit of MHCS' financial statements and bankruptcy filings that MHCS had failed to accurately track and report to Heller MHCS' Medicare receivables. (Id. at ¶ 42). Heller alleged that these errors resulted in an overstatement of MHCS' eligible receivables against which Heller loaned monies to MHCS under the DIP Loan Agreement. (Id. at ¶¶ 37, 42). Heller further alleged that, on account of the overstatements, it loaned MHCS approximately $400,000 more under the DIP Loan than it would have advanced had the accounts receivable in the Borrowing Base Certificates been

BOS_542087_4.DOC

properly stated. (Id. at ¶ 37). Moreover, Heller alleged that MHCS was indebted to it under the DIP Loan in the amount of $1,330,243.07. (Id. at ¶ 50).

25.    After Heller claimed to have realized the full extent of MHCS' overstatements and misstatements with respect to its accounts receivable, MHCS converted its bankruptcy reorganization to a Chapter 7 liquidation proceeding on March 20, 2002. (Id. at ¶¶ 48, 53).

26.    On March 25, 2002, Heller and MHCS entered into a settlement agreement (Aff. at ¶ 9 and Ex. H) (the "Settlement Agreement"), which was approved by the bankruptcy court on March 27, 2002. (Aff. at ¶ 8 and Ex. G). The Settlement Agreement contained the following provision:

> Heller further, at the Effective Time [i.e., entry of the Bankruptcy Court order approving the Settlement Agreement] hereby releases any claims it may have arising on or before the date hereof against the Debtors' [Managed Health Care Systems, Inc., and Medical Temporaries, Inc.] professionals, agents and employees provided, however, that this release from Heller does not include and *Heller does not waive or release either the Debtors or any officer, director, employee or agent of either Debtor from any legal or equitable claims Heller may have or from any damages suffered by Heller arising from the default under the DIP Loan Agreement* which created the over-advance of approximately $405,000, which was referred to in Heller's Notice of Event of Default.

(Aff. at ¶ 9 and Ex. H) (Emphasis added).

27.    Heller then brought suit against Mr. Ingoldsby, Ms. Jones and Ms. Edwards on August 1, 2002. (Compl. at ¶ 20).

28.    Heller asserted two claims against Mr. Ingoldsby: the first for negligent misrepresentation, alleging that Mr. Ingoldsby supplied false information to Heller regarding the borrowing base of the eligible accounts and receivables of MHCS; the second breach for guaranty, alleging that Mr. Ingoldsby personally guaranteed the DIP Loan and was therefore directly liable for all monies due to Heller pursuant to the DIP Loan Agreement. (Heller Lit. Compl. at ¶¶ 54-59, Aff. at ¶ 6 and Ex. E).

29.     Mr. Ingoldsby provided National Union with notice of the suit. (Compl. at ¶ 21).

30.     Through letters dated October 11, 2002 and March 6, 2003, National Union denied coverage for Heller's claims against Mr. Ingoldsby based upon the Policy's contractual liability exclusion. (Id. at ¶¶ 23-25).

31.     After National Union denied coverage for Heller's claims against Mr. Ingoldsby, he provided his own defense in the Heller Litigation. (Id. at ¶¶ 35-36).

## Mr. Ingoldsby Declares Bankruptcy

32.     Mr. Ingoldsby filed for bankruptcy under Chapter 7 in the United States Bankruptcy Court for the Middle District of Florida on December 13, 2002. (Mr. Ingoldsby's Response at No. 34, Aff. ¶ 7 and Ex. F).

33.     Mr. Ingoldsby claims that one of the reasons he filed for bankruptcy was his inability to pay the legal fees he was incurring and expected to incur in connection with the Heller Litigation. (Excerpts of Deposition Testimony of Mr. Ingoldsby ("Ingoldsby Depo."), p. 40, l. 17 – p. 41, l. 18, Aff. at ¶ 14 and Ex. M). Mr. Ingoldsby was aware at the time he filed for bankruptcy that National Union had denied coverage for those fees under the Policy. (Ingoldsby Depo., p. 57, l. 7 – p. 59, l. 16, Aff. at ¶ 14 and Ex. M).

34.     On January 2, 2003, Mr. Ingoldsby filed his bankruptcy Schedules and his Statement of Financial Affairs as required by 11 U.S.C. § 521. (Mr. Ingoldsby's Admissions at No. 35, Aff. at ¶ 7 and Ex. F; Aff. at ¶ 3 and Ex. B).

