UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| GE HFS HOLDINGS, INC., f/k/a HELLER HEALTHCARE FINANCE, INC., | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| And | ) | |
| | ) | |
| MICHAEL INGOLDSBY, | ) | |
| | ) | |
| Intervenor/Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-CV-11128-NG |
| | ) | |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and INTERNATIONAL INSURANCE GROUP, LTD., | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**AFFIDAVIT OF COUNSEL IN SUPPORT OF DEFENDANT NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.'S MOTION FOR SUMMARY JUDGMENT AGAINST INTERVENOR-PLAINTIFF MICHAEL INGOLDSBY**

I, Joey H. Lee, on oath, depose and state in fact:

1.     I am an attorney at the law firm of Edwards Angell Palmer & Dodge LLP and represent Defendant National Union Fire Insurance Company of Pittsburgh, PA ("National Union") in the above-captioned action. I submit this Affidavit in support of National Union's Motion for Summary Judgment Against Intervenor-Plaintiff Michael Ingoldsby ("Mr. Ingoldsby") under Rule 56 of the Federal Rules of Civil Procedure. I have personal knowledge of the facts stated herein and would so testify if called upon to give testimony in this action.

2.     Attached to this Affidavit as <u>Exhibit A</u> is a true and correct copy of a fax communication from Nicholas Sciotto of Defendant International Insurance Group, Ltd. ("IIG")

to Pamela Jones of Managed Health Care Systems, Inc. ("MHCS"), dated July 31, 2001, produced by defendant International Insurance Group, Ltd ("IIG") in this case.

      3.      Attached to this Affidavit as <u>Exhibit B</u> are certified copies of the Schedules and Statement of Financial Affairs submitted by Ingoldsby to the U.S. Bankruptcy Court for the Middle District of Florida.

      4.      Attached to this Affidavit as <u>Exhibit C</u> is a certified copy of Mr. Ingoldsby's Amended Notice of Filing Schedules and Statement of Financial Affairs with Original Signatures filed with the U.S. Bankruptcy Court for the Middle District of Florida.

      5.      Attached to this Affidavit as <u>Exhibit D</u> is a certified copy of the Discharge of Debtor Ingoldsby issued by the U.S. Bankruptcy Court for the Middle District of Florida.

      6.      Attached to this affidavit as <u>Exhibit E</u> is a certified copy of the Complaint in <u>Heller Healthcare Finance, Inc. v. Michael Lee Ingoldsby, Pamela Jones and Indy Edwards</u>, C.A. No. 02-11553-NG.

      7.      Attached to this Affidavit as <u>Exhibit F</u> is true and correct copy of Mr. Ingoldsby's Response to National Union's Request for Admissions.

      8.      Attached to this Affidavit as <u>Exhibit G</u> is a certified copy of the Docket Report for <u>In re: Managed Health Care Services, Inc.</u>, Bankruptcy Petition No. 01-11346, before the U.S. Bankruptcy Court for the District of Massachusetts.

      9.      Attached to this Affidavit as <u>Exhibit H</u> is a certified copy of the Settlement Agreement entered into between Heller Healthcare Finance, Inc. ("Heller"), Managed Health Care Systems, Inc. and Medical Temporaries, Inc. dated March 25, 2002.

      10.      Attached to this Affidavit as <u>Exhibit I</u> is a true and correct copy of a sample Borrowing Base Certificate, dated October 19, 2000, produced by Heller in this case.

BOS_542157_2.DOC

11.    Attached to this Affidavit as <u>Exhibit J</u> is a true and correct copy of excerpts from an insurance policy, Policy No. 473-16-30, produced by Mr. Ingoldsby in this case.

12.    Attached to this Affidavit as <u>Exhibit K</u> is a true and correct copy of excerpts from a draft insurance policy, Policy No. 873-87-52, produced by Mr. Ingoldsby in this case.

13.    Attached to this Affidavit as <u>Exhibit L</u> is a true and correct copy of a Johnson & Aceto, LLP "Transaction Listing" produced by Mr. Ingoldsby in this case.

14.    Attached to this Affidavit as <u>Exhibit M</u> are true and correct copies of excerpts from the draft deposition transcript of Mr. Ingoldsby in this case.

SWORN AND SUBSCRIBED TO UNDER THE PAINS AND PENALTIES OF PERJURY THIS 9th DAY OF NOVEMBER, 2006.

/s/ Joey H. Lee
Joey H. Lee

### CERTIFICATE OF SERVICE

I, Joey H. Lee, hereby certify that on this 9th day of November, 2006, I served a copy of the foregoing Affidavit of Counsel via ECF on Gregory J. Aceto, Johnson & Aceto, P.C., 67 Batterymarch Street, Suite 400, Boston, MA 02110 and Richard E. Heiftez, Tucker, Heifetz & Saltzman, LLP, Three School Street, Boston, MA 02108.

/s/ Joey H. Lee
Joey H. Lee

BOS_542157_2.DOC

EXHIBIT A

## Fax


International
Insurance
Group, Ltd.

125 Broad Street, 4th Fl.
Boston, MA 02110
Tel 617-951-2929 x135
Fax 617-951-2940

| | | |
|---|---|---|
| **To:** | Pam Jones | **From:** Nicholas F. Sousa, ALA, ARM, ACS |
| **Co:** | Managed Health Care Systems | **Pages (incl. Cover = 5)** |
| **Fax:** | 781-740-2203 | **Date:** July 31, 2001 |
| **Re:** | D&O-EPL Renewal | **CC:** |

☐ Urgent    ☒ For Review    ☐ Please Comment    ☐ Please Reply    ☐ Please Recycle

Let me know if you have any questions. Presumably, you will add this premium to the current PAG
Service agreement. We'd possibly have to execute another Brokerage form as we did with the
Package Policy.

| JOB | START TIME | USAGE | PHONE NUMBER/ADDRESS | TYPE | PAGES | MODE | STATUS |
|---|---|---|---|---|---|---|---|
| 409 | 7/31 11:44AM | 2'44" | 17817402203 | SEND | 11/11 | EC144 | COMPLETED |

TOTAL    2'44"    PAGES SENT: 11    PAGES PRINTED: 0

HP LASERJET 3
PRINTER/FAX/C

125 Broad Street, 4ᵗʰ Fl.
Boston; MA 02110
Tel 617-951-3939 x133
Fax 617-951-3940



# Fax

| | | | |
|---|---|---|---|
| **To:** | Pam Jones | **From:** | Nicholas F. Sciotto, AU, ARM, AIS |
| | | | Director of Account Service |
| | Managed Health Care Systems | **Pages:** | Cover + 10 |
| **Fax:** | 781-740-2203 | **Date:** | July 31, 2001 |
| **Re:** | D&O – EPL Renewal | **CC:** | |

☐ **Urgent**    X **For Review**    ☐ **Please Comment**    ☐ **Please Reply**    ☐ **Please Recycle**

Let me know if you have any questions. Presumably, you will add this premium to the current PAC finance agreement. We will probably have to execute another Bankruptcy form as we did with the Package Policy.



July 27, 2001

Nicholas F. Sciotto
International Insurance Group, LTD
125 Broad Street
4th Floor
Boston, MA 02110

RE:  **Managed Health Care Systems**
     **Directors and Officers Liability Insurance including Employment Practices**
     **Liability (EPL)**
     **August 4, 2001**

Dear Nicolas:

On behalf of National Union, a member of the American International Group, Inc., we
are pleased to provide you with a renewal quote for the above captioned account. The
current marketplace for Directors and Officers Liability Insurance is becoming more
restrictive in coverage, pricing and retentions are increasing at renewals as well as for
new business. The healthcare marketplace in particularly is experiencing these "hard"
market trends of volatile premiums and restrictive terms and conditions. It is not
uncommon to see premium increases of 10% for stellar risks, to increases of 50% for
risks with unenviable balance sheets.  This trend follows a decade of decreasing
premiums, lowered retentions, broadening terms and conditions – traits of the "soft"
market. Managed Health Care Systems has filed for Chapter 11 bankruptcy since the last
renewal, as well, the financial condition remains poor, albeit improving slightly.
Through active negotiations with National Union, we were able to obtain a renewal
proposal with a 17% increase, a remarkably reasonable increase given the dynamics since
last renewal.

Additionally, for 2001 AIG has mandated that a revised Health Care Amendatory
endorsement be placed *on all Health Care risks*. We have ensured that there are no
exceptions. This endorsement differs from the expiring endorsement for Managed Health
Care Systems. The new revised endorsement includes an enhancement for IRS Fines and
Penalties coverage. This is in addition to the expiring enhancements such as an amended
Insured Person definition to include Peer Review/Credentialing, independent contractors,
department heads; EMTALA coverage; and Government Funding Defense Costs. The
limitations this endorsement introduces this renewal are: a sub limit on EMTALA
coverage of $150,000; *failure to maintain insurance exclusion; "antitrust, price fixing,
price discrimination, unfair competition, deceptive trade practices and/or monopolies,
including any actions, proceedings, claims or investigations relating thereto"* exclusion;
human clinical trials exclusion; and pre-authorized defense attorneys "panel counsel" for

all claims - last year panel counsel was required for Securities claims only. Finally, there are language changes with the new endorsement, however; the coverage essentially remains the same.

Lastly, at renewal AIG has added a limited private placement coverage endorsement that adds an exclusion for "public or private offering of securities by the Company..." however, the exclusion carves back coverage for private offerings of securities if less than or equal to $15,000,000.

After you have had an opportunity to review, please call with any questions.

Regards,

Thomas J. McGraw

## National Union Renewal Proposal

| | |
|---|---|
| **INSURER:** | National Union Fire Insurance Company of Pittsburgh, PA Admitted Carrier / A++ A.M. Best "Superior" |
| **POLICY FORM:** | Private Edge |
| **COVERAGE:** | Corporate Liability Policy including Directors and Officers Liability Insurance and Employment Practices Liability Coverage |
| **POLICY TERM:** | August 4, 2001 to August 4, 2002 |
| **LIMITS OF LIABILITY[1]:** | $3,000,000 |
| **RETENTIONS:** | $35,000 each Claim for Employment Practices Liability; $150,000 each Claim for Securities Claims (other than Private Placements); $25,000 All other Claims (including Private Placements). |
| **PREMIUM:** | $24,995 |
| **DISCOVERY:** | One year optional discovery period will be available for 75% of the annual premium. |
| **RETROACTIVE DATE:** | Date of Incorporation |

**Endorsements to be added in addition to the base policy:**
1. Outside Entity Coverage;
2. Captive Insurance Company;
3. Commissions Exclusions;
4. Nuclear Energy Liability Exclusion Endorsement (Broad Form);
5. Specific Investigation/Claim/Litigation/Event – same as expiring;
6. Final Determination Wording.

**Endorsement added at renewal:**
1. For-Profit Health Care Organization Extension –2001 Version. This endorsement is mandatory by National Union/AIG on all health care risks. This endorsement replaces the Health Care Extension, Endorsement No. 5 on the expiring program. Please read this endorsement carefully;

---

[1] Limit of Liability applies each Claim or related Claims and in the policy aggregate (inclusive of defense expenses).



2. Auto Private Placement Coverage threshold limited to $15M in proceeds. This endorsement limits Private Placements to $15M for automatic coverage and is included in coverage for no additional premium.

Lastly, no additional limits of liability are available from AIG.

**Subjectivities:**
*The quotation is subject to receipt, review and acceptance prior to binding of the following:*
1. Board of Directors;
2. Most recent audited financials;
3. Confirmation of a business plan in place to maintain operations.



## FOR-PROFIT HEALTH CARE ORGANIZATION
### AMENDATORY ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that this policy is amended as follows:

I.    AMENDMENTS TO DEFINITIONS

A.  The Definition of Individual Insured(s) shall be amended to include the following at the end thereof:

Individual Insureds shall also include any past, present or future member of any duly constituted committee ("Committee Member"); any individual person engaged by a duly constituted committee for purposes of providing an expert opinion with regard to peer review or credentialling decision concerning an individual physician ("Outside Expert"); any individual in charge of any operational department ("Department Head") or any medical director, staff physician or faculty member of the Company, regardless of whether or not such person is directly employed by the Company or is considered to be an independent contractor.

B.  The Definition of Loss shall be amended to include the following at the end thereof:

1. IRS FINES

Loss shall include Defense Costs incurred in connection with a Claim seeking an assessment of taxes, initial taxes, additional taxes, tax deficiencies, excise taxes or penalties pursuant to the following sections of the Internal Revenue Code of 1986 (as amended):

Section 4911 (tax on excess expenditures to influence legislation);
Section 4940 (a);
Section 4941 (taxes on self-dealing);
Section 4942 (taxes on failure to distribute income);
Section 4943 (taxes on excess business holding);
Section 4944 (taxes on investments which jeopardize charitable purpose);
Section 4945 (taxes on taxable expenditures);
Section 6652 (c) (1) (A) and (B) (penalties for failure to file certain information returns or registration statements);
Section 6655 (a) (1) (penalties for failure to pay estimated income tax); and
Section 6656 (a) and (b) (penalties for failure to make deposit of taxes).

2. EMTALA COVERAGE

a. The definition of Claim(s) is amended to include the following:   Claim shall also mean a civil lawsuit alleging a violation pursuant to the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C., 1396dd *et seq.*, and any similar state or local statute (herein "EMTALA Claim(s)").

b. The Definition of Loss is amended to include coverage for civil fines and penalties assessed pursuant to an EMTALA Claim.

c. It is further understood that a sublimit of liability in the amount of $150,000 shall apply to all EMTALA Claims made and reported during the Policy Period or Discovery Period (if applicable) combined (hereinafter "Sublimit of Liability").  This Sub-Limit of Liability shall be part of and not in addition to the aggregate Limit of Liability stated in the Item of the Declarations entitled Limit of Liability.

d. Solely for the purposes of the coverage afforded herein to EMTALA Claims, exclusion (l) is modified by deleting the phrase "alleging, arising out of, based upon or attributable to" and replacing it with the word "for".

3. <u>GOVERNMENTAL FUNDING DEFENSE COST COVERAGE</u>

Loss shall not include the return of funds which were received from any federal, state or local governmental agency and any interest, fines or penalties arising out of the return of such funds; provided, however, that with regard to Claims for Wrongful Acts arising out of the return, or request to return such funds, this policy shall pay Defense Costs up to an amount not to exceed $1,000,000 ("Government Funding Defense Costs Sublimit"). This Sub-Limit of Liability shall be part of and not in addition to the aggregate Limit of Liability stated in the Item of the Declarations entitled Limit of Liability.  With respect to any Defense Costs coverage afforded pursuant to this paragraph 3, it is understood that:  the Insurer shall be liable to pay 50% of such Defense Costs, excess of a retention in the amount of $1,000,000, up to the Government Funding Defense Costs Sublimit, and subject to the Limit of Liability listed on the Declarations Page.  It being a condition of this insurance that the remaining 50% of such Defense Costs shall be carried by the Insureds at their own risk and be uninsured.

It is further understood and agreed that solely with respect to the Governmental Funding Defense Cost coverage provided pursuant to the above paragraph, the No Liability retention waivers located in the section of the policy entitled RETENTION CLAUSE are deleted in their entirety.

C. The Definition of Wrongful Act is amended to include the following at the end thereof:

With respect to all Insureds, any alleged defect in peer review or credentialling.

II.    AMENDMENTS TO EXCLUSIONS

1.  Exclusions 4 (h) is deleted in its entirety and replaced with the following:

    (h) alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of the Company or an Insured under any express (written or oral) contract or agreement (including, but not limited to, any liquidated damages, severance agreement or payment, golden parachute agreement, or any compensation agreement payable upon the termination of any Insured); provided, however, that this exclusion shall not apply to:

        (1) Employment Practices Claims to the extent that any liability does not arise from such express contract or agreement; or

        (2) Claims for Loss alleging Wrongful Acts of an Insured(s) with respect to hospital practice, privileges, credentialling or peer review matters.

2.  The following additional exclusions are added to the end of Clause 4. EXCLUSIONS:

    (r) alleging, arising out of, based upon or attributable to any failure or omission on the part of the Insureds or the Company to effect and maintain insurance;

    (s) alleging, arising out of, based upon or attributable to, or in any way involving, either directly or indirectly, antitrust violations, price fixing, price discriminations, unfair competition, deceptive trade practices and/or monopolies, including any actions, proceedings, claims or investigations related thereto;

    (t) alleging, arising out of, based upon or attributable to the Insureds performance or rendering of or failure to perform or render medical or other professional services or treatments for others; provided, however, that this exclusion shall not apply to:

        (1) Employment Practices Claims;

        (2) Claims for Loss alleging Wrongful Acts of an Insured(s) peer review or credentialling processes;

    (u) alleging, arising out of, based upon or attributable to any Human Clinical Trial. For purposes of this exclusion (u), "Human Clinical Trial" shall mean any study utilizing humans to provide clinical data for the assessment of a medical treatment, procedure or pharmaceutical.

III.    AMENDED CLAUSE 9

Clause 9 is deleted in its entirety and replaced with the following:

9.      PRE-AUTHORIZED DEFENSE ATTORNEYS FOR ALL CLAIMS

This Clause 9 applies to all Claims.

Affixed as Appendix A hereto and made a part of this policy is a list or lists of Panel Counsel law firms ("Panel Counsel Firms") from which a selection of legal counsel shall be made to conduct the defense of all Claims against an Insured pursuant to the terms set forth below.

In the event the Insurer has assumed the defense pursuant to Clause 8 of this policy, then the Insurer shall select a Panel Counsel Firm to defend the Insureds. In the event the Insureds are already defending a Claim, then the Insureds shall select a Panel Counsel Firm to defend the Insureds.

The selection of the Panel Counsel Firm, whether done by the Insurer or the Insureds, shall be from the list of Panel Counsel Firms designated for the type of Claim and be from the jurisdiction in which the Claim is brought. In the event a Claim is brought in a jurisdiction not included on the appropriate list, the selection shall be made from a listed jurisdiction which is the nearest geographic jurisdiction to either where the Claim is maintained or where the corporate headquarters or state of formation of the Named Entity is located. In such instance, however, the Insurer shall, at the written request of the Named Entity, assign a non-Panel Counsel Firm of the Insurer's choice in the jurisdiction in which the Claim is brought to function as "local counsel" on the Claim to assist the Panel Counsel Firm which will function as "lead counsel" in conducting the defense of the Claim.

With the express prior written consent of the Insurer, an Insured may select (in the case of the Insured defending the Claim), or cause the Insurer to select (in the case of the Insurer defending the Claim), a Panel Counsel Firm different from that selected by other Insured defendants if such selection is required due to an actual conflict of interest or is otherwise reasonably justifiable.

The list of Panel Counsel Firms may be amended from time to time by the Insurer. However, no change shall be made to the specific list attached to this policy during the Policy Period without the consent of the Named Entity.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

**EXCLUSION J AMENDED**
**(LIMITED PRIVATE PLACEMENT COVERAGE)**

In consideration of the premium charged herein it is understood and agreed that Clause 4. EXCLUSIONS, is hereby amended by deleting Exclusion (j) in its entirety and replacing it with the following:

(j)     alleging, arising out of, based upon or attributable to any public or private offering of securities by the Company, an Outside Entity or an Affiliate or alleging a purchase or sale of such securities subsequent to such offering;

provided, however, that this exclusion will not apply to:

(1)     any purchase or sale of securities exempted pursuant to section 3(b) of the Securities Act of 1933. Coverage for such purchase or sale transaction shall not be conditioned upon payment of any additional premium; however, the Named Entity shall give the Insurer written notice of any public offering exempted pursuant to section 3(b), together with full particulars and as soon as practicable, but not later than 30 days after the effective date of the public offering;

(2)     to any private offering of securities if such private offering is less than or equal to ░░░░░ in proceeds; coverage for such private offering shall not be conditioned upon payment of any additional premium; however, the Named Entity shall give the Insurer written notice of any such private offering together with full particulars and as soon as practicable, but not later than 30 days after the effective date of such private offering;

(3)     to any offering of securities (other than a public offering described in paragraph (1) above or a private offering described in paragraph (2) above), as well as any purchase or sale of such securities subsequent to such offering; in the event that within 30 days prior to the effective time of such offering: (i) the Named Entity shall give the Insurer written notice of such offering together with full particulars and underwriting information required thereto; and (ii) the Named Entity accepts such terms, conditions and additional premium required by the Insurer for such coverage. Such

coverage is also subject to the Named Entity paying when due any such additional premium.  In the event the Named Entity gives written notice with full particulars and underwriting information pursuant to (i) above, then the Insurer must offer a quote for coverage under this paragraph;

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

EXHIBIT B

# FILED

JAN 0 2 2003

**United States Bankruptcy Court**
*Middle District of Florida*

Clerk U. S. Bankruptcy
Court Tampa, FL

In re   **Michael O. Ingoldsby**

Case No.  02-24824-8C7

Debtor

Chapter                    7

## SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each. Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided. Add the amounts from Schedules A and B to determine the total amount of the debtor's assets. Add the amounts from Schedules D, E, and F to determine the total amount of the debtor's liabilities.

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | AMOUNTS SCHEDULED | | |
|---|---|---|---|---|---|
| | | | ASSETS | LIABILITIES | OTHER |
| A - Real Property | Yes | 1 | 2,140,000.00 | | |
| B - Personal Property | Yes | 3 | 8,371.22 | | |
| C - Property Claimed as Exempt | Yes | 2 | | | |
| D - Creditors Holding Secured Claims | Yes | 1 | | 1,543,874.00 | |
| E - Creditors Holding Unsecured Priority Claims | Yes | 2 | | 1,958.26 | |
| F - Creditors Holding Unsecured Nonpriority Claims | Yes | 3 | | 332,434.04 | |
| G - Executory Contracts and Unexpired Leases | Yes | 1 | | | |
| H - Codebtors | Yes | 1 | | | |
| I - Current Income of Individual Debtor(s) | Yes | 1 | | | 3,365.33 |
| J - Current Expenditures of Individual Debtor(s) | Yes | 1 | | | 13,839.00 |
| Total Number of Sheets of ALL Schedules | | 16 | | | |
| Total Assets | | | 2,148,371.22 | | |
| Total Liabilities | | | | 1,878,266.30 | |

I CERTIFY THE FOREGOING TO BE A TRUE AND CORRECT COPY OF THE ORIGINAL
UNITED STATES BANKRUPTCY COURT

*Walter D. Elmore*
Deputy Clerk

Copyright (c) 1996-2000 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

Best Case Bankruptcy

6

In re    **Michael O. Ingoldsby**                                                    Case No.   **02-24824-8C7**
                                         Debtor

# SCHEDULE A. REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, or both own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. (See Schedule D.) If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim."

If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Market Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| **Single Family Residence**<br><br>**530 East McEwen Drive**<br>**Osprey, Florida 34229**<br>**(Debtor's Homestead)** | **Tenants by the entirety** | **J** | **1,140,000.00** | **1,026,000.00** |
| **Single Family Residence**<br><br>**5 Stagecoach Road**<br>**Hingham, MA 02043**<br>**(Debtor's spouse homestead)** | **Tenants by the entirety** | **J** | **1,000,000.00** | **517,874.00** |

|  |  |  |
|---|---|---|
| Sub-Total > | **2,140,000.00** | (Total of this page) |
| Total > | **2,140,000.00** | |

(Report also on Summary of Schedules)

**0**  continuation sheets attached to the Schedule of Real Property

Copyright (c) 1996-2000 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

Best Case Bankruptcy

In re    **Michael O. Ingoldsby**                                    Case No.    **02-24824-8C7**
_____
                                  _Debtor_

## SCHEDULE B. PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether husband, wife, or both own the property by placing an "H," "W" "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

_Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases._

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property."

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Market Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 1.  Cash on hand | | **On person** | H | 100.00 |
| 2.  Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | **Wachovia** **Palmer Ranch Branch** **8595 South Tamiami Trail** **Sarasota, Florida 34238** **Checking Account number 101005100718** | J | 89.00 |
| 3.  Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4.  Household goods and furnishings, including audio, video, and computer equipment. | | **Please see attachments A & B.** | J | 6,157.00 |
| 5.  Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |
| 6.  Wearing apparel. | | **26 mens pants, 6 mens suits, 6 mens sport coats, 5 mens jackets, 5 mens overcoat, 5 mens hats, 10 mens belts, 11 mens shoes, 24 mens socks, 19 mens underware, 2 mens sweatshirts, 13 mens sweaters, 32 mens shirts, 1 mens winter boots, 2 mens scrafs, 20 mens hanckerchiefs, 5 mens pajamas** | H | 150.00 |
| 7.  Furs and jewelry. | | **Watch, Mens cufflinks, Silver religious medal, gold wedding band** | H | 1,120.00 |
| 8.  Firearms and sports, photographic, and other hobby equipment. | X | | | |

                                                        Sub-Total >          7,616.00
                                                      (Total of this page)

 __2__   continuation sheets attached to the Schedule of Personal Property

Copyright (c) 1996-2000 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                                                 Best Case Bankruptcy

In re    **Michael O. Ingoldsby**                                    Case No.   **02-24824-8C7**
_____
                        Debtor

# SCHEDULE B. PERSONAL PROPERTY
## (Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Market Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 9.  Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | | **Unum Provident Disability Insurance Policy No. LAD180665** | H | **Unknown** |
| 10.  Annuities. Itemize and name each issuer. | X | | | |
| 11.  Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Itemize. | | **Fidelity Investments - I.R.A - Account number 150-127-353** | H | **392.00** |
| 12.  Stock and interests in incorporated and unincorporated businesses. Itemize. | | **Fidelity Investments Account number 50-045-942** | J | **203.22** |
| 13.  Interests in partnerships or joint ventures. Itemize. | X | | | |
| 14.  Government and corporate bonds and other negotiable and nonnegotiable instruments. | X | | | |
| 15.  Accounts receivable. | X | | | |
| 16.  Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 17.  Other liquidated debts owing debtor including tax refunds. Give particulars. | X | | | |
| 18.  Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule of Real Property. | X | | | |
| 19.  Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |

Sub-Total >                 **595.22**
(Total of this page)

Sheet __1__ of __2__  continuation sheets attached
to the Schedule of Personal Property

Copyright (c) 1996-2000 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                    Best Case Bankruptcy

In re   **Michael O. Ingoldsby**                                    Case No.  __02-24324-8C7__
                                          Debtor

## SCHEDULE B. PERSONAL PROPERTY
### (Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Market Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 20. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | X | | | |
| 21. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 22. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 23. Automobiles, trucks, trailers, and other vehicles and accessories. | | 1999 Izuzu Rodeo - Osprey, Florida residence (leased) | H | 0.00 |
| | | 2001 BMW 325i Sport Wagon - Hingham, MA residence (leased) | J | 0.00 |
| 24. Boats, motors, and accessories. | X | | | |
| 25. Aircraft and accessories. | X | | | |
| 26. Office equipment, furnishings, and supplies. | | 2 computers, 2 monitors, 1 fax machine, 1 copier, 1 typewriter | H | 110.00 |
| 27. Machinery, fixtures, equipment, and supplies used in business. | X | | | |
| 28. Inventory. | X | | | |
| 29. Animals. | X | | | |
| 30. Crops - growing or harvested. Give particulars. | X | | | |
| 31. Farming equipment and implements. | X | | | |
| 32. Farm supplies, chemicals, and feed. | X | | | |
| 33. Other personal property of any kind not already listed. | | Powertools, and gardentools | J | 50.00 |

|  |  |
|---|---|
| Sub-Total > (Total of this page) | 160.00 |
| Total > | 8,371.22 |

Sheet __2__ of __2__  continuation sheets attached
to the Schedule of Personal Property

(Report also on Summary of Schedules)

Copyright (c) 1996-2000 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

Best Case Bankruptcy

In re     **Michael O. Ingoldsby**                                    Case No. __02-24824-8C7__
                                          _____
                                          Debtor

## SCHEDULE C. PROPERTY CLAIMED AS EXEMPT

Debtor elects the exemptions to which debtor is entitled under:
[Check one box]
☐ 11 U.S.C. §522(b)(1):   Exemptions provided in 11 U.S.C. §522(d). Note: These exemptions are available only in certain states.
■ 11 U.S.C. §522(b)(2):   Exemptions available under applicable nonbankruptcy federal laws, state or local law where the debtor's domicile has
                          been located for the 180 days immediately preceding the filing of the petition, or for a longer portion of the 180-day
                          period than in any other place, and the debtor's interest as a tenant by the entirety or joint tenant to the extent the interest
                          is exempt from process under applicable nonbankruptcy law.

| Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Market Value of Property Without Deducting Exemption |
|---|---|---|---|
| **Real Property** | | | |
| Single Family Residence | Section 522 (b)(2)(B); (interest as tenant by the entirety) | 114,000.00 | 1,140,000.00 |
| 530 East McEwen Drive Osprey, Florida 34229 (Debtor's homestead) | Art. 10, § 4(a)(1); Fla. Stat. Ann. §§ 222.01, 222.02, 222.05 | 0.00 | |
| Single Family Residence | Section 522(b)(2)(B); (interest as tenant by the entirety) | 482,126.00 | 1,000,000.00 |
| 5 Stagecoah Road Hingham, MA 02043 (Debtor's spouse homestead) | | | |
| **Cash on Hand** | | | |
| On person | Art.10, § 4(a)(2), Fla. Stat. Ann. § 222.061 | 100.00 | 100.00 |
| **Checking, Savings, or Other Financial Accounts, Certificates of Deposit** | | | |
| Wachovia Palmer Ranch Branch 8595 South Tamiami Trail Sarasota, Florida 34238 Checking Account number 101005100718 | Art.10, § 4(a)(2), Fla. Stat. Ann. § 222.061 ; Section 522(b)(2)(B) (interest as tenant by the entirety) | 0.00 | 89.00 |
| **Household Goods and Furnishings** | | | |
| Please see attachments A & B. | Art.10, § 4(a)(2), Fla. Stat. Ann. § 222.061 Section 522(b)(2)(B); (interest as tenant by the entirety) | 6,157.00 | 6,157.00 |
| **Wearing Apparel** | | | |
| 26 mens pants, 6 mens suits, 6 mens sport coats, 6 mens jackets, 5 mens overcoat, 5 mens hats, 10 mens belts, 11 mens shoes, 24 mens socks, 19 mens underware, 2 mens sweatshirts, 13 mens sweaters, 32 mens shirts, 1 mens winter boots, 2 mens scrafs, 20 mens hanckerchiefs, 5 mens pajamas | Art.10, § 4(a)(2), Fla. Stat. Ann. § 222.061 | 150.00 | 150.00 |
| **Furs and Jewelry** | | | |
| Watch, Mens cufflinks, Silver religious medal, gold wedding band | Art.10, § 4(a)(2), Fla. Stat. Ann. § 222.061 | 1,120.00 | 1,120.00 |
| **Interests in Insurance Policies** | | | |
| Unum Provident Disability Insurance Policy No. LAD180665 | Fla. Stat. Ann. § 222.18 | Unknown | Unknown |
| **Interests in IRA, ERISA, Keogh, or Other Pension or Profit Sharing Plans** | | | |
| Fidelity Investments - I.R.A - Account number 150-127-353 | Fla. Stat. Ann. § 222.21(2) | 392.00 | 392.00 |

__1__  continuation sheets attached to Schedule of Property Claimed as Exempt

Copyright (c) 1996-2000 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                                              Best Case Bankruptcy

In re    **Michael O. Ingoldsby**                                          Case No. ___02-24824-8C7___
_____
                              Debtor

## SCHEDULE C. PROPERTY CLAIMED AS EXEMPT
### (Continuation Sheet)

| Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Market Value of Property Without Deducting Exemption |
|---|---|---|---|
| **Stock and Interests in Businesses**<br>**Fidelity Investments**<br>**Account number 50-045-942** | Art.10, § 4(a)(2), Fla. Stat. Ann. § 222.061 ;Section 522(b)(2)(B); (Interest as tenant by the entirety) | 203.22 | 203.22 |
| **Automobiles, Trucks, Trailers, and Other Vehicles**<br>**1999 Izuzu Rodeo - Osprey, Florida residence (leased)** | Fla. Stat. Ann. § 222.25(1) | 0.00 | 0.00 |
| **2001 BMW 325i Sport Wagon - Hingham, MA residence (leased)** | Fla. Stat. Ann. § 222.25(1) | 0.00 | 0.00 |
| **Office Equipment, Furnishings and Supplies**<br>**2 computers, 2 monitors, 1 fax machine, 1 copier, 1 typewriter** | Art.10, § 4(a)(2), Fla. Stat. Ann. § 222.061 | 110.00 | 110.00 |
| **Other Personal Property of Any Kind Not Already Listed**<br>**Powertools, and gardentools** | Art.10, § 4(a)(2), Fla. Stat. Ann. § 222.061 | 50.00 | 50.00 |

Sheet ___1___ of ___1___ continuation sheets attached to the Schedule of Property Claimed as Exempt

In re    **Michael O. Ingoldsby**                                                    Case No. __02-24824-8C7__
                                                    Debtor

## SCHEDULE D. CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and account number, if any, of all entities holding claims secured by property of the debtor as of the date of filing of the petition. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests. List creditors in alphabetical order to the extent practicable. If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

☐ Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS, INCLUDING ZIP CODE | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND MARKET VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION IF ANY |
|---|---|---|---|---|---|---|---|---|---|---|
| | | H | W | J C | | | | | | |
| Account No. | | | | | First Mortgage | | | | | |
| Dovenmuehle Mortgage P.O. Box 591140 Schaumburg, IL 60159-0840 | X | - | | | Single Family Residence  5 Stagecoah Road Hingham, MA 02043 (Debtor's spouse homestead) | | | | | |
| | | | | | Value $       1,000,000.00 | | | | 218,396.73 | 0.00 |
| Account No. 1400011369 | | | | | Second Mortgage | | | | | |
| Horizon Bank 501 John W. Mahar Highway Braintree, MA 02184 | X | - | | | Single Family Residence  5 Stagecoah Road Hingham, MA 02043 (Debtor's spouse homestead) | | | | | |
| | | | | | Value $       1,000,000.00 | | | | 299,477.27 | 0.00 |
| Account No. | | | | | First Mortgage | | | | | |
| Wells Fargo 11601 N. Black Canyon Hwy Phoenix, AZ 85029 | X | - | | | Single Family Residence  530 East McEwen Drive Osprey, Florida 34229 (Debtor's homestead) | | | | | |
| | | | | | Value $       1,140,000.00 | | | | 798,000.00 | 0.00 |
| Account No. | | | | | Second Mortgage | | | | | |
| Wells Fargo 11601 N. Black Caynon Hwy Phoenix, AZ 85029 | X | - | | | Single Family Residence  530 East McEwen Drive Osprey, Florida 34229 (Debtor's homestead) | | | | | |
| | | | | | Value $       1,140,000.00 | | | | 228,000.00 | 0.00 |

__0__   continuation sheets attached

|  | Subtotal (Total of this page) | 1,543,874.00 |
|---|---|---|
|  | Total (Report on Summary of Schedules) | 1,543,874.00 |

In re    **Michael O. Ingoldsby**                                    Case No. __02-24824-8C7__
_____
                            Debtor

# SCHEDULE E. CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

   *A complete list of claims entitled to priority, listed separately by type of priority, is to be set forth on the sheets provided. Only holders of unsecured claims entitled to priority should be listed in this schedule. In the boxes provided on the attached sheets, state the name and mailing address, including zip code, and account number, if any, of all entities holding priority claims against the debtor or the property of the debtor, as of the date of the filing of this petition.*

   *If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."*

   *If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)*

   *Report the total of claims listed on each sheet in the box labeled "Subtotal" on each sheet. Report the total of all claims listed on this Schedule E in the box labeled "Total" on the last sheet of the completed schedule. Repeat this total also on the Summary of Schedules.*

☐ Check this box if debtor has no creditors holding unsecured priority claims to report on this Schedule E.

