UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GE HFS HOLDINGS, INC.<br>*Formerly known as*<br>HELLER HEALTHCARE FINANCE, INC.,<br>　　Plaintiff,<br><br>and<br><br>MICHAEL INGOLDSBY,<br>　　Intervenor/Plaintiff,<br><br>v.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and INTERNATIONAL INSURANCE GROUP, LTD.,<br>　　Defendants. | CIVIL ACTION No: 05-CV-11128-NG |

**MICHAEL INGOLDSBY'S OPPOSITION TO DEFENDANT INTERNATIONAL INSURANCE GROUP, LTD'S MOTION FOR SUMMARY JUDGMENT**

**NOW COMES** the Plaintiff-Intervenor Michael Ingoldsby in the above-entitled action and, pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby submits his opposition to the Defendant International Insurance Group, Ltd.'s (the "Defendant" or "IIG") Motion for Summary Judgment.

The Plaintiff-Intervenor bases his opposition to the Defendant's Motion for Summary Judgment on genuine issues of material fact relating to: (1) IIG's failure to advise Mr. Ingoldsby about the so-called contractual liability exclusion contained in the relevant insurance policies and its alleged effect on the coverage provided thereby; and (2) IIG's duty to advise Mr. Ingoldsby with respect to the relevant policies at issue.

Moreover, the Plaintiff-Intervenor also disputes a number of the Defendant's material facts and, therefore, the Defendant's Motion for Summary Judgment should be denied.

In support hereof, the Plaintiff-Intervenor refers the Court to the Plaintiff-Intervenor's Statement of Disputed Material Facts, the Affidavit of Michael Ingoldsby and the Affidavit of Gregory J. Aceto, Esq., filed contemporaneously herewith, and further states as follows:

## RELEVANT FACTUAL BACKGROUND

On or about December 5, 2005, Mr. Ingoldsby filed a civil action against IIG for fraud, negligent misrepresentation and violations of Mass. Gen. Laws ch. 93A, arising from a dispute concerning defense obligations under a directors & officers liability insurance policy issued by National Union Fire Insurance Company of Pittsburgh, PA to Managed Health Care Services, Inc. ("MHCS") and its directors and officers.

### *Mr. Ingoldsby's Reliance on IIG*

Mr. Ingoldsby was, at all times relevant hereto, the Chairman of the Board of MHCS. *See* Affidavit of Michael Ingoldsby ("Ingoldsby Affidavit"), ¶ 2. Prior to obtaining the directors and officers liability insurance at issue, IIG had served as MHCS's broker and procured several other policies of insurance for MHCS. In fact, MHCS was first introduced to IIG through Mr. Ingoldsby over ten years ago. *See* Deposition of Michael Ingoldsby ("Ingoldsby Depo."), pp. 86:19-87:9. Thereafter, IIG routinely served as MHCS's insurance broker and the parties formed a long-standing business relationship of over ten years.[1] *See* 30(b)(6) Deposition of International Insurance Group, Ltd. ("IIG

---

[1] Indeed, IIG served as MHCS's broker with respect to the following policies of insurance issued by St. Paul Fire & Marine Insurance Company to MHCS: policy number FKO6003905, effective from April 1, 1996 through July 19, 1996; policy number FKO6008965, effective from July 19, 1996, through July 16,

2

Depo."), pp. 9:4-12:22; Aceto Affidavit, ¶ 8 and *Exhibit F* attached thereto. During the course of MHCS's relationship with IIG, MHCS often obtained advice from IIG regarding its policies of insurance, particularly with respect to the effect of the MHCS bankruptcy on coverage afforded by its policies. *See* Ingoldsby Affidavit, ¶ 6. In addition, IIG had advised MHCS in the past regarding endorsements added to its policies and the effect thereof, specifically with respect to contractual liability endorsement added to its general liability policy. *See* Ingoldsby Affidavit, ¶ 6 and *Exhibit A* and *B* attached thereto.

Because IIG and MHCS had such a longstanding business relationship, when MHCS was seeking directors and officers insurance, Mr. Ingoldsby relied on IIG to advise MHCS on the most appropriate coverage for the company. *See* Ingoldsby Affidavit, ¶¶ 8-11; Ingoldsby Depo., p. 75:5-20. In fact, in his deposition, Mr. Ingoldsby stated, "I had what I thought was a long-term relationship with International. We had been buying our insurance from them probably since 1990. They obviously had, you know, an obligation to advise me of things." *Id.*

### The D & O Insurance Policy

At all times relevant hereto, the Plaintiff-Intervenor was insured for liability under a directors and officers liability policy issued by National Union to Managed Health Care Systems, Inc. ("MHCS"), being policy number 873-87-52, effective August 4, 2001, through August 4, 2002 (hereinafter referred to as the "Policy").[2] *See* Ingoldsby

---

1997; and policy number FKO6003217, effective from April 1, 1995 through July April 1, 1996. MHCS also purchased its errors and omissions policy through IIG. *See* Ingoldsby Affidavit, ¶ 7.
[2] The Policy was a renewal of policy number 473-16-30 which contained similar contractual liability exclusion language. With regard to policy number 473-16-30, MHCS was not advised by IIG of the presence or potential effect of National Union's contemplated interpretation of the exclusion.

