UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

GE HFS HOLDINGS, INC.
*Formerly known as*
HELLER HEALTHCARE FINANCE, INC.,
    Plaintiff,

and

MICHAEL INGOLDSBY,
    Intervenor/Plaintiff,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and INTERNATIONAL INSURANCE GROUP, LTD.,
    Defendants.

CIVIL ACTION No: 05-CV-11128-NG

**AFFIDAVIT OF JAMES R. MARTOCCI IN SUPPORT OF PLAINTIFF-INTERVENOR'S OPPOSITIONS TO IIG AND NATIONAL UNION'S MOTIONS FOR SUMMARY JUDGMENT**

I, Jim Martocci, being duly sworn, depose and state as follows:

1. I received a B.B.A. from Iona College in 1971, and an MBA, cum laude, from The Pennsylvania State University in 1975. I have worked in the insurance industry from July of 1975 to the present.

2. For twenty-seven years, I was directly, solely and continuously involved in the underwriting of Directors and Officers (D&O) liability policies and related insurance. Details of my qualifications and experience are set forth in my curriculum vitae, attached as *Exhibit 1*. From 1987 to 2002, I served as president and CEO of Special Program Management, Inc. (SPMI), a managing general agent owned by Willis

Group Holdings, Ltd. SPMI held full binding/issuance authority from Lloyd's for D&O and related insurances. As a result of my experience, I am very familiar with the D&O underwriting and rating process, risk analysis and selection procedures, as well as the coverage and policy forms. I have underwritten over 3000 D&O policies, and have quoted thousands more.

3. While I have not been directly employed in my career as a claims executive with authority to adjust claims or direct individual claims handling, I was the sole underwriting manager of a large Lloyds of London D&O insurance facility. In that role, I routinely communicated with claims representatives, claims counsel and monitoring counsel retained by Lloyds regarding hundreds of claims and was asked to provide input regarding claims-related underwriting issues, including policy interpretation.

4. I am currently employed as a private consultant in the insurance industry, and my billing rate is $350 per hour.

5. I have been asked by attorneys at Johnson & Aceto, LLP to give an opinion concerning certain aspects of the National Union Fire Insurance Company of Pittsburgh, PA ("National Union") issuance of D&O coverage to Managed Health Care Systems, Inc. ("MHCS") and its officers and directors in August of 2001. I understand that MHCS and certain of its Directors and Officers have sought coverage under National Union policy No. 873-87-52 for claims made against them by Heller Healthcare Finance Inc. in the case of *Heller Healthcare Finance Inc. v. Michael Ingoldsby, et al.*, United States District Court for the District of Massachusetts, Civil Action No. 02CV11553 NG (the Heller action). I further understand that it is National Union's position that there is no coverage available under policy 873-87-52 for the claims asserted in the Heller action against Michael Ingoldsby. Accordingly, I have been asked to review certain documents relating to the application process and placement of D&O insurance as requested by the

2

insured MCHS and to comment upon certain aspects of industry practice as reflected in those documents.

6.   In addition to my personal experience, knowledge and training as an underwriter of D&O insurance, my opinions are based on the materials I reviewed prior to producing this report, including the following:

    A) The Complaint, No. 02-CV-11553-NG, filed by Heller Healthcare Finance in the U.S. District Court, Massachusetts, in this matter;

    B) The First Amended Complaint in Intervention, No. 05-CV-11128-NG, filed by Mr. Ingoldsby, as Intervenor, in the U.S. District Court, Massachusetts;

    C) Letter dated July 27, 2001 from Thomas J. McGraw to Nicholas F. Sciotto of International Insurance Group, LTD. ("International") and attachments;

    D) Letters dated March 6, 2002; October 11, 2002; and April 6, 2004 from E. Joseph O'Neil of Peabody & Arnold to Gregory Aceto of Johnson & Aceto;

    E) E-mail dated November 7, 2002 from Gregory Aceto to E. Joseph O'Neil;

    F) Letter dated March 17, 2004 from Gregory Aceto to Ms. Joni Mason and Mr. Nicholas Sciotto of International;

    G) National Union Policy No. 873-87-52 effective August 4 2001-02 and endorsements thereto;

7.   In addition to actually procuring insurance on behalf of their clients, it is common practice among commercial insurance brokers to provide written and/or oral explanations of complex insurance policies (such as Directors and Officers liability policies) to the management of prospective insured companies. The customary commission for such

services is 10-15 % of the policy premium. Based on the materials I reviewed, it appears that no such coverage analysis was provided to MHCS, other than the National Union renewal proposal, to which International has merely affixed its logo. Furthermore, it is clear that International authorized Carpenter-Moore Insurance Services, a wholesale or surplus lines insurance broker, to obtain renewal quotations and procure the D&O policy for MHCS. Private company D&O is not relegated to the Surplus Lines (non-licensed insurers) marketplace, and is readily available in the admitted insurance market, obviating the need for a wholesale broker or intermediary. It follows that International had no particular expertise in D&O coverage, and was thus forced to rely upon Carpenter-Moore for such expertise. In addition, I am aware that certain insurers of Private Company D&O did not affix so-called contractual liability exclusions to their D&O policies at the time (August of 2001) that the instant policy incepted.

