UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GE HFS HOLDINGS, INC.<br>*Formerly known as*<br>HELLER HEALTHCARE FINANCE, INC.,<br><br>    Plaintiff,<br><br>and<br><br>MICHAEL INGOLDSBY,<br><br>    Intervenor/Plaintiff,<br><br>v.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and INTERNATIONAL INSURANCE GROUP, LTD.,<br><br>    Defendants. | CIVIL ACTION<br>No: 05-CV-11128-NG |

### PLAINTIFF-INTERVENOR MICHAEL INGOLDSBY'S
### SUPPLEMENTAL MEMORANDUM OF LAW

---

    The Plaintiff-Intervenor Michael Ingoldsby ("Plaintiff-Intervenor" or "Mr. Ingoldsby") submits this Supplemental Memorandum of Law in Opposition to Defendant National Union Fire Insurance Company of Pittsburgh, PA's ("Defendant" or "National Union") Motion for Summary Judgment.

    First, this Supplemental Memorandum of Law addresses National Union's incorrect assertion that it need not look further than the four-corners of the complaint in determining that coverage does not exist. Rather, as more fully set forth herein, National

Union must consider extrinsic facts outside the complaint, known or available to it, indicating that the claim is covered.

Second, this Supplemental Memorandum also addresses National Union's assertion that the Policy is not ambiguous. Indeed, this memorandum demonstrates that representatives of National Union admitted during deposition testimony that the Policy contains ambiguities and inconsistencies.

## RELEVANT FACTUAL BACKGROUND

On August 2, 2002, the "Complaint and Jury Demand" was forwarded to the Defendant, National Union. *See* Affidavit of Michael Ingoldsby Affidavit, previously filed with the Court, ¶ 16. On or about October 11, 2002, National Union, through counsel, issued a *preliminary* determination that there was no coverage for the *Heller Action* allegations against Michael Ingoldsby, Mary Lee Ingoldsby, and Indy Edwards. *See* Ingoldsby Affidavit, ¶ 17. Mr. Ingoldsby, through counsel, continued to communicate with National Union and IIG about potential coverage for the *Heller Action*. *See* Second Affidavit of Gregory Aceto ("Second Aceto Affidavit") and *Exhibit C* attached thereto. Specifically, counsel provided National Union with additional information regarding the nature of the allegations against Mr. Ingoldsby. *Id.* In fact, counsel for Mr. Ingoldsby pointed out that the Heller Complaint did not allege that Mr. Ingoldsby executed the borrowing base certificates and further informed National Union that Mr. Ingoldsby was not involved in the compiling of the borrowing base certificates. *Id.* As such, the allegations against Mr. Ingoldsby more accurately set forth a claim for negligent supervision or mismanagement, rather than misrepresentation.

In response to subsequent email correspondence from Mr. Ingoldsby's attorney regarding coverage for the claims, counsel for National Union sent another letter, dated March 6, 2003, explicitly stating that "there [was] no coverage available under the policy for the claims asserted in the *Heller* action against Michael O. Ingoldsby." *See* Ingoldsby Affidavit, ¶ 19. Thereafter, Mr. Ingoldsby, by way of letter from counsel, dated March 17, 2004, submitted a formal demand to National Union under Mass. Gen. Laws Ch. 93A for reimbursement of his defense costs. *See* Second Aceto Affidavit and *Exhibit D* attached thereto. National Union declined coverage a month later and, in doing so, again relied upon Exclusion 4(h), as amended by Endorsement No. 8. *See* Ingoldsby Affidavit, ¶ 20.