35.     Mr. Ingoldsby stated under oath in his bankruptcy Statement of Financial Affairs that he was a defendant in the Heller Litigation. (Mr. Ingoldsby's Admissions at No. 36, Aff. at ¶ 7 and Ex. F; Aff. at ¶ 3 and Ex. B). Where Ingoldsby was required to disclose in his Schedule B any "[i]nterests in insurance policies," however, he only listed a Unum Provident Disability

Policy, not the National Union Policy. (Mr. Ingoldsby's Admissions at No. 37, Aff. at ¶ 7 and

Ex. F; Aff. at ¶ 3 and Ex. B). Furthermore, where Mr. Ingoldsby was required to disclose in his

Schedule B any "[o]ther contingent and unliquidated claims of every nature," which would have

included any claims against National Union, Mr. Ingoldsby stated "None." (Mr. Ingoldsby's

Admissions at No. 38, Aff. at ¶ 7 and Ex. F; Aff. at ¶ 3 and Ex. B).

36.    At the time he filed his bankruptcy Statement of Financial Affairs, Mr. Ingoldsby

was aware that he had incurred and would likely be further incurring legal fees in connection

with the Heller Litigation, and that National Union had denied coverage for those legal fees

under the Policy. (Ingoldsby Depo., p. 40, l. 17 – p. 41, l. 19, p. 57, l. 7 – p. 59, l. 16, Aff. at ¶ 14

and Ex. M). Indeed, Mr. Ingoldsby listed his attorney in the Heller Litigation as a creditor. (Aff.

at ¶ 3 and Ex. B). As of December 4, 2002 Ingoldsby owed his attorney in the Heller Litigation

at least $5,022.91. (Johnson & Aceto, LLP A/R Transaction Listing ("Heller Fees Listing"), Aff.

at ¶ 13 and Ex. L).

37.    On April 18, 2003, Mr. Ingoldsby gave notice of filing the original signatures of

his Amended Schedules and Statement of Financial Affairs. (Aff. at ¶ 4 and Ex. C). At that

time, Mr. Ingoldsby failed to amend his disclosures to disclose his interest in the National Union

policy or his claims against National Union. (Id.). Therefore, despite still listing his attorney for

the Heller Litigation as a creditor, Mr. Ingoldsby's representations to the bankruptcy court

remained that (a) his only "[i]nterest[] in insurance policies" was in a Unum Provident Disability

Policy, not the National Union Policy, (Mr. Ingoldsby's Admissions at No. 37, Aff. at ¶ 7 and

Ex. F; Aff. at ¶ 3 and Ex. B); and (b) that he had no "[o]ther contingent and unliquidated claims

of [any] nature." (Mr. Ingoldsby's Admissions at No. 38, Aff. at ¶ 7 and Ex. F; Aff. at ¶ 3 and

Ex. B).

BOS_542087_4.DOC

38.    By this point, Mr. Ingoldsby owed his attorney in the Heller Litigation approximately $14,000 in legal fees, as to which he knew National Union had denied coverage. (Heller Fees Listing, Aff. at ¶ 13 and Ex. L; Ingoldsby Depo., p. 57, l. 7 – p. 59, l. 16, Aff. at ¶ 14 and Ex. M).

39.    On May 5, 2004, Mr. Ingoldsby was issued a discharge in bankruptcy. (Aff. at ¶ 5 and Ex. D).

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA

By its attorneys,

Dated: November 9, 2006

/s/ Joey H. Lee
John D. Hughes (BBO# 243660)
Joey H. Lee (BBO# 663803)
EDWARDS ANGELL PALMER
    & DODGE LLP
111 Huntington Avenue
Boston, MA 02199
Tel: (617) 239-0100
Fax: (617) 227-4420

## CERTIFICATE OF SERVICE

I, Joey H. Lee, hereby certify that on this 9th day of November, 2006, I served a copy of the foregoing Statement of Undisputed Facts via ECF on Gregory J. Aceto, Johnson & Aceto, P.C., 67 Batterymarch Street, Suite 400, Boston, MA 02110 and Richard E. Heiftez, Tucker, Heifetz & Saltzman, LLP, Three School Street, Boston, MA 02108.

/s/ Joey H. Lee
Joey H. Lee

BOS_542087_4.DOC