**TYPES OF PRIORITY CLAIMS** (Check the appropriate box(es) below if claims in that category are listed on the attached sheets.)

☐ **Extensions of credit in an involuntary case**

   Claims arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee or the order for relief. 11 U.S.C. § 507(a)(2).

☐ **Wages, salaries, and commissions**

   Wages, salaries, and commissions, including vacation, severance, and sick leave pay owing to employees and commissions owing to qualifying independent sales representatives up to $4,650* per person earned within 90 days immediately preceding the filing of the original petition, or the cessation of business, which ever occurred first, to the extent provided in 11 U.S.C. § 507 (a)(3).

☐ **Contributions to employee benefit plans**

   Money owed to employee benefit plans for services rendered within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(4).

☐ **Certain farmers and fishermen**

   Claims of certain farmers and fishermen, up to $4,650* per farmer or fisherman, against the debtor, as provided in 11 U.S.C. § 507(a)(5).

☐ **Deposits by individuals**

   Claims of individuals up to $2,100* for deposits for the purchase, lease, or rental of property or services for personal, family, or household use, that were not delivered or provided. 11 U.S.C. § 507(a)(6).

☐ **Alimony, Maintenance, or Support**

   Claims of a spouse, former spouse, or child of the debtor for alimony, maintenance, or support, to the extent provided in 11 U.S.C. § 507(a)(7).

■ **Taxes and Certain Other Debts Owed to Governmental Units**

   Taxes, customs duties, and penalties owing to federal, state, and local governmental units as set forth in 11 U.S.C § 507(a)(8).

☐ **Commitments to Maintain the Capital of an Insured Depository Institution**

   Claims based on commitments to the FDIC, RTC, Director of the Office of Thrift Supervision, Comptroller of the Currency, or Board of Governors of the Federal Reserve System, or their predecessors or successors, to maintain the capital of an insured depository institution. 11 U.S.C. § 507(a)(9).

*Amounts are subject to adjustment on April 1, 2004, and every three years thereafter with respect to cases commenced on or after the date of adjustment.

                            __1__  continuation sheets attached

Copyright (c) 1996-2000 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                    Best Case Bankruptcy

In re    **Michael O. Ingoldsby**                                    Case No.  __02-24824-8C7__
_____
Debtor

## SCHEDULE E. CREDITORS HOLDING UNSECURED PRIORITY CLAIMS
(Continuation Sheet)

Taxes and Certain Other Debts
Owed to Governmental Units

TYPE OF PRIORITY

| CREDITOR'S NAME AND MAILING ADDRESS, INCLUDING ZIP CODE | C O D E B T O R | Husband, Wife, Joint, or Community |  | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | TOTAL AMOUNT OF CLAIM | AMOUNT ENTITLED TO PRIORITY |
|---|---|---|---|---|---|---|---|---|---|
|  |  | H W J C |  |  |  |  |  |  |  |
| Account No. 055180001467 |  |  |  | 12/31/99 |  |  |  |  |  |
| Massachusetts Dept. of Rev. 200 Arlington Street Boston, MA 02205 |  |  |  |  |  |  | X |  |  |
|  |  |  |  |  |  |  |  | 1,958.26 | 1,958.26 |
| Account No. |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |
| Account No. |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |
| Account No |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |
| Account No. |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |

Sheet _1_ of _1_ continuation sheets attached to
Schedule of Creditors Holding Unsecured Priority Claims

Subtotal
(Total of this page)                  1,958.26

Total
(Report on Summary of Schedules)      1,958.26

Copyright (c) 1996-2000 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

Best Case Bankruptcy

In re  **Michael O. Ingoldsby**                                    Case No.  __02-24824-8C7__
_____
                    Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and account number, if any, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

☐ Check this box if debtor has no creditors holding unsecured nonpriority claims to report on this Schedule F.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE | CODEBTOR | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|
| | | H W | J C | | | | | |
| Account No. | | ( | | | | | | |
| Aceto, Gregory J. Johnson & Aceto, P.C. 67 Batterymarch Street Suite 400 Boston, MA 02110 | | - | | | | | | 22,373.00 |
| Account No. | | | | | | | | |
| Butler, Joseph G. Chapter 7 Trustee Barron & Stadfeld, P.C. 50 Staniford Street Boston, MA 02114 | | - | | | | | | 0.00 |
| Account No. 04-3201-18420 | | | | 2001 Grand Jeep Cherokee | | | | |
| Chase Automotive Leases P.O. 5232 New Hyde Park, NY 11042 | | - | | | X | | | 7,056.21 |
| Account No. 12995956 | | | | 11/3/00 | | | | |
| CIT Technology Financing Svc 4600 Touchton Road Building 100, Suite 300 Jacksonville, FL 32216 | | | | | | | | 84,305.88 |
| _2_ continuation sheets attached | | | | Subtotal (Total of this page) | | | | 113,735.09 |

Copyright (c) 1996-2000 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                    S/N:27177  Best Case Bankruptcy

In re   **Michael O. Ingoldsby**                                    Case No.   **02-24824-BC7**
_____
                            Debtor

## SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE | C O D E B T O R | Husband, Wife, Joint, or Community H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. **41644155** <br><br> **Conseco Vendor Services <br> 95 North Route 17 South <br> Paramus, NJ 07652** | | - | **6/24/00** | | | | **39,556.15** |
| Account No. <br><br> **Foster, Donald G. <br> 566 Bay Road <br> Duxbury, MA 02331** | | - | **Judgment entered June 19, 2001 <br> Case pending on appeal** | | | X | **136,753.53** |
| Account No. <br><br> **Grossman, Stewart <br> U.S. Trustee's Office <br> 1101 Thomas P. O'Neill, Jr. <br> 10 Causeway Street <br> Boston, MA 02222-1074** | | - | | | | | **0.00** |
| Account No. **227234** <br><br> **Health Care Finance Agency <br> Assed Hospital Svcs of Maine <br> 2 Gannett Drive <br> South Portland, ME 04106** | | - | | | X | X | **Unknown** |
| Account No. <br><br> **Heller Healthcare Finance <br> 2 Wiscons n Circle 4th FL <br> Chevy Chase, MD 20815** | | - | | X | X | X | **0.00** |

Sheet no. _**1**_ of _**2**_ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

| | |
|---|---|
| Subtotal <br> (Total of this page) | **176,309.68** |

Copyright (c) 1996-2000 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                                    Best Case Bankruptcy

In re   **Michael O. Ingoldsby**                                        Case No.   **02-24824-8C7**
                                    Debtor

## SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE | C O D E B T O R | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
| | | H W | J C | | | | | |
|---|---|---|---|---|---|---|---|---|
| Account No. 01400927820140001 | | | 6/14/96 | | | | | |
| Mercedes Benz Credit Corp.<br>P.O. Box 685<br>Roanoke, TX 76262-0685 | | • | | | | | X | 1,626.82 |
| Account No. 405826604 | | | 1/8/99 | | | | | |
| Wells Fargo Financial Leasin<br>GreenTree Vendor Services<br>3601 Minnesota Drive,<br>~~9th Floor~~<br>Minneapolis, MN 55435 | | • | | | | | | 40,762.45 |
| Account No. | | | | | | | | |
| | | | | | | | | |
| Account No. | | | | | | | | |
| | | | | | | | | |
| Account No. | | | | | | | | |
| | | | | | | | | |

Sheet no. __2__ of __2__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)         **42,389.27**

Total
(Report on Summary of Schedules)         **332,434.04**

Copyright (c) 1996-2000 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                    Best Case Bankruptcy

In re    **Michael O. Ingoldsby**    Case No. __**02-24824-8C7**__

<div align="center">Debtor</div>

<div align="center">

## SCHEDULE G. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

</div>

Describe all executory contracts of any nature and all unexpired leases of real or personal property. Include any timeshare interests.
State nature of debtor's interest in contract, i.e., "Purchaser," "Agent," etc. State whether debtor is the lessor or lessee of a lease.
Provide the names and complete mailing addresses of all other parties to each lease or contract described.

NOTE:    A party listed on this schedule will not receive notice of the filing of this case unless the party is also scheduled in the appropriate
schedule of creditors.

☐ Check this box if debtor has no executory contracts or unexpired leases.

| Name and Mailing Address, Including Zip Code, of Other Parties to Lease or Contract | Description of Contract or Lease and Nature of Debtor's Interest. State whether lease is for nonresidential real property. State contract number of any government contract. |
|---|---|
| **Banc One Credit**<br>**P.O. Box 770**<br>**Buffalo, NY 14226** | **Vehicle Lease - 1999 Izuzu Rodeo - Lease Expires**<br>**May 6, 2003** |
| **BMW Financial Services**<br>**P.O. Box 9001065**<br>**Louisville, KY 40290-1065** | **Vehicle Lease - 2001 BMW 325i Sport Wagon -**<br>**Lease expires 6/25/04** |

__0__    continuation sheets attached to Schedule of Executory Contracts and Unexpired Leases

Copyright (c) 1996-2000 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                    Best Case Bankruptcy

In re  **Michael O. Ingoldsby**                                    Case No. __02-24824-8C7__
                        _____
                                        Debtor

## SCHEDULE I. CURRENT INCOME OF INDIVIDUAL DEBTOR(S)

The column labeled "Spouse" must be completed in all cases filed by joint debtors and by a married debtor in a chapter 12 or 13 case whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.

| Debtor's Marital Status: | DEPENDENTS OF DEBTOR AND SPOUSE | | |
|---|---|---|---|
| | NAMES None. | AGE | RELATIONSHIP |
| **Marriec** | | | |

| EMPLOYMENT: | DEBTOR | SPOUSE |
|---|---|---|
| Occupation | | |
| Name of Employer | | |
| How long employed | | |
| Address of Employer | | |

| INCOME. (Estimate of average monthly income) | DEBTOR | | SPOUSE |
|---|---|---|---|
| Current monthly gross wages, salary, and commissions (pro rate if not paid monthly) | $ | 0.00 | $ N/A |
| Estimated monthly overtime .................................... | $ | 0.00 | $ N/A |
| SUBTOTAL ............................................. | $ | 0.00 | $ N/A |
| *LESS PAYROLL DEDUCTIONS* | | | |
| a. Payroll taxes and social security ........................... | $ | 0.00 | $ N/A |
| b. Insurance ................................................ | $ | 0.00 | $ N/A |
| c. Union dues .............................................. | $ | 0.00 | $ N/A |
| d. Other (Specify)_____ ........ | $ | 0.00 | $ N/A |
| | $ | 0.00 | $ N/A |
| SUBTOTAL OF PAYROLL DEDUCTIONS ..................... | $ | 0.00 | $ N/A |
| TOTAL NET MONTHLY TAKE HOME PAY ...................... | $ | 0.00 | $ N/A |
| Regular income from operation of business or profession or farm (attach detailed statement) ................................................. | $ | 0.00 | $ N/A |
| Income from real property ................................... | $ | 0.00 | $ N/A |
| Interest and dividends ...................................... | $ | 0.00 | $ N/A |
| Alimony, maintenance or support payments payable to the debtor for the debtor's use or that of dependents listed above ................................. | $ | 0.00 | $ N/A |
| Social security or other government assistance (Specify)  **Social Security/Disability** ............ | $ | 1,632.00 | $ N/A |
| | $ | 0.00 | $ N/A |
| Pension or retirement income ................................. | $ | 0.00 | $ N/A |
| Other monthly income (Specify)  **Disability Income\*** ............ | $ | 1,733.33 | $ N/A |
| | $ | 0.00 | $ N/A |
| TOTAL MONTHLY INCOME | $ | 3,365.33 | $ N/A |
| TOTAL COMBINED MONTHLY INCOME  $ 3,365.33 | (Report also on Summary of Schedules) | | |

Describe any increase or decrease of more than 10% in any of the above categories anticipated to occur within the year following the filing of this document:

                    * Debtor is entitled to receive $22,492.00 per month pursuant to a UNUM Provident

                    disability policy.  However, pursuant to an Order enter in Massachusetts, Debtor

                    has only been receiving $1,733.33.

In re    **Michael O. Ingoldsby**                                    Case No. __02-24824-8C7__
_____                                 _____
                                    Debtor

## SCHEDULE J. CURRENT EXPENDITURES OF INDIVIDUAL DEBTOR(S)

Complete this schedule by estimating the average monthly expenses of the debtor and the debtor's family. Pro rate any payments made bi-weekly, quarterly, semi-annually, or annually to show monthly rate.

☐ Check this box if a joint petition is filed and debtor's spouse maintains a separate household. Complete a separate schedule of expenditures labeled "Spouse."

| | | |
|---|---|---|
| Rent or home mortgage payment (include lot rented for mobile home) . . . . . . . . . . . . . . . . . . . . . . . . | $ | 7,650.00 |
| Are real estate taxes included?        Yes___X___  No_____ | | |
| Is property insurance included?       Yes___X___  No_____ | | |
| Utilities: Electricity and heating fuel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ | 250.00 |
|     Water and sewer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ | 100.00 |
|     Telephone . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ | 100.00 |
|     Other_____ . . . . . . . | $ | 150.00 |
| Home maintenance (repairs and upkeep) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ | 700.00 |
| Food . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ | 700.00 |
| Clothing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ | 200.00 |
| Laundry and dry cleaning . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ | 100.00 |
| Medical and dental expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ | 100.00 |
| Transportation (not including car payments) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ | 100.00 |
| Recreation, clubs and entertainment, newspapers, magazines, etc. . . . . . . . . . . . . . . . . . . . . . . . . | $ | 600.00 |
| ~~Charitable contributions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .~~ | $ | ~~160.00~~ |
| Insurance (not deducted from wages or included in home mortgage payments) | | |
|     Homeowner's or renter's . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ | 250.00 |
|     Life . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ | 1,650.00 |
|     Health . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ | 340.00 |
|     Auto . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ | 200.00 |
|     Other_____ . . . . . . . | $ | 0.00 |
| Taxes (not deducted from wages or included in home mortgage payments) | | |
|     (Specify)_____ . . . . . . . | $ | 0.00 |
| Installment payments: (In chapter 12 and 13 cases, do not list payments to be included in the plan.) | | |
|     Auto . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ | 299.00 |
|     Other_____ . . . . . . . | $ | 0.00 |
|     Other_____ . . . . . . . | $ | 0.00 |
|     Other_____ . . . . . . . | $ | 0.00 |
| Alimony, maintenance, and support paid to others . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ | 0.00 |
| Payments for support of additional dependents not living at your home . . . . . . . . . . . . . . . . . . . . | $ | 0.00 |
| Regular expenses from operation of business, profession, or farm (attach detailed statement) . . . . . . . | $ | 0.00 |
| Other_____ . . . . . . . | $ | 0.00 |
| Other_____ . . . . . . . | $ | 0.00 |
| TOTAL MONTHLY EXPENSES (Report also on Summary of Schedules) . . . . . . . . . . . . . . . . . . . | $ | 13,839.00 |

[FOR CHAPTER 12 AND 13 DEBTORS ONLY]
Provide the information requested below, including whether plan payments are to be made bi-weekly, monthly, annually, or at some other regular interval.

| | | |
|---|---|---|
| A. Total projected monthly income . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ | N/A |
| B. Total projected monthly expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ | N/A |
| C. Excess income (A minus B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ | N/A |
| D. Total amount to be paid into plan each _____ . . . . . . . | $ | N/A |
|                           (interval) | | |

**United States Bankruptcy Court**
**Middle District of Florida**

In re    Michael O. Ingoldsby _____    Case No. _____

_____    Chapter    **7**    _____
Debtor(s)

## DECLARATION CONCERNING DEBTOR'S SCHEDULES

### DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR

I declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of __**17**__ sheets *[total shown on summary page plus 1]*, and that they are true and correct to the best of my knowledge, information, and belief.

Date _Dec 26 2002_    Signature _Michael O. Ingoldsby_
                                                           Michael O. Ingoldsby
                                                           Debtor

*Penalty for making a false statement or concealing property:* Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C. §§ 152 and 3571.

Form 7
(9/00)

# United States Bankruptcy Court
## Middle District of Florida

In re   **Michael O. Ingoldsby**

Debtor(s)

Case No.   02-24824-8C7

Chapter   7

## STATEMENT OF FINANCIAL AFFAIRS

This statement is to be completed by every debtor. Spouses filing a joint petition may file a single statement on which the information for both spouses is combined. If the case is filed under chapter 12 or chapter 13, a married debtor must furnish information for both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. An individual debtor engaged in business as a sole proprietor, partner, family farmer, or self-employed professional, should provide the information requested on this statement concerning all such activities as well as the individual's personal affairs.

Questions 1 - 18 are to be completed by all debtors. Debtors that are or have been in business, as defined below, also must complete Questions 19 - 25. If the answer to an applicable question is "None," mark the box labeled "None." If additional space is needed for the answer to any question, use and attach a separate sheet properly identified with the case name, case number (if known), and the number of the question.

### DEFINITIONS

*"In business."* A debtor is "in business" for the purpose of this form if the debtor is a corporation or partnership. An individual debtor is "in business" for the purpose of this form if the debtor is or has been, within the six years immediately preceding the filing of this bankruptcy case, any of the following: an officer, director, managing executive, or owner of 5 percent or more of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or self-employed.

*"Insider."* The term "insider" includes but is not limited to: relatives of the debtor; general partners of the debtor and their relatives; corporations of which the debtor is an officer, director, or person in control; officers, directors, and any owner of 5 percent or more of the voting or equity securities of a corporate debtor and their relatives; affiliates of the debtor and insiders of such affiliates; any managing agent of the debtor. 11 U.S.C. § 101.

---

**1. Income from employment or operation of business**

None
■

State the gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's business from the beginning of this calendar year to the date this case was commenced. State also the gross amounts received during the two years immediately preceding this calendar year. (A debtor that maintains, or has maintained, financial records on the basis of a fiscal rather than a calendar year may report fiscal year income. Identify the beginning and ending dates of the debtor's fiscal year.) If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income of both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

AMOUNT                SOURCE (if more than one)

**2. Income other than from employment or operation of business**

None
☐

State the amount of income received by the debtor other than from employment, trade, profession, or operation of the debtor's business during the two years immediately preceding the commencement of this case. Give particulars. If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income for each spouse whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| AMOUNT | SOURCE |
|---|---|
| $405,752.58 | 2001 - Disability Benefits, Social Security Benefits, Pension Distribution |
| | a) $255,527.58 |
| | $35,948.00 |
| | $114,277.00 |
| $310,903.00 | 2000 - Interest on Loans and Disability Benefits |
| | $245,653.00 |
| | 65,250.00 |

**3. Payments to creditors**

None ■ a. List all payments on loans, installment purchases of goods or services, and other debts, aggregating more than $600 to any creditor, made within **90 days** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|

None ■ b. List all payments made within **one year** immediately preceding the commencement of this case to or for the benefit of creditors who are or were insiders. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR AND RELATIONSHIP TO DEBTOR | DATE OF PAYMENT | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|

**4. Suits and administrative proceedings, executions, garnishments and attachments**

None ☐ a. List all suits and administrative proceedings to which the debtor is or was a party within **one year** immediately preceding the filing of this bankruptcy case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| CAPTION OF SUIT AND CASE NUMBER | NATURE OF PROCEEDING | COURT OR AGENCY AND LOCATION | STATUS OR DISPOSITION |
|---|---|---|---|
| **Donald G. Foster v. Managed Healthcare Systems, Inc., et al.; Case No. 96-0245** | **Contract Dispute** | **Commonwealth of Massachusetts** | **Pending - final judgment against Debtor on appeal.** |
| **Donald G. Foster v. Managed Healthcare Systems, Inc., et** ~~**al.; Case No. 00-0673B**~~ | | **Commonwealth of Massachusetts** | **Pending** |
| **Heller Healthcare Finance, Inc. v. Michael Ingoldsby et al.; Case No. 02-CV11553NG** | **Negligent misrepresentation** | **In the United States District Court for the District of Massachusetts** | **Pending** |

None ☐ b. Describe all property that has been attached, garnished or seized under any legal or equitable process within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON FOR WHOSE BENEFIT PROPERTY WAS SEIZED | DATE OF SEIZURE | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|
| **Donald G. Foster**<br>**566 Bay Road**<br>**Duxbury, MA 02331** | **April 22, 2002** | **UnumProvident disability benefits. Value of amount seized approximately $150,000.00** |

**5. Repossessions, foreclosures and returns**

None ■ List all property that has been repossessed by a creditor, sold at a foreclosure sale, transferred through a deed in lieu of foreclosure or returned to the seller, within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR OR SELLER | DATE OF REPOSSESSION, FORECLOSURE SALE, TRANSFER OR RETURN | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

3

### 6. Assignments and receiverships

None
■    a. Describe any assignment of property for the benefit of creditors made within 120 days immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include any assignment by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF ASSIGNEE | DATE OF ASSIGNMENT | TERMS OF ASSIGNMENT OR SETTLEMENT |
|---|---|---|

None
■    b. List all property which has been in the hands of a custodian, receiver, or court-appointed official within one year immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CUSTODIAN | NAME AND LOCATION OF COURT CASE TITLE & NUMBER | DATE OF ORDER | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|---|

### 7. Gifts

None
■    List all gifts or charitable contributions made within one year immediately preceding the commencement of this case except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member and charitable contributions aggregating less than $100 per recipient. (Married debtors filing under chapter 12 or chapter 13 must include gifts or contributions by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON OR ORGANIZATION | RELATIONSHIP TO DEBTOR, IF ANY | DATE OF GIFT | DESCRIPTION AND VALUE OF GIFT |
|---|---|---|---|

### 8. Losses

None
■    List all losses from fire, theft, other casualty or gambling within one year immediately preceding the commencement of this case or since the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include losses by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| DESCRIPTION AND VALUE OF PROPERTY | DESCRIPTION OF CIRCUMSTANCES AND, IF LOSS WAS COVERED IN WHOLE OR IN PART BY INSURANCE, GIVE PARTICULARS | DATE OF LOSS |
|---|---|---|

### 9. Payments related to debt counseling or bankruptcy

None
□    List all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of the petition in bankruptcy within one year immediately preceding the commencement of this case.

| NAME AND ADDRESS OF PAYEE | DATE OF PAYMENT, NAME OF PAYOR IF OTHER THAN DEBTOR | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|
| Michael P. Brundage and Luis Martinez-Monfort Hill, Ward & Henderson, P.A. P.O. Box 2231 Tampa, FL 33601 | Mary Lee Ingoldsby 4/02 to the present | $9,748.93 |

### 10. Other transfers

None
■    List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within one year immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF TRANSFEREE, RELATIONSHIP TO DEBTOR | DATE | DESCRIBE PROPERTY TRANSFERRED AND VALUE RECEIVED |
|---|---|---|

4

**11. Closed financial accounts**

None
■

List all financial accounts and instruments held in the name of the debtor or for the benefit of the debtor which were closed, sold, or otherwise transferred within one year immediately preceding the commencement of this case. Include checking, savings, or other financial accounts, certificates of deposit, or other instruments; shares and share accounts held in banks, credit unions, pension funds, cooperatives, associations, brokerage houses and other financial institutions. (Married debtors filing under chapter 12 or chapter 13 must include information concerning accounts or instruments held by or for either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF INSTITUTION | TYPE AND NUMBER OF ACCOUNT AND AMOUNT OF FINAL BALANCE | AMOUNT AND DATE OF SALE OR CLOSING |
| --- | --- | --- |

**12. Safe deposit boxes**

None
■

List each safe deposit or other box or depository in which the debtor has or had securities, cash, or other valuables within one year immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include boxes or depositories of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF BANK OR OTHER DEPOSITORY | NAMES AND ADDRESSES OF THOSE WITH ACCESS TO BOX OR DEPOSITORY | DESCRIPTION OF CONTENTS | DATE OF TRANSFER OR SURRENDER, IF ANY |
| --- | --- | --- | --- |

**13. Setoffs**

None
■

List all setoffs made by any creditor, including a bank, against a debt or deposit of the debtor within 90 days preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATE OF SETOFF | AMOUNT OF SETOFF |
| --- | --- | --- |

**14. Property held for another person**

None
■

List all property owned by another person that the debtor holds or controls.

| NAME AND ADDRESS OF OWNER | DESCRIPTION AND VALUE OF PROPERTY | LOCATION OF PROPERTY |
| --- | --- | --- |

**15. Prior address of debtor**

None
☐

If the debtor has moved within the two years immediately preceding the commencement of this case, list all premises which the debtor occupied during that period and vacated prior to the commencement of this case. If a joint petition is filed, report also any separate address of either spouse.

| ADDRESS | NAME USED | DATES OF OCCUPANCY |
| --- | --- | --- |
| 459 Walls Way Sarasota, Florida 34229 | | 11/99 to 8/02 |

**16. Spouses and Former Spouses**

None
■

If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within the six-year period immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state.

NAME

5

**17. Environmental Information.**

For the purpose of this question, the following definitions apply:

"Environmental Law" means any federal, state, or local statute or regulation regulating pollution, contamination, releases of hazardous or toxic substances, wastes or material into the air, land, soil, surface water, groundwater, or other medium, including, but not limited to, statutes or regulations regulating the cleanup of these substances, wastes, or material.

"Site" means any location, facility, or property as defined under any Environmental Law, whether or not presently or formerly owned or operated by the debtor, including, but not limited to, disposal sites.

"Hazardous Material" means anything defined as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, or contaminant or similar term under an Environmental Law

None
■     a. List the name and address of every site for which the debtor has received notice in writing by a governmental unit that it may be liable or potentially liable under or in violation of an Environmental Law. Indicate the governmental unit, the date of the notice, and, if known, the Environmental Law:

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
|---|---|---|---|

None
■     b. List the name and address of every site for which the debtor provided notice to a governmental unit of a release of Hazardous Material. Indicate the governmental unit to which the notice was sent and the date of the notice.

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
|---|---|---|---|

None
■     c. List all judicial or administrative proceedings, including settlements or orders, under any Environmental Law with respect to which the debtor is or was a party. Indicate the name and address of the governmental unit that is or was a party to the proceeding, and the docket number.

| NAME AND ADDRESS OF GOVERNMENTAL UNIT | DOCKET NUMBER | STATUS OR DISPOSITION |
|---|---|---|

**18. Nature, location and name of business**

None
□     a. If the debtor is an individual, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partnership, sole proprietorship, or was a self-employed professional within the six years immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within the six years immediately preceding the commencement of this case.
        If the debtor is a partnership, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities, within the six years immediately preceding the commencement of this case.
        If the debtor is a corporation, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities within the six years immediately preceding the commencement of this case.

| NAME | TAXPAYER I.D. NUMBER | ADDRESS | NATURE OF BUSINESS | BEGINNING AND ENDING DATES |
|---|---|---|---|---|
| Medical Temporaries, Inc. | 04-2772530 | 99 Derby Street, Suite 300 Hingham. MA 02043 | Temporary nursing services | 1982-2002 |
| MHCS, Inc. | 04-3173788 | 99 Derby Street, Suite 300 Hingham, MA 02043 | Temporary nursing services | 1983 to 2002 |
| Managed Health Cares Systems, Inc. | 02-2840185 | 99 Derby Street, Suite 300 Hingham, MA 02043 | Temporary nursing services | 1988-2002 |

6

None ■  b. Identify any business listed in response to subdivision a., above, that is "single asset real estate" as defined in 11 U.S.C. § 101.

NAME                                    ADDRESS

The following questions are to be completed by every debtor that is a corporation or partnership and by any individual debtor who is or has been, within the six years immediately preceding the commencement of this case, any of the following: an officer, director, managing executive, or owner of more than 5 percent of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or otherwise self-employed.

*(An individual or joint debtor should complete this portion of the statement only if the debtor is or has been in business, as defined above, within the six years immediately preceding the commencement of this case. A debtor who has not been in business within those six years should go directly to the signature page.)*

### 19. Books, records and financial statements

None ☐  a. List all bookkeepers and accountants who within the **two years** immediately preceding the filing of this bankruptcy case kept or supervised the keeping of books of account and records of the debtor.

NAME AND ADDRESS                                         DATES SERVICES RENDERED
**Douglas Colpitts, CPA**                                **1980 to present.**
**338 Commercial Street**
**Boston, MA 02109**

None ■  b. List all firms or individuals who within the **two years** immediately preceding the filing of this bankruptcy case have audited the books of account and records, or prepared a financial statement of the debtor.

NAME                    ADDRESS                         DATES SERVICES RENDERED

None ■  c. List all firms or individuals who at the time of the commencement of this case were in possession of the books of account and records of the debtor. If any of the books of account and records are not available, explain.

NAME                                    ADDRESS

None ☐  d. List all financial institutions, creditors and other parties, including mercantile and trade agencies, to whom a financial statement was issued within the **two years** immediately preceding the commencement of this case by the debtor.

NAME AND ADDRESS                                         DATE ISSUED
**Wells Fargo**                                          **August, 2002**
**11601 N. Black Canyon Highway**
**Phoenix, AZ 85029**

### 20. Inventories

None ■  a. List the dates of the last two inventories taken of your property, the name of the person who supervised the taking of each inventory, and the dollar amount and basis of each inventory.

                                                         DOLLAR AMOUNT OF INVENTORY
DATE OF INVENTORY          INVENTORY SUPERVISOR          (Specify cost, market or other basis)

None ■  b. List the name and address of the person having possession of the records of each of the two inventories reported in a., above.

                                        NAME AND ADDRESSES OF CUSTODIAN OF INVENTORY
DATE OF INVENTORY                       RECORDS

7

**21 . Current Partners, Officers, Directors and Shareholders**

None
■    a. If the debtor is a partnership, list the nature and percentage of partnership interest of each member of the partnership.

| NAME AND ADDRESS | NATURE OF INTEREST | PERCENTAGE OF INTEREST |
|---|---|---|

None
■    b. If the debtor is a corporation, list all officers and directors of the corporation, and each stockholder who directly or indirectly owns, controls, or holds 5 percent or more of the voting or equity securities of the corporation.

| NAME AND ADDRESS | TITLE | NATURE AND PERCENTAGE OF STOCK OWNERSHIP |
|---|---|---|

**22 . Former partners, officers, directors and shareholders**

None
■    a. If the debtor is a partnership, list each member who withdrew from the partnership within one year immediately preceding the commencement of this case.

| NAME | ADDRESS | DATE OF WITHDRAWAL |
|---|---|---|

None
■    b. If the debtor is a corporation, list all officers, or directors whose relationship with the corporation terminated within one year immediately preceding the commencement of this case.

| NAME AND ADDRESS | TITLE | DATE OF TERMINATION |
|---|---|---|

**23 . Withdrawals from a partnership or distributions by a corporation**

None
■    If the debtor is a partnership or corporation, list all withdrawals or distributions credited or given to an insider, including compensation in any form, bonuses, loans, stock redemptions, options exercised and any other perquisite during one year immediately preceding the commencement of this case.

| NAME & ADDRESS OF RECIPIENT, RELATIONSHIP TO DEBTOR | DATE AND PURPOSE OF WITHDRAWAL | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

**24. Tax Consolidation Group.**

None
■    If the debtor is a corporation, list the name and federal taxpayer identification number of the parent corporation of any consolidated group for tax purposes of which the debtor has been a member at any time within the six-year period immediately preceding the commencement of the case.

| NAME OF PARENT CORPORATION | TAXPAYER IDENTIFICATION NUMBER |
|---|---|

**25. Pension Funds.**

None
■    If the debtor is not an individual, list the name and federal taxpayer identification number of any pension fund to which the debtor, as an employer, has been responsible for contributing at any time within the six-year period immediately preceding the commencement of the case.

| NAME OF PENSION FUND | TAXPAYER IDENTIFICATION NUMBER |
|---|---|

---

## DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR

I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct.

Date _Dec 26 2002_      Signature _Michael O. Ingoldsby_

Michael O. Ingoldsby
Debtor

*Penalty for making a false statement:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571

**United States Bankruptcy Court**
Middle District of Florida

In re    Michael O. Ingoldsby

                                    Debtor

Case No. _____

Chapter _____

## CHAPTER 7 INDIVIDUAL DEBTOR'S STATEMENT OF INTENTION

1. I have filed a schedule of assets and liabilities which includes consumer debts secured by property of the estate.

2. I intend to do the following with respect to the property of the estate which secures those consumer debts:

   a. *Property to Be Surrendered.*

   Description of Property                    Creditor's name

      **NONE.**

   b. *Property to Be Retained.*

                                              [*Check any applicable statement.*]

| | | Property will be redeemed pursuant to 11 U.S.C. § 722 | Debt will be reaffirmed pursuant to 11 U.S.C. § 524(c) |
|---|---|---|---|
| Description of property **NONE.** | Creditor's name | Property is claimed as exempt | |

Date __Dec 26 2002__

Signature _____
Michael O. Ingoldsby
Debtor

Copyright (c) 1996-2000 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

**United States Bankruptcy Court**
**Middle District of Florida**

In re    **Michael O. Ingoldsby**                                    Case No. _____

_____
                              Debtor                    Chapter_____7_____

# VERIFICATION OF CREDITOR MATRIX

The above-named Debtor hereby verifies that the attached list of creditors is true and correct to the best of his/her knowledge.