Affidavit, ¶ 3. The Policy covers any claim made against the directors or officers of MHCS for any alleged wrongful act made in their respective capacities. Under Section 2(g) of the Policy, a "Wrongful Act" is described as:

> any breach of duty, neglect, error, misstatement, misleading statement, omission or act by the Directors or Officers of the Company in their respective capacities as such, or any matter claimed against them solely by reason of their status as Directors or Officers of the Company.

The Policy also included a so-called contractual liability exclusion, Exclusion 4(h), as amended by Endorsement No. 8, which excludes from coverage, all claims:

> (h) alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of the Company or an Insured under any express (written or oral) contract or agreement (including, but not limited to, any liquidated damages, severance agreement or payment, golden parachute agreement, or any compensation agreement payable upon termination of any insured); provided, however, that the exclusion shall not apply to:
>
>> (1) Employment Practices Claims to the extent that any liability does not arise from such express contract or agreement; or
>>
>> (2) Claims for Loss alleging Wrongful Acts of an Insured(s) with respect to hospital practice, privileges, credentialling or peer review matters.

*See* Affidavit of Gregory J. Aceto ("Aceto Affidavit"), ¶ 4 and *Exhibit B* attached thereto.

### *The Heller Litigation and National Union's Denial of Coverage*

On or about August 1, 2002, Heller Healthcare Finance, Inc. commenced a civil action in the United States District Court for the District of Massachusetts, Civil Action No. 02CV11553 NG (the "Heller Action") against the Plaintiff-Intervenor Michael Ingoldsby, in which it alleged a claim for Negligent Misrepresentation (Count I) and a claim for Breach of Guaranty (Count II) against Michael Ingoldsby. *See* Ingoldsby

4

Affidavit, ¶ 14. On August 2, 2002, the "Complaint and Jury Demand" was forwarded to the Defendant, National Union. *See* Ingoldsby Affidavit, ¶ 15. On or about October 11, 2002, National Union, through counsel, issued a *preliminary* determination that there was no coverage for the *Heller Action* allegations against Michael Ingoldsby, Mary Lee Ingoldsby, and Indy Edwards. *See* Ingoldsby Affidavit, ¶ 16. In response to subsequent email correspondence from Mr. Ingoldsby's attorney regarding coverage for the claims, counsel for National Union sent another letter, dated March 6, 2003, explicitly stating that "there [was] no coverage available under the policy for the claims asserted in the *Heller* action against Michael O. Ingoldsby." *See* Ingoldsby Affidavit, ¶ 18. Mr. Ingoldsby, by way of letter from counsel, dated March 17, 2004, submitted a formal demand to National Union under Mass. Gen. Laws Ch. 93A for reimbursement of his defense costs. National Union declined coverage a month later by way of letter from counsel, dated April 16, 2004, and, in doing so, expressly relied upon Exclusion 4(h), as amended by Endorsement No. 8. *See* Ingoldsby Affidavit, ¶¶ 19-20. Specifically, National Union alleged that, under its interpretation of the Policy's contractual liability exclusion, even the negligent misrepresentation claim was barred from coverage.

Because National Union and IIG failed to adequately disclose the existence of the contractual liability exclusion, Mr. Ingoldsby had no knowledge of such exclusion until National Union denied his claim. More importantly, until this denial of coverage, Mr. Ingoldsby had no knowledge of the effect of said endorsement in potentially limiting coverage under the Policy for contract claims against him or MHCS. *See* Ingoldsby Affidavit, ¶¶ 11-12; Aceto Affidavit, ¶ 3 and *Exhibit A* attached thereto; Ingoldsby Depo., p. 78:13-22, p. 75:5-20. Had he been fully informed of the existence of the contractual

5

liability exclusion and the purported effect thereof, Mr. Ingoldsby would have advised MHCS not to purchase the Policy. *See* Ingoldsby Affidavit, ¶ 9; Aceto Affidavit, ¶ 3 and *Exhibit A* attached thereto; Ingoldsby Depo., p. 78:13-22.