8.    D&O Liability policies are designed and intended to provide insurance coverage for loss arising from claims for any alleged "Wrongful Act". In the instant policy, Wrongful Act "means any breach of duty, neglect, error, misstatement, misleading statement, omission or act by the Directors or Officers of the Company in their respective capacities as such"... Count I of the Heller complaint alleges "negligent misrepresentation" of the defendants, including Michael Ingoldsby, stating that said defendants failed to exercise reasonable care or competence in obtaining or communicating information regarding the borrowing base. In my opinion, such negligent representation per se falls within the definition of Wrongful Act under the National Union policy.

9.    Having read the documents listed in (6) above, it is my understanding that National Union has declined all coverage for the Heller claim allegations. Specifically, National Union states that it is not liable to make any payment for loss because the Heller claims arise from the contractual liability of MHCS, and such contractual liability is excluded under policy Exclusion 4(h). Based on the knowledge and experience obtained over 27 years of D&O insurance underwriting, it is my belief that Exclusion 4(h) of the National Union

4

policy may have been intended to apply as respects the Company (the corporate entity) only. Other D&O insurers that provide coverage for the Company have constructed their policy wordings such that the contractual liability exclusion applies only to the Company, and not to the individuals. Indeed, the D&O coverage is first and foremost intended to protect the individual D&O's. Until relatively recently, D&O policies afforded **no** coverage for the Company itself. It is only within the past ten years or so that D&O insurers have afforded coverage for claims made against the **Company** for its own wrongful acts. This so-called "entity" coverage is limited to specific types of claims such as those related to Employment Practices or Fiduciary obligations under the ERISA Act of 1974. In the past, both EPL and Fiduciary liability was underwritten on a stand-alone basis. So, in fact, this entity coverage was devised and developed by D&O insurers to group these closely-related insurances together, and market them as a package deal, enabling the perspective insured to place all three management liability insurances with one insurer. Now when offering these combined-risk, entity coverage policies, D&O insurers invariably add broad exclusions for the significant entity exposures – excluding claims from primarily corporate causes of action such as anti-trust violations and contractual liability. In certain policies, such as the National Union policy issued to MHCS, these exclusions allegedly apply to both the entity and the individual directors and officers, an actual reduction of coverage from the older policies. Thus, by adding coverage for the entity (to more effectively market other types of insurance), National Union has reduced coverage in certain other areas, and the assured MHCS has suffered one such reduction, in the area of contractual liability. Thus, National Union's conduct in purporting to expand coverage to include the entity, while eliminating coverage for the individual Directors and Officers, is a willful breach of the policy.

    10.    The July 27, 2001 letter from the wholesaler Carpenter-Moore, is addressed to Nicholas Sciotto of International, the retail insurance broker – there is no evidence that suggests that this particular letter was presented to MHCS. And, in fact, neither the July 27 letter, nor the actual National Union renewal proposal makes mention of the contractual

liability exclusion in 4(H), nor does either document outline the significant reduction in coverage resulting from such exclusion. MHCS is a privately held for-profit home health care agency, a provider of home health care services to Medicare beneficiaries. Practically speaking, every business transaction in which MHCS took part was evinced by some form of contract. That is, MHCS contracted with CMS (Center for Medicare and Medicaid Services); contracted with individual home health aides to provide services; contracted with patients to deliver services; and contracted with Heller under a number of commercial loan agreements. To summarily eliminate coverage for claims arising from contractual liability eviscerates the D&O insurance for a company such as MHCS. By failing to outline such a graphic reduction in available coverage, International's conduct may have constituted an unfair and deceptive act or practice. At the least, it is my opinion that both Carpenter-Moore and International have breached their professional duties to the assured MHCS. According to the Hon. John Garamendi, in testifying before the Senate Committee on Governmental Affairs in Oversight Hearings on Insurance Brokerage Practice (November 16, 2004):

> Because of the complicated nature of insurance, and because most insurance is not purchased directly from an insurer, consumers and businesses often rely on insurance brokers and agents to help them navigate the complex array of choices. During this process, the broker is duty bound to act on behalf of the client, ascertaining his or her needs, and then using its knowledge and expertise to identify which products are available and suitable. After obtaining quotes and offers from a number of insurers offering such products, the broker then advises the client on which option best meets the client's needs. It then negotiates with the insurer to obtain the best price and other terms for the client.