However, despite the above-referenced communications between Mr. Ingoldsby and National Union, National Union has admitted that it simply read the Heller Complaint and determined that there was no coverage. *See* Second Aceto Affidavit and *Exhibit A* attached thereto; Deposition of Joni Mason, pp. 69-70. Further, National Union never reevaluated its position after receiving the additional information provided by Mr. Ingoldsby regarding the nature of the allegations against him. *Id.*

## ARGUMENT

**I.    An Insurer Must Consider Facts Outside of the Complaint in Evaluating Coverage.**

"[T]he duty to defend depends not on the actual facts of the event giving rise to the liability, but on the full range of possible facts that could fall within the scope of the allegations of the third-party's complaint." *Nashua Corporation v. Liberty Mutual Insurance Co.*, 1997 WL 89163 (Fabricant, J.) Otherwise stated, the process is one of envisaging what kinds of losses may be proved as lying within the range of the

3

allegations of the complaint, and then seeing whether any such loss fits the expectation of protective insurance reasonably generated by the terms of the policy. *Sterilite Corp. v. Continental Casualty Co.*, 17 Mass. App. Ct. 316, 318 (1983). In attempting to "envisage what kinds of losses may be proved as lying within the range of allegations of the complaint," the insurer must examine the plaintiff's allegations in conjunction with facts that it knows or readily should know in order to determine whether coverage exists under the policy. *Boston Symphony Orchestra v. Commercial Union Ins. Co.*, 406 Mass. 7, 10-11 (1989). "Extrinsic facts work…to add substance and meaning to skeletal claims only adumbrated in the complaint. These facts, brought to the insurer's attention in a timely fashion by the insured, aid the insurer's informed review of the tender of defense by painting a fuller picture of the underlying action." *Open Software Foundation, Inc. v. U.S. Fidelity et al*, 307 F.3d 11, 16 (Mass. 2002).

      The possibility that the liability falls within the insurance coverage is enough to trigger the duty to defend. *Sterilite Corp.*, 17 Mass. App. Ct. at 318. If the content of the complaint is "reasonably susceptible" to an interpretation warranting coverage, then the insurer must undertake the defense. *Terrio v. McDonough*, 16 Mass. App. Ct. 163, 166 (1983). Only where "the allegations of the complaint describe with precision" events which "the insurance policy expressly excludes from coverage" is the insurer free to refuse a defense. *Terrio,* 16 Mass. App. Ct. at 168. As stated previously, even if the complaint does not appear to fall within the policy, the insurer may have a duty to defend if additional facts, known or available to it, indicate that the claim is covered. *See, e.g., Boston Symphony Orchestra,* 406 Mass. at 10-11 (insurer required to defend under defamation liability policy where complaint on its face alleged only breach of contract,

4

but additional facts known to insurer indicated plaintiff alleged harm to reputation); *HDH Corporation v. Atlantic Charter Ins. Co.*, 41 Mass. App. Ct. 131, 135 (1996) (worker's compensation insurer obliged to defend based on its knowledge that plaintiff was insured's employee, although complaint did not so allege). The converse, however, is not the case. Where a complaint on its face is susceptible of a reading that brings the claim within the policy, the insurer cannot rely on facts outside the complaint to justify a unilateral refusal to defend. *Sterilite Corp. v. Continental Casualty Co.*, 17 Mass. App. Ct. at 323.

In addition, "[a]n insurer who unjustifiably refuses or fails to defend its insured, even in good faith, assumes the consequential risks of that breach of its insurance contract. Those risks not only include liability for the amount of the judgment reflecting claims covered by the policy, but also extend to bearing the burden of proof with respect to apportionment of a judgment between claims that were covered by the policy and claims that were not covered." *Palermo v. Fireman's Fund Ins. Co.*, 42 Mass. App. Ct. 283, 290 (1997), citing *Polaroid Corp. v. Travelers Indemnity Co.*, 414 Mass. 747, 763-65 & n. 22 (1993); *Liquor Liability Joint Underwriting Assoc. v. Hermitage Insurance Co.*, 419 Mass. 316, 323-24 (1995).