Date_____    Signature_____
                                        Michael O. Ingoldsby
                                        Debtor

**United States Bankruptcy Court**
**Middle District of Florida**

In re  Michael O. Ingoldsby

Debtor(s)

Case No. **02-24824-8C7**

Chapter **7**

## DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR(S)

1.  Pursuant to 11 U.S.C. § 329(a) and Bankruptcy Rule 2016(b), I certify that I am the attorney for the above-named debtor and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

| | | |
|---|---|---|
| For legal services, I have agreed to accept | $ | 0.00 |
| Prior to the filing of this statement I have received | $ | 0.00 |
| Balance Due | $ | 0.00 |

2.  The source of the compensation paid to me was:

■ Debtor   ☐ Other (specify):

3.  The source of compensation to be paid to me is:

■ Debtor   ☐ Other (specify):

4.  ■ I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm.

☐ I have agreed to share the above-disclosed compensation with a person or persons who are not members or associates of my law firm. A copy of the agreement, together with a list of the names of the people sharing in the compensation is attached.

5.  In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:
a.  Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
b.  Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
c.  Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;
d.  [Other provisions as needed]

6.  By agreement with the debtor(s), the above-disclosed fee does not include the following service:

---

### CERTIFICATION

I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding.

Dated: 12/27/02

Michael P. Brundage
Hill Ward & Henderson
101 E. Kennedy Blvd.
Suite 3700
Tampa, Florida 33601
813-221-3900  Fax: 813-221-2900

Michael O. Ingoldsby
530 E. MacEwen Drive
Osprey, FL 34229

Michael P. Brundage
Hill Ward & Henderson
101 E. Kennedy Blvd.
Suite 3700
Tampa, Florida 33601

Aceto, Gregory J.
Johnson & Aceto, P.C.
67 Batterymarch Street
Suite 400
Boston, MA 02110

Butler, Joseph G.
Chapter 7 Trustee
Barron & Stadfeld, P.C.
50 Staniford Street
Boston, MA 02114

Chase Automotive Leases
P.O. 5232
New Hyde Park, NY 11042

CIT Technology Financing Svc
4600 Touchton Road
Building 100, Suite 300
Jacksonville, FL 32216

Conseco Vendor Services
95 North Route 17 South
Paramus, NJ 07652

Dovenmuehle Mortgage
P.O. Box 59840
Schaumburg, IL 60159-0840

Foster, Donald G.
566 Bay Road
Duxbury, MA 02331

Grossman, Stewart
U.S. Trustee's Office
1101 Thomas P. O'Neill, Jr.
10 Causeway Street
Boston, MA 02222-1074

Health Care Finance Agency
Assoc Hospital Svcs of Maine
2 Gannett Drive
South Portland, ME 04106

Heller Healthcare Finance
2 Wisconsin Circle 4th FL
Chevy Chase, MD 20815

Horizon Bank
501 John W. Mahar Highway
Braintree, MA 02184

Massachusetts Dept. of Rev.
200 Arlington Street
Boston, MA 02205

Mercedes Benz Credit Corp.
P.O. Box 685
Roanoke, TX 76262-0685

Wells Fargo
11601 N. Black Canyon Hwy
Phoenix, AZ 85029

Wells Fargo
11601 N. Black Caynon Hwy
Phoenix, AZ 85029

Wells Fargo Financial Leasin
GreenTree Vendor Services
3601 Minnesota Drive,
9th Floor
Minneapolis, MN 55435

*In re*    Michael O. Ingoldsby                                                Case No.    02-24824-8C7
_____            _____
                                                Debtor

## SCHEDULE H. CODEBTORS

Provide the information requested concerning any person or entity, other than a spouse in a joint case, that is also liable on any debts listed by debtor in the schedules of creditors. Include all guarantors and co-signers. In community property states, a married debtor not filing a joint case should report the name and address of the nondebtor spouse on this schedule. Include all names used by the nondebtor spouse during the six years immediately preceding the commencement of this case.

☐ Check this box if debtor has no codebtors.

| NAME AND ADDRESS OF CODEBTOR | NAME AND ADDRESS OF CREDITOR |
|---|---|
| Mary Lee Ingoldsby<br>5 Stagecoach Road<br>Hingham, MA 02043 | Dovenmuehle Mortgage<br>P.O. Box 59840<br>Schaumburg, IL 60159-0840 |
| Mary Lee Ingoldsby<br>5 Stagecoach Road<br>Hingham, MA 02043 | Wells Fargo<br>11601 N. Black Canyon Hwy<br>Phoenix, AZ 85029 |
| Mary Lee Ingoldsby<br>5 Stagecoach Road<br>Hingham, MA 02043 | Horizon Bank<br>501 John W. Mahar Highway<br>Braintree, MA 02184 |
| Mary Lee Ingoldsby<br>5 Stagecoach Road<br>Hingham, MA 02043 | Wells Fargo<br>11601 N. Black Caynon Hwy<br>Phoenix, AZ 85029 |
| Mary Lee Ingoldsby<br>5 Stagecoach Road<br>Hingham, MA 02043 | BMW Financial Services<br>P.O. Box 9001065<br>Louisville, KY 40290 |

   0    continuation sheets attached to Schedule of Codebtors

Copyright (c) 1996-2000 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

Best Case Bankruptcy

EXHIBIT C

6

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

TAMPA
FLORIDA

2003 APR 18 P 3: 50

IN RE: MICHAEL O. INGOLDSBY            CASE NO.: 02-24824-8C7

_____/            U.S. BANKRUPTCY COURT
                                       MIDDLE DISTRICT
                                       OF FLORIDA

**AMENDED NOTICE OF FILING SCHEDULES AND STATEMENT OF**
**FINANCIAL AFFAIRS WITH ORIGINAL SIGNATURES**

PLEASE TAKE NOTICE that the Debtor, Michael O. Ingoldsby, by and

through his undersigned counsel, hereby gives notice of filing the Schedules

and Statement of Financial Affairs with original signatures which were filed on

January 2, 2003.

Dated: April 18, 2003

                                       Michael P. Brundage
                                       Florida Bar No. 611621
                                       HILL, WARD & HENDERSON, P.A.
                                       101 E. Kennedy Blvd, Suite 3700
                                       Tampa, Florida 33602
                                       (813) 221-3900 Telephone
                                       (813) 221-2900 Facsimile
                                       Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing
Amended Notice of Filing Schedules and Statement of Financial Affairs with
Original Signatures was furnished via U.S. Mail postage pre-paid on this
___18___ day of April, 2003 to:

Donald G. Foster              Massachusetts Dept. of Revenue
566 Bay Road                  51 Sleeper Street
P.O. Box 1694                 Boston, MA 02205
Duxbury, MA 02331

I CERTIFY THE FOREGOING TO BE A TRUE
AND CORRECT COPY OF THE ORIGINAL.
UNITED STATES BANKRUPTCY COURT

_Walter D. Elmore_
**Deputy Clerk**

                              _____
                                       Attorney

28

EXHIBIT D

```
                                              ‗ E D

                                          MAY 0 5 2004

                                      Clerk U.S. Bankruptcy
                                      Court, Tampa, FL
```

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

MICHAEL O. INGOLDSBY,                          CASE NO. 02-024824-8B7

     Debtor.
_____/

## DISCHARGE OF DEBTOR

It appearing that the Debtor is entitled to a Discharge, it is Ordered that the Debtor is granted a discharge pursuant to §727 of Title 11, United States Code (the Bankruptcy Code).

By the Court

The Honorable Thomas E. Baynes
Bankruptcy Judge

Dated May 5th , 2004.

I CERTIFY THE FOREGOING TO BE A TRUE
AND CORRECT COPY OF THE ORIGINAL.
UNITED STATES BANKRUPTCY COURT

*Walter D. Elmore*
Deputy Clerk

106

EXHIBIT E

6

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

HELLER HEALTHCARE FINANCE, INC.,

Plaintiff,

v.

MICHAEL INGOLDSBY, MARY LEE
INGOLDSBY, PAMELA JONES, and
INDY EDWARDS,

Defendants.

**02 ᶜᵛ 11553 NG**

## COMPLAINT

COMES NOW the Plaintiff, Heller Healthcare Finance, Inc. ("Heller") and for its
Complaint states as follows:

### Nature of the Case

1.     This action seeks damages suffered by Heller as a result of the negligent
misrepresentations of Defendants Jones, Edwards and Michael Ingoldsby with respect to
collateral available to satisfy loans made by Heller to two corporate borrowers with whom they
were affiliated.  Defendant Michael Ingoldsby and his wife, Defendant Mary Lee Ingoldsby, are
also sued for breach of contract on a personal guaranty.

### Parties

2.     Plaintiff Heller is a Delaware corporation with its principal place of business at 2
Wisconsin Circle, 4th floor, Chevy Chase, Maryland 20815.  Heller is a lender to the healthcare
industry.

3.     Defendant Michael Ingoldsby ("Ingoldsby") was at all relevant times the sole
shareholder and a Director of Managed Health Care Systems, Inc. ("MHCS"), a non-party.  At





all relevant times, Ingoldsby served, on information and belief, as unpaid chief executive officer (CEO) of both MHCS and Medical Temporaries, Inc., another related non-party ("Medical Temporaries"). Mr. Ingoldsby was also actively involved in oversight of the day-to-day management and operation of MHCS and Medical Temporaries through his oversight of and interaction with Defendants Edwards and Jones. Upon information and belief, Mr. Ingoldsby resides at 5 Stagecoach Road, Hingham, MA 02043.

4.      Defendant Mary Lee Ingoldsby is the wife of Michael Ingoldsby, residing at 5 Stagecoach Road, Hingham, MA 02043.

5.      Defendant Pam Jones was at all relevant times the Controller and, on information and belief, Vice President, Finance of MHCS and its affiliate, Medical Temporaries. At all relevant times, Ms. Jones was actively involved in the day-to-day management and operation of MHCS and Medical Temporaries. Upon information and belief, Ms. Jones resides at 197 High Street, Duxbury, MA 02332.

6.      Defendant Indy Edwards was, on information and belief, at all relevant times President and a Director of MHCS and of Medical Temporaries. At all relevant times, Ms. Edwards was actively involved in the day-to-day management and operation of MHCS and Medical Temporaries. Upon information and belief, Ms. Edwards resides at 345 Camp Street, #506, West Yarmouth, MA 02673.

## Jurisdiction and Venue

7.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between the plaintiff and each of the defendants and the amount in controversy exceeds $75,000.

8.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because one or more of the defendants resides in this district and all of the defendants reside in Massachusetts.

### Background

9.    At all relevant times, Defendants Jones, Edwards and Ingoldsby were either a shareholder, officer and/or director of MHCS. MHCS was a privately held, for profit, "home health agency," i.e., a provider of home health care services to Medicare beneficiaries in Massachusetts' South Shore and Cape Cod areas. Together with Medical Temporaries, MHCS provided home nursing services to over 700 persons.

10.    Medicare is a medical assistance program administered by the Centers for Medicare and Medicaid Services ("CMS"), formerly known as the Health Care Financing Administration ("HCFA"), a division of the United States Department of Health and Human Services ("HHS").

11.    At all relevant times, MHCS participated in CMS' home health prospective payment system ("PPS"). The home health PPS is described in CMS' Home Health Agency Manual, HCFA Publication No. 11, Transmittals 297 and 298.

12.    Under the PPS, MHCS obtained prospective, or advance, payments from CMS at "episode rates." An "episode rate" is a predetermined payment amount intended to cover all skilled nursing services, home health aide services, physical therapy, speech-language pathology services, occupational therapy services, and medical social services provided to a given patient during a given sixty-day period, which generally starts the day the first Medicare billable service is delivered to a patient. With certain exceptions, including one described below, the episode rate payment is not affected by the number of visits that the home healthcare provider actually makes to the patient's home during the covered period.

-3-

13.    Generally speaking, home health providers receive an up-front initial percentage payment of the episodic payment due for a patient's care by submitting a Request for Anticipated Payment (RAP). The provider claims the balance of monies due for services during the 60-day "episode" by submitting a "final claim" to Medicare, together with a physician approved Plan of Care for the episode, if not previously submitted, which final claim is due within 60-days from the end of the episode or 60-days from the issue of the RAP payment,. The up-front RAP payment is 60% of the episode payment, for an initial episode, with 40% paid on the back end; for subsequent episodes of care 50% is paid with the RAP and 50% upon the final claim.

14.    As an exception to these rules, if a particular patient receives four or less visits during the 60-day episode the provider is not entitled to the full episodic payment. Rather, under the Low Utilization Payment Adjustment (LUPA) rules the provider is paid only on a per-visit basis.

15.    By way of example, assume the PPS episode payment for a particular patient is $2,500. The up-front RAP payment would be 60%, or $1,500. It is determined, however, by the time that the final claim is submitted, that the LUPA rules apply and the provider is due only $300 for the limited care that was rendered during the episode. Medicare "takes back" $1,200 by recoupment, reducing monies otherwise due the provider, on other claims, by $1,200.

16.    On February 23, 2001, MHCS and Medical Temporaries both filed a petition for reorganization under Chapter 11 of the United States Bankruptcy Code.

17.    Heller was a pre-petition lender to MHCS and Medical Temporaries on a number of loans, including (i) a Loan and Security Agreement dated as of August 4, 2000, which secured a Revolving Credit Note in the maximum amount of $3,000,000; (ii) a Secured Term Note, which also served as a security agreement, in the original amount of $685,000, later amended to

-4-

$515,000; (iii) a Secured Term Note in the amount of $200,000, for an overline loan, and (iv) a

further overline loan, treated as an advance under the Revolving Credit Note, in the maximum

principal amount of $233,000 (the second "overline"). As of the petition date, MHCS and

Medical Temporaries owed Heller $1,677,073 on these various loans ($973,184 on the

Revolving Credit Note, $515,000 on the Pre-petition Term Loan; $188,889 on the first pre-

petition overline, together with $13,095 of accrued and unpaid interest, together with attorneys'

fees and other costs recoverable under the loan documents).

18.    Post-petition, on February 28, 2001, Heller, as lender, and MHCS and Medical

Temporaries, jointly and severally as "borrower", entered into a $3,000,000 Revolving Credit

Loan (the "DIP Loan"), which loan refinanced the pre-petition Revolving Credit Note. The Loan

was evidenced by a Debtor-in-Possession Loan and Security Agreement (the "DIP Loan

Agreement"), a copy of which is attached as Exhibit A hereto. The two debtors, at the same

time, received bankruptcy court approval for use of the cash collateral (receivables) which

collateralized Heller on the pre-petition term loan. The Bankruptcy Court approved the aforesaid

DIP Loan and the debtors' use of cash collateral at an interim hearing held March 1, 2001, with a

final order entered on March 29, 2001.

19.    Defendant Ingoldsby and Defendant Mary Ingoldsby, his wife, guaranteed the

obligations of MHCS and Medical Temporaries under the DIP Loan Agreement.

20.    Under Section 2.1(g) of the DIP Loan Agreement, the amount of $3 million

revolving line of credit that MHCS and Medical Temporaries could draw upon at any given time

under the DIP Loan facility was equal to "eighty five percent (85%) of Qualified Accounts due

and owing from any Medicaid/Medicare, Insurer or other Account Debtor (the 'Borrowing

Base')." "Qualified Account" was defined in Section 1.49 of the Loan Agreement.

-5-

21.    Under Section 3.1(a) of the DIP Loan Agreement, the DIP Loan was secured by, among other assets, MHCS' and Medical Temporaries' Accounts (defined in Section 1.1 as "any right to payment for goods sold or leased or services rendered . . . whether or not earned by performance") and accounts receivable.

22.    Under section 3.3(b) of the Loan Agreement, MHCS and Medical Temporaries were each obligated to "keep accurate and complete records of its Accounts and all payments and collections thereon, and [to] submit to Lender on such periodic basis as Lender will request a sales and collections report for the preceding period, in form satisfactory to Lender." Section 6.1 of the Loan Agreement required MHCS and Medical Temporaries to submit a sales and collections report and an accounts receivable aging schedule to Heller by the fifteenth day of every month.

23.    MHCS, Medical Temporaries and the Defendants owed duties to Heller to prepare the borrowing base certificates submitted by MHCS and Medical Temporaries to Heller in connection with the DIP Loan in a manner which accurately reported to Heller the "eligible" Medicaid, Medicare, Commercial and Staffing receivables of MHCS and Medical Temporaries, as determined under the DIP Loan Agreement.

24.    A home healthcare provider must track and record LUPAs, for among other reasons, to avoid overstating its accounts receivable and/or its right to payment for services rendered. This is relevant to the instant cause of action, for the reasons noted immediately below.

25.    Heller lent money to MHCS and Medical Temporaries under the DIP Loan based on the level of receivables the companies reported to Heller on periodic "borrowing base certificates", signed by Defendants Jones and Edwards in the ordinary course of business and

-6-

their employment.  These certificates were supplied to Heller with the intent, knowledge and

expectation that Heller would rely on the level of eligible receivable collateral reported therein in

determining whether, and to what extent, Heller would re-advance collections it received back to

MHCS and Medical Temporaries upon various "draw" requests by the borrowers.  At all times,

Heller reasonably relied on the accuracy of the borrowing base certificates it received from

MHCS and Medical Temporaries on the DIP Loan in determining what funds to lender to MHCS

and Medical Temporaries under the DIP Loan.

26.    Officers and directors of a home healthcare provider who fail to cause the

provider to track and record LUPAs cause the provider to overstate its accounts receivable and/or

its right to payment for services rendered.

27.    Unknown to Heller, Defendants Jones, Edwards and Ingoldsby failed to exercise

reasonable care and competence in the preparation and communication to Heller of MHCS' and

Medical Temporary's receivable collateral on the borrowing base certificates submitted in

connection with the DIP Loan.  As a consequence, the borrowing base certificates submitted to

Heller by MHCS and Medical Temporaries under the DIP Loan failed, until February 2002, to

accurately track or record required negative LUPA (downward) adjustments to receivables as

reported therein.  These failures caused receivables as reported to Heller on the borrowing base

certificates to be overstated.

28.    Heller reasonably relied on the accuracy of borrowing base certificates submitted

to it by MHCS and Medical Temporaries in connection with the DIP Loan, from time to time,

such as the borrowing base certificate dated September 26, 2001, attached as Exhibit B.

29.    Heller also reasonably relied on the accuracy of Debtor-in-possession Operating

Reports ("DIP Operating Reports") as were filed with the bankruptcy court by MHCS and

Medical Temporaries and served on Heller, monthly, in the ordinary course of business. MHCS and Medical Temporaries, through Defendants Jones, Edwards and Ingoldsby, prepared and served such DIP Operating Reports on Heller and other creditors with the intent and expectation that the bankruptcy court, Heller and such other creditors would reasonably reply on the accuracy of the balance sheets and other financial data reported therein.

30.     Unknown to Heller, but similar to the situation of the misstated borrowing base certificates, the DIP Operating Reports of MHCS and Medical Temporaries overstated the true receivables of MHCS and Medical Temporaries due to the failure of Defendants Jones, Edwards and Ingoldsby to use reasonable care in the preparation and communication of such DIP Operating Reports, with the consequence that the DIP Operating Reports as filed, through January 2002, failed to show and reflect required LUPA adjustments (downwards) to the receivable collateral.

31.     On November 12, 2001, Medical Temporaries filed a Status Report with the bankruptcy court, attached as Exhibit C, which report was served on Heller, reflecting $1,341,389 in total collectible receivables and a $50,011 availability under the DIP Loan facility. The same report advised the Court and creditors that MHCS and Medical Temporaries were negotiating with HCFA with respect to the repayment of an alleged $480,00 pre-petition overpayment alleged by Medicare. Medical Temporaries reported that MHCS and Medical Temporaries anticipated to achieve a settlement of this disputed obligation which provided for favorable repayment terms in the near future. Medical Temporaries also reported that the two debtors anticipated filing either a plan of reorganization or achieving an asset sale within sixty (60) days time, and that a dividend to unsecured creditors was expected in the two bankruptcies.

32.     Around this time, in the Fall of 2001, Heller was told by MHCS and Medical
Temporaries that Defendants Jones and Edwards were seriously exploring the possibility of
acquiring, as "new equity", the principal assets of MHCS and Medical Temporaries, through a
sale or a reorganization plan, with Defendant Michael Ingoldsby possibly having some sort of
continuing management role in any successor venture.

33.     On November 13, 2001, the United States Trustee filed a Statement Regarding
Status Conference, attached as Exhibit D, to which was attached the Operating Report filed by
MHCS and Medical Temporaries with the bankruptcy court for the period ending October 26,
2001.

34.     Unknown to Heller, by the actions of the Defendants Jones, Edwards, and
Ingoldsby, MHCS and Medical Temporaries had significantly overstated the value of MHCS'
and Medical Temporaries Accounts and accounts receivable as reported to Heller on the
borrowing base certificates submitted to Heller and in the DIP Operating Reports filed with the
bankruptcy court and served on Heller, by failing to cause MHCS and Medical Temporaries to
make LUPA adjustments therein, which adjustments would have reduced collectible and eligible
receivables as shown thereon.

35.     MHCS' and Medical Temporaries' failure to accurately track and record LUPAs
was a breach of Section 3.3. of the Loan Agreement.

36.     MHCS' and Medical Temporaries failure to accurately track and record LUPAs
caused a misstatement of the their Qualified Accounts and, therefore, of the Borrowing Base of
eligible Accounts reported to Heller on borrowing base certificates, overstating the eligible
receivables against which Heller loaned monies to MHCS and Medical Temporaries under the
DIP Loan Agreement.

-9-

37.    In reliance on MHCS' and Medical Temporaries' misstatements of Qualified

Accounts and the Borrowing Base, of which Heller had no knowledge until Heller conducted a

field audit in January 2002, Heller loaned MHCS and Medical Temporaries approximately

$402,000 more on the DIP Loan than Heller would have advanced had the borrowing base

certificates and the DIP Operating Reports been properly stated.

38.    The Defendants knew, or should have known, of significant misstatements in the

borrowing base certificates submitted to Heller by MHCS and Medical Temporaries and of

related misstatements of receivables as reported in the DIP Operating Reports submitted to the

Bankruptcy Court and served on Heller as a secured creditor of MHCS and Medical

Temporaries.

39.    Defendant Jones advised Mr. Gardullo of Heller in December 2001, vaguely, that

she believed that MHCS' and Medical Temporaries' borrowing base certificates were no longer

accurate and that she would no longer certify them. When Mr. Gardullo probed for the reason,

she instructed him to speak with Mr. Ingoldsby who was, on information and belief, acting as

unpaid Chief Executive Officer (CEO) of the two debtors.

40.    In a contemporaneous conversation with Mr. Ingoldsby, Mr. Gardullo was led to

believe by defendant Ingoldsby that Ms. Jones discomfort arose from a matter which Mr.

Gardullo was familiar with, to wit, failure of the borrowing base certificates and the DIP

Operating Reports to reduce Accounts and accounts receivable of MHCS and Medical

Temporaries as shown therein by the $480,000 or so pre-petition overpayment liabilities alleged

by Medicare, which alleged overpayment was then the subject then pending settlement

negotiations between MHCS and Medicare and its fiscal intermediary, as noted above. Because

MHCS and Medical Temporaries had reported to the bankruptcy court and creditors that a

-10-

favorable settlement with Medicare was close and would, once consummated, "term out" and repay any pre-petition overpayment liability to Medicare over a multi-year period, negatively impacting cash flow by only a few thousand dollars a month, Mr. Gardullo was comfortable that no immediate "one time" major downward adjustment of receivables as reported on the borrowing base certificates, to reflect an overpayment obligation to Medicare, was then necessary. Mr. Ingoldsby made these statements to Mr. Gardullo without reasonable care, with the intent that Heller rely on his representations and continue to advance monies under the DIP Loan, and Heller so did.

41.      Consistent with Mr. Ingoldsby's representations, even after Defendant Jones ceased to certify the borrowing base certificates submitted by MHCS and Medical Temporaries to Heller the certificates submitted in connection with the DIP Loan continued to be certified by Defendant Edwards as being accurate and Heller reasonably relied on the same, until Heller notified MHCS and Medical Temporaries, as a result of a January 2002 field audit, of mis-statements therein.

42.      A field audit of MHCS and Medical Temporaries was conducted for Heller in January 2002 by Health Care Analysis Corporation, a Heller affiliate. When the audit results were thereupon fully analyzed and completed Heller become aware of a significant overstatement of the borrowing base by the failure of MHCS and Medical Temporaries to make LUPA adjustments.

43.      At this point, in early February 2002, Heller ceased further advances, beyond collections received, and notified MHCS and Medical Temporaries that they had improperly failed to make LUPA adjustments in the approximate amount of $405,000, as of the time of the mid-January audit.

-11-

44.    By email of February 21, 2002, attached as <u>Exhibit E</u>, after Heller had brought the failure to make LUPA adjustments to MHCS' and Medical Temporaries' attention, Defendant Jones submitted a revised 60-day forecast to Heller wherein MHCS and Medical Temporaries for the first time acknowledged an over-advance under the DIP Loan as of January 16, 2002 of $401,888, due to the failure of MHCS and Medical Temporaries to make LUPA adjustments.

45.    Had the borrowing base certificates been properly been reported to Heller by MHCS and Medical Temporaries, Heller would have advanced them $401,888 less on the DIP Loan.

46.    Heller gave formal notice of default on the DIP Loan, and of its intent to exercise default remedies, by notice filed with the bankruptcy court on March 14, 2002.

47.    On March 18, 2002, MHCS filed a Response to Heller's notice of default with the bankruptcy court, wherein MHCS acknowledged that it did not dispute the occurrence of a default under the DIP Loan, claimed that it had told Heller, in January 2002, that the value of receivables used to calculate the borrowing base would need to be adjusted and stated that in all likelihood an over-advance existed under the DIP Loan Agreement. <u>See</u> ¶1 of MHCS's March 18, 2002 Response to Heller's notice of default, attached as <u>Exhibit F</u>.

48.    The bankruptcy cases of MHCS and Medical Temporaries were converted to Chapter 7 liquidation proceedings by order of the bankruptcy court, on motion of the two debtors, at the March 20, 2002 default hearing.

49.    Heller shortly thereafter, on March 27, 2002, received relief from the automatic stay, as part of a bankruptcy court approved settlement with the Chapter 7 trustee for MHCS and Medical Temporaries, to permit Heller to collect out its receivable collateral.

50.    As of July 12, 2002, MHCS and Medical Temporaries were indebted to Heller under the DIP Loan Agreement and the various other loans and obligations in the amount of $1,330,243.07, as follows: $570,652.89 in principal and accrued interest on the DIP Loan; $524,678 in principal and accrued interest on the pre-petition term loan; an overline advance on the revolver and interest thereon totaling $56,754.50, appraisal costs of $36,593, legal fees, audit fees (for collateral review) and other charges totaling $135,314.15, and a miscellaneous advance of $6,250.

51.    All the aforesaid indebtedness of MHCS and Medical Temporaries to Heller, under the DIP Loan, the pre-petition term loan, the overline on the revolver, etc., was secured by, among other assets, Accounts and accounts receivable pledged by the two debtors. Heller duly perfected its security interest in this receivable collateral through UCC financing statements filed pre-petition and through the bankruptcy court orders approving the DIP Loan and the debtors' related use of Heller's cash collateral (receivables) which secured the term loan.

52.    As of the date hereof, Heller believes that it has collected substantially all of the receivables of MHCS and Medical Temporaries which have commercial value and that Heller's remaining collateral has no significant worth. As noted above, after these collections more than $1.3 million still remains due and owing to Heller by MHCS and Medical Temporaries.

53.    Had the Defendants (other than Mary Lee Ingoldsby) not negligently caused a significant over-advance of $401,888 on the DIP Loan, triggering a loan default which thereafter triggered conversion of the MHCS and Medical Temporaries bankruptcies to Chapter 7, MHCS and Medical Temporaries could have been sold or reorganized as "going concerns" as MHCS and Medical Temporaries had represented to Heller, the Office of the United States Trustee and the Official Committee of Unsecured Creditors in early November 2001, was anticipated to

-13-

occur within 60 days time. In these circumstances, Heller would have avoided a further

$928,355 in consequential damages now apparent from the fact that Heller's remaining loan

balances of $1,330,243 are, at this point, essentially uncollectible.

## COUNT I
### (Negligent Misrepresentation – against Defendants Jones, Edwards and Michael Ingoldsby)

54.    Heller incorporates paragraphs 1 through 53 herein as if restated in full.

55.    Defendants Jones, Edwards and Michael Ingoldsby, in the ordinary course of their

business and employment, and in the ordinary course of the business of MHCS and Medical

Temporaries, supplied false information to Heller regarding the borrowing base of the eligible

Accounts and accounts receivable of MHCS and Medical Temporaries. That false information,

in the form of inaccurate borrowing base certificates and DIP Operating Reports, was supplied to

Heller for Heller's guidance in its business transactions, i.e., making advances to MHCS and

Medical Temporaries pursuant to the DIP loan, with the intent and expectation that Heller rely on

such information, as it did. The false information, and Heller's justifiable reliance thereon,

caused and resulted in pecuniary loss to Heller. Defendants Jones, Edwards and Michael

Ingoldsby failed to exercise reasonable care or competence in obtaining or communicating the

information regarding the borrowing base.

## COUNT II
### (Breach of Guaranty -- Against Defendants Michael and Mary Lee Ingoldsby)

56.    Heller incorporates paragraphs 1 through 53 herein as if restated in full.

57.    Defendants Michael and Mary Lee Ingoldsby personally guaranteed MHCS' and

Medical Temporaries' obligations under the DIP Loan.

58.    Defendants Michael and Mary Lee Ingoldsby are directly liable, as guarantors of

the DIP Loan, for all monies due to Heller, other than monies due with respect to the pre-petition

term loan.

-14-

59. The DIP Loan remains due and payable and Defendants Michael and Mary Lee Ingoldsby have not performed under their Guaranty by paying off the DIP Loan.

WHEREFORE, Heller respectfully requests that the Court grant the following relief:

A. That judgment be entered in its favor on Count I against Defendants Jones, Edwards, and Michael Ingoldsby in the amount of $401,888, for other consequential damages in the amount of $928,355 or such greater amounts as may be proved at trial, plus interest, attorneys' fees and costs, and for such other and further relief as is just and proper; and

B. That judgment be entered in its favor on Count II against Defendants Michael and Mary Lee Ingoldsby in the amount of $805,565, or such greater amount as may be proved at trial, plus interest, attorneys' fees and costs, and for such other and further relief as is just and proper.

Respectfully submitted,

OF COUNSEL:

David B. Tatge, Esq.
Shlomo Katz, Esq.
EPSTEIN BECKER & GREEN, P.C.
1227 25th Street, N.W., 7th Floor
Washington, D.C. 20037
(202) 861-0900

Dated: August 1, 2002

DC:199991.1

HELLER HEALTHCARE FINANCE, INC.

By its attorneys,

Russell Beck, BBO No. 561031
Stephen D. Riden, BBO No. 644451
EPSTEIN BECKER & GREEN, P.C.
111 Huntington Avenue, 26th Floor
Boston, MA 02199-7610
(617) 342-4000

-15-

EXHIBIT F

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

GE HFS HOLDINGS, INC.
*Formerly known as*
HELLER HEALTHCARE FINANCE,
INC.
Plaintiff,

and

MICHAEL INGOLDSBY
Intervenor/Plaintiff

v.

NATIONAL UNION FIRE
INSURANCE COMPANY OF
PITTSBURGH, PA, and
INTERNATIONAL INSURANCE
GROUP, LTD.
            Defendants.

CIVIL ACTION No: 05-CV-11128-NG

**PLAINTIFF-INTERVENOR MICHAEL INGOLDSBY'S RESPONSES**
**TO DEFENDANTS NATIONAL UNION'S FIRST REQUEST FOR ADMISSIONS**

NOW COMES the Plaintiff-Intervenor Michael Ingoldsby and pursuant to Rule 36

of the Federal Rules of Civil Procedure, hereby responds to Defendant National Union

Fire Insurance Company of Pittsburgh, PA's First Request for Admissions as follows:

**GENERAL OBJECTIONS**

1.      The Plaintiff-Intervenor objects to each admission request to the extent

        that it seeks to impose upon him any obligation beyond those imposed by

the Federal Rules of Civil Procedure.

2.  The Plaintiff-Intervenor objects to each admission request to the extent it seeks information which is subject to the work product doctrine, the attorney-client privilege, or any other privilege.

3.  The Plaintiff-Intervenor objects to each admission request to the extent that it seeks information containing confidential commercial information, documents not within his possession, custody or control, or information which is otherwise immune from discovery on the grounds that such discovery is beyond the scope authorized by the Federal Rules of Civil Procedure.

## REQUESTED ADMISSIONS AND RESPONSES

### REQUEST NO. 1:

National Union Fire Insurance Company of Pittsburgh, PA ("National Union") issued its Directors and Officers Insurance and Company Reimbursement Policy Number 873-87-52, with an effective date of August 4, 2001 to August 4, 2002 ("Policy 873-87-52") to Managed Health Care Systems, Inc. ("MCHS").

### RESPONSE NO. 1:

Admitted.

### REQUEST NO. 2:

A true and complete copy of Policy 873-87-52 is attached hereto as "Exhibit A".

### RESPONSE NO. 2:

The Plaintiff-Intervenor cannot admit or deny the truthfulness of this statement

because he has insufficient information or knowledge. The Plaintiff-Intervenor has made

a reasonable inquiry and the information known and/or readily available to him is not

2

sufficient to enable him to admit or deny.

**REQUEST NO. 3:**

A true and complete copy of Endorsement No. 1 to Policy 873-87-52 is included in Exhibit A.

**RESPONSE NO. 3:**

The Plaintiff-Intervenor cannot admit or deny the truthfulness of this statement because he has insufficient information or knowledge. The Plaintiff-Intervenor has made a reasonable inquiry and the information known and/or readily available to him is not sufficient to enable him to admit or deny.

**REQUEST NO. 4:**

Policy 873-87-52 included "Endorsement No. 1".

**RESPONSE NO. 4:**

Admitted.

**REQUEST NO. 5:**

Policy 873-87-52 included "Endorsement No. 8".

**RESPONSE NO. 5:**

The Plaintiff-Intervenor cannot admit or deny the truthfulness of this statement because he has insufficient information or knowledge. The Plaintiff-Intervenor has made a reasonable inquiry and the information known and/or readily available to him is not sufficient to enable him to admit or deny.

**REQUEST NO. 6:**

A true and complete copy of Endorsement No. 8 to Policy 873-87-52 is included in Exhibit A.

3

**RESPONSE NO. 6:**

The Plaintiff-Intervenor cannot admit or deny the truthfulness of this statement because he has insufficient information or knowledge. The Plaintiff-Intervenor has made a reasonable inquiry and the information known and/or readily available to him is not sufficient to enable him to admit or deny.