Further, because National Union denied his claim under the Policy, Mr. Ingoldsby bore the cost of his defense of the Heller Action. *See* Ingoldsby Affidavit, ¶ 21. In litigating the claims asserted by Heller over a two-year period, he expended a substantial amount of money in attorneys' fees and costs. *See* Ingoldsby Affidavit, ¶ 22. Specifically, Mr. Ingoldsby incurred legal fees related to the Heller Action in the amount of Nineteen Thousand Three Hundred Ninety Six Dollars and 24/100 ($19,396.24). *See* Ingoldsby Affidavit, ¶ 22. In addition, pursuant to the Settlement Agreement with Heller, the Plaintiff-Intervenor submitted payment to the bankruptcy trustee in the amount of One Hundred Five Thousand Dollars ($105,000.00). *See* Ingoldsby Affidavit, ¶ 30.

## ARGUMENT

The Court should deny the Defendant IIG's Motion for Summary Judgment as there are genuine issues of material fact relating to: (1) IIG's failure to advise Mr. Ingoldsby about the contractual liability exclusion contained in the Policy and MHCS's prior directors & officers policy (collectively, the "Policies') and its alleged effect on the coverage provided thereby; and (2) IIG's duty to advise Mr. Ingoldsby with respect to the Policies.

### I.   Standard of Review for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). At the outset, the moving party must aver that there is "an absence of evidence

6

to support the nonmoving party's" position. *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 48 (1st Cir. 1990) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986)). To avoid summary judgment, the opposing party must produce affirmative evidence demonstrating a genuine issue for trial. *Mesnick v. General Elec. Co.,* 950 F.2d 816, 825 (1st Cir. 1991). "[T]he nonmovant may not rest upon mere allegations, but must adduce specific, provable facts demonstrating that there is a triable issue." *Brennan v. Hendrigan,* 888 F.2d 189, 191 (1st Cir. 1989).

In deciding a motion for summary judgment, the court must view the evidence "in the light most favorable to the nonmovant, and all doubts and reasonable inferences must be resolved in the nonmovant's favor...If the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the nonmovant." *Casas Office Machines, Inc., v. Mita Copystar America, Inc.,* 42 F.3d 668, 684 (1st Cir. 1994) (internal quotation marks and citations omitted).

II.  **The Court should deny the Defendant IIG's Motion for Summary Judgment as there are genuine issues of material fact relating to: (1) IIG's failure to advise Mr. Ingoldsby about the contractual liability exclusion contained in the Policies and its effect on the coverage provided thereby; and (2) IIG's duty to advise Mr. Ingoldsby with respect to the Policies.**

The Defendant IIG argues that it is entitled to summary judgment because Mr. Ingoldsby has not stated a prima facie case against IIG because IIG did not have a duty to advise MHCS. However, this argument fails as there are genuine issues of material fact relating to: (1) IIG's failure to advise Mr. Ingoldsby about the contractual liability exclusion contained in the Policies and its effect on the coverage provided thereby; and (2) IIG's duty to advise Mr. Ingoldsby with respect to the Policies.

### A. IIG failed to fully advise Mr. Ingoldsby about the contractual liability exclusion contained in the Policies and its effect on the coverage provided thereby.

In its Memorandum of Law in Support of its Motion for Summary Judgment, IIG states that Mr. Ingoldsby is no longer claiming that he was not aware of the contractual liability exclusion. This statement is not accurate. Although Mr. Ingoldsby no longer contests that the Policy included a so-called contractual liability exclusion (Exclusion 4(h)), he still asserts that he was not *aware* that the Policies contained the above-referenced exclusion until National Union denied coverage for claims made against him. Further, had he been advised by IIG of the existence of the contractual liability exclusion and the purported effect thereof, Mr. Ingoldsby would certainly have recommended to MHCS that it not purchase the Policies. *See* Ingoldsby Affidavit, ¶ 9; Aceto Affidavit, ¶ 3 and *Exhibit A* attached thereto; Ingoldsby Depo., p. 78:13-22. Indeed, National Union's interpretation of the exclusion swallows up the entire Policy rendering it almost ineffectual for its intended purpose.

Since Mr. Ingoldsby still contends that IIG failed to fully advise him regarding the language of the alleged Exclusion and the effect of said exclusion on MHCS's liability coverage under the Policies, a material issue of fact remains in dispute.

### B. IIG had a duty to advise Mr. Ingoldsby with respect to the Policies.

The Defendant IIG argues that there is no general duty of an insurance agent to ensure that the insurance policies procured by him provide coverage that is adequate for the needs of the insured. *See Baldwin Crane & Equip. Corp. v. Riley & Rielly Ins. Agency, Inc.,* 44 Mass. App. Ct. 29, 32 (1997). This general principle, however, does not apply when special circumstances exist between the agent and his client. Specifically, in

an action against the agent for negligence, the insured may show that special circumstances prevailed that gave rise to a duty on the part of the agent to ensure that adequate insurance was obtained. *Id.* "[S]pecial circumstances of assertion, representation and reliance" may create a duty of due care. *See, e.g., McCue v. Prudential Ins. Co.,* 371 Mass. 659, 661 (1976); *Construction Planners, Inc. v. Dobax Ins. Agency, Inc.,* 31 Mass. App. Ct. 672, 675 (1991), and cases cited therein (genuine issues of material fact existed as to whether broker was negligent in failing to renew builder's risk policy covering project in construction phase and as to whether builder reasonably relied on broker to renew policy, so as to preclude summary judgment for broker); and *Martinonis v. Utica Nat. Ins. Group,* 65 Mass. App. Ct. 418 (2006) (summary judgment precluded where evidence indicated long relationship with agent, reliance placed on agent's review of the adequacy of insurance, and agent's specific assurance of adequate limits).