It is unclear from the documents I examined whether or not D&O insurance proposals were even obtained from insurers other than the incumbent National Union. In August of 2001, I believe that similar D&O policies were available in which the entity exclusions such as anti-trust and contractual liability applied only as respects claims brought against the Company, not the individuals. If we accept the substance of Commissioner Garamendi's words as correct and proper, then it is clear that both insurance brokers had a duty to obtain the best coverage for their client, and failed to do so.

11. It is also my opinion that National Union policy No. 873-87-52 is constructed in such a manner as to be cumbersome, convoluted and most difficult to comprehend. Policy No. 873-87-52 is written on National Union policy form 47352 (8/88), a traditional D&O wording that covers the Directors and Officers (including Company Reimbursement where said D&O's are entitled to indemnification), but not the Company. That policy wording is amended (replaced, for all practical purposes) by Endorsement No. 1, the "Conversion" endorsement. In this Conversion endorsement, the "failure to maintain insurance" exclusion is replaced by a broad contractual liability endorsement. To that same policy, National Union also attaches a "For-Profit Health Care Organization Amendatory Endorsement" which once again substantively amends the policy terms. For example, National Union purports to replace the previous contractual liability exclusion 4(f) but refers to exclusion 4(h) instead. In my 27 years as a D&O underwriter, I cannot recall a more confusing and unwieldy presentation of policy terms and conditions. D&O coverage is fairly complex to begin with. For the layman assured, this particular policy would be nearly impossible to decipher, all the more reason for the insurance brokers to have provided explanations of the important policy features, which they apparently did not.

Signed under the pains and penalties of perjury this _first_ day of December, 2006.

James R. Martocci

**JAMES R. MARTOCCI**
307 Forest Road
Mahwah, New Jersey  07430
Telephone (201) 848-9177

**EXPERIENCE**:

**JTR INSURANCE CONSULTANTS**
Mahwah, NJ

**President** (1/03 to present)
JTR acts as an insurance consultant, specializing in Directors' and Officers' Liability and related insurances, including comprehensive expert testimony services. References available.  Preparation includes course in <u>Witness Skills</u> given by Bond Solon Training Consultancy.

**SPECIAL PROGRAM MANAGEMENT (Subsidiary of Willis)**
Jersey City, NJ

**President** (9/87 to 11/02)
- SPMI, an MGA/Underwriting Manager of special liability programs, including Directors and Officers Liability and Fiduciary Liability.  Approximately $25 million gross written premium annualized.  Entirely responsible for management and administration of book.
- Managed entire organization (four underwriters, six clerical) through liaison with Willis,  including monthly reporting,  budget preparation, and strategic planning.
- Directed all reinsurance placements underlying above programs, including bi-annual trips to European reinsurance markets.

**WESTCO INSURANCE GROUP (TUDOR INSURANCE COMPANY)**
Ramsey, NJ

**Product Manager - Directors and Officers Liability -**  (11/84 to 9/87)
- Established highly profitable Directors and Officers Liability program consisting of $20 million gross written premium in 1986.
- Coordinated underwriting of both new and renewal accounts, as well as on-going broker servicing  of in-force accounts.
- Monitor program results and upgraded risk acceptance criteria.  Communicated both past performance evaluations and formal projections to senior management.
- Established all underwriting monitoring systems and procedures, including DBASE III management information system.
- Assist attorneys/monitoring counsel on claims handling.

**STEWART SMITH EAST, INC.**
New York, NY

**Vice President and Manager** (11/78 to 10/84)
- Total underwriting responsibility.
- Served as liaison with our lead US insurer (CNA) regarding underwriting approach and procedures.
- Coordinated State Insurance Department filing requirements, inter-company accounting, and marketing/advertising.

**NATIONAL UNION FIRE INSURANCE COMPANY -**
**(AMERICAN INTERNATIONAL GROUP, INC.)**
New York, NY

**Underwriter** (7/75 to 11/78)
- Hired as management trainee and appointed to Underwriter of Directors and Officers Liability, Fiduciary Liability and other programs in the Financial Services Division.
- Formulated audit procedure/evaluation criteria for branch offices and subsequently performed branch audit on a nationwide basis.
- Working with Division Manager, organized preparation of annual budget/divisional projections, as well as sundry R&D/statistical projects.

**M. LOWENSTEIN & SONS, INC.**
New York, NY

**Credit Analyst** (9/71 to 4/73)
- Employed as Credit Trainee, later promoted to Credit Analyst.

**EDUCATION:**

M.B.A. in Finance, 1975, cum laude
The Pennsylvania State University - State College, PA

B.B.A. in Finance, 1971
Iona College - New Rochelle, NY