Here, National Union failed to look beyond the four corners of the Complaint and consider any additional facts. Specifically, National Union failed to consider information regarding Mr. Ingoldsby's non-involvement with the execution or compiling of the borrowing-base certification and the effect thereof on the nature of Heller's claims against him. *See* Second Aceto Affidavit and *Exhibit A* and *Exhibit C* attached thereto; Deposition of Joni Mason, pp. 69-70. Indeed, the allegations of the Complaint and Jury

Demand as a whole were reasonably susceptible of an interpretation that they state or adumbrate a claim for negligent supervision, -- a "Wrongful Act" under the Policy— which claims were not, under the terms of the Complaint, necessarily within the contractual liability exclusion. As such, the failure and refusal of the Defendant National Union to fulfill its obligations under the policy represents a breach of its duty to defend.

**II.     The Policy is So Ambiguous that a Reasonable Insured Would Have Difficulty Understanding which Claims are Covered.**

Interpretation of an insurance contract is no different from interpretation of any other contract. *Citation Insurance Company v. Gomez, 426 Mass. 379, 381, 688 N.E.2d 951, 952 (1998).* In examining an insurance contract, the Court should consider "what an objectively reasonable insured, reading the relevant policy language, would expect to be covered." *Trustees of Tufts Univ. v. Commercial Union Ins. Co., 415 Mass. 844, 849, 616 N.E.2d 68, 72 (1993)* (quoting *Hazen Paper Co. v. United States Fidelity & Guaranty Co., 407 Mass. 689, 700, 555 N.E.2d 576, 583 (1990)).* Ambiguities in insurance policies are resolved against the insurer, who drafted the policy and, therefore, if "there are two rational interpretations of policy language, the insured is entitled to the benefit of the one that is more favorable to it." *Hazen,* 407 Mass. at 700. In addition, where an insurance policy is ambiguous as to create a genuine issue of material fact as to whether an exclusion excludes a particular claim, summary judgment must be precluded. *McConnell v. Scottsdale Insurance Co.*, 206 F.Supp.2d 95, 99 (D. Mass. 2002); *Liberty Mutual Insurance Company v. Metropolitan Life Insurance Co.*, 53 F.Supp. 529, 534-36 (D. Mass. 1999).

While certainly relevant, the parties' widely differing interpretations of the Policy are not the only evidence that the Policy is ambiguous. The Policy is constructed in such

6

a manner as to be cumbersome, convoluted and most difficult to comprehend. *See* Affidavit of James Martocci, ¶ 11. In order to illustrate the confusion of the policy and its myriad of endorsements, a complete copy of Policy No. 873-87-52 is attached to the Second Aceto Affidavit as *Exhibit E*. For example, National Union purports to replace the previous contractual liability exclusion 4(f) but refers to exclusion 4(h) instead. *Id.* In fact, a representative of National Union admitted during deposition testimony that the Policy was not drafted correctly and was himself confused by how Exclusion 4(h) was incorporated into the Policy. *See* Second Aceto Affidavit and *Exhibit B* attached thereto; Deposition of Robert Gadaleta, pp. 49-58.

In light of the foregoing, a reasonable insured reading the Policy would clearly have difficulty understanding how the various endorsements amend and alter the coverage afforded by the Policy. As such, Mr. Ingoldsby, as the insured, is entitled to the benefit of the one that is more favorable to him. *Hazen,* 407 Mass. at 700.

## CONCLUSION

Even if the allegations set forth in the Heller Complaint did not initially appear to fall within the Policy, National Union had a duty to consider additional facts, known or available to it, indicating that the claim was covered. Indeed, because the allegations of the Heller complaint, taken with the extrinsic facts, were "reasonably susceptible" of an interpretation that they stated a claim covered by the Policy, National Union had a duty to provide the Mr. Ingoldsby with a defense.

In addition, Mr. Ingoldsby has also further demonstrated that the Policy was indeed ambiguous. In fact, the Policy is constructed in such a way that those in the insurance industry have difficulty deciphering it.

Respectfully submitted,
MICHAEL INGOLDSBY
By his Attorney,

Gregory J. Aceto
BBO# 558556
JOHNSON & ACETO, LLP
67 Batterymarch St., Suite 400
Boston, MA 02110
(617) 728-0888
aceto@johnsonaceto.com