**REQUEST NO. 7:**

National Union Fire Insurance Company of Pittsburgh, PA ("National Union") issued its Directors and Officers Insurance and Company Reimbursement Policy Number 473-16-30, with an effective date of August 4, 2000 to August 4, 2001 ("Policy 473-16-30") to MCHS.

**RESPONSE NO. 7:**

Admitted.

**REQUEST NO. 8:**

A true and complete copy of Policy 473-16-30 and Endorsements 1, 4, 5, 6 and 7 thereto is attached hereto as Exhibit "B".

**RESPONSE NO. 8:**

Denied.

**REQUEST NO. 9:**

Policy 473-16-30 included "Endorsement No. 1."

**RESPONSE NO. 9:**

Admitted.

**REQUEST NO. 10:**

A true and complete copy of Endorsement No. 1 to Policy 473-16-30 is included in Exhibit B.

4

**RESPONSE NO. 10:**

Denied.

**REQUEST NO. 11:**

Policy 473-16-30 included "Endorsement No. 5."

**RESPONSE NO. 11:**

Admitted.

**REQUEST NO. 12:**

A true and complete copy of Endorsement No. 5 to Policy 473-16-30 is included in Exhibit B.

**RESPONSE NO. 12:**

Admitted.

**REQUEST NO. 13:**

Policy 873-87-52 was a renewal of Policy 473-16-30.

**RESPONSE NO. 13:**

Admitted.

**REQUEST NO. 14:**

At the time that National Union issued Policy 873-87-52, MHCS was in Chapter 11 bankruptcy reorganization, in Case No. 01-1136.

**RESPONSE NO. 14:**

Admitted.

**REQUEST NO. 15:**

MHCS entered into an insurance premium financing agreement ("Financing Agreement") with Premium Assignment Corporation ("PAC") in order to pay the premiums for Policy 873-87-52.

5

**RESPONSE NO. 15:**

Admitted.

**REQUEST NO. 16:**

MHCS ("Debtor") moved the bankruptcy court for an order authorizing the Financing Agreement between Debtor and PAC.

**RESPONSE NO. 16:**

Admitted.

**REQUEST NO. 17:**

Debtor presented to the bankruptcy court that it was important "with respect to the Debtor's business activities and assets" to maintain insurance coverage, and that the Financing Agreement was "in the best of interests of the Debtor's estate and creditors."

**RESPONSE NO. 17:**

Admitted.

**REQUEST NO. 18:**

The bankruptcy court entered an order granting Debtor's motion to enter into the Financing Agreement with PAC.

**RESPONSE NO. 18:**

Admitted.

**REQUEST NO. 19:**

Funds from the MHCS bankruptcy estate were used to pay PAC under the Financing Agreement.

**RESPONSE NO. 19:**

Admitted.

6

**REQUEST NO. 20:**

After the MHCS bankruptcy case was converted from a Chapter 11 reorganization to a Chapter 7 liquidation, MHCS defaulted under the Financing Agreement.

**RESPONSE NO. 20:**

The Plaintiff-Intervenor cannot admit or deny the truthfulness of this statement because he has insufficient information or knowledge. The Plaintiff-Intervenor has made a reasonable inquiry and the information known and/or readily available to him is not sufficient to enable him to admit or deny.

**REQUEST NO. 21:**

Pursuant to the Financing Agreement, PAC had the right to cancel the policy upon default of payment premium.

**RESPONSE NO. 21:**

The Plaintiff-Intervenor cannot admit or deny the truthfulness of this statement because he has insufficient information or knowledge. The Plaintiff-Intervenor has made a reasonable inquiry and the information known and/or readily available to him is not sufficient to enable him to admit or deny.

**REQUEST NO. 22:**

PAC cancelled the policy based on default of payment of premium.

**RESPONSE NO. 22:**

The Plaintiff-Intervenor cannot admit or deny the truthfulness of this statement because he has insufficient information or knowledge. The Plaintiff-Intervenor has made a reasonable inquiry and the information known and/or readily available to him is not sufficient to enable him to admit or deny.

7

**REQUEST NO. 23:**

Policy 873-87-52 was cancelled for nonpayment before its expiration date of August 4, 2002.

**RESPONSE NO. 23:**

The Plaintiff-Intervenor cannot admit or deny the truthfulness of this statement

because he has insufficient information or knowledge. The Plaintiff-Intervenor has made

a reasonable inquiry and the information known and/or readily available to him is not

sufficient to enable him to admit or deny.

**REQUEST NO. 24:**

Policy 873-87-52 was cancelled before Heller filed its complaint against Ingoldsby, Mary Lee Ingoldsby, Pamela Jones ("Jones"), and Indy Edwards ("Edwards") in the United States District Court of the District of Massachusetts.

**RESPONSE NO. 24:**

The Plaintiff-Intervenor cannot admit or deny the truthfulness of this statement

because he has insufficient information or knowledge. The Plaintiff-Intervenor has made

a reasonable inquiry and the information known and/or readily available to him is not

sufficient to enable him to admit or deny.

**REQUEST NO. 25:**

Any proceeds that were, could have been, or could be paid under Policy 873-87-52 are proceeds of the MHCS bankruptcy estate.

**RESPONSE NO. 25:**

Denied.

**REQUEST NO. 26:**

Any proceeds were, could have been, or could be paid under Policy 873-87-52 are subject to the automatic stay under 11 U.S.C. § 362.

8

**RESPONSE NO. 26:**

Denied.

**REQUEST NO. 27:**

Jones never sought a lifting of the automatic stay prior to demanding insurance coverage under Policy 873-87-52 or at any time thereafter.

**RESPONSE NO. 27:**

Admitted.

**REQUEST NO. 28:**

Edwards never sought a lifting of the automatic stay prior to demanding insurance coverage under Policy 873-87-52 or at any time thereafter.

**RESPONSE NO. 28:**

Admitted.

**REQUEST NO. 29:**

Ingoldsby never sought a lifting of the automatic stay prior to demanding insurance coverage under Policy 873-87-52 or at any time thereafter.

**RESPONSE NO. 29:**

Admitted.

**REQUEST NO. 30:**

GE HFS never sought a lifting of the automatic stay before bringing this action as an assignee of Jones' the purported rights of Jones and Edwards under Policy 873-87-52.

**RESPONSE NO. 30:**

Admitted.

**REQUEST NO. 31:**

On or about March 25, 2002, Heller, MHCS, and MHCS's wholly-owned subsidiary, Medical Temporaries, Inc. entered unto a Settlement Agreement, pursuant

9

to which Heller released Ingoldsby, Jones and Edwards form all claims arising from the date thereof other than claims arising from the default under the DIP Loan Agreement.

**RESPONSE NO. 31:**

The Plaintiff-Intervenor cannot admit or deny the truthfulness of this statement because he has insufficient information or knowledge. The Plaintiff-Intervenor has made a reasonable inquiry and the information known and/or readily available to him is not sufficient to enable him to admit or deny.

**REQUEST NO. 32:**

On or about August 1, 2002, Heller filed complaint ("Heller Complaint") in the United States District Court for the District of Massachusetts against Ingoldsby, Mary Lee Ingoldsby, Jones and Edwards.

**RESPONSE NO. 32:**

Admitted.

**REQUEST NO. 33:**

The claims asserted in the Heller Complaint alleged, arose out of, were based upon or were attributable to an actual or alleged contractual liability of MHCS under the DIP Loan Agreement.

**RESPONSE NO. 33:**

Denied.

**REQUEST NO. 34:**

On or about December 13, 2002, Ingoldsby filed for bankruptcy under Chapter 7 ("Ingoldsby bankruptcy").

**RESPONSE NO. 34:**

Admitted.

**REQUEST NO. 35:**

In the Ingoldsby bankruptcy, on or about January 2, 2003, Ingoldsby filed his

10

Schedules and his Statement of Financial Affairs, under oath.

**RESPONSE NO. 35:**

Admitted.

**REQUEST NO. 36:**

In the Ingoldsby bankruptcy, in his Statement of Financial Affairs, Ingoldsby disclosed that he was a defendant in the Heller lawsuit.

**RESPONSE NO. 36:**

Admitted.

**REQUEST NO. 37:**

In the Ingoldsby bankruptcy, Ingoldsby stated in Schedule B that his Unum Provident disability insurance policy was his only "interests in insurance policies".

**RESPONSE NO. 37:**

Admitted.

**REQUEST NO. 38:**

In the Ingoldsby bankruptcy, Ingoldsby stated "None" when required to list "[o]ther contingent and unliquidated claims of every nature..."

**RESPONSE NO. 38:**

Admitted.

**REQUEST NO. 39:**

In the Ingoldsby bankruptcy, on or about April 18, 2003, Ingoldsby gave notice of filing the original signatures of his Schedules and Statement of Financial Affairs, originally filed on January 2, 2003, and again failed to claim any interest in Policy 873-87-52 or disclose any claim or cause of action against National Union.

**RESPONSE NO. 39:**

The Plaintiff-Intervenor admits that on or about April 18, 2003, he gave notice of

filing the original signatures of his Schedules and Statement of Affairs, originally filed

January 2, 2003 and denies the remainder of the requested admission.

**REQUEST NO. 40:**

Ingoldsby is judicially estopped from now asserting a claim for coverage against National Union.

**RESPONSE NO. 40:**

Denied.

Signed under the penalties of perjury this __17__ day of February, 2006.

Michael Ingoldsby

As to Objections,

Gregory J. Aceto
(BBO #558556)
JOHNSON & ACETO, P.C.
67 Batterymarch St., Suite 400
Boston, MA 02110
617-728-0888
fax 617-338-1923

13

EXHIBIT G

CONVERTED, CLOSED

**United States Bankruptcy Court**
**District of Massachusetts (Boston)**
**Bankruptcy Petition #: 01-11346**

*Assigned to:* Bankruptcy Judge Robert Somma
Chapter 7
Previous chapter 11
Voluntary
Asset

*Date Filed:* 02/23/2001
*Date Converted:* 03/20/2002
*Date Terminated:* 04/21/2006

**Managed Health Care Services, Inc.**
99 Derby St., Ste.300
Hingham, MA 02043
Tax id: 04-2840185
*Debtor*

represented by  Andrew G. Lizotte
Hanify & King, P. C.
Professional Corporation
One Beacon Street
Boston, MA 02108
(617) 423-0400
Fax : (617)556-8985
Email: pas@hanify.com

Harold B. Murphy
Hanify & King, P. C.
One Beacon Street
21st Floor
Boston, MA 02108
(617) 423-0400
Fax : (617)556-8985
Email: bankruptcy@hanify.com



Certified to be a true and
correct copy of the original
James M. Lynch, Clerk
U.S. Bankruptcy Court
District of Massachusetts
By: *Maurene Matteo*
Deputy Clerk
Date: *June 23, 2006*

Joseph G. Butler
Barron & Stadfield
~~100 Cambridge Street~~
Suite 1310
Boston, MA 02114
617-723-9800
*Trustee*

represented by  Joseph G. Butler
Barron & Stadfeld, P.C.
100 Cambridge Street
Suite 1310,
Boston, MA 02114
(617) 723-9800
Email: JGB@Barronstad.com

**Executive Suite, The**
c/o Jeffrey Moritz
426 North Street
Hyannis, MA 02601
(508) 778-7700
*Creditor Committee Chair*

**Official Committee of Unsecured Creditor**
*Creditor Committee*

represented by  Jonathan D. Yellin
Riemer and Braunstein
Three Center Plaza
Boston, MA 02108
(617) 523-9000

| Filing Date | # | Docket Text |
|---|---|---|
| 02/23/2001 | 1 | Voluntary Chapter 11 Petition ( Filing Fee $ 800.00) missing documents: All Schedules a-h Statement of Financial Affairs Disclosure of Aty Compensation Exhibit A 20 Largest Creditors Corporate Vote Due on 4:30 3/12/01 The Corporate Vote is Due on 3/5/01 (kpm) (Entered: 02/26/2001) |
| 02/23/2001 | 2 | Order to Update Petition. Incomplete Filing; missing documents: All Schedules a-h Statement of Financial Affairs Disclosure of Aty Compensation 20 Largest Creditors Exhibit |

|  |  | A ; Missing Documents Due 4:30 3/12/01 ; Corporate Vote 4:30 3/5/01 ; Matrix Due 4:30 2/28/01 (kpm) (Entered: 02/26/2001) |
|---|---|---|
| 02/26/2001 |  | First Meeting of Creditors scheduled For 1:15 3/28/01 At 10 Causeway Street, Room 1190 Notice to be mailed within two weeks. (lml) (Entered: 02/26/2001) |
| 02/28/2001 | 3 | Motion By Debtor For Emergency Hearing on Emergency Motion For Authorization To Pay Prepetition Wages, Salaries, Expenses And Benefits . (ndl) (Entered: 02/28/2001) |
| 02/28/2001 | 4 | Notice of Appearance And Request For Service Of Notice By Michael R. Coppock for Donald G. Foster. c/s (sja) (Entered: 03/01/2001) |
| 02/28/2001 | 5 | List of 20 largest creditors filed. (mnd) (Entered: 03/01/2001) |
| 02/28/2001 | 6 | Corporate Vote filed by Debtor Managed Health Care Services, Inc.. (mnd) (Entered: 03/01/2001) |
| 02/28/2001 |  | Matrix. (mnd) (Entered: 03/01/2001) |
| 03/01/2001 | 7 | Emergency Motion Of Debtor In Possession For Interim and Final Orders Authorizing Post Petition Financing Under Sections 363 and 364; Granting Liens, Security Interests, Super-Priority Claims And For Adequate Protection Thereof , And Order Scheduling Final Hearing RE: (Motion [7-1]For Interim And Final Orders Authorizing Post Petition Financing and [7-2] Granting Liens, Security Interests, Super-Priority Claims ) , And For Approving Notice Thereof. (mnd) (Entered: 03/01/2001) |
| 03/01/2001 | 8 | Debtor's Motion for Emergency Hearing Re: [7-1] Motion For Interim and Final Orders Authorizing Post Petition Secured Financing On Super Priority Basis and [7-3] Order Granting Adequate Protection Thereof and Order Scheduling Final Hearing. Inc.. (mnd) (Entered: 03/01/2001) |
| 03/01/2001 | 9 | Certificate Of Service By Alex M. Rodolakis for Debtor Of [3-1] Motion For Emergency Hearing [3-2] Motion Emergency Motion For Authorization To Pay Prepetition Salaries, Expenses And Benefits [7-1] Motion For Interim and Final Orders Authorizing Post Petition Financing Under Sections 363 and 364; , [7-2] Motion Granting Liens, Security Interests, Super-Priority Claims , [7-3] Motion For Adequate Protection Thereof , [7-4] Motion for Order Scheduling Final Hearing [7-5] Motion For Approving Notice Thereof and [8-1] Motion Emergency Hearing. (mnd) (Entered: 03/01/2001) |
| 03/01/2001 | 10 | ENDORSEMENT ORDER: Granting [8-1] Motion Emergency Hearing by Managed Health Care Services, Inc. . ALLOWED. (ak) (Entered: 03/01/2001) |
| 03/01/2001 | 11 | Emergency Motion by Debtor For Authorization To Pay Pre-Petition Wages, Salaries, Expenses and Benefits. *Filed in open court 3/1/01. (mnd) (Entered: 03/01/2001) |
| 03/01/2001 | 12 | ORDER: RE: [7-1] Motion For Interim and Final Orders Authorizing Post Petition Financing Under Sections 363 and 364; by Managed Health Care Services, Inc. and [7-2] Granting Liens, Security Interests, Super-Priority Claims and [7-3] For Adequate Protection Thereof . THE DEBTOR IS HEREBY AUTHORIZED TO ENTER INTO THE DIP LOAN AGREEMENT WITH HELLER HEALTH CARE FINANCE, INC. (HHF) HELLER IS HEREBY AUTHORIZED TO MAKE THE ADVANCES IN ACCORDANCE THEREWITH. SEE ORDER FOR COMPLETE TEXT. (mnd) (Entered: 03/01/2001) |
| 03/01/2001 | 13 | Notice of Emergency Hearing by Alex M. Rodolakis for Debtor RE: [7-1] Motion For Interim and Final Orders Authorizing Post Petition Financing Under Sections 363 and 364; [7-2] Granting Liens, Security Interests, Super-Priority Claims [7-3] Order Granting Adequate Protection Thereof [7-4] Order Scheduling Final Hearing and [3-2] Emergency Motion For Authorization To Pay Prepetition Wages, Salaries, Expenses And Benefits by |

| | | |
|---|---|---|
| | | Debtor. (mnd) (Entered: 03/02/2001) |
| 03/01/2001 | 14 | ENDORSEMENT ORDER: Granting [3-1] Motion For Emergency Hearing by Managed Health Care Services, Inc. . MO. FOR HEARING IS ALLOWED. (mnd) (Entered: 03/02/2001) |
| 03/01/2001 | | Hearing Held Re: [11-1] Motion For Authorization To Pay Pre-Petition Wages, Salaries, Expenses and Benefits. by Managed Health Care Services, Inc., [3-2] Motion Emergency Motion For Authorization To Pay Prepetition Wages, Salaries, Expenses And Benefits by Managed Health Care Services, Inc. . HEARING HELD. SEE ORDER DATED 3/1/01 FOR COMPLETE TEXT. (mnd) (Entered: 03/02/2001) |
| 03/01/2001 | 15 | KENNER J. ORDER: RE: [11-1] Motion For Authorization To Pay Pre-Petition Wages, Salaries, Expenses and Benefits. by Managed Health Care Services, Inc. . HEARING HELD. MISS EDWARDS MAY NOT BE PAID ANY MORE THAN $4300 ON ACCOUNT OF PRE-PETITION WAGES. THE DEBTOR SHALL FILE A SUPPLEMENTAL SCHEDULE, SHOWING THE AMOUNTS PAYABLE TO EMPLOYEES OTHER THAN FOR WAGES, BY MARCH 5, 2001 AT 4:00 P.M.. THE DEBTOR IS NOT AUTHORIZED TO MAKE ANY PAYMENTS TO, OR ON BEHALF OF, MICHAEL AND MARY LEE INGOLDSBY WITHOUT PRIOR COURT AUTHORITY. THE MOTION IS OTHERWISE ALLOWED UP TO THE 4300 CAP PER EMPLOYEE. (mnd) (Entered: 03/02/2001) |
| 03/01/2001 | | Hearing Held Re: [7-1] Motion For Interim and Final Orders Authorizing Post Petition Financing Under Sections 363 and 364; [7-2] Granting Liens, Security Interests, Super-Priority Claims [7-3] For Adequate Protection Thereof HEARING HELD. SEE ORDER DATED 3/1/01 FOR COMPLETE TEXT. (mnd) (Entered: 03/02/2001) |
| 03/01/2001 | 16 | KENNER J. ORDER: [7-1] Motion For Interim and Final Orders Authorizing Post Petition Financing Under Sections 363 and 364; [7-2] Motion Granting Liens, Security Interests, Super-Priority Claims and [7-3] For Adequate Protection Thereof . HEARING HELD. MOTION IS ALLOWED SUBJECT TO PROVISOS; 1) ANY CHALLANGE TO AMOUNT OR VALIDITY OF HELLER'S POSITION MUST BE FILED ON OR BEFORE MAY 30, 2001 BY 4:00 P.M.; AND 2) PAYMENT OF $6800 TO HICVA IS AUTHORIZED AS AN ORDINARY COURSE OF BUSINESS EXPENSE. (mnd) (Entered: 03/02/2001) |
| 03/07/2001 | 21 | Application By Debtor To Employ Harold B. Murphy And Hanify & King, P.C. with affidavit. (sja) (Entered: 03/08/2001) |
| 03/07/2001 | 22 | Motion By Debtor To Reject Severance Contract (Nunc Pro Tunc Relief Requested) . (sja) (Entered: 03/08/2001) |
| 03/07/2001 | 23 | Motion By Debtor To Extend Time To File Schedules And Statement Of Financial Affiars. (Request for Expedited Determination). (Extend To 3/16/01) . (sja) (Entered: 03/08/2001) |
| 03/07/2001 | 24 | Certificate Of Service By Alex M. Rodolakis for Debtor Of [23-1] Motion To Extend Time To File Schedules And Statement Of Financial Affiars, [22-1] Motion To Reject Severance Contract (Nunc Pro Tunc Relief Requested), [21-1] Application To Employ by Harold B. Murphy. (sja) (Entered: 03/08/2001) |
| 03/08/2001 | 17 | Imaged Certificate of Mailing. (auto) (Entered: 03/08/2001) |
| 03/08/2001 | 18 | Imaged Certificate of Mailing. (auto) (Entered: 03/08/2001) |
| 03/08/2001 | 19 | Imaged Certificate of Mailing. (auto) (Entered: 03/08/2001) |
| 03/08/2001 | 20 | Imaged Certificate of Mailing. (auto) (Entered: 03/08/2001) |

`L`

| 03/08/2001 | | Final Hearing Re: Debtor's [7-1] Motion For Interim and Final Orders Authorizing Post Petition Financing Under Sections 363 and 364; [7-2] Order Granting Liens, Security Interests, Super-Priority Claims [7-3] Motion For Adequate Protection Thereof, OBJECTIONS DUE 3/22/01 BY 4:00 P.M., FINAL HEARING SCHEDULED FOR 3/29/01 AT 10:00 A.M. COURTROOM 4, BOSTON, MA (mnd) (Entered: 03/08/2001) |
|---|---|---|
| 03/08/2001 | 25 | Supplement To Emergency [11-1] Motion For Authorization To Pay Pre-Petition Wages, Salaries, Expenses and Benefits By Debtor. C/S (ndl) (Entered: 03/08/2001) |
| 03/08/2001 | 26 | ENDORSEMENT ORDER: [23-1] Motion To Extend Time To File Schedules And Statement Of Financial Affiars. (Request for Expedited Determination). (Extend To 3/16/01) by Debtor. Missing Documents due: 3/16/01 by 4:00 p.m. . (sja) (Entered: 03/09/2001) |
| 03/12/2001 | 27 | First Meeting Certificate of Mailing. (auto) (Entered: 03/12/2001) |
| 03/13/2001 | 36 | Request by Creditor IOS Capital, Inc. For Notice. (ak) (Entered: 03/19/2001) |
| 03/14/2001 | 28 | Notice of Appearance And Request For Service Of Notice By Jeffrey M. Frankel for Creditor Mary Lee Ingoldsby, Creditor Michael Ingoldsby. (ma) (Entered: 03/14/2001) |
| 03/14/2001 | 29 | Notice of Entry of Interim Order, Date of Final Hearing and Deadline for Filing Objections fild by Alex M. Rodolakis for Debtor RE: [12-1] Interim Order RE: [7-1] Motion For Interim and Final Orders Authorizing Post Petition Financing Under Sections 363 and 364; by Managed Health Care Services, Inc. and [7-2] Granting Liens, Security Interests, Claims and [7-3] For Adequate Protection Thereof, [0-0] OBJECTIONS DUE 3/22/01 BY 4:00 P.M., FINAL HEARING SCHEDULED FOR 3/29/01 AT 10:00 A.M. COURTROOM 4, BOSTON, MA. C/S. (mnd) (Entered: 03/16/2001) |
| 03/14/2001 | 30 | (DISREGARD THIS ENTRY, DUPLICATE ENTRY OF DOCUMENT #29) Notice of Entry of Interim [12-1] Order, Date for Final Hearing and Deadline for Filing Objections by Alex M. Rodolakis for Debtor RE: [7-1] Motion For Interim and Final Orders Authorizing Post Petition Financing Under Sections 363 and 364; by Managed Health Care Services, Inc. and [7-2] Granting Liens, Security Interests, Claims and [7-3] For Adequate Protection Thereof, [0-0] and OBJECTIONS DUE 3/22/01 BY 4:00 P.M., FINAL HEARING SCHEDULED FOR 3/29/01 AT 10:00 A.M. COURTROOM 4, BOSTON, MA. C/S attached (mnd) (Entered: 03/16/2001) |
| 03/16/2001 | 31 | Application By Debtor To Employ Craig R. Jalbert and the Firm Of Verdolino & Lowey, P.C. as Accountants with Affidavit. c/s (sja) (Entered: 03/19/2001) |
| 03/16/2001 | 32 | Appointment Of An Official Committee Of Unsecured Creditors. C/S Attached. (ymw) (Entered: 03/19/2001) |
| 03/16/2001 | 33 | ENDORSEMENT ORDER: Granting [21-1] Application To Employ Harold B. Murphy And Hanify & King, P.C. by Managed Health Care Services, Inc. . NO OBJECTIONS FILED. ALLOWED. (ak) (Entered: 03/19/2001) |
| 03/16/2001 | 34 | Schedules A-H (ak) (Entered: 03/19/2001) |
| 03/19/2001 | 35 | Statement of Financial Affairs. (ak) (Entered: 03/19/2001) |
| 03/20/2001 | 37 | ENDORSEMENT ORDER: Granting [22-1] Motion To Reject Severance Contract (Nunc Pro Tunc Relief Requested) by Managed Health Care Services, Inc. . NO OBJECTIONS FILED. ALLOWED. (ak) (Entered: 03/21/2001) |
| 03/20/2001 | 38 | Notice of Appearance And Request For Service Of Notice By Russell Beck, Esq., David B. Tatge, Esq., Dwight Meier, Esq. for Creditor Heller Healthcare Finance. c/s. (ak) (Entered: |

| | | 03/22/2001 |
|---|---|---|
| 03/21/2001 | | Amended Matrix. (mnd) (Entered: 03/23/2001) |
| 03/22/2001 | 39 | Objection Of The Official Committee of Unsecured Creditors To Emergency [7-1] Motion For Interim and Final Orders Authorizing Post Petition Financing Under Sections 363 and 364; Granting [7-2] Liens, Security Interests, Super-Priority Claims And [7-3] For Adequate Protection Thereof by Managed Health Care Services, Inc. . C/S attached. (mnd) (Entered: 03/23/2001) |
| 03/23/2001 | 40 | Transcript of Hearing Held on 3/1/01 [7-1] Motion For Interim and Final Orders Authorizing Post Petition Financing Under Sections 363 and 364; [7-2] Motion Granting Liens, Security Interests, Super-Priority Claims and [7-3] Motion For Adequate Protection Thereof by Managed Health Care Services, Inc. Court Reporter: Mary Artesani. (And in Case 01-11347 Medical Temporaries) (mnd) (Entered: 03/27/2001) |
| 03/27/2001 | 42 | Notice of Appearance And Request For Service Of Notice By Mark G. DeGiacomo for Creditor Heller Healthcare Finance. c/s. (ak) (Entered: 03/28/2001) |
| 03/28/2001 | 41 | Imaged Certificate of Mailing. (auto) (Entered: 03/28/2001) |
| 03/28/2001 | 45 | Application By Creditor Committee Official Committee of Unsecured Creditor To Employ Counsel ( Jonathan Yellin ) . c/s. (ak) (Entered: 03/30/2001) |
| 03/28/2001 | 46 | Verified statement of Jonathan D. Yellin pursuant to Bankruptcy Rule 2014 (A) regarding [45-1] Application To Employ Counsel ( Jonathan Yellin ) by Official Committee of Unsecured Creditor (ak) (Entered: 03/30/2001) |
| 03/29/2001 | | Hearing Held Re: [7-1] Motion For Interim and Final Orders Authorizing Post Petition Financing Under Sections 363 and 364;, [7-2] Granting Liens, Security Interests, Super-Priority Claims and [7-3] For Adequate Protection Thereof. (mnd) (Entered: 03/30/2001) |
| 03/29/2001 | 43 | KENNER J. ORDER: Regarding [7-1] Motion For Interim and Final Orders Authorizing Post Petition Financing Under Sections 363 and 364; and [7-2] Granting Liens, Security Interests, Super-Priority Claims and [7-3] For Adequate Protection Thereof by Managed Health Care Services, Inc. . HEARING HELD. SEE STIPULATION AND FINAL ORDER, WHICH WERE SUBMITTED IN COURT. (mnd) (Entered: 03/30/2001) |
| 03/29/2001 | 44 | KENNER J. STIPULATION AND FINAL ORDER (A) AUTHORIZING DEBTORS TO OBTAIN Post Petition Financing Under Sections 363 and 364 Of The Bankruptcy Code (B) Granting [7-2] Liens, Security Interests, Super-Priority Claims and [7-3] Adequate Protection Thereof and Approving Notice Thereof. SEE STIPULATION AND FINAL ORDER FOR COMPLETE TEXT. (mnd) (Entered: 03/30/2001) |
| 04/02/2001 | 47 | Notice of Added Creditors by the Court re: Amended Matrix [0-0] First meeting scheduled for 3/28/01. (mnd) (Entered: 04/02/2001) |
| 04/02/2001 | 48 | ENDORSEMENT ORDER: Granting [45-1] Application To Employ Counsel (Jonathan Yellin) by Official Committee of Unsecured Creditor . ALLOWED. (ak) (Entered: 04/03/2001) |
| 04/04/2001 | 49 | ENDORSEMENT ORDER: Granting [31-1] Application To Employ Craig R. Jalbert and the Firm Of Verdolino & Lowey, P.C. as Accountants by Managed Health Care Services, Inc. . ALLOWED. (ak) (Entered: 04/04/2001) |
| 04/05/2001 | 50 | Courts Certificate of Mailing Re: Added Creditors Notice [47-1] (auto) (Entered: 04/05/2001) |