Whether the "special circumstances of assertion, representation and reliance" which create an insurance agent's extended liability exist "is a jury question." *McCue v. Prudential Ins. Co. of America,* 371 Mass. 659, 661(1976), *quoting Rapp v. Lester L. Burdick, Inc.,* 336 Mass. 438, 442 (1957). At the summary judgment stage, the plaintiff must submit sufficient evidence that a reasonable jury could find that a fiduciary relationship indeed existed. *Patsos v. First Albany Corp.* 433 Mass. 323, 329 (2001). Facts relevant to this inquiry include: (1) the complexity and comprehensiveness of the insurance business; (2) whether a continuing relationship had existed between the agent and the insured, over a period of years; (3) the frequency of contact the insured had with the agent to attend to his insurance needs; and (4) the extent to which the insured, because of the complexity of the policies, had come to rely on the advice of the agent.

9

371 Mass. at 661-663.

Here, Mr. Ingoldsby has presented evidence concerning each of these factors and has shown that "special circumstances of assertion, representation and reliance" did indeed exist with respect to his relationship with IIG. First, on its face, the Policies in dispute are clearly complex documents. The Policies contain numerous endorsements, many of which alter amend and conflict with the terms of the base policy. Second, and most importantly, Mr. Ingoldsby has demonstrated that MHCS had a long-standing relationship with IIG. Prior to procuring the Policies at issue, IIG had served as MHCS's insurance broker for approximately ten years. During this time, MHCS had relied on IIG to procure to its policies of insurance. *See* Affidavit of Michael Ingoldsby ("Ingoldsby Affidavit"), ¶ 7-10; Ingoldsby Depo., p. 75:5-20; IIG Depo., pp. 9:4-12:22; Aceto Affidavit, ¶ 8 and *Exhibit F* attached thereto. Specifically, MHCS had obtained its general corporate liability policies through IIG since at least 1995 and, may have also obtained an errors and omissions policy through IIG as well. *See* Ingoldsby Affidavit, ¶ 7.

Third, during the course of MHCS's relationship with IIG, MHCS obtained advice from IIG regarding their policies of insurance, particularly during the course of its bankruptcy. *See* Ingoldsby Affidavit, ¶ 6 and Aceto Affidavit, ¶ 6 and *Exhibit D* attached thereto. For example, IIG advised MHCS with respect to the effect of its bankruptcy on its policies and the purchase of an "extended reporting period." *Id.* In addition, IIG had advised MHCS in the past regarding an endorsement added to its general liability policy. *See* Ingoldsby Affidavit, ¶ 6; Aceto Affidavit, ¶ 7 and *Exhibit E* attached thereto. Fourth, Mr. Ingoldsby has testified that when MHCS was seeking directors and officers

insurance, Mr. Ingoldsby relied on IIG to advise MHCS on the most appropriate coverage for the company. *See* Ingoldsby Affidavit, ¶¶ 7-10; Ingoldsby Depo., p. 75:5-20. Given the prior relationship between the parties, this reliance was certainly reasonable.

In light of the foregoing, there is sufficient evidence to create a genuine issue of material fact as to whether IIG's actions, and the long-standing business relationship between the parties, created the "special circumstances of assertion, representation and reliance."

## CONCLUSION

Mr. Ingoldsby has set forth sufficient evidence so as to create a genuine issue of material fact with respect to IIG's failure to advise Mr. Ingoldsby regarding the contractual liability exclusion. First, Mr. Ingoldsby has demonstrated that he has not abandoned his claim that IIG failed to advise him about the exclusion and the purported effect on the coverage afforded by the Policies. Second, Mr. Ingoldsby has demonstrated that IIG did, in fact, have a duty to advise him about said coverage. In light of the foregoing, summary judgment must be precluded.

                                    Respectfully submitted,
                                    MICHAEL INGOLDSBY,
                                    By his attorney,

                                    /s/ Gregory J. Aceto, Esq.
                                    Gregory J. Aceto, Esq.
                                    BBO No. 558556
                                    JOHNSON & ACETO, LLP
                                    67 Batterymarch Street, Suite 400
                                    Boston, MA 02110
                                    (617) 728-0888

Dated: November 30, 2006