LJ

| 04/06/2001 | 51 | Imaged Certificate of Mailing. (auto) (Entered: 04/06/2001) |
|---|---|---|
| 04/08/2001 | 52 | Imaged Certificate of Mailing. (auto) (Entered: 04/08/2001) |
| 04/12/2001 | 53 | Debtor's Motion To Extend Time The Deadline Within Which To Assume or Reject Leases Of Nonresidential Real Property . (ndl) (Entered: 04/12/2001) |
| 04/12/2001 | 54 | Motion By Debtor Pursuant To MLBR 6006-1, For Emergency Hearing On Debtor's [53-1] Motion To Extend The Deadline Within Which To Assume or Reject Leases Of Nonresidential Real Property . (ndl) (Entered: 04/12/2001) |
| 04/12/2001 | 55 | Certificate Of Service By Alex M. Rodolakis for Debtor of [53-1] Motion To Extend Time The Deadline Within Which To Assume or Reject Leases Of Nonresidential Real Property by Managed Health Care Services, Inc., [54-1] Motion For Emergency Hearing On Debtor's [53-1] Motion To Extend The Deadline Within Which To Assume or Reject Leases Of Nonresidential Real Property by Managed Health Care Services, Inc. (ndl) (Entered: 04/12/2001) |
| 04/12/2001 | 56 | Debtor's Motion To Reject Lease Of Non-Residential Real Property (1247 Belmont Street, Brockton, Massachusetts) . C/S (ndl) (Entered: 04/12/2001) |
| 04/13/2001 | 57 | ENDORSEMENT ORDER: Granting [54-1] Motion For Emergency Hearing On Debtor's [53-1] Motion To Extend The Deadline Within Which To Assume or Reject Leases Of Nonresidential Real Property . ALLOWED (mnd) (Entered: 04/16/2001) |
| 04/19/2001 | 58 | Imaged Certificate of Mailing. (auto) (Entered: 04/19/2001) |
| 04/23/2001 | 60 | ENDORSEMENT ORDER: Granting [53-1] Motion To Extend Time The Deadline Within Which To Assume or Reject Leases Of Nonresidential Real Property by Managed Health Care Services, Inc. . NO OBJECTION. ALLOWED. THE DEADLINE FOR ASSUMPTION OR REJECTION IS HEREBY EXTENDED TO JULY 23, 2001. (mnd) (Entered: 04/24/2001) |
| 04/24/2001 | 59 | Imaged Certificate of Mailing. (auto) (Entered: 04/24/2001) |
| 04/27/2001 | 61 | Imaged Certificate of Mailing. (auto) (Entered: 04/27/2001) |
| 04/27/2001 | 62 | Motion of Donald G. Foster to Modify the Automatic Stay (to permit liquidation of claim in Plymouth County Superior Court CV#96-0245) . Response due May 8, 2001. (ak) (Entered: 04/27/2001) |
| 04/27/2001 | 63 | Affidavit by Michael R. Coppock In Support of Motion of Donald G. Foster, regarding [62-1] Motion to Modify the Automatic Stay. Exhibits A-D attached. (ak) (Entered: 04/27/2001) |
| 04/27/2001 | 64 | Certificate Of Service By Michael R. Coppock for Creditor Donald G. Foster, Re: [63-1] Affidavit by Michael R. Coppock, and [62-1] Motion to Modify the Automatic Stay (to permit liquidation of claim in Superior Court CV#96-0245) by Donald G. Foster . (ak) (Entered: 04/27/2001) |
| 04/27/2001 | 65 | ENDORSEMENT ORDER: Granting Debtor's [56-1] Motion To Reject Lease Of Non-Residential Real Property (1247 Belmont Street, Brockton, Massachusetts) . NO OPPOSITION FILED. ALLOWED. (ak) (Entered: 04/30/2001) |
| 05/01/2001 | 66 | Notice of Appearance And Request For Service Of Notice By Debbie L. Grass for Creditor American Express Travel Related Services. (ma) (Entered: 05/02/2001) |

| 05/03/2001 | 67 | Imaged Certificate of Mailing. (auto) (Entered: 05/03/2001) |
|---|---|---|
| 05/07/2001 | 68 | Application By Debtor To Employ R. And A. Associates as Collection Consultant. Affidavit of of Ronald Wood Attached. C/S (mnd) (Entered: 05/07/2001) |
| 05/08/2001 | 69 | Opposition of Managed Health Care Services, Inc. To [62-1] Motion to Modify the Automatic Stay (to permit liquidation of claim in Plymouth County Superior Court CV#96-0245) by Donald G. Foster. *Affidavit of Gregory J. Aceto and C/S attached. (mnd) (Entered: 05/09/2001) |
| 05/09/2001 | | Hearing Re: [62-1] Motion to Modify the Automatic Stay (to permit liquidation of claim in Plymouth County Superior Court CV#96-0245) by Donald G. Foster schd For 11:00 5/23/01 at Courtroom 4, (ma) (Entered: 05/09/2001) |
| 05/09/2001 | 70 | Opposition Of The Official Committee of Unsecured Creditors To [62-1] Motion of Donald Foster to Modify the Automatic Stay (to permit liquidation of claim in Plymouth County Superior Court CV#96-0245) by Donald G. Foster. C/S. (mnd) (Entered: 05/09/2001) |
| 05/14/2001 | 71 | Certificate Of Service By Creditor Donald G. Foster Of [0-0] Hearing [62-1] Motion to Modify the Automatic Stay (to permit liquidation of claim in Plymouth County Superior Court CV#96-0245) by Donald G. Foster schd For 11:00 5/23/01 at Courtroom 4, . (mnd) (Entered: 05/14/2001) |
| 05/23/2001 | 72 | KENNER, J. ORDER: Regarding [62-1] Motion to Modify the Automatic Stay (to permit liquidation of claim in Plymouth County Superior Court CV#96-0245) by Donald G. Foster . HEARING HELD. SEE STIPULATION AND ORDER W/RESPECT TO SOME OF THE ISSUES. THE COURT TOOK UNDER ADVISEMENT THE ISSUE OF FOSTER'S STOCK CANCELLATION CLAIM. (ndl) (Entered: 05/24/2001) |
| 05/23/2001 | | Hearing Held Re: [62-1] Motion to Modify the Automatic Stay (to permit liquidation of claim in Plymouth County Superior Court CV#96-0245) by Donald G. Foster . *See Order [72-1]. (ndl) (Entered: 05/24/2001) |
| 05/23/2001 | 73 | KENNER, J. Order and Stipulation By Creditor Donald G. Foster, Creditor Committee Official Committee of Unsecured Creditor, Debtor Managed Health Care Services, Inc. Regarding [62-1] Motion to Modify the Automatic Stay (to permit liquidation of claim in Plymouth County Superior Court CV#96-0245) by Donald G. Foster (ak) (Entered: 05/25/2001) |
| 05/28/2001 | 74 | Imaged Certificate of Mailing. (auto) (Entered: 05/28/2001) |
| 05/29/2001 | 75 | Kenner, J. Memorandum Of Decision Re: [62-1] Motion to Modify the Automatic Stay (to permit liquidation of claim in Plymouth County Superior Court CV#96-0245) by Donald G. Foster A SEPARATE ORDER WILL ENTER DENYING THE MOTION. SEE MEMORANDUM DOC. # 75 FOR COMPLETE TEXT. (mcm) (Entered: 05/30/2001) |
| 05/29/2001 | 76 | Kenner, J. ORDER: Denying [62-1] Motion to Modify the Automatic Stay (to permit liquidation of claim in Plymouth County Superior Court CV#96-0245) by Donald G. Foster . FOR THE REASONS SET FORTH IN THE SEPARATE MEMORANDUM OF DECISION ISSUED TODAY, THE MOTION OF DONALD G. FOSTER TO MODIFY THE AUTOMATIC STAY IS HEREBY DENIED. (mcm) (Entered: 05/30/2001) |
| 06/05/2001 | 77 | ENDORSEMENT ORDER: Granting [68-1] Application To Employ R. And A. Associates as Collection Consultant. by Managed Health Care Services, Inc. . NO OBJECTIONS FILED. ALLOWED. (mnd) (Entered: 06/06/2001) |
| 06/22/2001 | 78 | Motion By Debtor Managed Health Care Services, Inc. To Extend The Exclusive Periods For Filing and Soliciting Votes for A Plan. C/S. (mnd) (Entered: 06/26/2001) |

| 07/10/2001 | 79 | Application By Debtor To Employ Edwards & Angell, LLP As Special HealthCare Regulatory Counsel to The Debtor . *Affidavit of Madeleine A. Estabrook in Support of Application and C/S attached. (mnd) (Entered: 07/11/2001) |
|---|---|---|
| 07/10/2001 | 80 | ENDORSEMENT ORDER: Granting [78-1] Motion To Extend The Exclusive Periods For Filing and Soliciting Votes for A Plan. by Managed Health Care Services, Inc. . NO OBJECTIONS FILED. ALLOWED. (mnd) (Entered: 07/13/2001) |
| 07/16/2001 | 81 | Imaged Certificate of Mailing. (auto) (Entered: 07/16/2001) |
| 07/17/2001 | 82 | Debtor's Second Motion To Extend The Deadline Within Which to Assume or Reject Leases of Non-Residential Real Property . (mnd) (Entered: 07/17/2001) |
| 07/17/2001 | 83 | Motion By Debtor Pursuant To MLBR 6006-1, For Emergency Hearing On Debtor's [82-1] Motion To Extend The Deadline Within Which to Assume or Reject Leases of Non-Residential Real Property . (mnd) (Entered: 07/17/2001) |
| 07/17/2001 | 84 | Certificate Of Service By Debtor Of [83-1] Motion Pursuant To MLBR 6006-1, For Emergency Hearing On Debtor's [82-1] Motion To Extend The Deadline Within Which to Assume or Reject Leases of Non-Residential Real Property by Managed Health Care Services, Inc.. (mnd) (Entered: 07/17/2001) |
| 07/17/2001 | 89 | ENDORSEMENT ORDER: Regarding [83-1] Motion Pursuant To MLBR 6006-1, For Emergency Hearing On Debtor's [82-1] Motion To Extend The Deadline Within Which to Assume or Reject Leases of Non-Residential Real Property by Managed Health Care Services, Inc. . THE TIME IS EXTENDED UNTIL THE COURT RULES ON THIS MOTION. (mnd) (Entered: 08/02/2001) |
| 07/19/2001 | 85 | Motion by Debtor For Order Authorizing The Debtor To Enter Into Insurance Premium Financing Agreement. Exhibit A and C/S attached. (mnd) (Entered: 07/20/2001) |
| 07/20/2001 | 86 | ENDORSEMENT ORDER: Granting [79-1] Application To Employ Edwards & Angell, LLP As Special HealthCare Regulatory Counsel to The Debtor by Managed Health Care Services, Inc. . ALLOWED. (mnd) (Entered: 07/23/2001) |
| 07/26/2001 | 87 | Imaged Certificate of Mailing. (auto) (Entered: 07/26/2001) |
| 07/31/2001 | 88 | ENDORSEMENT ORDER: Granting [85-1] Motion For Order Authorizing The Debtor To Enter Into Insurance Premium Financing Agreement. by Managed Health Care Services, Inc. . ALLOWED. (mnd) (Entered: 08/01/2001) |
| 08/02/2001 | 90 | ENDORSEMENT ORDER: Granting [82-1] Motion To Extend The Deadline Within Which to Assume or Reject Leases of Non-Residential Real Property by Managed Health Care Services, Inc. . NO OBJ. FILED. ALLOWED. (mnd) (Entered: 08/02/2001) |
| 08/04/2001 | 91 | Imaged Certificate of Mailing. (auto) (Entered: 08/04/2001) |
| 08/05/2001 | 92 | Imaged Certificate of Mailing. (auto) (Entered: 08/05/2001) |
| 08/05/2001 | 93 | Imaged Certificate of Mailing. (auto) (Entered: 08/05/2001) |
| 08/14/2001 | 94 | Second Motion by Debtor For Order Authorizing The Debtor To Enter Into Insurance Premium Financing Agreement. Exhibit A and C/S attached. (mnd) (Entered: 08/15/2001) |
| 08/29/2001 | 95 | ENDORSEMENT ORDER: Granting [94-1] Motion For Order Authorizing The Debtor To Enter Into Insurance Premium Financing Agreement. NO OBJECTIONS. ALLOWED. |

| | | (mnd) (Entered: 08/29/2001) |
|---|---|---|
| 09/02/2001 | 96 | Imaged Certificate of Mailing. (auto) (Entered: 09/02/2001) |
| 09/13/2001 | 97 | Third Motion By Debtor Managed Health Care Services, Inc. To Extend The Deadline Within Which To Assume Or Reject Leases Of Nonresidential Real Property (To 9/21/01) . Exhibit A Attached. (ymw) (Entered: 09/13/2001) |
| 09/13/2001 | 98 | Motion, Pursuant To MLBR 6006-1, By Harold B. Murphy For Debtor Managed Health Care Services, Inc. For Emergency Hearing On [97-1] Third To Extend The Deadline Within Which To Assume Or Reject Leases Of Nonresidential Real Property (To 9/21/01) By Managed Health Care Services, Inc. . (ymw) (Entered: 09/13/2001) |
| 09/13/2001 | 99 | Certificate Of Service By Alex M. Rodolakis For Managed Heath Care Services RE: [97-1] Motion To Extend The Deadline Within Which To Assume Or Reject Leases Of Nonresidential Real Property (To 9/21/01) By Managed Health Care Services, Inc. And [98-1] Motion, Pursuant To MLBR 6006-1, For Emergency Hearing On Debtor's Third Motion To Extend The Deadline Within Which To Assume Or Reject Leases Of Nonresidential Real Property By Harold B. Murphy. (ymw) (Entered: 09/13/2001) |
| 09/13/2001 | 100 | ENDORSEMENT ORDER: Regarding [98-1] Motion For Emergency Hearing On [97-1] Third To Extend The Deadline Within Which To Assume Or Reject Leases Of Nonresidential Real Property (To 9/21/01) By Managed Health Care Services, Inc. by Harold B. Murphy . THE TIME TO ASSUME/REJECT IS EXTENDED TO THE DATE THE COURT RULES ON THE MOTION. (mnd) (Entered: 09/14/2001) |
| 09/17/2001 | 101 | Imaged Certificate of Mailing. (auto) (Entered: 09/17/2001) |
| 09/27/2001 | 102 | ENDORSEMENT ORDER: RE: [97-1] Motion To Extend The Deadline Within Which To Assume Or Reject Leases Of Nonresidential Real Property (To 9/21/01) . NO OBJECTIONS FILED. ALLOWED. THE DEADLINE IS EXTENDED TO DECEMBER 20, 2001 AT 4 P.M.. (mnd) (Entered: 09/27/2001) |
| 10/01/2001 | 103 | Imaged Certificate of Mailing. (auto) (Entered: 10/01/2001) |
| 10/29/2001 | 104 | First Interim Application Of The Law Firm of Riemer & Braunstein LLP For Compensation and Reimbursement of Expenses as Counsel to The Official Unsecured Creditors Committee. C/S. . (mnd) (Entered: 10/30/2001) |
| 11/02/2001 | 105 | United States Trustee's Statement Regarding [104-1] First Interim Fee Application Submitted by Creditors' Committee Counsel. C/S. (mnd) (Entered: 11/02/2001) |
| 11/02/2001 | 106 | Stipulation by and between Debtor and Mass. Group Operating Group, Inc., and Heller Healthcare Finance, Inc. Regarding Post-Petition Rent. c/s. (mnd) (Entered: 11/02/2001) |
| 11/02/2001 | 107 | Motion By Debtor To (1) Approve [106-1] Stipulation Resolving Motion to Establish Super Priority Landlord Claim And Limit Notice Thereon. C/S. (mnd) (Entered: 11/02/2001) |
| 11/07/2001 | | Hearing Re: [104-1] Application For Compensation and Reimbursement of Expenses as Counsel to The Official Unsecured Creditors Committee. by Jonathan D. Yellin For 10:15 12/11/01 at Courtroom 4, (ma) (Entered: 11/07/2001) |
| 11/13/2001 | 108 | United States Trustee's Statement Regarding Status Conference. c/s (ak) (Entered: 11/13/2001) |
| 11/14/2001 | 109 | Notice of Non-Evidentiary Hearing Jonathan D. Yellin RE: [0-0] Hearing [104-1] |

| | | |
|---|---|---|
| | | Application For Compensation and Reimbursement of Expenses as Counsel to The Official Unsecured Creditors Committee at 10:15 12/11/01 at Courtroom 4. (mnd) (Entered: 11/16/2001) |
| 12/06/2001 | 110 | ENDORSEMENT ORDER: Granting [107-2] Motion Limit Notice Thereon. by Managed Health Care Services, Inc. Granting [107-1] Motion To (1) Approve [106-1] Stipulation Resolving Motion to Establish Super Priority Landlord Claim by Managed Health Care Services, Inc. . NO OBJECTION FILED. MO. TO APPROVE STIP IS ALLOWED. MO. TO LIMIT NOTICE IS ALLOWED. (mcm) (Entered: 12/07/2001) |
| 12/11/2001 | 111 | ENDORSEMENT ORDER: RE: [104-1] Application For Compensation and Reimbursement of Expenses as Counsel to The Official Unsecured Creditors Committee. by Jonathan D. Yellin . INTERIM FEES OF $10,000 AND EXPENSES OF $358.65 ARE ALLOWED. (mnd) (Entered: 12/12/2001) |
| 12/11/2001 | | Hearing Held Re: [104-1] Application For Compensation and Reimbursement of Expenses as Counsel to The Official Unsecured Creditors Committee. by Jonathan D. Yellin . (mnd) (Entered: 12/12/2001) |
| 12/11/2001 | 112 | Kenner J. ORDER: Regarding [104-1] Application For Compensation and Reimbursement of Expenses as Counsel to The Official Unsecured Creditors Committee. by Jonathan D. Yellin . HEARING HELD. THE COURT ALLOWED INTERIM COMPENSATION IN THE AMOUNT OF $10,000.00 AND EXPENSES IN THE AMOUNT OF $358.65. (mnd) (Entered: 12/12/2001) |
| 12/15/2001 | 113 | Imaged Certificate of Mailing. (auto) (Entered: 12/15/2001) |
| 12/15/2001 | 114 | Imaged Certificate of Mailing. (auto) (Entered: 12/15/2001) |
| 12/17/2001 | 115 | Debtor's Fourth Motion To Extend Time The Deadline Within Which to Assume or Reject Leases Of Non-Residential Real Property . (mnd) (Entered: 12/17/2001) |
| 12/17/2001 | 116 | Debtor's Motion, Pursuant to MLBR 6006-1, For Emergency Hearing On ( [115-1] Motion To Extend Time The Deadline Within Which to Assume or Reject Leases Of Non-Residential Real Property) . (mnd) (Entered: 12/17/2001) |
| 12/17/2001 | 117 | Certificate Of Service By Debtor Managed Health Care Services, Inc. Of [116-1] Motion For Emergency Hearing and [115-1] Motion To Extend Time The Deadline Within Which to Assume or Reject Leases Of Non-Residential Real Property). (mnd) (Entered: 12/17/2001) |
| 12/18/2001 | 118 | ENDORSEMENT ORDER: RE: [116-1] Motion For Emergency Hearing On ( [115-1] Motion To Extend Time The Deadline Within Which to Assume or Reject Leases Of Non-Residential Real Property) . THE DEADLINE TO ASSUME/REJECT IS EXTENDED TO THE DATE THE COURT RULES ON THE FOURTH MOTION. (mnd) (Entered: 12/19/2001) |
| 12/18/2001 | 119 | Motion By Jeffrey M. Frankel for Creditor Mary Lee and Michael Ingoldsby To Withdraw Appearance . C/S. (mnd) (Entered: 12/19/2001) |
| 12/19/2001 | 120 | ENDORSEMENT ORDER: Granting [119-1] Motion To Withdraw Appearance by Jeffrey M. Frankel of Michael and Mary Lee Ingoldsby. . ALLOWED. (mnd) (Entered: 12/20/2001) |
| 12/22/2001 | 121 | Imaged Certificate of Mailing. (auto) (Entered: 12/22/2001) |
| 01/03/2002 | 122 | ENDORSEMENT ORDER: RE: [115-1] Motion To Extend Time The Deadline Within Which to Assume or Reject Leases Of Non-Residential Real Property by Managed Health Care Services, Inc. . NO. OBJ. FILED. ALLOWED. (mnd) (Entered: 01/04/2002) |

| 01/07/2002 | 123 | Imaged Certificate of Mailing. (auto) (Entered: 01/07/2002) |
|---|---|---|
| 02/20/2002 | 124 | First Interim Application of Secured Creditor Heller Healthcare Finance, Inc. For Allowance of Legal Fees and Costs . C/S. (mnd) (Entered: 02/21/2002) |
| 02/25/2002 | 125 | Debtor's Fifth Motion To Extend The Deadline Within Which to Assume or Reject Leases of of Non Residential Real Property . (mnd) (Entered: 02/25/2002) |
| 02/25/2002 | 126 | Motion By Debtor Pursuant to MLBR 6006-1 For Emergency Hearing On ([125-1] Debtor's Fifth Motion To Extend The Deadline Within Which to Assume or Reject Leases of of Non Residential Real Property ) . (mnd) (Entered: 02/25/2002) |
| 02/25/2002 | 127 | Certificate Of Service By Alex M. Rodolakis Of [126-1] Motion For Emergency Hearing On ([125-1] Debtor's Fifth Motion To Extend The Deadline Within Which to Assume or Reject Leases of of Non Residential Real Property ) by Managed Health Care Services, Inc.. (mnd) (Entered: 02/25/2002) |
| 02/26/2002 | 128 | ENDORSEMENT ORDER: Regarding [126-1] Motion For Emergency Hearing On ([125-1] Debtor's Fifth Motion To Extend The Deadline Within Which to Assume or Reject Leases of of Non Residential Real Property ) by Managed Health Care Services, Inc. . MO. TO EXTEND TIME IS ALLOWED IN PART; THE TIME IS EXTENDED TO THE DATE THE COURT RULES ON FIFTH MOTION. (mnd) (Entered: 02/27/2002) |
| 02/27/2002 |  | Hearing Re: [124-1] First Interim Application of Secured Creditor Heller Healthcare Finance, Inc. For Allowance of Legal Fees and Costs Scheduled For 10:00 am on 4/2/02 at Courtroom 4, Boston. Objections Due by 4:00 pm on 3/22/02 . (rmb) (Entered: 02/27/2002) |
| 02/27/2002 | 129 | Stipulation Extending Deadline to Object to [124-1] First Interim Application of Heller Healthcare Finance, Inc. For Allowance of Legal Fees and Costs. Filed by and between Heller Healthcare, Debtor and Official Creditors Commettee. C/S. (mnd) (Entered: 02/28/2002) |
| 02/28/2002 | 130 | ENDORSEMENT ORDER: Regarding [129-1] Stipulation by Heller Healthcare Finance . THE APRIL 2, 2002 HEARING IS CANCELLED. (mnd) (Entered: 03/01/2002) |
| 03/02/2002 | 131 | Imaged Certificate of Mailing. (auto) (Entered: 03/02/2002) |
| 03/04/2002 | 132 | Imaged Certificate of Mailing. (auto) (Entered: 03/04/2002) |
| 03/12/2002 | 133 | ENDORSEMENT ORDER: Granting [125-1] Motion To Extend The Deadline Within Which to Assume or Reject Leases of of Non Residential Real Property by Managed Health Care Services, Inc. . NO OBJECTION FILED. ALLOWED. (mnd) (Entered: 03/12/2002) |
| 03/14/2002 | 134 | Motion of Heller Healthcare Finance and GE Capital Company For Order Setting Emergency Hearing and Related Notice of DIP Loan Default RE: [44-1] Stipulated Order approving Loan and Security Agreement RE: Use of Cash Collateral. C/S. (mnd) (Entered: 03/14/2002) |
| 03/14/2002 | 137 | Notice Of Withdrawal as Co-Counsel to Heller Health Care Finance RE: [42-1] Notice To Appear by Mark G. DeGiacomo. C/S (mnd) (Entered: 03/15/2002) |
| 03/15/2002 | 135 | Imaged Certificate of Mailing. (auto) (Entered: 03/15/2002) |
| 03/15/2002 | 136 | ENDORSEMENT ORDER: RE: [134-1] Motion For Order Setting Emergency Hearing and Related Notice of DIP Loan Default RE: [44-1] Stipulated Order approving Loan and Security Agreement RE: Use of Cash Collateral. by Heller Healthcare Finance . ALLOWED. I ORDER DEBTOR TO FILE A RESPONSE BY MON. 3/18/02 AT NOON; IF A |

| | | |
|---|---|---|
| | | RESPONSE IS FILED TIMELY, THE HEARING WILL BE HELD AT 10:00 AM ON 3/20/02. (mnd) (Entered: 03/15/2002) |
| 03/15/2002 | | Hearing Re: [134-1] Motion For Order Setting Emergency Hearing and Related Notice of DIP Loan Default RE: [44-1] Stipulated Order approving Loan and Security Agreement RE: Use of Cash Collateral. by Heller Healthcare Finance Responses to Motion Due On: 12:00 3/18/02 Scheduled For 10:00 3/20/02 at Courtroom 4, Boston, MA *Telephonic notice given to Debtor and David Tatge on 3/15/02. (mnd) (Entered: 03/15/2002) |
| 03/18/2002 | 138 | Imaged Certificate of Mailing. (auto) (Entered: 03/18/2002) |
| 03/18/2002 | 139 | Response By Debtor Managed Health Care Services, Inc. To [134-1] Motion For Order Setting Emergency Hearing and Related Notice of DIP Loan Default RE: [44-1] Stipulated Order approving Loan and Security Agreement RE: Use of Cash Collateral. by Heller Healthcare Finance . c/s (mcm) (Entered: 03/18/2002) |
| 03/18/2002 | 140 | Notice of DIP Loan Default and of Default Hearing Thereon and Notice of Lender's Intent, at or Before the Default Hearing, to Seek a Court Order which Terminates DIP Financing and Use of Cash Collateral, Grants Relief from the Automatic Stay to Exercise Foreclosure and Other Remedies and Converts these Cases to Chapter 7. c/s by David Tatge for Heller Healthcare Finance (ak) (Entered: 03/18/2002) |
| 03/18/2002 | 141 | Motion by Heller Healthcare Finance For Order Allowing Telephonic Appearance at Emergency Default Hearing or, in the Alternative Resetting Emergency Default Hearing . c/s (ak) (Entered: 03/18/2002) |
| 03/19/2002 | 142 | ENDORSEMENT ORDER: RE: [141-1] Motion For Order Allowing Telephonic Appearance at Emergency Default Hearing Or [141-2] Resetting Emergency Default Hearing by Heller Healthcare Finance . ALLOWED. TELEPHONIC APPEARANCE IS AUTHORIZED. (mnd) (Entered: 03/19/2002) |
| 03/20/2002 | | Hearing Held Re: [134-1] Motion For Order Setting Emergency Hearing and Related Notice of DIP Loan Default RE: [44-1] Stipulated Order approving Loan and Security Agreement RE: Use of Cash Collateral. by Heller Healthcare Finance . (mnd) (Entered: 03/20/2002) |
| 03/20/2002 | 143 | KENNER J. ORDER: Regarding [134-1] Motion For Order Setting Emergency Hearing and Related Notice of DIP Loan Default RE: [44-1] Stipulated Order approving Loan and Security Agreement RE: Use of Cash Collateral. by Heller Healthcare Finance . HEARING HELD. DEBTOR'S COUNSEL MADE AN ORAL MOTION TO CONVERT TO CHAPTER 7 WHICH THE COURT ALLOWED FOR THE REASONS STATED ON THE RECORD. (mnd) (Entered: 03/20/2002) |
| 03/20/2002 | | Case Converted To Chapter 7. (mnd) (Entered: 03/20/2002) |
| 03/20/2002 | 144 | Order to Update Petition. Incomplete Filing; missing documents: List of Post Petition Creditors ; Missing Documents Due 4:30 4/4/02 (mnd) (Entered: 03/20/2002) |
| 03/21/2002 | 145 | Certificate of Appointment and Acceptance of Trustee Joseph Butler and Fixing of Bond. (mjv) (Entered: 03/21/2002) |
| 03/21/2002 | | First Meeting of Creditors scheduled For 9:00 5/3/02 At 10 Causeway Street, Room 255-B ;Proofs of Claim due on 4:30 8/1/02 ;Proof of Claim (gov. units only) Deadline: 4:30 9/17/02 Notice to be mailed within two weeks. (mjv) (Entered: 03/21/2002) |
| 03/21/2002 | 146 | Motion by Chapter 7 Trustee Pursuant to 11 U.S.C. section 721 for Authority to Operate Business. (mnd) (Entered: 03/21/2002) |
| | | |

| 03/21/2002 | 147 | Motion by Chapter 7 Trustee For Expedited Determination Of Trustee's [146-1] Motion Pursuant to 11 U.S.C. section 721 for Authority to Operate Business. (mnd) (Entered: 03/21/2002) |
|---|---|---|
| 03/21/2002 | 148 | Certificate Of Service By Trustee Joseph G. Butler Of [147-1] Motion For Expedited Determination Of Trustee's [146-1] Motion Pursuant to 11 U.S.C. section 721 for Authority to Operate Business. (mnd) (Entered: 03/21/2002) |
| 03/21/2002 | 149 | Motion By Chapter 7 Trustee For Authority to Employ Counsel Under a General Retainer (Barron & Stadfeld). *Sworn Statement of Joseph G. Butler and C/S attached. (mnd) (Entered: 03/21/2002) |
| 03/21/2002 | 151 | ENDORSEMENT ORDER: RE: [147-1] Motion For Expedited Determination Of Trustee's [146-1] Motion Pursuant to 11 U.S.C. section 721 for Authority to Operate Business. . ALLOWED. (mnd) (Entered: 03/22/2002) |
| 03/22/2002 | 150 | Imaged Certificate of Mailing. (auto) (Entered: 03/22/2002) |
| 03/22/2002 | 152 | ENDORSEMENT ORDER: RE: [149-1] Motion For Authority to Employ Counsel Under a General Retainer (Barron & Stadfeld). by Joseph G. Butler . ALLOWED. (mnd) (Entered: 03/22/2002) |
| 03/22/2002 | 153 | ENDORSEMENT ORDER: RE: [146-1] Motion Pursuant to 11 U.S.C. section 721 for Authority to Operate Business. by Joseph G. Butler . THE CREDS' COMM. COUNSEL AND U.S. TRUTEE ASSENT. THE MOTION IS ALLOWED AND THE TRUSTEE MAY OPERATE UP UNTIL 4/5/02 AT 4:00 P.M.. (mnd) (Entered: 03/22/2002) |
| 03/22/2002 | 154 | United States Trustee's Statement of No Objection To [146-1] Motion Pursuant to 11 U.S.C. section 721 for Authority to Operate Business by Joseph G. Butler. C/S (mnd) (Entered: 03/22/2002) |
| 03/23/2002 | 155 | Imaged Certificate of Mailing. (auto) (Entered: 03/23/2002) |
| 03/25/2002 | 156 | Imaged Certificate of Mailing. (auto) (Entered: 03/25/2002) |
| 03/25/2002 | 157 | Imaged Certificate of Mailing. (auto) (Entered: 03/25/2002) |
| 03/25/2002 | 158 | Settlement Agreement filed by Debtor, Creditor Heller Healthcare Finance and Medical Temporaries, Inc. Re: [134-1] Motion For Order Setting Emergency Hearing and Related Notice of DIP Loan Default RE: [44-1] Stipulated Order approving Loan and Security Agreement RE: Use of Cash Collateral. by Heller Healthcare Finance. (ndl) (Entered: 03/25/2002) |
| 03/25/2002 | 159 | Motion By Trustee Joseph G. Butler To Approve [158-1] Settlement Agreement With Heller Healthcare Finance, Inc. . (ndl) (Entered: 03/25/2002) |
| 03/25/2002 | 160 | Motion By Chapter 7 Trustee To Reduce Notice And For Expedited Determination of Trustee's [159-1] Motion To Approve [158-1] Settlement Agreement With Heller Healthcare Finance Inc. . (ndl) (Entered: 03/25/2002) |
| 03/25/2002 | 161 | Certificate Of Service By Trustee Joseph G. Butler Of [159-1] Motion To Approve [158-1] Settlement Agreement With Heller Healthcare Finance, Inc. by Joseph G. Butler, [160-1] Motion To Reduce Notice by Joseph G. Butler, [160-2] Motion For Expedited Determination of Trustee's [159-1] Motion To Approve [158-1] Settlement Agreement With Heller Healthcare Finance Inc. by Joseph G. Butler . (ndl) (Entered: 03/25/2002) |

| 03/25/2002 | 163 | Notice for Change of Address for Russell Beck Counsel to Creditor Heller Healthcare Finance. Counsel new address listed. C/S. (mnd) (Entered: 03/26/2002) |
|---|---|---|
| 03/26/2002 | 162 | ENDORSEMENT ORDER: Re: [160-1] Motion By Chapter 7 Trustee To Reduce Notice and For Expedited Determination of Trustee's Motion To Approve Settlement Agreement With Heller Healthcare Finance Inc. . ALLOWED. (rmb) (Entered: 03/26/2002) |
| 03/26/2002 | | Hearing Re: [159-1] Motion To Approve [158-1] Settlement Agreement With Heller Healthcare Finance, Inc. by Joseph G. Butler Scheduled For 9:30 am on 3/27/02 at Courtroom 4, Boston . *Telephonic notice of hearing given to J. Butler. (rmb) (Entered: 03/26/2002) |
| 03/26/2002 | 164 | Chapter 7 Trustee's Motion For Authority to Implement Transition Plan With Overlook Home Health, Inc. Nunc Pro Tunc. C/S. (mnd) (Entered: 03/26/2002) |
| 03/26/2002 | 165 | Motion By Chapter 7 Trustee To Reduce Notice , And For Emergency Hearing On Trustee's ( [164-1] Motion For Authority to Implement Transition Plan With Overlook Home Health, Inc. Nunc Pro Tunc.) C/S. (mnd) (Entered: 03/26/2002) |
| 03/26/2002 | 166 | ENDORSEMENT ORDER Re: [165-1] Motion By Chapter 7 Trustee to Reduce Notice and For Emergency Hearing On Trustee's Motion For Authority to Implement Transition Plan With Overlook Home Health, Inc. Nunc Pro Tunc . ALLOWED. (rmb) (Entered: 03/27/2002) |
| 03/26/2002 | | Hearing Re: [164-1] Motion of Chapter 7 Trustee For Authority to Implement Transition Plan With Overlook Home Health, Inc. Nunc Pro Tunc Scheduled For 9:30 am on 3/27/02 at Courtroom 4, Boston . *Telephonic notice of hearing given to J. Butler (rmb) (Entered: 03/27/2002) |
| 03/26/2002 | 167 | Notice of Hearing by Chapter 7 Trustee of [0-0] Hearing on [159-1] Motion To Approve [158-1] Settlement Agreement With Heller Healthcare Finance, Inc. Scheduled For 9:30 am on 3/27/02 at Courtroom 4, Boston. C/S (mnd) (Entered: 03/27/2002) |
| 03/27/2002 | 168 | ENDORSEMENT ORDER: RE: [159-1] Motion To Approve [158-1] Settlement Agreement With Heller Healthcare Finance, Inc. by Joseph G. Butler . ALLOWED. (mnd) (Entered: 03/27/2002) |
| 03/27/2002 | 169 | ENDORSEMENT ORDER: RE: [164-1] Motion For Authority to Implement Transition Plan With Overlook Home Health, Inc. Nunc Pro Tunc. by Joseph G. Butler . ALLOWED. (mnd) (Entered: 03/27/2002) |
| 03/27/2002 | 171 | Motion by Mass Operating Group, Inc. (i) To Establish Eligibility for Super Priority Pre-Conversion Landlord Claim , (ii) Adminsirative Chapter 7 Claim , (iii) To Require Assumption or Rejection by The Trustee; (iv) And For Adequate Protection. C/S (mnd) (Entered: 03/28/2002) |
| 03/27/2002 | | Hearing Held Re: [164-1] Motion For Authority to Implement Transition Plan With Overlook Home Health, Inc. Nunc Pro Tunc. by Joseph G. Butler . (mnd) (Entered: 03/28/2002) |
| 03/27/2002 | | Hearing Held Re: [159-1] Motion To Approve [158-1] Settlement Agreement With Heller Healthcare Finance, Inc. by Joseph G. Butler . (mnd) (Entered: 03/28/2002) |
| 03/27/2002 | 172 | KENNER J. ORDER: Regarding [164-1] Motion For Authority to Implement Transition Plan With Overlook Home Health, Inc. Nunc Pro Tunc by Joseph G. Butler . HEARING HELD. THE COURT ALLOWED THE MOTION TO IMPLEMENT TRANSITION PLAN. (mnd) (Entered: 03/28/2002) |

| 03/27/2002 | 173 | KENNER J. ORDER: Regarding [159-1] Motion To Approve [158-1] Settlement Agreement With Heller Healthcare Finance, Inc. by Joseph G. Butler . HEARING HELD. THE COURT ALLOWED THE MOTION TO APPROVE SETTLEMENT AGREEMENT. (mnd) (Entered: 03/28/2002) |
|---|---|---|
| 03/29/2002 | 173 | Court's Notice of the First Meeting being sent to the Bankruptcy Noticing Center. (kpm) (Entered: 03/29/2002) |
| 04/01/2002 | 174 | First Meeting Certificate of Mailing. (auto) (Entered: 04/01/2002) |
| 04/05/2002 | 175 | Imaged Certificate of Mailing. (auto) (Entered: 04/05/2002) |
| 04/05/2002 | 176 | Agreement between Chapter 7 Trustee and Overlook Home Health, Inc., Regarding Funding of Certain Wage Expenses and Notice of Agreement. C/S. (mnd) (Entered: 04/08/2002) |
| 04/11/2002 | 177 | Notice of Hearing by Trustee Joseph G. Butler RE: [0-0] Hearing [164-1] Motion of Chapter 7 Trustee For Authority to Implement Transition Plan With Overlook Home Health, Inc. Nunc Pro Tunc Scheduled For 9:30 am on 3/27/02 at Courtroom 4, Boston (mnd) (Entered: 04/12/2002) |
| 04/18/2002 | 178 | Motion By Chapter 7 Trustee RE: Rejection of Lease Of (2000 Lexus GS 4000 Automobile) . C/S. (mnd) (Entered: 04/19/2002) |
| 04/23/2002 | 179 | Motion By Chapter 7 Trustee RE: Rejection of Real Estate Leases . (Longmeadow Lease, New Bedford Lease, Yarmouth Lease and Hingham Lease). C/S. (mnd) (Entered: 04/24/2002) |
| 05/02/2002 | 180 | Limited Objection By Heller Healthcare Finance To [179-1] Motion by Chapter 7 Trustee to Reject Real Property Leases . C/S. (mnd) (Entered: 05/06/2002) |
| 05/02/2002 | 181 | Notice for Change of Address of The Law Firm of Hanify & King by Harold B. Murphy. C/S. (mnd) (Entered: 05/06/2002) |
| 05/03/2002 | | First meeting not held. Continued to 6.5.02 at 2:30 p.m. (kmp) (Entered: 05/14/2002) |
| 05/06/2002 | 182 | ENDORSEMENT ORDER: RE: [179-1] Motion RE: Rejection of Real Estate Leases by Joseph G. Butler . ALLOWED. (mnd) (Entered: 05/06/2002) |
| 05/06/2002 | 183 | ENDORSEMENT ORDER: RE: [180-1] Objection Heller Healthcare Finance To [179-1] Motion by Chapter 7 Trustee to Reject Real Property Leases . OVERRULED. THE TRUSTEE'S DECISION TO REJECT THE REAL ESTATE LEASES IS W/IN THE BEST INTERESTS OF THE ESTATE. (mnd) (Entered: 05/06/2002) |
| 05/08/2002 | 184 | ENDORSEMENT ORDER: RE; [178-1] Motion RE: Rejection of Lease Of (2000 Lexus GS 4000 Automobile) by Joseph G. Butler . NO OBJECTIONS. ALLOWED. (mnd) (Entered: 05/09/2002) |
| 05/10/2002 | 185 | Imaged Certificate of Mailing. (auto) (Entered: 05/10/2002) |
| 05/12/2002 | 186 | Imaged Certificate of Mailing. (auto) (Entered: 05/12/2002) |
| 06/12/2002 | 187 | Final Application of The Law Firm of Riemer & Braunstein, LLP For Compensation and Reimbursement of Expenses as Counsel To The Official Unsecured Creditors' Committee. C/S. . (mnd) (Entered: 06/13/2002) |
| | | |

| 10/17/2002 | 188 | Chapter 7 Trustee's Motion To Establish A Bar Date for Filing Of Chapter 11 Administrative Claims. C/S. (mnd) (Entered: 10/18/2002) |
|---|---|---|
| 10/22/2002 | 189 | ENDORSEMENT ORDER: RE: [188-1] Motion To Establish A Bar Date for Filing Of Chapter 11 Administrative Claims. by Joseph G. Butler . ALLOWED. THE BAR DATE FOR FILING CHAPTER 11 ADMINISTRATIVE CLAIMS IS HEREBY SET AT DECEMBER 6, 2002 BY 4:00 P.M.. (mnd) (Entered: 10/23/2002) |
| 10/23/2002 | | Update Deadline On Chapter 11 Administrative Claims due on 4:00 12/6/02 (mnd) (Entered: 10/23/2002) |
| 10/27/2002 | 190 | Imaged Certificate of Mailing. (auto) (Entered: 10/27/2002) |
| 10/30/2002 | 191 | Certificate Of Service By Joseph G. Butler Of [189-1] Endorsement Order Allowing [188-1] Motion To Establish A Bar Date for Filing Of Chapter 11 Administrative Claims. Bar Date December 6, 2002 at 4:00 P.M.. (mnd) (Entered: 10/31/2002) |
| 12/06/2002 | 192 | First And Final Application of Hanify & King Professional Corporation For Compensation For Services And Reimbursement of Expenses as Counsel To The Debtor . exhibits A-J attached. (ndl) (Entered: 12/09/2002) |
| 12/06/2002 | 193 | Final Application by Verdolino & Lowey, P.C. For Fee And Expenses of Chapter 11 Accountant For The Debtor . Summary of Services of Accountant For Trustee attached. (ndl) (Entered: 12/09/2002) |
| 12/06/2002 | 194 | Certificate Of Service By Harold B. Murphy for Debtor Of [192-1] Application For Compensation For Services And Reimbursement of Expenses as Counsel To Debtor by Harold B. Murphy, [193-1] Application For Fee And Expenses of Chapter 11 Accountant For The Debtor by Verdolino & Lowey, P.C. . (ndl) (Entered: 12/09/2002) |
| 01/06/2003 | 195 | Supplemental Certificate Of Service By Alex M. Rodolakis Of [192-1] First and Final Application For Compensation For Services And Reimbursement of Expenses as Counsel To The Debtor and [193-1] Final Application For Fee And Expenses of Chapter 11 Accountant For The Debtor. (ak) (Entered: 01/07/2003) |
| 02/14/2003 | 199 | Request for Claim Register by Trustee Joseph G. Butler. (ndl) (Entered: 02/21/2003) |
| 02/20/2003 | 196 | KENNER, J. ENDORSEMENT ORDER: Allowing [193-1] Application For Fee And Expenses of Chapter 11 Accountant For The Debtor by Verdolino & Lowey, P.C. . NO OBJECTION FILED. FEES OF $20,596.50 AND EXPS. OF $673.44 ARE ALLOWED. (ndl) (Entered: 02/21/2003) |
| 02/20/2003 | 197 | KENNER, J. ENDORSEMENT ORDER: Allowing [192-1] Application For Compensation For Services And Reimbursement of Expenses as Counsel To The Debtor by Harold B. Murphy . NO OBJ. FILED. FEES OF $48,008.- AND EXPENSES OF $5,652.40 ARE ALLOWED. (ndl) (Entered: 02/21/2003) |
| 02/20/2003 | 198 | KENNER, J. ENDORSEMENT ORDER: Allowing [187-1] Application For Compensation and Reimbursement of Expenses as Counsel to Official Unsecured Creditors' Committee. by Jonathan D. Yellin . NO OBJ. FILED. FINAL FEES OF $20,788.50 AND FEES OF $776.07 ARE ALLOWED. PAYMENT SHALL BE MADE, NET OF EARLIER PAYMENT. (ndl) (Entered: 02/21/2003) |
| 02/24/2003 | 200 | Imaged Certificate of Mailing. (auto) (Entered: 02/24/2003) |
| 02/24/2003 | 201 | Imaged Certificate of Mailing. (auto) (Entered: 02/24/2003) |

| 02/24/2003 | 202 | Imaged Certificate of Mailing. (auto) (Entered: 02/24/2003) |
|---|---|---|
| 06/09/2003 | 203 | Stipulation Bwtween Trustee Joseph G. Butler, Heller Healtchare Finance, Inc., Hanify and King, Verdolino and Lowey and Riemer and Braunstein re: Carveout for Chapter 11 Professional Fees. (ak) (Entered: 06/11/2003) |
| 06/09/2003 | 204 | Motion of Trustee Joseph G. Butler for Approval of 203 Stipulation re: Carveout for Chapter 11 Professional Fees. (ak) (Entered: 06/11/2003) |
| 06/09/2003 | 205 | Certificate of Service of Chapter 7 Trustee Joseph G. Butler re: 203 Stipulation re: Carveout for Chapter 11 Professional Fees and 204 Motion for Approval of Stipulation re: Carveout for Chapter 11 Professional Fees. (ak) (Entered: 06/11/2003) |
| 06/24/2003 | 206 | Endorsed Order dated 6/24/2003 Regarding 204 Motion for Approval of Stipulation re: Carveout for Chapter 11 Professional Fees. NO OBJECTIONS FILED. ALLOWED. (ak) (Entered: 06/25/2003) |
| 06/27/2003 | 207 | BNC Certificate of Mailing - PDF Document. Service Date 06/27/2003. (Related Doc # 206) (Admin.) (Entered: 06/28/2003) |
| 06/17/2004 | 208 | Notice of Change of Address *(w/ certificate of service)*. Filed by Trustee Joseph G. Butler (Butler, Joseph) (Entered: 06/17/2004) |
| 12/31/2004 | | Case Assigned to Judge Robert Somma.. (admin, ) (Entered: 12/31/2004) |
| 05/04/2005 | 209 | Trustee's Final Report and Account Before Distribution, Request for Compensation and Report on Claims and Proposed Distribution With Certificate of Review. (ndl, ) (Entered: 05/05/2005) |
| 05/04/2005 | 210 | Application For Trustee Compensation And Affidavit filed by Trustee Joseph G. Butler. (Fee: $9250.00, Expenses: $186.43). (ndl, ) (Entered: 05/05/2005) |
| 05/04/2005 | 211 | Application for Counsel Fee and Affidavit filed by Joseph G. Butler. (Fee: $6635.50, Expenses: $1850.22). (ndl, ) (Entered: 05/05/2005) |
| 05/06/2005 | 212 | Final Hearing Set. Objections due by 6/20/2005 at 04:30 PM. Hearing scheduled for 6/28/2005 at 10:00 AM at Boston Courtroom 4 - RS RE: 209 Trustee's Final Rpt/Acct-Asset filed by Trustee Joseph G. Butler (aek, usbc) (Entered: 05/06/2005) |
| 05/08/2005 | 213 | BNC Certificate of Mailing. RE: 212 Final Hearing Set Service Date 05/08/2005. (Admin.) (Entered: 05/09/2005) |
| 06/22/2005 | 214 | Order dated 6/22/2005 Approving Final Report & Account. ORDERED: THAT THE TRUSTEE'S FINAL REPORT AND ACCOUNT IS HEREBY APPROVED INCLUDING ALL REQUESTS FOR COMPENSATION AND EXPENSES SET FORTH THEREIN AND THE OTHER ATTACHMENTS THERETO. (aek, usbc) (Entered: 06/24/2005) |
| 06/26/2005 | 215 | BNC Certificate of Mailing - PDF Document. RE: 214 Order Approving Final Report & Account, Service Date 06/26/2005. (Admin.) (Entered: 06/27/2005) |
| 04/13/2006 | 216 | Trustee's Final Report and Account After Distribution and Request for Discharge with Certificate of Review. (aek, usbc) (Entered: 04/17/2006) |
| 04/20/2006 | 217 | Order Approving Final Report and Account After Distribution and Discharging Trustee and Closing Case (Case Closed). (aek, usbc) (Entered: 04/21/2006) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 06/22/2006 15:33:40 | | | |
| PACER Login: | us4967 | Client Code: | |
| Description: | Docket Report | Search Criteria: | 01-11346 Fil or Ent: Fil Doc From: 0 Doc To: 99999999 Links: n Format: HTML.fmt |
| Billable Pages: | 13 | Cost: | 1.04 |

EXHIBIT H

01-11346 CJK

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into this 25th day of March, 2002 by

and among MANAGED HEALTH CARE SYSTEMS INC., Chapter 7 debtor in case No. 0111346-CJK

now pending in the United States Bankruptcy Court for the District of Massachusetts (the "Bankruptcy

Court"), acting through Joseph G. Butler, its Chapter 7 Trustee, and MEDICAL TEMPORARIES, INC.

Chapter 7 debtor in case No. 0111347-CJK now pending in the United States Bankruptcy Court for the

District of Massachusetts (collectively, the "Debtors"), also acting through Joseph G. Butler, its Chapter

7 Trustee, and HELLER HEALTHCARE FINANCE, INC., secured lender to the Debtors ("Heller").

### RECITALS

A.      On February 23, 2001 the Debtors filed voluntary petitions for reorganization under

Chapter 11 of the Bankruptcy Code, title 11, U.S.C., §101, et. seq., in this Court.

B.      On March 29, 2001, the Court entered a final Order granting the Debtors authority to

obtain post-petition financing from Heller pursuant to §§ 363 and 364 of the Bankruptcy Code (the "DIP

Financing Order") and to enter into an associated Loan And Security Agreement for Debtor-In-

Possession Financing (the "DIP Loan Agreement").   Under these documents, Heller provided DIP

financing to the Debtors in the form of a secured revolving debtor-in-possession credit facility in the

maximum principal amount of $3,000,000, which loan refinanced a pre-petition revolving line of credit

from Heller to the Debtors, and Heller also consented to the use of cash collateral which collateralized a

secured term loan and a pre-petition over-line loan, which indebtedness was not refinanced.

C.      Heller filed with the Bankruptcy Court a Notice of Event Of Default And Request For

Emergency Default Hearing on March 14, 2002, alleging that the Debtors were in default of their

obligations under the DIP Loan Agreement and subsequently filed pleadings in the

**Certified to be a true and
correct copy of the original
James M. Lynch, Clerk
U.S. Bankruptcy Court
District of Massachusetts
By:** _____
**Deputy Clerk
Date:** June 25 2006

Bankruptcy Court acknowledging their default. Paragraph 8.3(i) of the DIP Loan Agreement provides that it terminates upon the occurrence of an Event of Default.

D.      At the March 20, 2002 Default Hearing the Bankruptcy Court, on motion of the Debtors, ordered that the above-referenced cases be converted from Chapter 11 reorganization proceedings to Chapter 7 liquidation proceedings. Joseph G. Butler was subsequently appointed as interim Chapter 7 trustee (the "Trustee") for both of the Debtors.

E.      On March 21, 2002, the Trustee filed a motion with the Court seeking authority to operate the Debtors for a limited 15-day period, to wind down their operations and transfer their patients to other providers. On March 22, 2002 the Court granted both motions and ordered that the Trustee could operate the Debtors' businesses until April 5, 2002 at 4:00 p.m.

F.      Paragraph 14 of the March 29, 2001 Order approving the DIP Loan Agreement (the "DIP Financing Order") provides, in relevant part, that in the event of a conversion of the Debtors' cases to Chapter 7 or a cessation of business Heller consents to a carve-out of up to $100,000 for the costs and expenses, during a ten (10) day period from and after conversion, arising from (i) the reasonable and necessary costs and expenses of one senior staff person to supervise the transfer of the Debtors' patients to one or more third parties and (ii) the reasonable and necessary costs and expenses of the Debtors' field personnel to assist in such efforts, with all such personnel to be directed by the Chapter 7 trustee (or such other person as the Court directs) and not by Heller, with all other §506(c) surcharges against Heller waived, including by any Chapter 7 trustee, but without prejudice to the Debtors' rights to request more funds above $100,000 or to Heller's right to oppose any such request for wind-down funding above $100,000.

2

G.     In paragraph 5 of the Order approving the DIP Loan Agreement and in paragraph 9.1 of the DIP Loan Agreement itself Heller agreed to a carve-out of up to $100,000 for unpaid Chapter 11 professional fees and for fees of the United States Trustee.

H.     Paragraph 10 of the Order approving the DIP Loan Agreement states that "[H]eller may cease advances" under the agreement "[p]ending the outcome of the Default Hearing." Heller nevertheless funded approximately $140,000 in payroll paid March 15, 2002, after Heller declared default on March 14, 2002, which funding of payroll, Heller claims, was made without any obligation on its part to do so. Heller claims that it now has no further funding obligations to the Debtors other than Heller's limited obligation to fund wind-down expenses under the Order approving the DIP Loan Agreement and under Heller's commitment to carve-out up to $100,000 for Chapter 11 professional fees and fees of the U.S. Trustee, on the terms and conditions of that carve-out. The Debtors, who pay payroll every other week, with each payroll paying for the two week period ending one week prior, have unpaid payroll of approximately $120,000 through the date of the conversion of the Debtors' cases to Chapter 7. The Debtors and the Trustee dispute that Heller is not obligated for unpaid payroll and administrative claims.

I.     The Trustee, on behalf of and for the Debtors' bankruptcy estates, and Heller desire to resolve and liquidate various rights and liabilities associated with the wind down of the Debtors, including the extent of Heller's obligations to fund wind-down expenses of the Debtors.

NOW, THEREFORE, subject to approval of this Settlement Agreement by the United States Bankruptcy Court for the District of Massachusetts in the bankruptcy cases of both Debtors, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and agreed, the parties hereto agree as follows:

3

1.      The recitals above are incorporated by reference, as if fully set forth herein, and acknowledged to be true and correct.

2.      Upon entry of a order of the Bankruptcy Court approving this Settlement Agreement in both of the Debtors' bankruptcy cases, and such order being final beyond appeal (but without prejudice to Heller's right, in its discretion, to fund before the appeal period has expired) (the "Effective Time"):

(a)      Heller will make the following payments to the Trustee, who shall allocate such funds between the Debtors' estates as the Court may later allow:

(1) $100,000 in full and complete settlement of Heller's obligation to fund certain wind down costs and expenses of the Debtors under paragraph 14 of the DIP Financing Order, or otherwise;

(2) $120,000 in full and complete settlement of any asserted obligation of Heller to provide funding for payroll and employee benefits expenses of the Debtors incurred on or before the March 20, 2002, Default Hearing, or otherwise; and

(3) $30,000 to be used at the discretion of the Chapter 7 trustee for the Debtors.

(b)      Heller shall remain bound to perform under the carve-out previously agreed, not to exceed $100,000, to cover unpaid Chapter 11 professional fees and fees paid to the United States Trustee under 28 U.S.C § 1930(a)(6);

(c)      At the Effective Time, conditioned on receipt by the Trustee of the monies payable under (a) above, the Trustee, on his own behalf and on behalf of both Debtors, hereby releases, discharges and covenants not to sue Heller and its respective officers, shareholders, agents, employees, attorneys, and the parent, subsidiaries, affiliates and member entities, and each of them, for any and all legal or equitable claims, objections, actions and causes of action of any name, nature and description, including, but not limited to, damages (actual and consequential, past, present and future) or other relief

4

which the Trustee or Debtors may have against them, or any of them, arising on or before the date hereof, including, but not limited to, any and all claims, objections, actions and causes of action for damages (actual and consequential, past, present and future) or other legal or equitable relief concerning, relating to or arising, directly or indirectly, from the DIP Loan Agreement or from any and all other pre-petition or post-petition financing from Heller to the Debtors, and all legal or equitable claims asserted or which could have been asserted regarding such financing, provided, however, that this release from the Debtors to Heller shall not include Heller's obligations under this Settlement Agreement, which shall survive;

        (d)    At the Effective Time Heller, without releasing any claims against the Debtors for Heller's pre-petition and post-petition loans to the Debtors, waives the right to recover any dividend from the Debtors' estates in respect of such indebtedness. Heller further, at the Effective Time, hereby releases any claims it may have arising on or before the date hereof against the Debtors' professionals, agents and employees provided, however, that this release from Heller does not include and Heller does not waive or release either the Debtors or any officer, director, employee or agent of either Debtor from any legal or equitable claims Heller may have or from any damages suffered by Heller arising from the default under the DIP Loan Agreement which created the over-advance of approximately $405,000, which was referred to in Heller's Notice of Event of Default (except that, as to the Debtors, Heller waives the right to recover any dividend from the Chapter 7 estate of either Debtor, as noted above).

    3.    The Trustee consents to Heller having immediate relief from the automatic stay of 11 U.S.C. § 362 to foreclose on all collateral posted by the Debtors for Heller's various pre-petition and post-petition loans to the Debtors, including, without limitation, all collateral identified in the DIP Loan Agreement (collectively, the "Collateral"). The Trustee stipulates that the Debtors have no equity in the Collateral, that Heller's pre-petition and post-petition liens and security interests securing Heller's loans

to the Debtors are all duly perfected and that such Collateral is not necessary to an effective reorganization of the Debtors. The Court must so find and grant Heller relief from the automatic stay, as a condition of this settlement.

4.    Heller's obligation to extend further financing to the Debtors under the DIP Financing Order or the DIP Loan Agreement, or under any pre-petition loan, is terminated, except for its obligations herein.

5.    The Trustee shall cooperate in surrendering all Collateral pledged to Heller and in assembling the same, and the Trustee shall make the Debtor's business books and records available to Heller on reasonable request. The Trustee shall further make such books and records available to Heller or to any independent contractors or agents that Heller may employ for the purposes of collecting and liquidating its Collateral.

6.    This Settlement Agreement must be approved by the Bankruptcy Court no later than four (4) business days from the date hereof. The Trustee agrees to request expedited consideration of this settlement.

7.    This Agreement represents the entire agreement as between the parties and supersedes all prior agreements or discussions, oral or written, as between the parties and their respective counsel. This Agreement may not be modified except in writing and is governed by Maryland law. The United States Bankruptcy Court for the District of Massachusetts shall have exclusive jurisdiction over any dispute concerning the parties to this Agreement.

8.    The signatories to this Settlement Agreement have full legal authority to execute this Agreement and are duly authorized to do so (subject, in the case of the Trustee, to Bankruptcy Court approval).

9.    This Agreement is subject to approval of the Bankruptcy Court on due motion to be made by the Trustee under Fed. R. Bankr. P. 9019,  Subject thereto, this settlement shall be binding on the parties hereto, including the bankruptcy estates of the Debtors and all parties claiming through them.

10.    Each party hereto represents that it has not previously assigned any claims being released hereunder to any third person.

11.    If this Settlement Agreement is not approved by the Bankruptcy Court, in an order final beyond appeal, it shall be void, ab initio.

12.    The Trustee shall notice this settlement as is required by Fed. R. Bankr. P. 9019.

13.    This Settlement has been reviewed by counsel to both parties and shall not be construed against either party.

IN WITNESS WHEREOF, intending to be legally bound, the parties hereto have set their hands as of the day and year first above written.

HELLER HEALTHCARE FINANCE, INC.
By Its Attorneys,

David B. Tatge, Esq.
EPSTEIN BECKER & GREEN, P.C.
1227 25th Street, N.W.
Washington, D.C. 20037
(202) 861-1875

MANAGED HEALTH CARE SERVICES, INC.
By:

By: Joseph G. Butler, Chapter 7 trustee
BARRON & STADFIELD, P.C.
50 Staniford Street
Boston, MA 02114
(617) 531-6558

MEDICAL TEMPORARIES, INC.
By:

By: Joseph G. Butler, Chapter 7 Trustee
BARRON & STADFIELD, P.C.
50 Staniford Street
Boston, MA 02114
(617) 531-6558

7

EXHIBIT I

## Managed Health Care Systems

Borrowing Base Certificate
as of
10/19/00

I, Pamela Jones, hereby certify that I am V.P. of Finance of MANAGED HEALTH CARE SYSTEMS, INC. and MEDICAL TEMPORARIES, INC ("Borrower"), and am authorized to make certifications hereunder in accordance with the Loan and Security Agreement dated August 4, 2000 (the "Loan Agreement") between Borrower and Heller Healthcare Finance, Inc. ("Lender").

(a.) This Certificate is given to the Lender in order to induce the Lender on the date hereof to make an advance to the Borrower in the principle amount of     $     23,185   pursuant to the terms and conditions of the Loan Agreement. The following information is provided in connection with this advance request:

I.  Computation of Collateral

A. Medicaid Receivables:

| | | | |
|---|---|---|---|
| 1 Billed Accounts balance, net of contractuals, per aging da | 10/19/00 | 1 | 94,280 |
| 2 Plus/Minus:  Adjustments (e.g. billing estimate for 0-30 days) | | 2 | - |
| 3 Less: Other Ineligible accounts over 90 days | | 3 | 176 |
| 4 Eligible Accounts | | 4 | 94,103 |
| a.  Liquidity Factor: 94% | | a. | 94% |
| 5 Total Eligible Accounts ( line 4 times line 4a) | | 5 | 88,457 |

B.IPS Medicare Receivables:

| | | | |
|---|---|---|---|
| 6 Billed Accounts balance, net of contractuals, per aging da | 10/19/00 | 6 | 625,636 |
| 7 Plus/Minus:  Adjustments (e.g. billing estimate for 0-30 days) | | 7 | - |
| 8 Less: Other Ineligible accounts over 90 days | | 8 | 36,041 |
| 9 Eligible Accounts | | 9 | 589,596 |
| a.  Liquidity Factor: 70% | | a. | 70% |
| 10 Total Eligible Accounts ( line 9 times line 9a) | | 10 | 412,717 |

C.PPS Medicare Receivables:

| | | | |
|---|---|---|---|
| 11 Billed Accounts balance, net of contractuals, per aging da | 10/19/00 | 11 | |
| 12 Plus/Minus:  Adjustments (e.g. billing estimate for 0-30 days) | | 12 | 210,207 |
| 13 Less: Other Ineligible accounts over 90 days | | 13 | |
| 14 Eligible Accounts | | 14 | 210,207 |
| a.  Liquidity Factor: 100% | | a. | 100% |
| 15 Total Eligible Accounts ( line 9 times line 9a) | | 15 | 210,207 |

D. Commercial Receivables:

| | | | |
|---|---|---|---|
| 16 Billed Accounts balance, net of contractuals, per aging da | 10/19/00 | 16 | 97,020 |
| 17 Plus/Minus:  Adjustments (e.g. billing estimate for 0-30 days) | | 17 | |
| 18 Less: Other Ineligible accounts over 120 days | | 18 | 1,768 |
| 19 Eligible Accounts | | 19 | 95,252 |
| a.  Liquidity Factor: 94% | | a. | 94% |
| 20 Total Eligible Accounts ( line 14 times line 14a) | | 20 | 89,537 |

E. Staffing

| | | | |
|---|---|---|---|
| 21 Billed Accounts balance, net of contractuals, per aging da | 10/19/00 | 21 | 276,569 |
| 22 Plus/Minus:  Adjustments (e.g. billing estimate for 0-30 days) | | 22 | - |
| 23 Less: Other Ineligible accounts over 120 days | | 23 | |
| 24 Eligible Accounts | | 24 | 276,569 |
| a.  Liquidity Factor: 94% | | a. | 94% |
| 25 Total Eligible Accounts ( line 14 times line 14a) | | 25 | 259,975 |

JONES 0626

## II. Computation of Availability

| | | |
|---|---|---:|
| 26 Total Eligible Accounts from Lines 5, 10, 15 ,20 & 25 | 26 | 1,060,893 |
| 27 Less: Received but unapplied proceeds of all Accounts reported herein | 27 | 4,583 |
| 28 Net Eligible Accounts | 28 | 1,056,310 |
| 29 Advance Rate | 29 | 85% |
| 30 Net Availability | 30 | 897,864 |

## III. Computation of Loan

| | | |
|---|---|---:|
| 31 Loan Balance on last Borrowing Base Certificate dated ▓▓▓10/12/00▓ | 31 | 1,066,407 |
| 32 Less: Gross Collections since last Borrowing Base Certificate | 32 | 193,729 |
| 33 Adjustments: ( Increase) or  Decrease  (see below) | 33 | (2,000) |
| 34 Adjusted Loan Balance | 34 | 874,679 |
| 35 Availability before Loan Request (line 25 less line 29) | 35 | 23,185 |
| 36 The undersigned requests a loan in the amount of: | 36 | 23,185 |
| 37 New loan balance ( line 29 plus line 31 ) | 37 | 897,864 |
| 38 Remaining availability ( line 30 less line 31 ) | 38 | (0) |

(b) As of the date hereof, Borrower is in compliance with each of the terms, covenants, and conditions set forth in the Loan Agreement.

( c) As of the date hereof, there exists no Event of Default, as defined in the Loan Agreement, nor any event which, upon notice or the lapse of time, or both, would constitute such an Event of Default.

(d) As of the date hereof, the representations and warranties contained in the Loan Agreement are true in every respect, with the same effect as though such representations and warranties had been made on the date hereof.

(e) Within the ninety (90) days preceding and through the date hereof, Borrower has not received any notice from any state or federal regulatory or law enforcement agency citing specific deficiencies that (I) pose immediate jeopardy to the health or safety of any of the Borrower's facilities' residents; (ii) amount to a substandard quality of care; or (iii) would otherwise threaten Borrower's continued participation in the Medicare, medicaid, and/or any other applicable government program.

(f) Within the ninety (90) days preceding and through the date hereof, Borrower has not been subject to any investigatory visits by or received any correspondence from any state or federal agency alleging possible improper billing or claims activity.

(g) After the making of the advance requested by this Certificate, the total aggregate principal amount outstanding under the Loan Agreement will be approximately       $  897,863.81  .

(h) Borrower's most recent Accounts Receivable Aging Report, dated a       10/19/00       (including all necessary and appropriate documentation required to interpret the Report and to complete this Borrowing Base Certificate), is attached hereto and made a part hereof.  All Accounts included on such reports have been properly billed and collections have  been properly posted to the respective Accounts to reduce Qualified Accounts accordingly.  All proceeds of Accounts that have not been posted to the Accounts reported herein (including unbilled and/or estimated Accounts ) have been disclosed to Lender on line 22 herein.

(i) As of the date hereof, Borrower has paid all State and Federal payroll withholding taxes immediately due and payable through       10/19/00       .

(j) As of the date hereof, Borrower has directed all Account Debtors to deliver all payments on Accounts to the Lockbox, as defined in the Loan Agreement, and as of the date hereof, Borrower has not diverted or permitted to be diverted any such payments on Accounts, whether such diversion is for the benefit of Borrower or any third party.

By:

Name:     Pamela Jones

Title:     V.P. Finance

JONES 0627

.02/02

HELLER HEALTHCARE FINANCE

L o a n   I n t e r e s t   S t a t e m e n t

For the Period 10/01/2000 thru 10/31/2000

(MHS) Managed Healthcare Systems, Inc. ( Loan # 1232 )

| Date | Draws | Adjustments | Collections | Cash Collections | Balance |
|------|-------|-------------|-------------|------------------|---------|
| 10/01/2000 | 0.00 | 8,117.58 | 0.00 | 0.00 | 883,947.89 |
| 10/02/2000 | 0.00 | 1,387.50 | -26,753.37 | 0.00 | 858,582.02 |
| 10/03/2000 | 0.00 | 0.00 | -24,028.82 | 0.00 | 834,553.20 |
| 10/04/2000 | 0.00 | 0.00 | -5,576.55 | 0.00 | 828,976.65 |
| 10/05/2000 | 25,000.00 | 0.00 | 0.00 | 0.00 | 853,976.65 |
| 10/06/2000 | 0.00 | 0.00 | -148,110.89 | 0.00 | 705,865.76 |
| 10/07/2000 | 0.00 | 0.00 | 0.00 | 0.00 | 705,865.76 |
| 10/08/2000 | 0.00 | 0.00 | 0.00 | 0.00 | 705,865.76 |
| 10/09/2000 | 0.00 | 0.00 | 0.00 | 0.00 | 705,865.76 |
| 10/10/2000 | 0.00 | 0.00 | -14,486.33 | 0.00 | 691,379.43 |
| 10/11/2000 | 0.00 | 0.00 | -22,971.95 | 0.00 | 668,407.48 |
| 10/12/2000 | 400,000.00 | 0.00 | -100,107.38 | 0.00 | 968,300.10 |
| 10/13/2000 | 0.00 | 0.00 | -19,264.83 | 0.00 | 949,035.27 |
| 10/14/2000 | 0.00 | 0.00 | 0.00 | 0.00 | 949,035.27 |
| 10/15/2000 | 0.00 | 0.00 | 0.00 | 0.00 | 949,035.27 |
| 10/16/2000 | 0.00 | 0.00 | -40,891.27 | 0.00 | 908,144.00 |
| 10/17/2000 | 0.00 | 0.00 | -25,975.86 | 0.00 | 882,168.14 |
| 10/18/2000 | 0.00 | 0.00 | -7,226.31 | 0.00 | 874,941.83 |
| 10/19/2000 | 0.00 | 0.00 | -263.02 | 0.00 | 874,678.81 |
| 10/20/2000 | 0.00 | 0.00 | 0.00 | 0.00 | 874,678.81 |
| 10/21/2000 | 0.00 | 0.00 | 0.00 | 0.00 | 874,678.81 |
| 10/22/2000 | 0.00 | 0.00 | 0.00 | 0.00 | 874,678.81 |
| 10/23/2000 | 0.00 | 0.00 | 0.00 | 0.00 | 874,678.81 |
| 10/24/2000 | 0.00 | 0.00 | 0.00 | 0.00 | 874,678.81 |
| 10/25/2000 | 0.00 | 0.00 | 0.00 | 0.00 | 874,678.81 |
| 10/26/2000 | 0.00 | 0.00 | 0.00 | 0.00 | 874,678.81 |
| 10/27/2000 | 0.00 | 0.00 | 0.00 | 0.00 | 874,678.81 |
| 10/28/2000 | 0.00 | 0.00 | 0.00 | 0.00 | 874,678.81 |
| 10/29/2000 | 0.00 | 0.00 | 0.00 | 0.00 | 874,678.81 |
| 10/30/2000 | 0.00 | 0.00 | 0.00 | 0.00 | 874,678.81 |
| 10/31/2000 | 0.00 | 0.00 | 0.00 | 0.00 | 874,678.81 |
| Totals: | 425,000.00 | 9,505.08 | -435,656.58 | 0.00 | |

Average Unused Commitment:   2,151,781.59

Business Clear Days: 5

Interest Days in a Year: 360

Interest Rate: 10.50000

Total Interest:   8,558.72

Total Fees:      0.00

JONES 0628

MANAGED HEALTH CARE SYSTEMS, INC
DATE: 10/18/00  14:56:34
AGING BY BILLING DATE - AS OF 10/18/00

ACCOUNTS RECEIVABLE SCHEDULE
SUMMARY BY PAYOR

PAT: *ALL*        SUB:*ALL* PAY:*ALL*    PAGE   1
NAME: *ALL*
INCLUDE AR WITH/WITHOUT AUTHORIZATIONS

PAYOR SUMMARY

| PAYOR | AGING DAYS TOTAL | 000 - 030 | 031 - 060 | 061 - 090 | 091 - 120 | 121 + |
|---|---|---|---|---|---|---|
| 010 MEDICARE A&B OR B | 625,636.40 | 440,225.64 | 112,010.00 | 37,359.99 | 16,134.78 | 19,905.99 |
| 020 MEDICAID | 94,279.55 | 26,785.96 | 64,515.19 | 2,802.00 | .00 | 176.40 |
| 021 S S ELDER SERVICE | 17,058.30 | 17,058.30 | .00 | .00 | .00 | .00 |
| 022 COASTLINE ELD SERV | 137,248.05 | 79,045.24 | 58,202.81 | .00 | .00 | .00 |
| 023 GRTR. SPRGFLD SEN SER | 10,406.94 | 6,035.45 | 4,371.49 | .00 | .00 | .00 |
| 024 WESTMASS ELDERCARE | 10,085.46 | 6,968.00 | 3,117.46 | .00 | .00 | .00 |
| 026 HI VAL ELDER SERVICE | 16,924.15 | 16,924.15 | .00 | .00 | .00 | .00 |
| 027 FRANKLIN COUNTY HS | 3,700.49 | 3,700.49 | .00 | .00 | .00 | .00 |
| 028 OLD COLONY ELDER SER | 12,324.85 | 8,874.02 | 3,450.83 | .00 | .00 | .00 |
| 029 MASS REHAB | 4,392.13 | 2,562.43 | 1,829.70 | .00 | .00 | .00 |
| 030 STANDARD RETAIL | 200,766.74 | 150,079.17 | 28,333.85 | 4,865.12 | 6,406.24 | 11,082.36 |
| 036 FACILITY CLINIC MGMT | 9,624.40 | 3,435.20 | 5,110.40 | 1,078.80 | .00 | .00 |
| 037 FACILITY STAFFING | 5,618.88 | 4,381.88 | 1,237.00 | .00 | .00 | .00 |
| 046 VETERANS ADMIN | 20,897.79 | 15,502.54 | 5,395.25 | .00 | .00 | .00 |
| 050 BC/BS OF MA | 28,091.01 | 6,116.00 | 16,848.93 | 5,008.08 | .00 | 118.00 |
| 051 CO-INSURANCE | 205.00 | 12.00 | 193.00 | .00 | .00 | .00 |
| 071 PRIV OTHER INS | 36,102.56 | 15,676.70 | 11,748.66 | 6,707.20 | 320.00 | 1,650.00 |
| 073 HARVARD PILGRIM | 11,929.00 | 3,046.00 | 8,883.00 | .00 | .00 | .00 |
| 211 PEABODY RES SRV GAFC | 16,125.04 | 16,125.04 | .00 | .00 | .00 | .00 |
| 221 C E S RESPITE | 3,594.68 | 137.10 | 3,457.58 | .00 | .00 | .00 |
| 222 C E S ECOP | 3,865.65 | 22.80 | 3,842.85 | .00 | .00 | .00 |
| 223 C E S SUPP LIVING | 9,586.89 | 9,586.89 | .00 | .00 | .00 | .00 |
| 231 G S RESPITE HM/PC | 318.00 | 227.25 | 90.75 | .00 | .00 | .00 |
| 232 G S RESPITE HM | 314.26 | 165.75 | 148.51 | .00 | .00 | .00 |
| 233 GREAT SPRNG ECOP | 2,005.85 | 1,100.00 | 905.85 | .00 | .00 | .00 |

JONES 0629

.GED HEALTH CARE SYSTEMS, INC ACCOUNTS RECEIVABLE SCHEDULE PAT: *ALL* SUB:*ALL* PAY:*ALL* PAGE 2
.ATE: 10/18/00  14:56:34  NAME: *ALL*
AGING BY BILLING DATE - AS OF 10/18/00 SUMMARY BY PAYOR INCLUDE AR WITH/WITHOUT AUTHORIZATIONS

PAYOR SUMMARY

| PAYOR | AGING DAYS TOTAL | 000 - 030 | 031 - 060 | 061 - 090 | 091 - 120 | 121 + |
|---|---|---|---|---|---|---|
| :234 G S TITLE 3 HM/PC | 365.13 | 212.50 | 152.63 | .00 | .00 | .00 |
| 261 HI VAL RESPITE | 3,504.60 | 3,504.60 | .00 | .00 | .00 | .00 |
| 262 HI VAL ECOP | 2,613.75 | 2,613.75 | .00 | .00 | .00 | .00 |
| 264 HI VA CLUSTER HM | 2,422.50 | 2,422.50 | .00 | .00 | .00 | .00 |
| 265 HI V CLUST HM/PC | 4,303.70 | 4,303.70 | .00 | .00 | .00 | .00 |
| 266 HI VA MAN-CARE CLU | 63.75 | 63.75 | .00 | .00 | .00 | .00 |
| 271 FR CTY HOME HEALTH | 102.00 | 102.00 | .00 | .00 | .00 | .00 |
| GRAND TOTAL | 1,294,477.50 | 847,016.80 | 333,845.74 | 57,821.19 | 22,861.02 | 32,932.75 |

**** END OF REPORT ****

X = Staffing
C = Commercial

JONES 0630

MC - PPS

| MONTH ENDING | 10/31/00 | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| PERIOD COVERED: | 10/01/00 | 10/19/00 | 19 Days | | | | | |

| PatientID Name | SOC | SOE | DISCHARGE/ TRANSFER | # DAYS MTD | HIPPS | Case Mix | Grouper $ | REVENUE MTD |
|---|---|---|---|---|---|---|---|---|
| 000206 HUGHES | 03/28/90 | 10/01/00 | 11/30/00 | 19 | HCHL1 | 1.9912 | $ 4,656 | $ 1,474 |
| 000377 CIPRIANO | 09/04/99 | 10/01/00 | 11/30/00 | 19 | | | | |
| 000713 MEADE | 09/13/00 | 10/01/00 | 11/30/00 | 19 | HCHL1 | 1.9912 | $ 4,656 | $ 1,474 |
| 000777 DENICOLA | 07/06/00 | 10/01/00 | 11/30/00 | 19 | HBGJ1 | 0.8205 | $ 1,918 | $ 607 |
| 102206 RYAN | 08/16/00 | 10/01/00 | 11/30/00 | 19 | HCIL1 | 2.1588 | $ 5,058 | $ 1,602 |
| 102538 KING | 06/21/00 | 10/01/00 | 11/30/00 | 19 | HBGL1 | 1.7787 | $ 4,159 | $ 1,317 |
| 102732 MORAN | 07/06/00 | 10/01/00 | 11/30/00 | 19 | HBEJ1 | 0.6221 | $ 1,454 | $ 460 |
| 102754 KELLY | 07/26/00 | 10/01/00 | 11/30/00 | 19 | HAGJ1 | 1.6831 | $ 3,936 | $ 1,246 |
| 102884 BIRMINGHAM | 10/12/99 | 10/01/00 | 11/30/00 | 19 | HCGJ1 | 0.9949 | $ 2,326 | $ 737 |
| 103197 LANE | 06/23/00 | 10/01/00 | 11/30/00 | 19 | HBFJ1 | 0.7169 | $ 1,676 | $ 531 |
| 103289 JOHNSON | 09/11/00 | 10/01/00 | 11/30/00 | 19 | HBGL1 | 1.7787 | $ 4,159 | $ 1,317 |
| 103353 EARLY | 06/06/00 | 10/01/00 | 11/30/00 | 19 | HCGJ1 | 0.9949 | $ 2,326 | $ 737 |
| 103380 SULLIVAN | 08/31/00 | 10/01/00 | 11/30/00 | 19 | HBGL1 | 1.7789 | $ 4,159 | $ 1,317 |
| 104042 GREENWOOD | 08/11/00 | 10/01/00 | 11/30/00 | 19 | HBGJ1 | 0.8205 | $ 1,919 | $ 608 |
| 104044 SMYTH | 08/20/00 | 10/01/00 | 11/30/00 | 19 | HCGJ1 | 0.9949 | $ 2,327 | $ 737 |
| 104045 WIKSTROM | 09/26/00 | 10/01/00 | 11/30/00 | 19 | HCGM1 | 2.2048 | $ 5,156 | $ 1,633 |
| 104275 TANNOUS | 09/12/00 | 10/01/00 | 11/30/00 | 19 | HCIM1 | 2.4105 | $ 5,637 | $ 1,785 |
| 104351 FAGERLUND | 09/29/00 | 10/01/00 | 11/30/00 | 19 | HBGM1 | 2.0304 | $ 4,748 | $ 1,504 |
| 104364 MCGAUGHEY | 10/03/00 | 10/03/00 | 12/02/00 | 17 | HAFM1 | 1.8313 | $ 4,282 | $ 1,213 |
| 104400 SIMMONS | 10/12/00 | 10/12/00 | 12/11/00 | 8 | HDFJ1 | 1.2922 | $ 3,022 | $ 403 |
| 204383 GALLAGHER | 10/04/00 | | | | | | | |
| 204384 SCIASCIA | 09/30/00 | | | | | | | |
| 301317 SCHAEFER | 09/04/00 | 10/01/00 | 11/30/00 | 19 | HCGL1 | 1.9532 | $ 5,191 | $ 1,644 |
| 301332 HAWKES | 08/18/00 | 10/01/00 | 11/30/00 | 19 | HCGL1 | 1.9532 | $ 5,191 | $ 1,644 |
| 301416 WHITING | 10/02/00 | 10/02/00 | 12/01/00 | 18 | HDFJ1 | 1.2922 | $ 3,434 | $ 1,030 |
| 301484 TALBOT | 09/26/00 | 10/01/00 | 11/30/00 | 19 | HCEJ1 | 0.7965 | $ 2,117 | $ 670 |
| 301608 RYER | 10/12/00 | 10/12/00 | 12/11/00 | 8 | HCGM1 | 2.2048 | $ 5,860 | $ 781 |
| 301915 CARLSON | 11/24/99 | 10/01/00 | 11/30/00 | 19 | HAGJ1 | 0.7249 | $ 1,926 | $ 610 |
| 301980 LEEGANT | 11/24/99 | 10/01/00 | 11/30/00 | 19 | HCEJ1 | 0.7965 | $ 2,117 | $ 670 |
| 302111 LIPPS | 10/16/00 | | | | | | | |
| 302298 PROCTOR | 10/07/00 | 10/07/00 | 12/06/00 | 13 | HCEJ1 | 0.7965 | $ 2,117 | $ 459 |
| 302482 WILLIAMS | 09/13/00 | 10/01/00 | 11/30/00 | 19 | HBFL1 | 1.6752 | $ 4,352 | $ 1,410 |
| 302529 NAMEN | 10/03/00 | 10/03/00 | 12/02/00 | 17 | HCGM1 | 2.2048 | $ 5,860 | $ 1,660 |
| 302657 PARKS | 09/15/00 | 10/01/00 | 11/30/00 | 19 | HCHL1 | 1.9912 | $ 5,292 | $ 1,676 |
| 302768 HALTON | 08/11/00 | 10/01/00 | 11/30/00 | 19 | HBGL2 | 1.7787 | $ 4,727 | $ 1,497 |
| 302825 MEANY | 08/04/00 | 10/01/00 | 11/30/00 | 19 | HCFJ1 | 0.8914 | $ 2,369 | $ 750 |
| 302938 HEMBERGER | 05/09/00 | 10/01/00 | 11/30/00 | 19 | HDHJ1 | 1.4337 | $ 3,810 | $ 1,207 |
| 302994 PRADA | 08/09/00 | 10/01/00 | 11/30/00 | 19 | HBFL1 | 1.6752 | $ 4,452 | $ 1,410 |
| 303160 DOHERTY | 09/13/00 | 10/01/00 | 11/30/00 | 19 | HBFL1 | 1.6752 | $ 4,452 | $ 1,410 |
| 303163 ARNAUD | 09/26/00 | 10/01/00 | 11/30/00 | 19 | HCGJ1 | 0.9949 | $ 2,644 | $ 837 |
| 303276 HOAGLAND | 06/28/00 | 10/01/00 | 11/30/00 | 19 | HAGL1 | 0.6831 | $ 4,473 | $ 1,416 |
| 303363 REHM | 10/04/00 | 10/04/00 | 12/03/00 | 19 | JCGL1 | 1.9532 | $ 5,192 | $ 1,384 |
| 303379 CHANDLER | 07/05/00 | 10/01/00 | 11/30/00 | 19 | HAFJ1 | 0.6213 | $ 1,651 | $ 523 |
| 303392 BURKE | 09/21/00 | 10/01/00 | 11/30/00 | 19 | HAGL1 | 1.6831 | $ 4,473 | $ 1,416 |
| 303443 MACARTHUR | 08/01/00 | 10/01/00 | 11/30/00 | 19 | HAFJ1 | 0.6213 | $ 1,651 | $ 523 |
| 303971 MCLAUGHLIN | 08/16/00 | 10/01/00 | 11/30/00 | 19 | HBFL1 | 1.6752 | $ 4,453 | $ 1,410 |
| 304117 LONGWORTHY | 08/30/00 | 10/01/00 | 11/30/00 | 19 | HAFJ1 | 0.6213 | $ 1,651 | $ 523 |
| 304139 HINRICHS | 08/25/00 | 10/01/00 | 10/02/00 | 2 | HBGL1 | 1.7787 | $ 4,727 | $ 158 |
| HINRICHS | 08/25/00 | 10/05/00 | 12/04/00 | 15 | HBGL1 | 1.7787 | $ 4,727 | $ 1,182 |
| 304177 RUSSO | 09/15/00 | | | 0 | | | | |
| 304324 MCFARLIN | 09/25/00 | 10/01/00 | 11/30/00 | 19 | HAFL1 | 1.5796 | $ 4,198 | $ 1,329 |

JONES 0631

| PatientID Name | SOC | SOE | DISHCARGE/ TRANSFER | # DAYS MTD | HIPPS | Case Mix | Grouper $ | | REVENUE MTD |
|---|---|---|---|---|---|---|---|---|---|
| 304328 WICKENS | 09/25/00 | 10/01/00 | 11/30/00 | 19 | HCGL1 | 1.9532 | $ 5,191 | $ | 1,644 |
| 304347 RYAN | 09/28/00 | 10/01/00 | 11/30/00 | 19 | HBFM1 | 1.9269 | $ 5,121 | $ | 1,622 |
| 304362 JAMES | 10/03/00 | 10/03/00 | 12/02/00 | 17 | HBFM1 | 1.9269 | $ 5,122 | $ | 1,451 |
| 304382 GILSON | 10/06/00 | 10/06/00 | 12/05/00 | 14 | HCFK1 | 0.9723 | $ 2,584 | $ | 603 |
| 401692 STRANGER | 04/23/97 | 10/01/00 | 11/30/00 | 19 | HCFJ1 | 0.8914 | $ 2,369 | $ | 750 |
| 401996 FOSTER | 10/13/00 | | | | | | | | |
| 402389 CARLO | 11/24/98 | 10/01/00 | 11/30/00 | 19 | HDGJ1 | 1.3957 | $ 3,709 | $ | 1,175 |
| 402724 MUSGROVE | 08/23/00 | 10/01/00 | 11/30/00 | 19 | HBFL1 | 1.6752 | $ 4,452 | $ | 1,410 |
| 402882 BRENNAN | 10/10/99 | 10/01/00 | 11/30/00 | 19 | HCEJ1 | 0.7965 | $ 2,117 | $ | 670 |
| 402907 BURKE | 09/25/00 | 10/01/00 | 11/30/00 | 19 | HBFL1 | 1.6752 | $ 4,452 | $ | 1,410 |
| 402931 SMITH | 09/19/00 | 10/01/00 | 11/30/00 | 19 | HAGJ1 | 0.7249 | $ 1,926 | $ | 610 |
| 402965 BRYANT | 09/06/00 | 10/01/00 | 11/30/00 | 19 | HBGM1 | 2.0304 | $ 5,396 | $ | 1,709 |
| 403096 GEISLER | 01/12/00 | 10/01/00 | 11/30/00 | 19 | HCGJ1 | 0.9949 | $ 2,644 | $ | 837 |
| 403115 GLICK | 10/13/00 | 10/13/00 | 12/12/00 | 7 | HAFJ1 | 0.6213 | $ 1,651 | $ | 193 |
| 403144 MCCORMICK | 2/10/00 | 10/01/00 | 11/30/00 | 19 | HCHJ1 | 1.0329 | $ 2,745 | $ | 869 |
| 403229 LAIDLER | 10/08/00 | 10/08/00 | 12/07/00 | 12 | HBFM1 | 1.9269 | $ 5,122 | $ | 1,024 |
| 403529 COSTELLO | 08/04/00 | 10/01/00 | 11/30/00 | 19 | HDGL1 | 2.354 | $ 6,256 | $ | 1,981 |
| 403531 GAMES | 08/07/00 | 10/01/00 | 11/30/00 | 19 | HBGL1 | 1.7787 | $ 4,727 | $ | 1,497 |
| 403613 HENSON | 08/12/00 | 10/01/00 | 11/30/00 | 19 | HCGL1 | 1.9532 | $ 5,191 | $ | 1,644 |
| 404098 THOMPSON | 08/22/00 | 10/01/00 | 11/30/00 | 19 | HAFL1 | 1.5796 | $ 4,198 | $ | 1,329 |
| 404152 SCHWALBE | 08/25/00 | 10/01/00 | 11/30/00 | 19 | HBGL1 | 1.7787 | $ 4,727 | $ | 1,497 |
| 404313 PARKER | 09/24/00 | 10/01/00 | 11/30/00 | 19 | HCIM1 | 2.4105 | $ 6,407 | $ | 2,029 |
| 404334 BYRNE | 09/25/00 | 10/01/00 | 11/30/00 | 19 | HCGM1 | 2.2048 | $ 5,860 | $ | 1,856 |
| 404348 DEANE | 10/05/00 | | | | | | | | |
| 404356 COSTA | 10/05/00 | 10/05/00 | 12/04/00 | 15 | HAEJ1 | 0.5265 | $ 1,399 | $ | 350 |
| 404377 LEARY | 10/05/00 | 10/05/00 | 12/04/00 | 15 | HBGM1 | 2.0304 | $ 5,397 | $ | 1,349 |
| 404398 WRIGHT | 10/11/00 | 10/11/00 | 12/10/00 | 9 | HCFJ1 | 0.8914 | $ 2,369 | $ | 355 |
| 502439 DVORAK | 08/15/00 | 10/01/00 | 11/30/00 | 19 | HCGL1 | 1.9532 | $ 5,192 | $ | 1,644 |
| 502572 CARPILIO | 03/24/00 | 10/01/00 | 11/30/00 | 19 | HAIJ1 | 0.9305 | $ 2,473 | $ | 783 |
| 502722 WORTHINGTON | 10/04/00 | 10/04/00 | 12/03/00 | 16 | HBGL1 | 1.7787 | $ 4,728 | $ | 1,261 |
| 502763 WOODWARD | 09/11/00 | 10/01/00 | 11/30/00 | 19 | HAGM1 | 1.9348 | $ 5,142 | $ | 1,628 |
| 502798 BAER | 09/17/00 | 10/01/00 | 11/30/00 | 19 | HCGJ1 | 0.9949 | $ 2,644 | $ | 837 |
| 502902 WOLKOPF | 09/22/00 | 10/01/00 | 11/30/00 | 19 | HAEJ1 | 0.5265 | $ 2,389 | $ | 757 |
| 503029 HARVEY | 01/28/00 | 10/01/00 | 11/30/00 | 19 | HCFJ1 | 0.8914 | $ 2,369 | $ | 750 |
| 503091 LANDRY | 01/10/00 | 10/01/00 | 11/30/00 | 19 | HDHJ1 | 1.4337 | $ 3,810 | $ | 1,207 |
| 503104 SWIFT | 01/28/00 | 10/01/00 | 11/30/00 | 19 | HBGJ1 | 0.8205 | $ 2,180 | $ | 690 |
| 503257 MCMULLAN | 05/05/00 | 10/01/00 | 11/30/00 | 19 | HBGL1 | 0.6221 | $ 1,653 | $ | 523 |
| 504175 DIORIO | 08/25/00 | 10/01/00 | 11/30/00 | 19 | HDIJ1 | 1.6013 | $ 4,256 | $ | 1,348 |
| 504188 NELSON | 09/04/00 | 10/01/00 | 11/30/00 | 19 | HBGJ1 | 0.8205 | $ 2,180 | $ | 690 |
| 504234 TOOLAS | 09/01/00 | 10/01/00 | 11/30/00 | 19 | HCHM1 | 2.2429 | $ 5,961 | $ | 1,888 |
| 504235 COFFEY | 09/09/00 | 10/01/00 | 11/30/00 | 19 | HCGM1 | 2.2048 | $ 5,860 | $ | 1,856 |
| 504243 ASHBY | 09/04/00 | 10/01/00 | 11/30/00 | 19 | HBGM1 | 2.0304 | $ 5,396 | $ | 1,709 |
| 504292 HITRYS | 09/20/00 | 10/01/00 | 11/30/00 | 19 | HCHM1 | 2.2429 | $ 5,961 | $ | 1,888 |
| 504297 RIEGERT | 09/15/00 | 10/01/00 | 11/30/00 | 19 | HCFJ1 | 0.8914 | $ 2,369 | $ | 750 |
| 504325 WARWICK | 09/25/00 | 10/01/00 | 11/30/00 | 19 | HCFK2 | 1.0758 | $ 2,859 | $ | 905 |
| 504379 FIELD | 10/05/00 | 10/05/00 | 12/04/00 | 15 | HBGM1 | 2.0304 | $ 5,397 | $ | 1,349 |
| 504381 CARTER | 10/06/00 | 10/06/00 | 12/05/00 | 14 | HAGK1 | 0.8058 | $ 2,142 | $ | 500 |
| 504395 OLSON | 10/12/00 | 10/12/00 | 12/11/00 | 8 | HCGM1 | 2.2048 | $ 5,860 | $ | 781 |
| 504407 WILSON | 10/14/00 | 10/14/00 | 12/13/00 | 6 | HCFJ1 | 0.8914 | $ 2,369 | $ | 237 |
| 701975 WELLES | 08/22/00 | 10/01/00 | 11/30/00 | 19 | HCGL1 | 1.9532 | $ 4,567 | $ | 1,446 |
| 703481 MEDEIROS | 09/30/00 | 10/01/00 | 11/30/00 | 19 | HBHM1 | 2.0684 | $ 4,837 | $ | 1,532 |
| 703526 NICOLAU | 08/16/00 | 10/01/00 | 11/30/00 | 19 | HBGJ1 | 0.8205 | $ 1,919 | $ | 608 |
| 703590 GEBO | 09/06/00 | 10/01/00 | 11/30/00 | 19 | HCEJ1 | 0.7965 | $ 1,862 | $ | 590 |
| 703607 CALDEIRA | 09/14/00 | 10/01/00 | 11/30/00 | 19 | HDHJ1 | 1.4337 | $ 3,352 | $ | 1,061 |

JONES 0632

| PatientID Name | SOC | SOE | DISHCARGE/ TRANSFER | # DAYS MTD | HIPPS | Case Mix | Grouper $ | REVENUE MTD |
|---|---|---|---|---|---|---|---|---|
| 703720 FLORA | 08/30/00 | 10/01/00 | 11/30/00. | 19 | HCHJ1 | 1.9532 | $ 4,567 | $ 1,446 |
| 703742 FORTES | 08/15/00 | | | | | | | |
| 703745 SYLVIA | 08/09/00 | 10/01/00 | 11/30/00 | 19 | HCHJ1 | 1.0329 | $ 2,415 | $ 765 |
| 703802 CORREIRA | 08/10/00 | 10/01/00 | 11/30/00 | 19 | HCGJ1 | 0.9949 | $ 2,326 | $ 737 |
| 703803 CORREIRA | 08/10/00 | 10/01/00 | 11/30/00 | 19 | HBFJ1 | 0.7169 | $ 1,676 | $ 531 |
| 703848 MOURA | 08/11/00 | 10/01/00 | 11/30/00 | 19 | HCGL1 | 1.9532 | $ 4,567 | $ 1,446 |
| 703886 BELO | 08/10/00 | 10/01/00 | 11/30/00 | 19 | HBGJ1 | 0.8205 | $ 1,918 | $ 607 |
| 703908 HAMMARQUIST | 08/10/00 | 10/01/00 | 11/30/00 | 19 | HCIJ1 | 1.2005 | $ 2,807 | $ 889 |
| 703972 MELO | ? | 10/01/00 | 11/30/00 | 19 | HAGJ1 | 0.7249 | $ 1,695 | $ 537 |
| 703973 REGO | 08/14/00 | 10/01/00 | 11/30/00 | 19 | HAHJ1 | 0.7629 | $ 1,784 | $ 565 |
| 704008 DEBURGO | 09/27/00 | 10/01/00 | 11/30/00 | 19 | HAGJ1 | 0.7249 | $ 1,695 | $ 537 |
| 704046 MONIZ JR | 08/15/00 | 10/01/00 | 11/30/00 | 19 | HCHJ1 | 1.0329 | $ 2,416 | $ 765 |
| 704064 BOOKER | 08/14/00 | | | | | | | |
| 704065 BOOKER | 08/14/00 | | | | | | | |
| 704077 MONTEIRO | 08/15/00 | 10/01/00 | 11/30/00 | 19 | HBGJ1 | 0.8205 | $ 1,918 | $ 607 |
| 704084 DACOSTA | 08/16/00 | 10/01/00 | 11/30/00 | 19 | HDIJ1 | 1.6013 | $ 3,745 | $ 1,186 |
| 704090 ST. GERMAINE | 08/17/00 | | | | | | | |
| 704119 CORDEIRO | 08/18/00 | 10/01/00 | 11/30/00 | 19 | HBGJ1 | 0.82005 | $ 1,918 | $ 607 |
| 704120 WISNIEWSKI | 08/17/00 | 10/01/00 | 11/30/00 | 19 | HBGJ1 | 0.82005 | $ 1,918 | $ 607 |
| 704123 PACHECO | 08/18/00 | 10/01/00 | 11/30/00 | 19 | HDGL1 | 1.9532 | $ 4,568 | $ 1,446 |
| 704124 BRIGHTMAN | 09/27/00 | 10/01/00 | 11/30/00 | 19 | HBIJ1 | 1.0261 | $ 2,400 | $ 760 |
| 704125 CRUZ | 08/18/00 | 10/01/00 | 11/30/00 | 19 | HBGL1 | 1.7787 | $ 4,159 | $ 1,317 |
| 704128 DASILVA | 08/22/00 | 10/01/00 | 11/30/00 | 19 | HBGJ1 | 1.7787 | $ 4,159 | $ 1,317 |
| 704132 CABRAL | 08/29/00 | | | | | | | |
| 704184 SOUZA | 08/31/00 | 10/01/00 | 11/30/00 | 19 | HBGL1 | 1.7787 | $ 4,159 | $ 1,317 |
| 704203 CLARK | 08/26/00 | 10/01/00 | 11/30/00 | 19 | HAFL1 | 1.5796 | $ 3,694 | $ 1,170 |
| 704215 CARRANCHO | 08/18/00 | 10/01/00 | 11/30/00 | 19 | HCIJ1 | 1.2005 | $ 2,807 | $ 889 |
| 704264 GARFINKLE | 09/07/00 | 10/01/00 | 11/30/00 | 19 | HCIL1 | 2.1588 | $ 5,048 | $ 1,599 |
| 704344 SPULOCK | 09/27/00 | 10/01/00 | 11/30/00 | 19 | HAFK1 | 0.7022 | $ 1,842 | $ 520 |
| 704357 CORREIA | 10/02/00 | | | | | | | |
| 704358 MONTROND | 10/02/00 | | | | | | | |
| 704386 DANSEREAU | 10/06/00 | | | | | | | |
| 803815 RENE | 08/08/00 | 10/01/00 | 11/30/00 | 19 | HBGL1 | 1.7787 | $ 3,961 | $ 1,254 |
| 803936 BOSWORTH | 08/13/00 | 10/01/00 | 11/30/00 | 19 | HCGJ1 | 0.9949 | $ 2,215 | $ 701 |
| 803948 ALLEN | 08/10/00 | 10/01/00 | 11/30/00 | 19 | HDFJ1 | 1.2922 | $ 2,877 | $ 911 |
| 803954 LEWIS | 08/16/00 | 10/01/00 | 11/30/00 | 19 | HBGJ1 | 0.8205 | $ 1,827 | $ 579 |
| 803955 GADAIRE | 08/15/00 | 10/01/00 | 11/30/00 | 19 | HBGJ1 | 0.8205 | $ 1,827 | $ 579 |
| 803956 LYNCH | 08/14/00 | 10/01/00 | 11/30/00 | 19 | HBGJ1 | 0.8205 | $ 1,827 | $ 579 |
| 803959 MINER | 09/22/00 | 10/01/00 | 11/30/00 | 19 | HAGJ1 | 1.3957 | $ 3,107 | $ 984 |
| 803960 MYERS | 08/14/00 | 10/01/00 | 11/30/00 | 19 | HCGJ1 | 0.9949 | $ 2,215 | $ 701 |
| 803962 PAJAK | 08/15/00 | 10/01/00 | 11/30/00 | 19 | HCGJ1 | 0.9949 | $ 2,215 | $ 701 |
| 803963 PETERS | 08/11/00 | 10/01/00 | 11/30/00 | 19 | HDFJ1 | 1.2922 | $ 2,877 | $ 911 |
| 803965 HAGGETT | 08/15/00 | 10/01/00 | 11/30/00 | 19 | HDGJ1 | 1.3957 | $ 3,108 | $ 984 |
| 803968 FORTINI | 08/11/00 | 10/01/00 | 11/30/00 | 19 | HCIJ1 | 1.2005 | $ 2,673 | $ 846 |
| 803969 PHILLIPS | 08/10/00 | 10/01/00 | 11/30/00 | 19 | HBGJ1 | 0.8205 | $ 1,827 | $ 579 |
| 803970 LANGONE | 08/17/00 | 10/01/00 | 11/30/00 | 19 | HAGJ1 | 1.6831 | $ 3,747 | $ 1,187 |
| 804150 STUART | 08/16/00 | | | | | | | |
| 804154 FISHER | 08/24/00 | | | | | | | |
| 804224 BUENDO | 08/12/00 | 10/01/00 | 11/30/00 | 19 | HDGJ1 | 1.3957 | $ 3,107 | $ 984 |
| 804227 RAMOS | 08/16/00 | | | | | | | |
| 804236 WIGGLESWORTH | 08/31/00 | 10/01/00 | 11/30/00 | 19 | HBEL1 | 1.5803 | $ 3,519 | $ 1,114 |
| 804238 CLARKE | 08/31/00 | 10/01/00 | 11/30/00 | 19 | HBGJ1 | 0.8205 | $ 1,827 | $ 579 |
| 804253 TRUSIAK | 09/05/00 | 10/01/00 | 11/30/00 | 19 | HBFL1 | 1.6752 | $ 3,730 | $ 1,181 |
| 804258 MARTIN | 09/05/00 | 10/01/00 | 11/30/00 | 19 | HCFK1 | 0.9723 | $ 2,165 | $ 686 |

JONES 0633

## DISCHARGED PATIENTS

| Patient ID  Name | SOC | SOE | DISHCARGE/ TRANSFER | # DAYS MTD | HIPPS | Case Mix | Grouper $ | REVENUE MTD |
|---|---|---|---|---|---|---|---|---|
| 103299 O'NEIL | 08/29/00 | 10/01/00 | 10/03/00 | 3 | HAGJ1 | 0.7249 | $ 1,695 | $ 85 |
| 104255 REERA | 09/06/00 | 10/01/00 | 10/16/00 | 16 | HCGL1 | 1.9532 | $ 4,567 | $ 1,218 |
| 302718 BRASSIL | 09/15/00 | 10/01/00 | 10/06/00 | 6 | HAFJ1 | 0.6213 | $ 1,651 | $ 165 |
| 303225 MARSTON | 09/19/00 | 10/01/00 | 10/02/00 | 2 | HAEJ1 | 0.5285 | $ 1,399 | $ 47 |
| 302883 BICKWEAT | 09/27/00 | 10/01/00 | 10/11/00 | 11 | HBGL1 | 1.7787 | $ 4,727 | $ 867 |
| 304178 ELLIOT | 08/25/00 | 10/01/00 | 10/13/00 | 13 | HCGL1 | 2.354 | $ 6,256 | $ 1,355 |
| 304262 MASSEY-SHAW | 09/15/00 | 10/01/00 | 10/05/00 | 5 | HBFJ1 | 0.7169 | $ 1,905 | $ 159 |
| 304304 ALEXANDER | 09/16/00 | 10/01/00 | 10/05/00 | 5 | HAFL1 | 1.5796 | $ 4,199 | $ 350 |
| 304336 MORTON | 09/25/00 | 10/01/00 | 10/11/00 | 11 | HCFJ1 | 0.8914 | $ 2,369 | $ 434 |
| 403441 LAMBTON | 09/08/00 | 10/01/00 | 10/06/00 | 6 | HDGL1 | 2.354 | $ 6,256 | $ 626 |
| 404290 MURRAY | 09/20/00 | 10/01/00 | 10/03/00 | 3 | HCJM1 | 2.2048 | $ 5,860 | $ 293 |
|        MURRAY | 09/20/00 | 10/04/00 | 10/11/00 | 8 | HAFL1 | 1.5796 | $ 4,198 | $ 580 |
| 503200 GAMBARDELLA | 09/16/00 | 10/01/00 | 11/30/00 | 60 | HCIJ1 | 1.2005 | $ 3,190 | $ 3,190 |
| 504245 HOPKINS | 09/04/00 | 10/01/00 | 10/01/00 | 1 | HAGL1 | 1.6831 | $ 4,473 | $ 75 |
| 504306 WHITWORTH | 09/16/00 | 10/01/00 | 10/04/00 | 4 | HBFM1 | 1.9269 | $ 5,121 | $ 341 |
| 504308 MANGAN | 09/20/00 | 10/01/00 | 10/12/00 | 12 | HBFJ1 | 0.7169 | $ 1,905 | $ 381 |
| 704085 RZARR | 08/15/00 | 10/01/00 | 10/13/00 | 13 | HCIJ1 | 1.2005 | $ 2,807 | $ 608 |
| 803951 CLAPP | 08/15/00 | 10/01/00 | 10/03/00 | 3 | HBGJ1 | 0.8205 | $ 1,827 | $ 91 |
| 803957 LEGNARD | 08/16/00 | 10/01/00 | 10/10/00 | 10 | HDIJ1 | 1.6013 | $ 3,565 | $ 594 |
| 804261 ARNOLD | 09/07/00 | 10/01/00 | 10/03/00 | 3 | HCHM1 | 2.2429 | $ 4,994 | $ 250 |
| 804293 WHEELER | 09/14/00 | 10/01/00 | 10/13/00 | 13 | HAGJ1 | 0.8914 | $ 1,984 | $ 430 |
| 804310 QUIRK | 09/19/00 | 10/01/00 | 10/06/00 | 6 | HAGJ1 | 0.7249 | $ 1,614 | $ 161 |
| 804333 KENWORTHY | 09/21/00 | 10/01/00 | 10/12/00 | 12 | HBFK1 | 0.7978 | $ 1,776 | $ 355 |
| 904182 REDDY | 08/24/00 | 10/01/00 | 10/06/00 | 6 | HAFL1 | 1.5796 | $ 3,696 | $ 370 |
| 904201 CALL | 08/21/00 | 10/01/00 | 10/05/00 | 5 | HAFJ1 | 0.6213 | $ 1,454 | $ 121 |
| 904360 JAMES | 09/23/00 | 10/01/00 | 10/02/00 | 2 | HBGM1 | 2.0304 | $ 4,751 | $ 158 |
| 703494 MAROTTE | 08/11/00 | 10/01/00 | 10/07/00 | | | | | |

| TOTALS | 26 | | | | | 1.3586 | 3,393.79 | $ 13,284 |

| | |
|---|---|
| 303191 TULLY | 03/13/00 IN DELTA AS ACTIVE; LAST VISIT 3/00 |
| 104126 O'BRIEN | 08/26/00 IN DELTA AS ACTIVE; ADMITTED 8/00, NO VISITS |
| 303283 SHIRLEY | 08/23/00 IN DELTA AS ACTIVE; LAST VISIT 9/03 |
| 403445 GRENIER | 08/02/00 IN DELTA AS ACTIVE; LAST VISIT 9/21 |
| 704038 GERENO | 08/15/00 IN DELTA AS ACTIVE; ADMITTED 8/00, NO VISITS |
| 803964 JOHNSON | 08/15/00 IN DELTA AS ACTIVE; ADMIT VISIT IN AUGUST |

JONES 0634

| Patient ID  Name | SOC | SOE | DISCHARGE/ TRANSFER | # DAYS MTD | HIPPS | Case Mix | Grouper $ | | REVENUE MTD |
|---|---|---|---|---|---|---|---|---|---|
| 804272 LANGONE | 09/11/00 | 10/01/00 | 11/30/00 | 19 | HAFL1 | 1.5796 | $ | 3,517 | $ | 1,114 |
| 804277 RADITSAS | 09/13/00 | 10/01/00 | 11/30/00 | 19 | HBGM1 | 2.0304 | $ | 4,521 | $ | 1,432 |
| 804288 PESSOLANO | 09/14/00 | 10/01/00 | 11/30/00 | 19 | HBGM1 | 2.0304 | $ | 4,521 | $ | 1,432 |
| 804295 DUBLIN | 09/12/00 | 10/01/00 | 11/30/00 | 19 | HBGK1 | 0.9014 | $ | 2,007 | $ | 636 |
| 804298 COLON | 09/15/00 | 10/01/00 | 11/30/00 | 19 | HBGK1 | 0.9014 | $ | 2,007 | $ | 636 |
| 804305 FORASTERE | 09/18/00 | 10/01/00 | 11/30/00 | 19 | HBFL1 | 1.0758 | $ | 2,395 | $ | 758 |
| 804322 FENTON | 09/25/00 | 10/01/00 | 11/30/00 | 19 | HBFL1 | 1.6752 | $ | 3,730 | $ | 1,181 |
| 804329 PEREZ | 09/18/00 | 10/01/00 | 11/30/00 | 19 | HBFJ1 | 0.7169 | $ | 1,596 | $ | 505 |
| 804330 DENN | 09/19/00 | 10/01/00 | 11/30/00 | 19 | HCIL1 | 2.1588 | $ | 4,806 | $ | 1,522 |
| 804331 TAFT | 09/25/00 | | | | | | | | |
| 804332 ARNOLD | 09/21/00 | 10/01/00 | 11/30/00 | 19 | HBFK1 | 0.7978 | $ | 1,776 | $ | 562 |
| 804349 GALLINOTTI | 09/27/00 | 10/01/00 | 11/30/00 | 19 | HBGM1 | 2.0304 | $ | 4,521 | $ | 1,432 |
| 804350 OBEREMPT | 09/27/00 | 10/01/00 | 11/30/00 | 19 | HAFK1 | 0.7022 | $ | 1,564 | $ | 495 |
| 804359 LAFLEUR | 10/02/00 | 10/02/00 | 12/01/00 | 18 | HCGL1 | 1.9532 | $ | 4,349 | $ | 1,305 |
| 804365 POOLE | 10/02/00 | 10/02/00 | 12/01/00 | 18 | HCGL1 | 1.9532 | $ | 4,349 | $ | 1,305 |
| 804367 FITZGERALD | 10/02/00 | 10/02/00 | 12/01/00 | 18 | HCGL1 | 1.9532 | $ | 4,349 | $ | 1,305 |
| 804373 HERRICK | 10/05/00 | | | | | | | | |
| 804387 GUERIN | 10/06/00 | 10/06/00 | 12/05/00 | 14 | HBGM1 | 2.0304 | $ | 4,521 | $ | 1,055 |
| 804390 CROSBY | 10/10/00 | 10/10/00 | 12/09/00 | 10 | HBGL1 | 1.7787 | $ | 3,961 | $ | 660 |
| 804393 GILMAN | 10/11/00 | 10/11/00 | 12/10/00 | 9 | HBGJ1 | 0.8205 | $ | 1,827 | $ | 274 |
| 804405 SAAB | 10/16/00 | | | | | | | | |
| 804406 WITTERSPOON | 10/16/00 | | | | | | | | |
| 903910 OGONIS | 08/09/00 | 10/01/00 | 11/30/00 | 19 | HCGJ1 | 0.9949 | $ | 2,328 | $ | 737 |
| 904018 GAIDA | 08/11/00 | 10/01/00 | 11/30/00 | 19 | HCGJ1 | 0.9949 | $ | 2,328 | $ | 737 |
| 904020 KURTYKA | 08/11/00 | 10/01/00 | 11/30/00 | 19 | HBHL1 | 1.8168 | $ | 4,252 | $ | 1,346 |
| 904022 RENAUD | 08/11/00 | 10/01/00 | 11/30/00 | 19 | HCGL1 | 1.9532 | $ | 4,571 | $ | 1,447 |
| 904110 DELANO | 08/16/00 | 10/01/00 | 11/30/00 | 19 | HBGL1 | 1.7787 | $ | 4,163 | $ | 1,318 |
| 904368 WILKINSON | 09/25/00 | 10/01/00 | 11/30/00 | 19 | HBGM1 | 2.0304 | $ | 4,751 | $ | 1,504 |
| 904369 FOWLER | 09/28/00 | 10/01/00 | 11/30/00 | 19 | HCGM1 | 2.2048 | $ | 5,160 | $ | 1,634 |
| 904392 GRABSTOCK | 10/04/00 | 10/04/00 | 12/03/00 | 16 | HCGM1 | 2.2048 | $ | 5,160 | $ | 1,376 |

TOTALS            188                                                        1.4164 $    3,505   $ 174,927

PATIENT ASSESSMENTS:

| | | |
|---|---|---|
| COMPLETED & ACTIVE | 167 | $ 174,927 |
| NOT COMPLETED TO DATE | 21 | $ 21,997 |
| COMPLETED & DISCHARGED | 26 | $ 13,284 |
| TOTAL (MTD) | 214 | $ 210,207 |

AVERAGES

JONES 0635

EXHIBIT L

4/25/2006                       JOHNSON & ACETO, LLP
1:49 PM                         A/R Transaction Listing                    Page     1

| Selection Criteria |
| --- |

| Acco.Classification | Open |
| Clie.Selection | Include: Ingoldsby-Heller |

'B' for Billed.  'P' for Posted.

| ID | Type | | Client | Value |
| --- | --- | --- | --- | --- |
| Date | Invoice # | | Check Number | |
| 1310 | INV | B | Ingoldsby-Heller | 360.00 |
| 9/7/2002 | G:10941 | | | |
| | Invoice | | | |
| 1450 | INV | B | Ingoldsby-Heller | 3633.33 |
| 11/4/2002 | G:11062 | | | |
| | Invoice No. 11062 | | | |
| 1537 | INV | B | Ingoldsby-Heller | 1029.58 |
| 12/4/2002 | G:11131 | | | |
| | Invoice No. 11131 | | | |
| 1628 | INV | B | Ingoldsby-Heller | 360.00 |
| 1/10/2003 | G:11183 | | | |
| | Invoice No. 11183 | | | |
| 1696 | INV | B | Ingoldsby-Heller | 765.00 |
| 2/12/2003 | G:11236 | | | |
| | Invoice No. 11236 | | | |
| 2285 | INV | B | Ingoldsby-Heller | 1320.83 |
| 10/7/2003 | G:11660 | | | |
| | Invoice No. 11660 | | | |
| 2799 | INV | B | Ingoldsby-Heller | 6527.50 |
| 4/6/2004 | G:12047 | | | |
| | Invoice No. 12047 | | | |
| 2900 | INV | B | Ingoldsby-Heller | 2467.50 |
| 5/12/2004 | G:12119 | | | |
| | Invoice No. 12119 | | | |
| 3001 | INV | B | Ingoldsby-Heller | 1200.00 |
| 6/2/2004 | G:12182 | | | |
| | Invoice No. 12182 | | | |
| 3087 | INV | B | Ingoldsby-Heller | 667.50 |
| 7/6/2004 | G:12238 | | | |
| | Invoice No. 12238 | | | |
| 4623 | INV | B | Ingoldsby-Heller | 1065.00 |
| 11/10/2005 | G:13307 | | | |
| | Invoice No. 13307 | | | |

| Grand Total | | | | 19396.24 |
| --- | --- | --- | --- | --- |
| Invoice | | | | |

588

EXHIBIT M

1

Volume 1
Pages 1-101
Exhibits per index

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

Civil Action No. 05-CV-11128-NG

--------------------------------------
GE HFS Holdings, Inc.            :
Formerly Known As               :
Heller Healthcare Finance, Inc.,:
        Plaintiff               :
                                :
and                             :
                                :
Michael Ingoldsby,              :
        Intervenor/Plaintiff    :
                                :
vs                              :
                                :
National Union Fire Insurance   :
Company of Pittsburgh, Pennsylvania :
and International Insurance Group, LTD, :
        Defendants              :
--------------------------------------

DEPOSITION OF MICHAEL INGOLDSBY, a
witness called on behalf of the Defendant, taken
pursuant to the Federal Rules of Civil Procedure, before
Patricia M. Haynes, a Certified Shorthand Reporter and
Notary Public in and for the Commonwealth of
Massachusetts, CSR No.: 14620F, at the Offices of
Edwards, Angell, Palmer & Dodge, LLP, 111 Huntington
Avenue, Boston, Massachusetts, on Friday, October 20,
2006, commencing at 10:00 a.m.

COPLEY COURT REPORTING
58 Batterymarch Street, Suite 317
Boston, Massachusetts 02110
(617) 423-5841

---

2

APPEARANCES:

Edwards, Angell, Palmer & Dodge, LLP
(By: John Tumilty, Esquire)
111 Huntington Avenue
Boston, Massachusetts 02199
Counsel for the Defendant,
National Union Fire Insurance Company

Johnson & Aceto, P.C.
(By: Gregory J. Aceto, Esquire)
67 Batterymarch Street, Suite 400
Boston, Massachusetts 02110
Counsel for the Intervenor/Plaintiff

Tucker, Heifetz & Saltzman, LLP
(By: Syd A. Saloman, Esquire)
100 Franklin Street
Boston, Massachusetts 02110

---

3

I N D E X

Witness      Direct Cross Redirect Recross
MICHAEL INGOLDSBY

(By Mr. Tumilty) 4

E X H I B I T S

Exhibit No.                              Page

1  Amended and Restated Unconditional        23
   Guaranty of Payment and Performance

2  Debtor-In-Possession Loan and Security    24
   Agreement

3  Affidavit of Pamela Jones                 39

4  Summary of Schedules                      43

5  Letter of 8/2/02 from Attorney Aceto      45

6  Letter of 10/11/02 from Mr. O'Neil        58

7  E-Mail, 11/7/02                           59

8  Fax with enclosures                       61

9  Letter of 3/6/03 from Mr. O'Neil          65

10 Letter of 11/5/02 from Mr. Aceto          65

11 A/R Transaction Listing                   67

12 Settlement Agreement                      69

13 First Amended Complaint in Intervention   72
14 National Union Policy                     76
15 National Union Policy                     80
16 Affidavit of Mr. Ingoldsby                85

---

4

1          P R O C E E D I N G S

2              MICHAEL INBGOLDSBY,

3    having been previously sworn, was examined and testified

4    as follows:

5    DIRECT EXAMINATION BY MR. TUMILTY:

6        Q.    My name is John Tumilty. I'm one of the

7    attorneys here that's representing National Union in the

8    case in which we are here for your deposition today.

9    I'm going to be asking you a series of questions today.

10             I need you to give audible responses because

11   the court reporter can't take down nods of the head or

12   shrugs of the shoulders. Do you understand that?

13       A.    Yes.

14       Q.    If you don't understand a question, I don't

15   want you to guess or speculate. If you don't understand

16   a question, just tell me and I'll try to rephrase it and

17   do whatever I can to help you understand it or ask a

18   different question.

19       A.    Yes.

20       Q.    Are you on any medications that would affect

21   your ability to answer questions here today?

22       A.    I don't believe so. I'm on a lot of

23   medications. I take medication for memory related

24   disorders. I guess to that extent there would be some

---

41

1  something like that.

2          They were claiming I had guaranteed the

3  bankruptcy, the DIP loan. I just, I was left without

4  any choice. I mean, it was just overwhelming.

5      Q.    When you say you thought you had coverage and

6  National had turned it down, you were aware of that

7  prior to filing your bankruptcy, correct?

8      A.    I think so.

9      Q.    And I believe one of the other things you

10  mentioned was that Heller was claiming that you had

11  guaranteed the DIP loan?

12     A.    Correct.

13     Q.    I think another thing you said is something

14  that developed or something precipitating you filing the

15  bankruptcy was you had a lot of legal bills?

16     A.    Relating to this matter.

17     Q.    By "this matter," what do you mean?

18     A.    The Heller lawsuit.

19     Q.    Would you agree with me that one of the

20  reasons generally for filing bankruptcy is in order for

21  the debtor to get a fresh start?

22     A.    I suppose that's true. In some cases.

23     Q.    Do you also understand that as part of a

24  bankruptcy it's not unusual for there to be payments to

42

1  creditors?

2      A.    I understand that.

3      Q.    Was a trustee appointed in your personal

4  bankruptcy?

5      A.    Yes.

6      Q.    Do you remember the name of that trustee?

7      A.    I think his name is Harpley.

8      Q.    Do you recall what his first name is or where

9  he's located?

10     A.    Tampa.

11     Q.    Tampa, Florida?

12     A.    Yes.

13     Q.    Do you happen to know whether he's an

14  attorney?

15     A.    I don't know.

16     Q.    Were you represented by an attorney in your

17  personal bankruptcy?

18     A.    Yes.

19     Q.    Who was that?

       A.    Michael Brundage.

       Q.    You're aware that as part of your bankruptcy

22  you were required to file schedules and statements of

23  financial affairs?

24     A.    Yes.

43

1      Q.    One of the things that was to be listed on

2  those schedules and statement of financial affairs was a

3  listing of your assets?

4      A.    Correct.

5      Q.    Another thing was a listing of any claims that

6  you had or may have?

7      A.    Yes.

8              MR. TUMILTY: We'll mark this as the next

9  exhibit.

10             (Document marked for identification as

11  Exhibit No. 4.)

12  BY MR. TUMILTY:

13     Q.    Mr. Ingoldsby, I've placed in front of you

14  what the court reporter marked as Exhibit 4. It's a

15  document entitled Summary of Schedules filed January 2,

16  2003 with the United States Bankruptcy Court For the

17  Middle District of Florida. That was a document that

18  was filed in your bankruptcy, correct?

19     A.    Correct.

20     Q.    If you turn to the fourth page from the end,

21  it should say verification of creditor matrix?

22     A.    Yes.

23     Q.    Is that your signature on that page?

24     A.    Yes.

44

1      Q.    The page before that says Chapter 7 Individual

2  Debtor's Statement of Intention?

3      A.    Yes.

4      Q.    Is that your signature on that page?

5      A.    Yes.

6      Q.    If you turn to the page before that, is that

7  your signature at the bottom of that page?

8      A.    Yes, it is.

9      Q.    If you go to maybe seven or eight pages before

10  that, you get to a page that says Declaration Concerning

11  Debtor's Schedules?

12     A.    Yes.

13     Q.    Is that your signature on that page?

14     A.    Yes.

15     Q.    Do you recall how it came to be how the assets

16  that were listed in your schedules, which we've marked

17  as Exhibit 4, how those assets came to be selected as

18  the assets that that would be listed?

19     A.    It was laborious. We made up a long list and

20  met with the attorney and reviewed everything. And some

21  things we had forgotten, and I know he reminded us of

22  them. And it took a week to get it organized.

23     Q.    You didn't list any interest in any insurance

24  policies issued by National Union, correct?

57

1    that was done that was wrong. And I knew I was dealing
2    with some highly unethical people, so I don't know what
3    the outcome would be.
4        Q.    And by the highly unethical people, you're
5    referring to the people at Heller?
6        A.    Absolutely.
7        Q.    At the time that you were served with the
8    lawsuit, you believed you had insurance coverage under
9    the directors and officers liability policy issued by
10   National Union?
11       A.    I thought I did.
12       Q.    And at the time that you were served with the
13   lawsuit, you believed that National Union had an
14   obligation to pay your defense costs in the suit by
15   Heller?
16       A.    Yes.
17       Q.    And at the time that you were served with the
18   lawsuit, did you also believe that if in the event a
19   judgment were ever entered against you in the suit by
20   Heller that National Union would be required to provide
21   coverage for that judgment?
22       A.    Yes, I think so.
23       Q.    As you sit here today, do you understand what
24   Exhibit 5 is requesting or asking for?

58

1        A.    Well, it's asking, the letter is basically
2    asking National Union to provide coverage for our
3    defense.
4        Q.    And did you understand that that was the
5    intent of the letter at the time that it was sent?
6        A.    I think so, yes.
7        Q.    And again, that's because, as you just
8    testified, you believed you had insurance coverage with
9    respect to the claims brought by Heller against you?
10       A.    Right.
11             MR. TUMILTY: I'll mark this next.
12             (Document marked for identification as
13   Exhibit No. 6.)
14   BY MR. TUMILTY:
15       Q.    I handed you what the court reporter marked as
16   Exhibit 6. It's a two-page letter dated October 11,
17   2002 from Joseph O'Neil to Gregory Aceto. Do you know
18   if you've seen that document before?
19       A.    I believe so.
20       Q.    So you know when you first saw that document?
21       A.    I don't know the date.
22       Q.    Do you know approximately when you first saw
23   the document?
24       A.    Shortly after that I would guess.

59

1        Q.    Shortly after October 11, 2002?
2        A.    Yes.
3        Q.    Did you read the letter at that time?
4        A.    I did.
5        Q.    And --
6        A.    Or I would have.
7        Q.    And do you believe that you understood what it
8    meant?
9        A.    Yes.
10       Q.    And was it your understanding that Mr. O'Neil
11   was saying that on behalf of National Union there was no
12   coverage with respect to the claims brought by Heller?
13       A.    Yes.
14       Q.    At that time did you believe Mr. O'Neil was
15   correct?
16       A.    No.
17             MR. TUMILTY: We'll mark this as the next
18   exhibit.
19             (Document marked for identification as
20   Exhibit No. 7.)
21   BY MR. TUMILTY:
22       Q.    I've handed you what the court reporter marked
23   as Exhibit 7. It's an e-mail from Gregory Aceto to
24   Joseph O'Neil dated November 7, 2002. Have you seen

60

1    that document before?
2        A.    I don't recall seeing it.
3        Q.    Did you know that Attorney Aceto had sent this
4    e-mail?
5        A.    I just, as I sit here, I don't recall it at
6    all.
7        Q.    You have no memory of whether you asked Mr.
8    Aceto to write this e-mail?
9        A.    No. I didn't specifically ask him to write
10   this e-mail. I mean, we were obviously talking about
11   the subject matter. I just don't remember this.
12       Q.    You can take whatever time you need. Have you
13   had a chance to review the e-mail?
14       A.    Yes.
15       Q.    Do you agree with the contents of it?
16       A.    It was 1998, and I wasn't involved with the
17   day to day and I never had any involvement ever in
18   compiling borrowing base certificates. So that's
19   accurate. Other than the date, I think that I basically
20   sometime in the May, June '98 period -- that's off by
21   six months.
22       Q.    But you agree with the position expressed in
23   the last paragraph of the body of that e-mail that you
24   were an insured under the National Union policy and that

65

1  BY MR. TUMILTY:
2      A.    **I don't know.**
3      Q.    Do you have any reason to doubt that it would
   be MHCS given that the fax was concerning an original
5  quote to Pam Jones?
6      A.    **I don't know. I have no way of knowing.**
7      Q.    Isn't the real reason that there was no
8  interest in the National Union policy listed on your
9  schedules in your bankruptcy because both you and your
10  attorney were aware of the contractual liability
11  exclusion and realized that you did not have coverage
12  for the Heller case?
13     A.    **No.**
14           MR. TUMILTY:  This will be next.
15           (Documents marked for identification as
16  Exhibit No. 9 and 10.)
17  BY MR. TUMILTY:
18     Q.    I've handed you what the court reporter marked
19  as Exhibit 10.  It's a one-page document dated November
20  5, 2002 bearing Bates number 0102.  Have you seen that
21  document before?
22     A.    **I think so. I'm not clear.**
23     Q.    Do you have any understanding as to why
24  Attorney Aceto wrote that letter to International

66

1  Insurance Group when he did?
2      A.    **It looks like he was looking for a meeting to**
3  **review the file.**
4      Q.    And by "the file," what do you understand that
5  to be?
6      A.    **I suppose as to the reason why we were denied**
7  **coverage.**
8      Q.    I believe you have in front of you what the
9  court reporter marked as Exhibit 9?
10     A.    **Yes.**
11     Q.    A letter dated March 6, 2003 to Gregory Aceto
12  from Joseph O'Neil?
13     A.    **Yes.**
14     Q.    Have you seen that document before?
15     A.    **Yes.**
16     Q.    Do you recall when the first time was that you
17  saw this letter?
18     A.    **No.**
19     Q.    Do you believe it was shortly after March 6,
   2003?
21     A.    **I would think so.**
22     Q.    Do you believe it was within a week of March
23  6, 2003?
24     A.    **I just don't know.**

67

1      Q.    I understand that you're not going to know an
2  exact date.  I'm just trying to get a frame of
3  reference.  Shortly afterwards is a bit ambiguous.  Do
4  you believe it would have been a matter of days that you
5  would have seen this letter after Attorney Aceto would
6  have received it?
7      A.    **It's all guesswork.  All I know is that I have**
8  **seen this letter, but I don't have any reference in**
9  **time.**
10     Q.    I take it that you don't have any idea when
11  you first saw this letter then?
12     A.    **I mean, I'd be guessing.**
13           MR. ACETO:  Don't guess.
14  BY MR. TUMILTY:
15     Q.    I don't want you to guess.
16     A.    **I just don't know.**
17           (Lunch recess.)
18           (Document marked for identification as
19  Exhibit No. 11.)
20  BY MR. TUMILTY:
21     Q.    Mr. Ingoldsby, I've handed you a one-page
22  document that the court reporter marked as Exhibit 11
23  with the Bates number 588 at the bottom.  Do you have
24  that in front of you?

68

1      A.    **I do.**
2      Q.    Have you seen that document before?
3      A.    **No.**
4      Q.    Do you have any reason to doubt the accuracy
5  of it?
6      A.    **No.**
7      Q.    Do you have any recollection of listing Mr.
8  Aceto or his law firm as a creditor on your bankruptcy
9  schedules?
10     A.    **Yes.**
11     Q.    And do you recall approximately how much you
12  owed him at the time that you listed his law firm?
13     A.    **I really don't.**
14     Q.    Prior to you filing bankruptcy, can you tell
15  me what other legal fees you incurred in connection with
16  the Heller matter other than fees to Mr. Aceto's law
17  firm?
18           MR. ACETO:  Relating to the Heller matter
19  only or any legal fees?
20           MR. TUMILTY:  We'll start with Heller and
21  then go broader.
22  BY MR. TUMILTY:
23     A.    **I don't remember any other law firm being**
24  **involved with the Heller matter.  As I sit here today, I**

EXHIBIT J



# NATIONAL UNION
# FIRE INSURANCE COMPANY
# OF PITTSBURGH, PA.

POLICY NUMB:
473-16-30

A CAPITAL STOCK COMPANY

RENEWAL OF:
N/A

ADMINISTRATIVE OFFICES:
175 WATER STREET, NEW YORK, N.Y. 10038

## DIRECTORS AND OFFICERS INSURANCE AND COMPANY REIMBURSEMENT POLICY

**NOTICE:** EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, TH COVERAGE OF THIS POLICY IS LIMITED GENERALLY TO LIABILITY FOR ONLY THOS CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS AND REPORTED TO TH INSURER DURING THE POLICY PERIOD. PLEASE READ THE POLICY CAREFULLY AN DISCUSS THE COVERAGE THEREUNDER WITH YOUR INSURANCE AGENT OR BROKER.

**NOTICE:** THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENT SHALL BE REDUCED BY AMOUNTS INCURRED FOR LEGAL DEFENSE. AMOUNT INCURRED FOR LEGAL DEFENSE SHALL BE APPLIED AGAINST THE RETENTION AMOUNT.

**NOTICE:** THE INSURER DOES NOT ASSUME ANY DUTY TO DEFEND; HOWEVER, TH INSURER MAY, AND IN CERTAIN CIRCUMSTANCES MUST, ADVANCE DEFENSE COST PAYMENTS PRIOR TO THE FINAL DISPOSITION OF A CLAIM.

## DECLARATIONS

ITEM 1. NAMED CORPORATION: *MANAGED HEALTH CARE SYSTEMS*

MAILING ADDRESS: *175 DERBY ST STE 24*
*HINGHAM, MA 02043-3406*

STATE OF INCORPORATION OF THE NAMED CORPORATION:
*Massachusetts*

ITEM 2. SUBSIDIARY COVERAGE: any past, present or future Subsidiary of the Named Corpor

ITEM 3. POLICY PERIOD: From *August 4, 2000*    to  *August 4, 2001*
(12:01 A.M. Standard Time at the address stated in Item 1)

ITEM 4. LIMIT OF LIABILITY: _____ *$3,000,000* aggregate for Coverages A and B combined (including Defense Costs)

ITEM 5. RETENTION:

Company Reimbursement and indemnifiable Loss: _____ *$10,000* for Loss arising 1 claims alleging same Wrongful Ac related Wrongful Ac

ITEM 6. PREMIUM: _____ *$21,300*

_____ Authorized Representative ___ 21, 200

*CARPENTER & MOORE INSURANCE SERVICES INC.*
*530 WASHINGTON STREET*
*SAN FRANCISCO, CA 94111*

*7113299*

0131

Countersignature
Date

Countersigned
At

47352 (8/88)

This endorsement, effective *12:01 am    August 4, 2000*    forms a part of
policy number  *473-16-30*
issued to  *MANAGED HEALTH CARE SYSTEMS*


by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

participation of, or intervention  of, any  Insured; provided, however,  this
exclusion  shall  not  apply to:

    (1)    any Claim brought by an Individual Insured  where such Claim
is  in  the form  of a  cross-claim  or  third-party claim  for
contribution or indemnity which is part of and results directly
from a Claim which is not otherwise excluded by the terms of
this policy; or

    (2)    an Employment Practices Claim brought by an Employee of the
Company other than  an Employee  who is or was a director,
member  of the Board of Managers or management committee
member of the Named Entity;

  (j)    for any actual, alleged or threatened discharge, dispersal, release or escape
of pollutants; or for any direction  or request to test, monitor,  clean up,
remove, contain, treat, detoxify or neutralize pollutants;  provided, however
this exclusion shall  not any Claim  brought by  a securities holder of the
Company in its capacity as such or to any Employment Practices Claim;

  (k)    for any Wrongful  Act arising  out of an  Individual Insured serving  in a
capacity as a director, officer, trustee or governor of an Outside Entity  if
such Claim is brought by the Outside Entity or a director, officer, trustee or
governor thereof;

  (l)    for violation(s) of any of the responsibilities, obligations or duties imposed by
the Employee  Retirement  Income Security  Act of 1974,  the  Fair Labor
Standards Act (except the Equal Pay Act), the National labor Relations Act,
the Worker Adjustment  and Retraining  Notification Act,  the Consolidated
Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act,
any rules and  regulations of the  foregoing promulgated  thereunder,  and
amendments thereto or any similar provisions of any federal, state, local or
foreign statutory law,  or common  law; provided;  however,  that  this
exclusion shall not apply to Loss arising from a Claim for Retaliation;

  (m)    alleging, arising out of, based upon, attributable to, or in any way involving,
directly or indirectly, bodily injury, sickness, disease or death of any person,
or damage to or destruction of any tangible property, including the loss of
use thereof; provided,  however,  that this  exclusion  shall not  apply to
Securities Claims;

10.    Clause 4, EXCLUSIONS  (e), (f) and (n)  are deleted in their entirety and  replaced
with the following:

(2/90)

ENDORSEMENT # 7    (Continued)

This endorsement, effective 12:01 am    August 4, 2000    forms a part of
policy number  473-16-30
issued to    MANAGED HEALTH CARE SYSTEMS

by    National Union Fire Insurance Company of Pittsburgh, Pa.

(e)    alleging, arising out of, based upon or attributable to any actual or alleged act or omission of an Insured serving in any capacity, other than a director, officer, management committee member,  member of the Board of Managers or Employee of the Company, or as a director, officer, trustee or governor an Outside Entity;

(f)    alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of the Company or any other Insured under any express contract or agreement; provided, however, that with respect to Employment Practice Claims, this exclusion shall not apply to the extent any liability does not arise under such express employment contract or agreement;

(n)    alleging, arising  out of, based upon or attribut able to public offering of securities by the Company,  an Outside Entity  or an Affiliate or alleging a purchase or sale of such securities subsequent to such public offering;

provided, however, that this exclusion will not apply to:

(1) any  purchase or sale of securities exempted pursuant to section 3 (b) of the Securities Act  of 1933.  Coverage for such  purchase or sale transaction shall not be conditioned upon payment  of any additional premium; however,  the Named Entity  shall give the Insurer written notice of any public  offering exempted pursuant  to section 3  (b), together with full particulars and as soon as practicable, but not later than 30 days after the effective date of the public offering;

(2) to  any public offering of securities (other than a public offering described in paragraph (1) above), as well as  any purchase  or sale of such subsequent to such public offering, in the event that within 30 days prior to the effective time of such public offering: (i) the Named Entity shall give written notice  of such public offering together  with full particulars and underwriting information required thereto and  (ii) the Named Entity accepts such terms, conditions and additional premium required by the Insurer  for such coverage.  Such coverage is  also subject to the Named Entity  paying when  due any such additional premium. In  the event the Company  gives written  notice and full particulars and underwriting information  pursuant to (i) above,  then the Insurer must offer a quote for coverage under this paragraph.

11. Clause 4, EXCLUSIONS is further amended by the addition of the following Exclusions:

(o)    for emotional distress, or for injury from libel or slander, or defamation or disparagement, or for injury from a violation of a person's right of privacy;

(2/90)

EXHIBIT K



# NATIONAL UNION
# FIRE INSURANCE COMPANY
# OF PITTSBURGH,P.A.®

POLICY NUMB
*873-87-52*

A CAPITAL STOCK COMPANY

RENEWAL OF:
*473-16-30*

ADMINISTRATIVE OFFICES:
175 WATER STREET, NEW YORK, N.Y.10038

### DIRECTORS AND OFFICERS INSURANCE AND COMPANY REIMBURSEMENT POLICY

**NOTICE: EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, T COVERAGE OF THIS POLICY IS LIMITED GENERALLY TO LIABILITY FOR ONLY THO. CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS AND REPORTED TO TI INSURER DURING THE POLICY PERIOD. PLEASE READ THE POLICY CAREFULLY AN DISCUSS THE COVERAGE THEREUNDER WITH YOUR INSURANCE AGENT OR BROKER.**

**NOTICE: THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENT SHALL BE REDUCED BY AMOUNTS INCURRED FOR LEGAL DEFENSE. AMOUNT INCURRED FOR LEGAL DEFENSE SHALL BE APPLIED AGAINST THE RETENTION AMOUNT.**

**NOTICE: THE INSURER DOES NOT ASSUME ANY DUTY TO DEFEND; HOWEVER, TH INSURER MAY, AND IN CERTAIN CIRCUMSTANCES MUST, ADVANCE DEFENSE COST PAYMENTS PRIOR TO THE FINAL DISPOSITION OF A CLAIM.**

### DECLARATIONS

ITEM 1. NAMED CORPORATION: *MANAGED HEALTH CARE SYSTEMS*

MAILING ADDRESS: *175 DERBY ST STE 24*
*HINGHAM, MA 02043-3406*

STATE OF INCORPORATION OF THE NAMED CORPORATION:
*Massachusetts*

ITEM 2. SUBSIDIARY COVERAGE: any past, present or future Subsidiary of the Named Corpo:

ITEM 3. POLICY PERIOD: From *August 4, 2001*    to    *August 4, 2002*
(12:01 A.M. Standard Time at the address stated in Item 1)

ITEM 4. LIMIT OF LIABILITY:    *$3,000,000*    aggregate for Coverages A and B combined (including Defense Costs)

ITEM 5. RETENTION:
Company Reimbursement and indemnifiable Loss:    *$25,000* for Loss arising claims alleging same Wrongful Ac related Wrongful Ac

ITEM 6. PREMIUM: *$24,995*

_____    *Sep 27, 200*
Authorized Representative

*CARPENTER & MOORE INSURANCE SERVICES INC.*
*530 WASHINGTON STREET*
*SAN FRANCISCO, CA 94111*

*7113299*

0200

| Intersignature Date | Countersigned At |
|---|---|

47352 (8/88)

<u>ENDORSEMENT# 1</u>    (Con    ued)

This endorsement, effective  *12:01 am*    *August 4, 2001*    forms a part of
policy number  *873-87-52*
issued to  *MANAGED HEALTH CARE SYSTEMS*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

(l)    for violation(s) of any of the responsibilities, obligations or duties imposed
the Employee Retirement Income Security Act of 1974, the Fair La
Standards Act (except the Equal Pay Act), the National labor Relations A
the Worker Adjustment and Retraining Notification Act, the Consolida
Omnibus Budget Reconciliation Act, the Occupational Safety and Health A
any rules and regulations of the foregoing promulgated thereunder, a
amendments thereto or any similar provisions of any federal, state, local
foreign statutory law, or common law; provided; however, that t
exclusion shall not apply to Loss arising from a Claim for Retaliation;

(m)    alleging, arising out of, based upon, attributable to, or in any way involvin
directly or indirectly, bodily injury, sickness, disease or death of any perso
or damage to or destruction of any tangible property, including the loss
use thereof; provided, however, that this exclusion shall not apply
Securities Claims;

10.    Clause 4, EXCLUSIONS (e), (f) and (n) are deleted in their entirety and replace
with the following:

(e)    alleging, arising out of, based upon or attributable to any actual or allege
act or omission of an Insured serving in any capacity, other than a directo
officer, management committee member, member of the Board of Manager
or Employee of the Company, or as a director, officer, trustee or governor c
an Outside Entity;

(f)    alleging, arising out of, based upon or attributable to any actual or allege
contractual liability of the Company or any other Insured under any expres
contract or agreement; provided, however, that with respect to Employmen
Practice Claims, this exclusion shall not apply to the extent any liability does
not arise under such express employment contract or agreement;

(n)    alleging, arising out of, based upon or attributable to public offering of
securities by the Company, an Outside Entity or an Affiliate or alleging a
purchase or sale of such securities subsequent to such public offering;

provided, however, that this exclusion will not apply to:

(1) any purchase or sale of securities exempted pursuant to section 3 (b) of
the Securities Act of 1933. Coverage for such purchase or sale
transaction shall not be conditioned upon payment of any additional
premium; however, the Named Entity shall give the Insurer written
notice of any public offering exempted pursuant to section 3 (b),
together with full particulars and as soon as practicable, but not later
than 30 days after the effective date of the public offering;