## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

<table>
<tr><td>

GE HFS HOLDINGS, INC.
*Formerly known as*
HELLER HEALTHCARE FINANCE, INC.,

      Plaintiff,

and

MICHAEL INGOLDSBY,

      Intervenor/Plaintiff,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and INTERNATIONAL INSURANCE GROUP, LTD.,

      Defendants.

</td><td>

CIVIL ACTION No: 05-CV-11128-NG

</td></tr>
</table>

## SECOND AFFIDAVIT OF GREGORY J. ACETO, ESQ. IN OPPOSITION TO NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA'S MOTION FOR SUMMARY JUDGMENT

I, Gregory J. Aceto, Esq., being duly sworn, depose and state as follows:

1.    I am an attorney with the law firm of Johnson & Aceto, LLP, 67 Batterymarch Street, Suite 400, Boston, Massachusetts, and am duly licensed to practice law in the courts of the Commonwealth of Massachusetts.

2.    I am counsel for the Plaintiff-Intervenor Michael Ingoldsby ("Mr. Ingoldsby" or "Plaintiff-Intervenor").

3.     True and correct copies of excerpts from the Deposition of Joni Mason, taken

October 23, 2006, are attached hereto as *Exhibit A*.

4.     True and correct copies of excerpts from the Deposition of Robert Gadaleta, taken

October 23, 2006, are attached hereto as *Exhibit B*.

5.     A true and correct copy of email correspondence, dated November 7, 2002,

to Attorney E. Joseph O'Neill, as counsel for National Union, regarding coverage

for Mr. Ingoldsby's claim is attached hereto as *Exhibit C*.

6.     A true and correct copy of Mr. Ingoldsby's formal demand letter, pursuant to

M.G.L ch. 93A, dated March 17, 2004, is attached hereto as *Exhibit D*.

7.     A true and correct copy of the complete policy, Policy Number 873-87-52,

effective date August 4, 2001, provided by National Union during discovery is

attached hereto as *Exhibit E*.


Signed under the pains and penalties of perjury this 21st day of December,

2006.


Gregory J. Aceto, Esq.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

------------------------------------

GE HFS HOLDINGS, INC.,                    )

Formerly known as                         )

HELLER HEALTHCARE FINANCE, INC.,          )    **ORIGINAL**

                     Plaintiff,    )

MICHAEL INGOLDSBY,                        )

         Intervenor/Plaintiff,    )    CIVIL ACTION NO.:

    vs.                                   )    05CV-11128-NG

NATIONAL UNION FIRE INSURANCE             )

COMPANY OF PITTSBURGH, PA, and            )

INTERNATIONAL INSURANCE GROUP, LTD.,)

              Defendants.    )

------------------------------------


Deposition of ROBERT GADALETA, at

199 Water Street, New York, New York,

commencing at 9:50 a.m., Monday,

October 23, 2006, before Sophie Nolan,

a Notary Public of the State of New York.


PAGES 1 - 121



**BEN HYATT**
CERTIFIED DEPOSITION REPORTERS

18226 Ventura Boulevard, Suite 103 • Tarzana, California 91356
323.225.2040 • 310.273.5040 • 818.343.7040 • Toll-Free 888.272.0022 • Fax 818.343.7119
www.benhyatt.com

1        APPEARANCES OF COUNSEL:

2

3        FOR THE PLAINTIFF:

4

5               JOHNSON & ACETO, LLP

6               BY:   GREGORY J. ACETO, ESQ.

7               67 Batterymarch Street

8               Suite 400

9               Boston, Massachusetts   02110

10              PHONE    617-728-0888

11              FAX      617-338-1923

12              E-MAIL   aceto@johnsonaceto.com

13

14       FOR THE DEFENDANTS:

15

16              EDWARDS ANGELL PALMER & DODGE, LLP

17              BY:   JOHN D. HUGHES, ESQ.

18              111 Huntington Avenue

19              Boston, Massachusetts 02199

20              PHONE    617-239-0100

21              FAX      617-227-4420

22              E-MAIL   jhughes@eapdlaw.com

23

24

25

```
 1          APPEARANCES OF COUNSEL (CONTINUED):

 2

 3     FOR THE DEFENDANT INTERNATIONAL INSURANCE:

 4

 5               TUCKER, HEIFETZ & SALTZMAN

 6               BY:   SYD SALOMAN, ESQ.

 7                     (Via Telephone)

 8               Three School Street

 9               Boston, Massachusetts  02108

10               (617) 557-9696

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1      Q.    And do you know when endorsement

2      number eight first came into existence?

3      A.    I believe it's entitled the 2001

4      version.  So -- I believe 2001.

5      Q.    Do you know who drafted that

6      endorsement?

7      A.    I do not.

8      Q.    Do you know which department was

9      responsible for preparing the endorsement?

10     A.    I do not.

11     Q.    Who at your company would have that

12     knowledge as to who prepared endorsement number

13     eight?

14     A.    I don't know.

15     Q.    If I can turn your attention,

16     Mr. Gadaleta, to page 236.  Can you tell me

17     what specifically section two -- amendments to

18     exclusion 1-H, can you tell me how that

19     contractual liability exclusion relates to the

20     one on page 233?

21     A.    It looks to be repeated.

22     Q.    Any other relation between the two?

23     A.    Not that I can tell.

24     Q.    Do you know why it's included twice

25     in endorsement number eight?

1          A.     I do not, no.

2          Q.     What's the significance of

3    endorsement number eight not being signed by an

4    authorized representative, if you know?  I'm

5    talking about page 238.

6          A.     I don't know.

7          Q.     To your knowledge, is it no longer

8    binding because it hasn't been executed by an

9    authorized representative?

10         A.     I don't know the answer to that.

11         Q.     And you don't have any explanation

12   as to why that contractual liability exclusion

13   is in twice in endorsement number eight?

14         A.     No.

15         Q.     Well, let me ask you this,

16   Mr. Gadaleta, the exclusion in 233 says,

17   "Exclusion 4-F is deleted in its entirety."

18                Did I read that right?

19                MR. HUGHES:  What page are you on?

20                MR. ACETO:  233.

21         Q.     It refers to exclusion 4-F;

22   correct?

23         A.     Yes.

24         Q.     And if you go back to 236 it says,

25   "Exclusion 4-H is deleted in its entirety.

1          Does that help clarify for you the

2     relationship, if any, between the two"?

3                A.     I believe it does.

4                Q.     So, we would need to go back to the

5     original policy itself, correct, to look at the

6     exclusions; isn't that right?

7                A.     I referred back to it.  I'm just

8     comparing.

9                Q.     Okay, take your time.

10               A.     "Reviewing."

11               Q.     Do you have a better clarification

12    as to why there's two different contractual

13    liability exclusions in endorsement number

14    eight?

15               A.     It would seem that exclusion 4-F

16    refers to the -- to endorsement number one and

17    specifically amends exclusion 4-F.

18                      4-H would seem to be -- this page

19    seems to be another endorsement that refers to

20    a different policy.

21               Q.     I'm not sure I understand that --

22    your last answer, sir.

23                      Page 236 refers to a different

24    policy all together?

25               A.     It seems to be part of this policy

1       based on the heading.

2              Q.     Okay.

3              A.     Just the letters seem to match

4       up -- don't seem to match up with this policy

5       in terms of definitions.

6              Q.     Isn't this -- isn't page 236 saying

7       exclusion 4-H is deleted in its entirety and so

8       if you go to the policy on page 165, exclusion

9       4-H, isn't page 236 deleting the original

10      exclusion 4-H and replacing this language in

11      endorsement number eight?

12             A.     It would seem to be.

13             Q.     Okay.  So, National Union has taken

14      an exclusion that related to pending or prior

15      litigation for the original 4-H and made it a

16      contractual liability exclusion; correct?

17             A.     I don't believe that was the

18      intent.

19             Q.     And why do you think that?

20             A.     Endorsement number one amends the

21      form, so there is a different exclusion H in

22      endorsement number one.

23             Q.     And you're referring to which page

24      in endorsement number one?

25             A.     208.

1          Q.      So, what I referred to earlier in

2     the original policy on page 165 was first

3     amended by endorsement number one on page 208;

4     correct?

5          A.      Yes.

6          Q.      And so now the new language on page

7     208 for exclusion 4-H, it still deals with

8     pending or prior litigation, but it's a little

9     bit more lengthy of an analysis of the

10    exclusion; is that right?

11         A.      Yes.

12         Q.      Okay, so, going back to the

13    exclusion on page 236 in reference to exclusion

14    4-H, that now replaces the language on page 208

15    for exclusion 4-H; correct?

16         A.      It would seem to.

17         Q.      So, based on your analysis of the

18    policy as it exists, Mr. Gadaleta, there is two

19    exactly the same contractual liability

20    exclusions in 4-F and in 4-H; correct?

21         A.      They seem to be the same.

22         Q.      And would there be a reason why

23    National Union would want the exact same

24    language of a contractual liability exclusion

25    in 4-F and in 4-H?

1        A.    No.

2        Q.    Pages 236 through 238, earlier I

3    think you said something to the effect,

4    Mr. Gadaleta, that they were an endorsement for

5    a different policy; was that your testimony

6    earlier?

7        A.    It seems that 236 through 238 are

8    repeated language of what's already in

9    endorsement number eight.

10        Q.    And, in fact, it seems to be two

11    endorsement number eights doesn't it, because

12    there's a header at the top of page 231 that

13    says "Endorsement Number Eight" and gives the

14    effective dates of the policy and the policy

15    number and then it's signed on page 235;

16    correct?

17        A.    Endorsement number eight is signed

18    on page 235.

19        Q.    And how about the first part of my

20    question, that it seems to start on page 231

21    with the header "Endorsement Number Eight," the

22    effective date, the policy number, and the

23    insured's name; correct?

24        A.    Correct.

25        Q.    And on 236 it does the same thing

1    over again but it says "Endorsement Number
2    Eight Continued," but it gives the same
3    information again; correct?
4        A.    Some parts are repeated.  Not all
5    of the endorsement -- the first part of
6    endorsement number eight is repeated.
7        Q.    Page 236 follows 235 that has the
8    authorized signature for endorsement number
9    eight; correct?
10        A.    Yes.
11        Q.    And then, again, as I pointed out
12    earlier, Mr. Gadaleta, there appears to be a
13    line for an authorized representative to sign
14    238 and it was not signed; is that right?
15        A.    Page 238 is not signed.
16        Q.    Is it typical that National Union
17    would have two authorized representative
18    signature lines for one endorsement?
19        A.    I don't believe so.
20        Q.    And, so, do you have any
21    explanation as to the, as you put it, the
22    repetitive language of page 236 through 238 of
23    endorsement number eight?
24        A.    I am not aware of why the
25    underwriter would -- would use -- would add

1    liability as interpreted by National Union, and

2    you said it covers mismanagement claims.

3              Do you remember that testimony?

4              MR. HUGHES:  I object to that.  He

5        said a lot more than that.

6        Q.    I understand that.  Among other

7    things, you said it covers mismanagement

8    claims?

9        A.    Yes.

10        Q.    But it really doesn't because

11    mismanagement claims are limited by the

12    contractual liability exclusion; correct?

13              MR. HUGHES:  Objection.

14              Go ahead and answer if you can.

15        A.    All wrongful acts are limited by

16    the terms and conditions and exclusions of this

17    policy.

18        Q.    I understand that.  You're reading

19    from the policy manual, Mr. Gadaleta.  I'm

20    asking you -- earlier you said that one of the

21    things that this policy would cover is

22    mismanagement claims but it actually won't

23    cover mismanagement claims if it arises out of

24    a contract as interpreted by National Union;

25    correct?

1          A.     Any claim that alleges, arises out

2    of, is based upon or attributable to breach of

3    an express contract would not be a covered

4    claim.

5          Q.     And another area that you said the

6    policy would cover was employment practices

7    claims; correct?

8          A.     Yes.

9          Q.     And to get around this -- to

10   clarify this issue of whether it's limited, the

11   coverage is limited by the contractual

12   liability exclusion on page 233, National Union

13   put specifically in there that, in fact, the

14   contractual liability exclusion does not apply

15   to an employment practices claim; correct?

16         A.     To the extent that any liability

17   does not arise from such express contract or

18   agreement.

19         Q.     So, employment practices claims are

20   also limited by the contractual liability

21   exclusion as well; correct?

22         A.     Well, it's -- exclusion 4-F says,

23   "This exclusion shall not apply to employment

24   practices claims to the extent that any

25   liability does not arise from such express

1    contract or agreement."

2          Q.    Right.  But in actuality because F

3    already talks about an express contract, the --

4    limiting the exclusion -- excuse me, excluding

5    employment practices claims from the -- you're

6    not really -- strike that.

7          The language that is drafted

8    doesn't really provide coverage for employment

9    practices claims subject to the contractual

10   liability exclusion because it has to be by an

11   express contract; correct?

12         MR. HUGHES:  Objection as to form.

13         A.    I don't understand the question.

14         Q.    Focusing on page 233 in the

15   exclusion, Mr. Gadaleta, essentially it says,

16   "Any claims arising out of a contract, an

17   express contract, are excluded"; correct?

18         A.    Generally, that's correct.

19         Q.    Generally -- speaking generally,

20   then the language says "This exclusion shall

21   not apply to employment practices claims";

22   correct?

23         A.    Okay.

24         Q.    Except if they're -- if they arise

25   from an express contract or agreement; correct?

1          A.      It doesn't say that.

2          Q.      It says, "To the extent that any

3    liability does not arise from such express

4    contract or agreement"?

5          A.      Yes.

6          Q.      Isn't that another way of saying

7    unless -- the employment practices claim will

8    be covered unless they arise from an express

9    contract or agreement, isn't that saying the

10   same thing?

11         A.      I don't believe it does.

12         Q.      Can you clarify for me, then, if a

13   claim falls within the scope of an employment

14   practices claim, will it be subject to the

15   contractual liability exclusion?

16         A.      The term "employment practices

17   claim" is defined.  It does not -- if you go

18   back and read it, does not include an express

19   employment contract.  So, if a breach of an

20   express employment contract is brought, the

21   contract itself would not be covered, but any

22   other allegations arising or related to that

23   contract would be, subject to all the other

24   terms and conditions of the policy.

25         Q.      Can you show me where that language

1    is in the policy?

2         A.    Page 204.

3         Q.    And specifically, Mr. Gadaleta,

4    where is the reference to the express contract?

5         A.    Express employment contract is not

6    an employment practices violation.

7         Q.    Oh, so you're saying it's not

8    specifically listed in here, so it's not an

9    employment practices claim?

10        A.    Right.

11        Q.    Oh, I see what you're saying.  So,

12   you're saying subsection one of M, section M,

13   "wrongful dismissal discharge or termination

14   (either actual or constructive) of employment"

15   applies in a situation where there's no

16   employment contract; is that right?

17        A.    These 12 listed employment

18   practices perils do not apply to the contract

19   exclusion.

20        Q.    I understand that from 4-F, as

21   amended on page 233, but what I'm asking you

22   is, someone brings an employment practices

23   claim and that employee has a written contract

24   of employment, is that covered by the

25   employment practices perils as you just called

1       them?

2              A.     What's the count?

3              Q.     Wrongful termination of employment.

4              A.     Wrongful termination of employment

5       would be a covered wrongful act.

6              Q.     And what if that employee had an

7       employment -- an express contract, an

8       employment contract?

9              A.     The breach of contract would not be

10      covered.

11             Q.     But the wrongful termination would

12      be covered?

13             A.     I'm not 100 percent sure in that

14      specific case, subsection one of Exclusion M,

15      how that would apply, but the rest of

16      employment practices violation would work the

17      way I described it, so if a contracted employee

18      brought a sexual harassment claim, that sexual

19      harassment claim would be covered.

20             Q.     Well, let's go back to 4-F on page

21      233, doesn't this say the opposite of what you

22      just said though, subsection one of F says that

23      "The exclusion does not apply to employment

24      practices claim to the extent that any

25      liability that does not arise from such express

1    contract or agreement," so in the scenario that

2    we're talking about that the employee has a

3    written contract and sues for wrongful

4    termination, the exclusion denies coverage;

5    correct?

6                    MR. HUGHES:  Could I have that

7            back, please, the question?

8                    (Record read.)

9                    MR. HUGHES:  Objection as to form.

10           If you understand that and answer, go

11           ahead.

12           A.    I truthfully cannot understand it.

13           Q.    Let me rephrase it for you,

14    Mr. Gadaleta.  You just said earlier that in a

15    scenario that we're discussing, that even if

16    someone has a contract, there would be coverage

17    under the employment practices perils, correct,

18    even if someone has an employment contract?

19           A.    Yes.

20           Q.    That would seem to be inconsistent,

21    don't you agree with Exclusion 4-F, subsection

22    one, that says that -- doesn't that subsection

23    say that if there is an express contract, i.e.

24    an employment contract, that the contractual

25    liability exclusion applies to that claim?

1          MR. HUGHES:  Object as to form.

2          A.    It says that the exclusion is not

3    going to apply to employment practices claims

4    to the extent that any liability does not

5    arise.  So, it would seem to me the way I'm

6    reading this, that claims outside of the

7    contract, employment practices claims outside

8    of the contract are covered.

9          Q.    That do not arise --

10         A.    From such express contract or

11   agreement.

12         Q.    Right.  And in the case that we're

13   talking about an employee has a contract and

14   he's terminated and claims a wrongful discharge

15   or discrimination of some kind, that claim

16   arises out of an express contract, doesn't it?

17         A.    Discrimination is not related to --

18   well, the employment practices claims do not --

19   are not -- are excluded from the contractual

20   exclusion, so they don't apply, the exclusion

21   does not apply to employment practices claims.

22         Q.    And where do you get that

23   testimony?  Where do you get that from the

24   policy?

25         A.    Page 233.

1        Q.      Right.

2        A.      Amendments to exclusions, exclusion

3    4-F, last line, "This exclusion shall not apply

4    to employment practices claims to the extent

5    that any liability does not arise from such

6    express contract or agreement."

7        Q.      What I'm asking you again,

8    Mr. Gadaleta, is that the express contract

9    requirement in subsection one that you just

10   read to me, it requires that you do not have an

11   express contract; correct?  Isn't that another

12   way of saying that to the extent that any

13   liability does not arise from such express

14   contract or agreement?  Can't you also say that

15   unless it arises from an express contract?

16   Isn't that another way of saying the exact same

17   language in there?

18           MR. HUGHES:  Objection to the form.

19       Q.      Couldn't you say, let me rephrase

20   that.  Couldn't you say in 4-F-1, employment

21   practices claims unless the claim arises out of

22   an express contract or agreement, isn't that

23   the exact same way of saying that?

24           MR. HUGHES:  Objection as to form.

25       A.      I disagree.

1          Q.     You disagree?

2          A.     I do.

3          Q.     What's the difference between what

4     I just said and what's written in 4-F-1?

5          A.     My understanding of how 4-F-1 is

6     written is that the exclusion, the contractual

7     liability exclusion does not apply to

8     employment practices claims because the -- the

9     employment practices allegations, the counts

10    are outside the contract.

11         Q.     And why are they outside the

12    contract?

13         A.     Well, discrimination --

14    discrimination is a federal protection afforded

15    to people, so that wouldn't be part of an

16    employment contract.

17         Q.     What if an employee makes a claim

18    for wrongful termination, not based on

19    discrimination, but wrongful termination based

20    on the language in the contract, would that be

21    an employment practices claim?

22         A.     I think we would need additional

23    information on that.  I'm not sure I can answer

24    that question.

25              MR. ACETO:  Why don't we take a

1          break here.  I think I'm pretty much done

2          with him.

3                    (Recess taken.)

4          Q.    Mr. Gadaleta, let's go back to 4-F

5    again.  4-F, for the exclusion to apply, there

6    needs to be an express contract or agreement;

7    correct?

8          A.    Not necessarily.

9          Q.    Why not necessarily?

10         A.    The lead-in language is alleging,

11   arising out of, based upon or attributable to.

12         Q.    Okay.

13         A.    So if a matter is attributable to

14   an express contract, then the exclusion would

15   apply.

16         Q.    Well, my initial statement was that

17   there's a report of an express contract or

18   agreement being in existence; correct?

19         A.    Yes.

20         Q.    So, for the exclusion -- for

21   National Union to say the exclusion applies

22   here and there's no coverage, there has to be

23   at least the allegation of an express contract

24   or agreement?

25         A.    Yes.

1       Q.    And, so, for the exclusion not to

2    apply in the employment practices claim, the

3    same thing applies; it needs to be -- if there

4    is an allegation of an express contract, then

5    the contractual liability exclusion applies,

6    correct, based on the language in 4-F-1?

7       A.    Employment practices claims are

8    granted coverage directly, so there doesn't

9    have to be a contract in place to afford

10   employment practices coverage.

11      Q.    Right, but that's not my question.

12   What I'm saying -- I hear you what you're

13   saying about the contractual -- the employment

14   practices claims apply, can apply regardless of

15   whether there's an express contract.  That

16   wasn't my question.

17            My question is going back to 4-F-1,

18   the exclusion to the contractual liability

19   exclusion is basically what it is, correct,

20   it's saying that under certain circumstances

21   the employment practices claims will not be

22   subject to the contractual liability exclusion;

23   correct?

24      A.    Yes.

25      Q.    So it's an exclusion to an

1    exclusion essentially; correct?

2         A.    It's a carve-out of the exclusion.

3         Q.    A carve-out to the exclusion and

4    that carve-out is only going to apply if there

5    is not an express contract or agreement;

6    correct?

7         A.    No.

8         Q.    That carve-out is only going to

9    apply if it does not arise out of an express

10    contract or agreement; correct?

11         A.    Can you repeat that?

12         Q.    That carve-out is only going to

13    apply in limiting the exclusion in 4-F if there

14    is not allegations that arise from express --

15    from an express contract or agreement?  I'm

16    reading right from 4-F-1.

17              MR. HUGHES:  Objection.  That's not

18         what it says.

19              MR. ACETO:  That's exactly what it

20         says.

21              MR. HUGHES:  No, it doesn't.  It

22         says that "to the extent that any

23         liability does not arise from any express

24         contract or agreement."

25              MR. ACETO:  Okay.  That's what I've

1           been saying all along.

2           Q.    Unless any liability arises from an

3    express contract or agreement; correct?

4           A.    Can you repeat the question?

5           Q.    That carve-out we just talked

6    about, 4-F-1, does not apply if there is any

7    liability arising from an express contract or

8    agreement?

9           A.    That does apply.  The carve back to

10   the exclusion does apply.

11          Q.    Does apply unless there is any

12   liability arising from an express contract or

13   agreement; correct?

14          A.    There is coverage granted in 4-F-1

15   for employment practices claims.

16          Q.    So long as the liability --

17                MR. HUGHES:  Were you done with

18          your answer?

19                THE WITNESS:  Yes.

20          Q.    So long as the liability does not

21   arise from an express contract; correct?

22          A.    The carve back to coverage for

23   employment practices claims -- I'm sorry.

24   Employment practices claims as defined in the

25   policy are granted coverage under this

1    exclusion other than liability from the express

2    contract.

3                    MR. ACETO:  I have nothing further.

4            Thank you, Mr. Gadaleta.

5                    (Time noted:  12:54 p.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**BEN HYATT**
**CERTIFIED DEPOSITION REPORTERS**
**(888) 272-0022**

```
 1

 2               C E R T I F I C A T E

 3

 4    STATE OF              )
                            :ss
 5    COUNTY OF             )

 6

 7         I, SOPHIE NOLAN, a Shorthand Reporter and

 8    Notary Public within and for the State of New

 9    York, do hereby certify:

10         That ROBERT GADALETA, the witness whose

11    examination is hereinbefore set forth, was duly

12    sworn by me and that such deposition is a true

13    record of the testimony given by such witness.

14         I further certify that I am not related

15    to any of the parties to this action by blood

16    or marriage; and that I am in no way interested

17    in the outcome of this matter.

18         IN WITNESS WHEREOF, I have hereunto set

19    my hand this 30th day of October, 2006.

20

21         _____

22                  SOPHIE NOLAN

23

24

25
```

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

------------------------------------

GE HFS HOLDINGS, INC.,                    )

Formerly known as                         )        **ORIGINAL**

HELLER HEALTHCARE FINANCE, INC.,          )

                        Plaintiff,        )

MICHAEL INGOLDSBY,                        )

            Intervenor/Plaintiff,         ) CIVIL ACTION NO.:

        vs.                               ) 05CV-11128-NG

NATIONAL UNION FIRE INSURANCE             )

COMPANY OF PITTSBURGH, PA, and            )

INTERNATIONAL INSURANCE GROUP, LTD.,)

                        Defendants.       )

------------------------------------


    Deposition of JONI MASON, at

    199 Water Street, New York, New York,

    commencing at 1:55 p.m., Monday,

    October 23, 2006, before Sophie Nolan,

    a Notary Public of the State of New York.


PAGES 1 - 112



**BEN HYATT**
CERTIFIED DEPOSITION REPORTERS

18226 Ventura Boulevard, Suite 103 • Tarzana, California 91356
323.225.2040 • 310.273.5040 • 818.343.7040 • Toll-Free 888.272.0022 • Fax 818.343.7119
www.benhyatt.com

1       APPEARANCES OF COUNSEL:

2

3       FOR THE PLAINTIFF:

4

5               JOHNSON & ACETO, LLP

6               BY:   GREGORY J. ACETO, ESQ.

7               67 Batterymarch Street

8               Suite 400

9               Boston, Massachusetts   02110

10              PHONE    617-728-0888

11              FAX      617-338-1923

12              E-MAIL   aceto@johnsonaceto.com

13

14      FOR THE DEFENDANTS:

15

16              EDWARDS ANGELL PALMER & DODGE, LLP

17              BY:   JOHN D. HUGHES, ESQ.

18              111 Huntington Avenue

19              Boston, Massachusetts 02199

20              PHONE    617-239-0100

21              FAX      617-227-4420

22              E-MAIL   jhughes@eapdlaw.com

23

24

25

```
 1          APPEARANCES OF COUNSEL (CONTINUED):

 2

 3      FOR THE DEFENDANT INTERNATIONAL INSURANCE:

 4

 5              TUCKER, HEIFETZ & SALTZMAN

 6              BY:   SYD SALOMAN, ESQ.

 7                  (Via Telephone)

 8              Three School Street

 9              Boston, Massachusetts  02108

10              (617) 557-9696

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    recollection of having read it back then.

2         Q.    Do you have a specific recollection

3    of having read the complaint in the matter?

4         A.    Yes, I do.

5         Q.    And do you have a specific

6    recollection of re viewing the file files in

7    this latter back at the time in 2002?

8         A.    Yes, I have a general recollection.

9    It was several years ago and I handled the file

10   for a short period of time, but I do have a

11   general recollection.

12        Q.    Was a decision made to deny

13   coverage while you were still handling the

14   file?

15        A.    Yes.

16        Q.    Who made that decision?

17        A.    I did.

18        Q.    Based on what?

19        A.    Based on review of the complaint

20   and review of the insurance policy.

21        Q.    Anything else?

22        A.    Whatever was submitted from the

23   insured.

24        Q.    So, how about that e-mail that we

25   just went through on 799, if that was in the

1    file, would you have reviewed that as well and

2    relied on that?

3         A.     I believe this letter -- I don't

4    know if this letter went out, this e-mail that

5    you've directed my attention to from you to Joe

6    O'Neil is dated after our coverage letter went

7    out.  I would have still reviewed documents

8    that came in throughout the life of the file

9    during my handling of the file, but I'm not

10   sure this e-mail was available at the time we

11   issued the coverage letter.

12        Q.     Do you understand your

13   responsibilities as a claims manager to go

14   outside the four corners of the complaint to

15   look at other evidence that's available?

16        A.     Could you repeat that?

17        Q.     Do you have an understanding as a

18   claims director back in 2002 that you had a

19   duty to consider things outside the language of

20   the complaint?

21             MR. HUGHES:  Objection as to form,

22        but go ahead and answer if you

23        understand.

24        A.     I have a duty to -- I understood

25   that I had a duty to review the claim and the

1          insurance policy and make a coverage
2          determination.
3                    In this particular case, I didn't
4          need to review anything additional outside of
5          the complaint and the policy.  However, the
6          insured is always invited to submit additional
7          information for our consideration.
8               Q.    And why was it that you didn't need
9          to review it -- you said you felt you didn't
10         need to review anything else; is that right?
11              A.    I reviewed the materials that were
12         submitted to us for coverage.
13              Q.    So, additional documentation over
14         and above the complaint you did review?
15              A.    Whatever was submitted by the
16         insured, correspondence, complaint attachments.
17              Q.    In this particular case was it
18         necessary for you to review any other
19         documentation aside from the complaint?
20              A.    For --
21              Q.    To make your decision?
22              A.    No, it was not.
23              Q.    Why was that?
24              A.    Because the claim was included
25         under the policy and terms.

1        Q.    And there's no additional

2    information that could be provided to you that

3    would have any bearing on that decision?

4        A.    As I said, we always invite the

5    insured to let us know if they disagree and we

6    reevaluate accordingly.

7        Q.    During the time that you had the

8    file through, I think you said, February of

9    '03, did you ever go back and reevaluate the

10   decision?

11       A.    I do recall that there were

12   discussions.  I think there were phone calls

13   from the insured or from the insured's counsel

14   to Joe O'Neil and --

15           MR. HUGHES:  All right, now I'll

16       instruct you not to repeat any

17       conversations or correspondence that you

18       received from Joe O'Neil.

19       A.    We had discussions.  We had further

20   discussions because --

21       Q.    I think what I'm really interested

22   in is did you, yourself, forget about what Joe

23   O'Neil told you, did you, yourself, go back and

24   reevaluate the file that you had in February of

25   2003?

1          A.     Yes.

2          Q.     Was there additional information

3     that you reviewed in making your decision?

4          A.     Yes.

5          Q.     And what was that additional

6     information that you reviewed?

7          A.     Correspondence that was sent to us

8     on behalf of the insured.

9          Q.     Did that change your mind in any

10    way?

11         A.     No, it did not.

12         Q.     Is there additional documentation,

13    other than what's attached as Exhibit Number

14    10, that you reviewed from the insured?

15         A.     Not that I can recall.

16              (Mason Exhibit 11, document

17              entitled "Defendant National Union Fire

18              Insurance Company of Pittsburgh, PA's

19              answers to the Plaintiff - Intervenor

20              Michael Ingoldsby's First Set of

21              Interrogatories, marked for

22              identification.)

23         Q.     Ms. Mason, I'm showing you what's

24    been marked as Exhibit Number 11 to your

25    deposition.

1          Did you assist at all in providing

2    these answers to interrogatories that were

3    propounded upon National Union by Michael

4    Ingoldsby?

5          A.    No, I did not.

6          Q.    And Mr. Daskalakis did not discuss

7    any of these answers to interrogatories with

8    you?

9          A.    No.

10          Q.    And you've never seen this document

11    prior to today?

12          A.    Correct.

13          (Recess taken.)

14          Q.    We're going to go back to Exhibit

15    Number 1 then.  Do you have that in front of

16    you?  Specifically page four.  I understand

17    from your counsel that you're here to testify

18    as to category number one; is that right?

19          A.    Yes.

20          Q.    So, can you describe for me the

21    investigation that National Union engaged in in

22    determining whether or not to find that the

23    claim that's the subject matter of this lawsuit

24    was covered by the policy?

25          A.    Well, the claim came in, the

1     allegations were looked at in the complaint and

2     then the policy terms and conditions and

3     exclusions were reviewed.  A coverage letter

4     was issued.  I believe there was some

5     additional either phone calls or correspondence

6     from the insureds or on behalf of the insureds.

7               I know there was further discussion

8     with the insureds regarding the policy

9     interpretation and I think there was even a

10    face-to-face meeting with the insured and our

11    counsel and anything else that was submitted to

12    us was reviewed.

13         Q.    And the letter that you say that

14    was sent by National Union, are you referring

15    to the letter that was sent by Joe O'Neil?

16         A.    Correct.

17         Q.    So there wasn't actually a decision

18    mailed by you?

19         A.    It was my coverage determination.

20    Mr. O'Neil sent out the letter.  I reviewed the

21    letter before it went out.

22         Q.    That's the letter that you're

23    referring to as the decision; is that right?

24         A.    The coverage determination?

25         Q.    Yes.

1          A.     Correct.

2          Q.     There was no other correspondence

3     sent to the insured; is that right?

4          A.     I believe there was a supplemental

5     coverage letter that was sent to the insured

6     sometime after my handling of the file.

7          Q.     Denying coverage or just saying

8     that you have the file?  In other words, was

9     there a decision in that letter?

10         A.     My recollection is that there was a

11    supplemental letter responding to some

12    inquiries from the insured, but confirming --

13    reviewing the insured's arguments and

14    confirming our coverage determination.

15         Q.     But that was after you had given up

16    the file; isn't that right?

17         A.     Correct.

18         Q.     So, how were you made aware of

19    that, that there was a supplemental decision?

20         A.     In preparation for my deposition.

21         Q.     But you weren't involved in that

22    supplemental decision?

23         A.     No, I was not.

24         Q.     So, the only decision that you were

25    involved in was the one that was encompassed by

1    apply to employment practices claims to the

2    extent any liability does not arise from such

3    express contract or agreement."

4         Q.    So, if the liability arises from an

5    express contract and you've already said an

6    oral contract is an express contract?

7         A.    It can be.

8         Q.    Right, so, in fact, and in that

9    scenario you gave me, there's an express

10   contract that the discrimination claim arises

11   out of and it's not covered either, is it?

12        A.    I don't think the discrimination

13   arises out of the contract which is why it

14   would be covered because it's defined under the

15   section of employment practices claims, by

16   specifically being covered.

17        Q.    Except that the damages arises out

18   of an express contract in which case it's

19   subject to the contractual liability exclusion;

20   correct?

21        A.    That's correct.

22        Q.    So, basically, Ms. Mason, you read

23   the complaint and determined that there was no

24   coverage for any of the insureds and really

25   didn't do any other investigation; isn't that

1    right?

2         A.    That's correct.

3         Q.    And you didn't feel that there was

4    any need to do any further investigation as to

5    the claims alleged in the complaint?

6         A.    Well, when you say investigation,

7    there were conversations, I think numerous

8    conversations with the insured and counsel,

9    and, in fact, there was a face-to-face meeting

10   between our counsel and the insureds and their

11   counsel.

12        Q.    There was one meeting?

13        A.    Yes, there was a meeting.

14        Q.    But you had already made your mind

15   up before then; is that right?

16        A.    Yes, that's correct.

17        Q.    But when you made your mind up

18   initially and sent the initial determination

19   letter, all you did was read the complaint and

20   determined that the claims all arose out of a

21   contract and you denied coverage; correct?

22        A.    Correct.

23        Q.    How much time do you think you

24   spent in reviewing the claim?

25        A.    I can't answer that, I don't know.

1    Q.    Thirty minutes?

2    A.    I'm sure it was more than that.

3    Q.    An hour?

4    A.    I don't know.  I'm not willing to

5    speculate.

6    Q.    I'm not asking you to speculate.

7    Can you give me an estimate of how much time

8    you spent evaluating this claim before you --

9    A.    I really cannot.

10    Q.    Let me finish my question, please.

11    Before you issued that initial determination

12    letter, how much time did you spend

13    investigating the matter?

14    A.    I don't remember.

15    Q.    You read the complaint; right?

16    A.    I read the complaint, I read the

17    policy.  I had conversations with counsel.

18    There may have been correspondence back and

19    forth with counsel and most likely I discussed

20    it with my supervisor.

21    Q.    And how much total time do you

22    think you spent evaluating this claim before

23    you denied it initially?

24    A.    Honestly, I cannot formulate a

25    quantifiable time.

1           Q.    But you didn't have to read the

2      policy because you're already familiar with the

3      contractual liability exclusion; correct?

4           A.    I'm familiar with that exclusion,

5      but I always read the policy because there's

6      always endorsements and there may be things

7      that were added, so I always go back and read

8      it thoroughly.

9           Q.    Have you taken any courses or

10     training as to how to interpret what claims

11     arise out of, alleged, based upon or

12     attributable to an actual or alleged

13     contractual liability?  Have you taken any

14     courses in that regard to learn what those are?

15          A.    No, no courses.

16          Q.    Do you have any manuals in your

17     office as to how to determine what's arising

18     out of an express contract?

19          A.    No.

20          Q.    Has anyone ever talked to you about

21     how to interpret that provision of contractual

22     liability exclusion?

23          A.    I'm sure I've had discussions with

24     my supervisors throughout my tenure at AIG.

25          Q.    And what have they told you about

1

2          C E R T I F I C A T E

3

4    STATE OF                    )
                                  :ss
5    COUNTY OF                   )

6

7         I, SOPHIE NOLAN, a Shorthand Reporter and

8    Notary Public within and for the State of New

9    York, do hereby certify:

10        That JONI MASON, the witness whose

11   examination is hereinbefore set forth, was duly

12   sworn by me and that such deposition is a true

13   record of the testimony given by such witness.

14        I further certify that I am not related

15   to any of the parties to this action by blood

16   or marriage; and that I am in no way interested

17   in the outcome of this matter.

18        IN WITNESS WHEREOF, I have hereunto set

19   my hand this 30th day of October, 2006.

20

21        *Sophie Nolan*

22            SOPHIE NOLAN

23

24

25

## E. Joseph O'Neil

| | |
|---|---|
| **From:** | Greg Aceto [aceto@fjalaw.com] |
| **Sent:** | Thursday, November 07, 2002 1:12 |
| **To:** | E. Joseph O'Neil |
| **Cc:** | Michael Ingoldsby |
| **Subject:** | Coverage Issue for Michael Ingoldsby |

Dear Joe,

As we discussed previously, Michael Ingoldsby is being sued on Count I of the Complaint for Negligent Misrepresentation. As I believe the other defendants Ms. Edwards and Ms. Jones can confirm, Michael Ingoldsby has not been involved in any of the operations of Managed Health Care Systems and Medical Temporaries since 1999. In fact, since 1999, Mr. Ingoldsby has been and is still disabled and collecting under a disability policy as a result of his disability. To the extent that the Complaint alleges that he was involved in compiling the borrowing base certificates, this is inaccurate and without any factual support. Mr. Ingoldsby was the Chairman of the Board of the companies, but held no other titles or responsibilities and performed no functions for the companies on a day-to-day basis.

As I previously stated, he is simply being sued as a member of the Board of Directors of the companies--he played no active role in the company. Thus, he is an insured under the policy of insurance and there are no applicale exclusions. He should be provided a defense by AIG, regardless of whether endorsement 8 was or was not a part of the policy (this issue still remains unclear).

Gregory J. Aceto, Esq.
Johnson & Aceto, P.C.
67 Batterymarch Street, Suite 400
Boston, MA 02110
Tel: 617.728.0888
Fax: 617.338.1923

The information in this transmittal is privileged and confidential and is intended only for the recipient(s) listed above. If you are neither the intended recipient(s), nor a person responsible for the delivery of this transmittal to the intended recipient(s), you are hereby notified that any unauthorized distribution or copying of this transmittal is prohibited. If you have received this transmittal in error, please notify Michele Prager, of Johnson & Aceto, P.C., immediately at 617.728.0888.

AIG/GE HFS 0799

12/19/2002



# JOHNSON & ACETO, P.C.
## COUNSELORS AT LAW

67 BATTERYMARCH STREET, SUITE 400
BOSTON, MASSACHUSETTS 02110
TEL (617) 728-0888
FAX (617) 338-1923
EMAIL: office@fjalaw.com

March 17, 2004

**Via Certified Mail Return Receipt Requested
and First Class Mail**
Ms. Joni Mason
International Insurance Group, LTD
125 Broad Street, 4th Floor
Boston, MA 02110

**Via Certified Mail Return Receipt Requested
and First Class Mail**
Mr. Nicholas Sciotto
International Insurance Group, LTD
125 Broad Street, 4th Floor
Boston, MA 02110

Re:  *Heller Healthcare Finance, Inc. vs. Michael Ingoldsby, et al.,*
United States District Court Civil Action No.: 02 CV 11553 NG
Your Insured:     Managed Health Care Systems, Inc.
Policy No.:        873-87-52
AIGTS Claim No.:  434-003227

Dear Mr. Mason and Mr. Sciotto:

As you are already aware, this office represents Michael O. Ingoldsby and Mary Lee Ingoldsby in the above entitled matter.

Please consider this letter as notice that our clients, Michael O. Ingoldsby and Mary Lee Ingoldsby, are making a formal claim of National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), a member of the American International Group, Inc. ("AIG") to provide coverage for Michael O. Ingoldsby's and Mary Lee Ingoldsby's defense (and/or indemnification) in the instant matter under National Union's Directors and Officers Insurance and Company Reimbursement Policy, Policy Number 873-87-52. A copy of the Complaint and Jury Demand is attached hereto as *Exhibit A*.

In light of the content of my previous discussions with National Union's representatives and the letters of October 11, 2002 and March 6, 2003 denying coverage and defense in the instant matter, this letter will also serve as a formal demand letter to

**AIG/GE HFS 0793**

Ms. Joni Mason
Mr. Nicholas Sciotto
March 17, 2004
Page 2

National Union under Massachusetts General Laws Chapter 93A, on behalf of both
Michael O. Ingoldsby and Mary Lee Ingoldsby.

By way of brief factual background, on or about August 1, 2002, Heller Healthcare
Finance, Inc. ("Heller") initiated the instant action against Michael O. Ingoldsby
("Ingoldsby"), Mary Lee Ingoldsby,[1] Pamela Jones and Indy Edwards. By letter dated
August 2, 2002, Michael Ingoldsby, Mary Lee Ingoldsby, and Indy Edwards, as National
Union insured, made a formal claim of National Union to provide coverage for their defense
(and/or indemnification) in the instant matter under Policy No. 873-87-52. AIG Technical
Services, Inc., on behalf of National Union, responded on August 20, 2002, to inform that
a preliminary coverage evaluation would be forthcoming.

By letter dated October 11, 2002, National Union, through counsel, "declined
coverage for the *Heller Action* allegations against Michael Ingoldsby, Mary Lee Ingoldsby,
and Indy Edwards." Discussion ensued between counsel over coverage issues.
Thereafter, by letter dated March 6, 2003, counsel for National Union again declined
coverage by stating that "there [was] no coverage available under the policy for the claims
asserted in the *Heller* action against Michael O. Ingoldsby."

National Union based its denial to provide coverage upon Exclusion 4(h), as
amended by Endorsement No. 8. Under Exclusion 4(h), National Union claims that it is
"not liable to make any payment for loss in connection with any claim or claims made
against the Directors of Officers" because the claims allege, arise out of and are based
upon the contractual liability of MHCS under the [Debtor-in-Possession Loan and Security
Agreement] ("DIP") Agreement.

The provision upon which National Union relies reads to exclude from coverage the
following:

(h) alleging, arising out of, based upon or attributable to any actual or
alleged contractual liability of the Company or an Insured under any express
(written or oral) contract or agreement (including, but not limited to, any
liquidated damages, severance agreement or payment, golden parachute
agreement, or any compensation agreement payable upon termination of

---

[1] This office represents defendants Michael O. Ingoldsby and Mary Lee Ingoldsby.

AIG/GE HFS 0794

Ms. Joni Mason
Mr. Nicholas Sciotto
March 17, 2004
Page 3

any insured); provided, however, that the exclusion shall not apply to:

> (1) Employment Practices Claims to the extent that any liability does
> not arise from such express contract or agreement; or
> (2) Claims for Loss alleging Wrongful Acts of an Insured(s) with
> respect to hospital practice, privileges, credentialling or peer review
> matters.

National Union has denied coverage on two previous occasions, and, as far as I
know, has done nothing other than review the Complaint and attachments. The Complaint
alleges a claim for Negligent Misrepresentation (Count I) against Pamela Jones, Indy
Edwards and Michael Ingoldsby and claim for Breach of Guaranty (Count II) against
Michael Ingoldsby and Mary lee Ingoldsby.

The claim for Negligent Misrepresentation alleges *inter alia* that "Defendant Jones,
Edwards and [Michael ingoldsby], in the ordinary course of their business and employment,
and in the ordinary course of the business of MHCS and Medical Temporaries, supplied
false information to Heller regarding the borrowing base of the eligible accounts receivable
of MHCS and Medical Temporaries. " *Complaint* ¶55. Heller relied on this alleged "false
information" in making advances to MHCS and Medical Temporaries pursuant to the DIP
Loan Agreement. *Complaint* ¶55.

The DIP Loan Agreement was executed on or about February 28, 2001. *Exhibit A
to the Complaint.* At that time, however, Mr. Ingoldsby was not involved in the day-to-day
operations of MHCS or Medical Temporaries. In fact, Mr. Ingoldsby had not been involved
in the operations of MHCS or Medical Temporaries since 1999 due to a medical condition
which has disabled him. Since 1999, Mr. Ingoldsby has been collecting under a disability
policy and has not been involved in the day-to-day operations of MHCS and Medical
Temporaries. Furthermore, Mr. Ingoldsby was not involved in the compiling or accuracy
of the borrowing base certificates submitted to Heller in connection with the DIP Loan. In
fact, the Complaint alleges in ¶25 that the borrowing base certificates were signed by
Jones and Edwards - not Mr. Ingoldsby - in the ordinary course of business and
employment.

To the extent the Complaint alleges that Mr. Ingoldsby was involved in the
preparation of the borrowing certificate, such allegations are without factual support. Mr.
Ingoldsby was the Chairman of the Board of MHCS and Medical Temporaries. He held no
other titles and had no involvement in the day to day functioning of the companies.

AIG/GE HFS 0795

Ms. Joni Mason
Mr. Nicholas Sciotto
March 17, 2004
Page 4

In this respect, Mr. Ingoldsby is being sued under Count I solely by reason of his status as member of the Board of Directors and not due to any sort of active role in MHCS or Medical Temporaries. Section 1, Coverage A (Directors and Officers Insurance) of Policy, states that the "[P]olicy shall pay the Loss of each and every Director or Officer of the Company arising from any claim of claims first made against the Directors or Officers reported to the Insurer during the Policy Period or the Discovery Period ... for any alleged Wrongful Act in their respective capacities as Directors or Officers of the Company..." Under Section 2(g), a "Wrongful Act" is described as:

> any breach of duty, neglect, error, misstatement, misleading statement, omission or act by the Directors or Officers of the Company in their respective capacities as such, or any matter claimed against them solely by reason of their status as Directors or Officers of the Company.

Count I alleges "negligent misrepresentation". One need not look further than the definition of a "Wrongful Act" under the policy to see that alleged *neglect, misstatement, misleading statement* claimed against the Officers or Directors in their respective capacity are acts covered under the Policy as should be Count I of the Complaint. It is clear that Mr. Ingoldsby is being sued as a member of the Board of Directors. Thus, Mr. Ingoldsby is an insured under the relevant policy and the alleged conduct (*i.e.*, negligent misrepresentation) is not subject to any applicable exclusion such as Exclusion 4(h) (as amended Endorsement No. 8).

As you are aware, complaints are intended to set forth sufficient facts establishing the liability of the defendant to the plaintiff. They are not intended to function as a declarative document on the issue of coverage between an insurance company and the defendant. As further demonstrated below, Massachusetts precedent does not support National Union's position, and in fact, National Union's position is directly contradictory to precedent regarding coverage and a duty to defend.

## CASE LAW REGARDING DUTY TO DEFEND

"[T]he duty to defend depends not on the actual facts of the event giving rise to the liability, but on the full range of possible facts that could fall within the scope of the allegations of the third-party's complaint." *Nashua Corporation v. Liberty Mutual Insurance Co.*, 1997 WL 89163 (Fabricant, J.) "[T]he possibility that the liability falls within the insurance coverage" is enough to trigger the duty to defend. *Sterilite Corp. v. Continental*

AIG/GE HFS 0796

Ms. Joni Mason
Mr. Nicholas Sciotto
March 17, 2004
Page 5

*Casualty Co.*, 17 Mass. App. Ct. 316, 318 (1983).   If the content of the complaint is "reasonably susceptible" to an interpretation warranting coverage, then the insurer must undertake the defense. *Terrio v. McDonough*, 16 Mass.App.Ct. 163, 166 (1983).

Only where "the allegations of the complaint describe with precision" events which "the insurance policy expressly excludes from coverage" is the insurer free to refuse a defense.   *Terrio*, 16 Mass.App.Ct. at 168.   However, even if the complaint does not appear to fall within the policy, the insurer may have a duty to defend if additional facts, known or available to it, indicate that the claim is covered.  *See, e.g.*, *Boston Symphony Orchestra v. Commercial Union Ins. Co.*, 406 Mass. 7, 10-11 (1989) (insurer required to defend under defamation liability policy where complaint on its face alleged only breach of contract, but additional facts known to insurer indicated plaintiff alleged harm to reputation);  *HDH Corporation v. Atlantic Charter Ins. Co.*, 41 Mass.App.Ct. 131, 135 (1996)(worker's compensation insurer obliged to defend based on its knowledge that plaintiff was insured's employee, although complaint did not so allege).  The converse, however, is not the case;  where a complaint on its face is susceptible of a reading that brings the claim within the policy, the insurer cannot rely on facts outside the complaint to justify a unilateral refusal to defend.  *Sterilite Corp. v. Continental Casualty Co.*, 17 Mass.App.Ct. at 323.

National Union's contention that it is not required to provide coverage for the aforementioned allegations is clearly inconsistent with the prevailing case law.  Consistent with Massachusetts precedent, however, is that an insured is entitled to reasonable attorney's fees and expenses incurred in establishing the insurer's duty to defend. *Preferred Mutual Ins. Co. v. Gamache*, 426 Mass. 93, 95-96 (1997).

I ask that National Union please reconsider its two (2) previous denials and provide coverage under the insurance policy as the claims asserted in the subject lawsuit are claims within the scope of National Union's coverage, which National Union is obliged to defend.

AIG/GE HFS 0797

Ms. Joni Mason
Mr. Nicholas Sciotto
March 17, 2004
Page 6


     I look forward to discussing with you the issues of coverage and defense for Michael O. Ingoldsby and Mary Lee Ingoldsby.

     Thank you for your anticipated cooperation in this matter.

Very truly yours,

Gregory J. Aceto

Attachment.
GJA/jfo
cc:    Michael O. Ingoldsby
      E. Joseph O'Neil, Esq., Peabody & Arnold, LLP (via U.S. First Class Mail)
      93A Demand Letter to National Union.wpd

[Mason] Certified Mail Return Receipt Requested No.: 7001 1940 0005 3545 9643
[Sciotto] Certified Mail Return Receipt Requested No.: 7001 1940 0005 3545 9650

AIG/GE HFS 0798



# NATIONAL UNION
# FIRE INSURANCE COMPANY
# OF PITTSBURGH,PA.®



A CAPITAL STOCK COMPANY

POLICY NUMBER:
*873-87-52*

RENEWAL OF:
*473-16-30*

ADMINISTRATIVE OFFICES:
175 WATER STREET, NEW YORK, N.Y.10038

## DIRECTORS AND OFFICERS INSURANCE AND COMPANY REIMBURSEMENT POLICY

**NOTICE:** EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS LIMITED GENERALLY TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS AND REPORTED TO THE INSURER DURING THE POLICY PERIOD. PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE THEREUNDER WITH YOUR INSURANCE AGENT OR BROKER.

**NOTICE:** THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED FOR LEGAL DEFENSE. AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL BE APPLIED AGAINST THE RETENTION AMOUNT.

**NOTICE:** THE INSURER DOES NOT ASSUME ANY DUTY TO DEFEND; HOWEVER, THE INSURER MAY, AND IN CERTAIN CIRCUMSTANCES MUST, ADVANCE DEFENSE COSTS PAYMENTS PRIOR TO THE FINAL DISPOSITION OF A CLAIM.

## DECLARATIONS

ITEM 1. NAMED CORPORATION: *MANAGED HEALTH CARE SYSTEMS*

MAILING ADDRESS: *175 DERBY ST STE 24*
*HINGHAM, MA 02043-3406*

STATE OF INCORPORATION OF THE NAMED CORPORATION:
*Massachusetts*

ITEM 2. SUBSIDIARY COVERAGE: any past, present or future Subsidiary of the Named Corporation

ITEM 3. POLICY PERIOD: From  *August 4, 2001*                    to  *August 4, 2002*
(12:01 A.M. Standard Time at the address stated in Item 1)

ITEM 4. LIMIT OF LIABILITY:        *$3,000,000*  aggregate for Coverages A and B combined (including Defense Costs)

ITEM 5. RETENTION:

Company Reimbursement and indemnifiable Loss:        *$25,000*  for Loss arising from claims alleging the same Wrongful Act or related Wrongful Acts.

ITEM 6. PREMIUM: *$24,995*

*CARPENTER & MOORE INSURANCE SERVICES INC.*
*530 WASHINGTON STREET*
*SAN FRANCISCO, CA 94111*

Authorized Representative

*Sep 27, 2001*

*711 3299*

AIG/GE HFS 00162

Countersignature Date

Countersigned At

47352 (8/88)

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.®

DIRECTORS AND OFFICERS INSURANCE AND COMPANY REIMBURSEMENT POLICY

In consideration of the payment of the premium, and in reliance upon the statements made to the Insurer by application forming a part hereof and its attachments and the material incorporated therein, National Union Fire Insurance Company of Pittsburgh, Pa.® herein called the "Insurer", agrees as follows:

1.  INSURING AGREEMENTS

    COVERAGE A: DIRECTORS AND OFFICERS INSURANCE

    This policy shall pay the Loss of each and every Director or Officer of the Company arising from any claim or claims first made against the Directors or Officers and reported to the Insurer during the Policy Period or the Discovery Period (if applicable) for any alleged Wrongful Act in their respective capacities as Directors or Officers of the Company, except for and to the extent that the Company has indemnified the Directors or Officers. The Insurer shall, in accordance with and subject to Clause 9, advance to each and every Director and Officer the Defense Costs of such claim or claims prior to their final disposition.

    COVERAGE B: COMPANY REIMBURSEMENT INSURANCE

    This policy shall reimburse the Company for Loss arising from any claim or claims which are first made against the Directors or Officers and reported to the Insurer during the Policy Period or the Discovery Period (if applicable) for any alleged Wrongful Act in their respective capacities as Directors or Officers of the Company, but only when and to the extent that the Company has indemnified the Directors or Officers for such Loss pursuant to law, common or statutory, or contract, or the Charter or By-laws of the Company duly effective under such law which determines and defines such rights of indemnity.

2.  DEFINITIONS

    (a)  The "Company" means the Named Corporation designated in Item 1 of the Declarations and any Subsidiary thereof.

    (b)  "Defense Costs" means reasonable and necessary fees, costs and expenses consented to by the Insurer (including premiums for any appeal bond, attachment bond or similar bond, but without any obligation to apply for or furnish any such bond) resulting solely from the investigation, adjustment, defense and appeal of any claim against the Insureds, but excluding salaries of Officers or employees of the Company.

    (c)  "Insured(s)", or "Director(s) or Officer(s)", means any past, present or future duly elected or appointed Directors or Officers of the Company. Coverage will automatically apply to all new Directors or Officers after the inception date of this policy.

    (d)  "Loss" means damages, judgments, settlements and Defense Costs; however, Loss shall not include civil or criminal fines or penalties imposed by law, punitive or exemplary damages, the multiplied portion of multiplied damages, taxes, any amount for which the Insureds are not financially liable or which are without legal recourse to the Insureds, or matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

    (e)  "Policy Period" means the period of time from the inception date shown in Item 3 of the Declarations to the earlier of the expiration date shown in Item 3 of the Declarations or the effective date of cancellation of this policy; however, to the extent that coverage under this policy replaces coverage in other policies terminating at noon standard time on the inception date of such coverage hereunder, then such coverage as is provided by this policy shall not become effective until such other coverage has terminated.

47353 (8/88)                                   -1-

AIG/GE HFS 00163

(f) "Subsidiary" means a corporation of which the Named Corporation owns on or before the inception of the Policy Period more than 50% of the issued and outstanding voting stock either directly or indirectly through one or more of its Subsidiaries.

"Subsidiary" also means any corporation which becomes a Subsidiary during the Policy Period but only upon the condition that within 90 days of its becoming a Subsidiary, the Named Corporation shall have provided the Insurer with full particulars of the new Subsidiary and agreed to any additional premium and/or amendment of the provisions of this policy required by the Insurer relating to such new Subsidiary. Further, coverage as shall be afforded to the new Subsidiary is conditioned upon the Named Corporation paying when due any additional premium required by the Insurer relating to such new Subsidiary. A corporation becomes a Subsidiary when the Named Corporation owns more than 50% of the issued and outstanding voting stock either directly or indirectly through one or more of its Subsidiaries.

(g) "Wrongful Act" means any breach of duty, neglect, error, misstatement, misleading statement, omission or act by the Directors or Officers of the Company in their respective capacities as such, or any matter claimed against them solely by reason of their status as Directors or Officers of the Company.

## 3. EXTENSIONS

Subject otherwise to the terms hereof, this policy shall cover Loss arising from any claims made against the estates, heirs, or legal representatives of deceased Directors or Officers, and the legal representatives of Directors or Officers in the event of their incompetency, insolvency or bankruptcy, who were Directors or Officers at the time the Wrongful Acts upon which such claims are based were committed.

## 4. EXCLUSIONS

The Insurer shall not be liable to make any payment for Loss in connection with any claim or claims made against the Directors or Officers:

(a) arising out of, based upon or attributable to the gaining in fact of any personal profit or advantage to which they were not legally entitled;

(b) arising out of, based upon or attributable to the committing in fact of any criminal or deliberate fraudulent act;

(c) arising out of, based upon or attributable to the payment to the Insureds of any remuneration without the previous approval of the stockholders of the Company, which payment without such previous approval shall be held to have been illegal;

(d) arising out of, based upon or attributable to profits in fact made from the purchase or sale by the Insureds of securities of the Company within the meaning of Section 16(b) of the Securities Exchange Act of 1934 and amendments thereto or similar provisions of any state statutory law;

(The Wrongful Act of any Director or Officer shall not be imputed to any other Director or Officer for the purpose of determining the applicability of the foregoing exclusions 4(a) through 4(d) )

(e) alleging, arising out of, based upon or attributable to any attempt, whether successful or unsuccessful, by any person or entity to acquire securities of the Company against the opposition of the Board of Directors of the Company ("Board"), or any action, whether successful or unsuccessful, by the Company or the Board to resist such attempts; however, this exclusion shall not apply if, before taking any such resistive action, the Company or the Board has obtained a written opinion (1) from independent legal counsel that such resistive action is a lawful exercise of the Board's business judgment and (2)

47353 (8/88)

AIG/GE HFS 00164

from an independent investment banking firm that the price of such acquisition of securities is inadequate, and that any financial transaction approved by the Board which is resistive of such acquisition is fair to the Company and its shareholders;

(f) alleging, arising out of, based upon or attributable to any failure or omission on the part of the Insureds or the Company to effect and maintain insurance;

(g) alleging, arising out of, based upon or attributable to the facts alleged, or to the same or related Wrongful Acts alleged or contained, in any claim which has been reported, or in any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time;

(h) alleging, arising out of, based upon or attributable to any pending or prior litigation as of the inception date of this policy, or alleging or derived from the same or essentially the same facts as alleged in such pending or prior litigation;

(i) which are brought by any Insured or the Company; or which are brought by any security holder of the Company, whether directly or derivatively, unless such claim(s) is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any Insured or the Company; provided, however, this exclusion shall not apply to wrongful termination of employment claims brought by a former employee other than a former employee who is or was a Director of the Company;

(j) alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly:

   (1) the actual, alleged or threatened discharge, dispersal, release or escape of pollutants, or

   (2) any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants,

   including but not limited to claims alleging damage to the Company or its shareholders.

   Pollutants includes (but is not limited to) any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes (but is not limited to) materials to be recycled, reconditioned or reclaimed;

(k) alleging, arising out of, based upon or attributable to any act or omission in their capacities as directors or officers of any other entity other than the Company, or by reason of their status as a director or officer of such other entity;

(l) for violation(s) of any of the responsibilities, obligations or duties imposed upon fiduciaries by the Employee Retirement Income Security Act of 1974 or amendments thereto or any similar provisions of state statutory law or common law;

(m) for bodily injury, sickness, disease, death or emotional distress of any person, or damage to or destruction of any tangible property, including the loss of use thereof, or for injury from oral or written publication of a libel or slander or of other defamatory or disparaging material or of material that violates a person's right of privacy;

(n) of any Subsidiary for any alleged Wrongful Act occurring at any time when the Named Corporation did not own more than 50% of the issued and outstanding voting stock of such Subsidiary either directly or indirectly through one or more of its Subsidiaries.

5.   LIMIT OF LIABILITY-(FOR ALL LOSS-INCLUDING DEFENSE COSTS)

The limit of liability stated in Item 4 of the Declarations is the limit of the Insurer's liability for all Loss, under Coverage A and Coverage B combined, arising out of all claims first made against the Insureds and reported to the Insurer during the Policy Period and the Discovery Period (if applicable); however, the limit of liability for the Discovery Period shall be part of, and not in addition to, the limit of liability for the Policy Period. Further, any claim which is made subsequent to the Policy Period or Discovery Period (if applicable) which pursuant to Clause 8(b) or 8(c) is considered made during the Policy Period or Discovery Period shall also be subject to the one aggregate limit of liability stated in Item 4 of the Declarations.

Defense Costs are not payable by the Insurer in addition to the limit of liability. Defense costs are part of Loss and as such are subject to the limit of liability for Loss.

6.   RETENTION-INDEMNIFIED OR INDEMNIFIABLE LOSS

The Insurer shall only be liable for the amount of Loss arising from a claim which is in excess of the retention amount stated in Item 5 of the Declarations, such retention amount to be borne by the Company and/or the Insureds and shall remain uninsured, with regards to all Loss under Coverage A or B for which the Company has indemnified or is permitted or required to indemnify the Insured(s). A single retention amount shall apply to Loss arising from all claims alleging the same Wrongful Act or related Wrongful Acts.

7.   COINSURANCE CLAUSE

The Insurer shall be liable to pay 95% of Loss excess of the retention amount described in Clause 6 up to the Limit of Liability described in Clause 5, it being a condition of this insurance that the remaining 5% of each and every Loss shall be carried by the Company and the Insureds at their own risk and be uninsured.

8.   NOTICE/CLAIM REPORTING PROVISIONS

Notice hereunder shall be given in writing to National Union Fire Insurance Company of Pittsburg, Pa.® Financial Services Claims Department, 175 Water Street, New York, N.Y. 10038. If mailed, the date of mailing of such notice shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.

(a)   The Company or the Insureds shall, as a condition precedent to the obligations of the Insurer under this policy, give written notice to the Insurer as soon as practicable during the Policy Period, or during the Discovery Period (if applicable), of any claim made against the Insureds.

(b)   If during the Policy Period or during the Discovery Period (if applicable) written notice of a claim has been given to the Insurer pursuant to Clause 8(a) above, then any claim which is subsequently made against the Insureds and reported to the Insurer alleging, arising out of, based upon or attributable to the facts alleged in the claim of which such notice has been given, or alleging any Wrongful Act which is the same as or related to any Wrongful Act alleged in the claim of which such notice has been given, shall be considered made at the time such notice was given.

(c)   If during the Policy Period or during the Discovery Period (if applicable) the Company or the Insureds shall become aware of any circumstances which may reasonably be expected to give rise to a claim being made against the Insureds and shall give written notice to the Insurer of the circumstances and the reasons for anticipating such a claim, with full particulars as to dates and persons involved, then any claim which is subsequently made against the Insureds and reported to the Insurer alleging, arising out of, based upon or attributable to such circumstances or alleging any Wrongful Act which is the same as or

47353 (8/88)

AIG/GE HFS 00166

related to any Wrongful Act alleged or contained in such circumstances, shall be considered made at the time such notice of such circumstances was given.

9.  DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (INCLUDING THE ADVANCEMENT OF DEFENSE COSTS)

Under Coverage A, except as hereinafter stated, the Insurer shall advance Defense Costs prior to the final disposition of the claim, unless such Defense Costs have been advanced by the Company. Such advance payments by the Insurer shall be repaid to the Insurer by the Insureds, severally according to their respective interests, in the event and to the extent that the Insureds shall not be entitled under the terms and conditions of this policy to payment of such Loss. Notwithstanding the foregoing, if the Company is required or permitted to advance such Defense Costs in accordance with the fullest application of law, common or statutory, or contract, or the Charter or By-laws of the Company, then the Insurer assumes no duty to advance Defense Costs prior to the final disposition of the claim and the retention amount as stated in item 5 of the Declarations shall apply to such Loss. In such case, however, the Insurer may, in its absolute discretion, advance all or any part of such Defense Costs prior to the final disposition of the claim and in such event the advance payments by the Insurer shall be repaid to the Insurer by the Company or the Insureds, severally according to their respective interests, in the event and to the extent that the Company or the Insureds shall not be entitled under the terms and conditions of this policy to payment of such Loss.

Under Coverage B, the Insurer assumes no duty to reimburse Defense Costs prior to the final disposition of the claim. The Insurer may, in its absolute discretion, reimburse all or any part of such Defense Costs prior to the final disposition of the claim. In such event, however, such advance payments by the Insurer shall be repaid to the Insurer by the Company or the Insureds, severally according to their respective interests, in the event and to the extent that the Company or the Insureds shall not be entitled under the terms and conditions of this policy to payment of such Loss.

The Insurer does not, however, under this policy, assume any duty to defend. The Insureds shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment or incur any Defense Costs without the prior written consent of the Insurer. Only those settlements, stipulated judgments and Defense Costs which have been consented to by the Insurer shall be recoverable as Loss under the terms of this policy. The Insurer's consent shall not be unreasonably withheld, provided that the Insurer shall be entitled to effectively associate in the defense and the negotiation of any settlement of any claim in order to reach a decision as to reasonableness.

The Insurer shall have the right to effectively associate with the Company and the Insureds in the defense and settlement of any claim that appears reasonably likely to involve the Insurer, including but not limited to effectively associating in the negotiation of a settlement. The Insureds shall defend and contest any such claim. The Company and the Insureds shall give the Insurer full cooperation and such information as it may reasonably require.

With respect to the Defense Costs and any joint settlement of any claim made against the Company and the Insureds, such Defense Costs and joint settlement having been consented to by the Insurer, the Company and the Insureds and the Insurer agree to use their best efforts to determine a fair and proper allocation of the amounts as between the Company and the Insureds and the Insurer.

10.  DISCOVERY CLAUSE

If the Insurer shall cancel or refuse to renew this policy the Named Corporation shall have the right, upon payment of an additional premium of 75% of the full annual premium, to a period of one year following the effective date of such cancellation or nonrenewal (herein referred to as the Discovery Period) in which to give written notice to the Insurer of claims first made against the Insureds during said one year period for any Wrongful Act occurring prior to the end of the

47353 (8/88)

AIG/GE HFS 00167

Policy Period and otherwise covered by this policy. As used herein, "full annual premium" means the premium level in effect immediately prior to the end of the Policy Period.

The rights contained in this clause shall terminate, however, unless written notice of such election together with the additional premium due is received by the Insurer within ten (10) days of the effective date of cancellation or non-renewal. The additional premium for the Discovery Period shall be fully earned at the inception of the Discovery Period. The Discovery Period is not cancellable. This clause and the rights contained herein shall not apply to any cancellation resulting from non-payment of premium.

The offer by the Insurer of renewal terms, conditions, limits of liability and/or premiums different from those of the expiring policy shall not constitute refusal to renew.

## 11. CANCELLATION CLAUSE

This policy may be cancelled by the Named Corporation at any time only by mailing written prior notice to the Insurer or by surrender of this policy to the Insurer or its authorized agent. This policy may also be cancelled by or on behalf of the Insurer by delivering to the Named Corporation or by mailing to the Named Corporation, by registered, certified, or other first class mail, at the Named Corporation's address as shown in Item 1 of the Declarations, written notice stating when, not less than thirty (30) days thereafter, the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. The Policy Period terminates at the date and hour specified in such notice, or at the date and time of surrender.

If this policy shall be cancelled by the Named Corporation, the Insurer shall retain the customary short rate proportion of the premium hereon.

If this policy shall be cancelled by the Insurer, the Insurer shall retain the pro rata proportion of the premium hereon.

Payment or tender of any unearned premium by the Insurer shall not be a condition precedent to the effectiveness of cancellation but such payment shall be made as soon as practicable.

If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

## 12. TERMINATION OF COVERAGE FOR SUBSEQUENT WRONGFUL ACTS AFTER CERTAIN TRANSACTIONS

If during the Policy Period:

1.  the Named Corporation shall consolidate with or merge into, or sell all or substantially all of its assets to, any other person or entity or group or persons and/or entities acting in concert; or

2.  any person or entity or group of persons and/or entities acting in concert shall acquire an amount of the outstanding securities representing more than 50% of the voting power for the election of Directors of the Named Corporation, or acquires the voting rights of such an amount of such securities;

    (either of the above events herein referred to as the "Transaction")

then, there shall be no coverage afforded by any provision of this policy (including but not limited to Clause 10 Discovery Clause) for any alleged Wrongful Act occurring after the effective date of Transaction.

The Named Corporation shall give the Insurer written notice of the Transaction as soon as practicable, but not later than 30 days after the effective date of the Transaction.

47353 (8/88)

AIG/GE HFS 00168

13. SUBROGATION

In the event of any payment under this policy, the Insurer shall be subrogated to the extent of such payment to all the Company's and the Insureds' rights of recovery therefor, and the Company and the Insureds shall execute all papers required and shall do everything that may be necessary to secure such rights including the execution of such documents necessary to enable the Insurer effectively to bring suit in the name of the Company and/or the Insureds.

14. OTHER INSURANCE

Such insurance as is provided by this policy shall apply only as excess over any other valid and collectible insurance.

15. NOTICE AND AUTHORITY

It is agreed that the Named Corporation shall act on behalf of its Subsidiaries and all Insureds with respect to the giving and receiving of notice of claim or cancellation, the payment of premiums and the receiving of any return premiums that may become due under this policy, the receipt and acceptance of any endorsements issued to form a part of this policy and the exercising or declining to exercise any right to a Discovery Period.

16. ASSIGNMENT

This policy and any and all rights hereunder are not assignable without the written consent of the Insurer.

17. ACTION AGAINST INSURER

No action shall lie against the Insurer unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the Insureds' obligation to pay shall have been finally determined either by judgment against the Insureds after actual trial or by written agreement of the Insureds, the claimant and the Insurer.

Any person or Organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or Organization shall have any right under this policy to join the Insurer as a party to any action against the Insureds or the Company to determine the Insureds' liability, nor shall the Insurer be impleaded by the Insureds or the Company or their legal representatives. Bankruptcy or insolvency of the Company or the Insureds or of their estates shall not relieve the Insurer of any of its obligations hereunder.

IN WITNESS WHEREOF,    the Insurer has caused this policy to be signed by its President and a Secretary and countersigned on the Declarations Page by a duly authorized representative of the Insurer.

*Elizabeth M. Tuck*

SECRETARY

*John Fogg*

PRESIDENT

47353 (8/88)

AIG/GE HFS 00169

APPENDIX A

ːCURITIES CLAiMS PANEL COUNSE    .IST

## Alaska

Davis Wright Tremaine
550 W. Seventh Avenue, Suite 1450
Anchorage, AK  99501
Contact:
David W. Oesting          (907) 257-5300

Foster Pepper & Shefelman
601 West Fifth Avenue #500
Anchorage, AK  99501-2226
Contact:
Peter S. Erlichman
Stellman Keehnel
Tim Filer                 (206) 447-8998

## California

Brobeck, Phleger & Harrison LLP
Spear Street Tower
One Market
San Francisco, CA 94105
Contact:
Kevin P. Muck
Michael D. Torpey
Sara B. Brody
Tower C. Snow Jr.          (415) 442-0900

Brobeck, Phleger & Harrison LLP
550 South Hope Street
Los Angeles, CA 90071
Contact:
Daniel J. Tyukody
Howard M. Privette          (213) 489-4060

Brobeck, Phleger & Harrison LLP
550 West C Street, Ste. 1300
San Diego, CA 92101
Contact:
Christopher H. McGrath
William F. Sullivan          (619) 234-1966

Brobeck, Phleger & Harrison LLP
Two Embarcadero Place
2200 Geng Road
Palo Alto, CA 94303
Contact: David M. Furbush
Meredith N. Landy          (650) 424-0160

Cooley Godward, LLP
4365 Executive Drive, Suite 1100
San Diego, CA 92121
Contact:
William E. Grauer          (858) 550-6050

Cooley Godward, LLP
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306
Contact:
Stephen C. Neal          (650) 843-5182
William S. Freeman          (650) 843-5037

Cooley Godward, LLP
One Maritime Plaza, 20th Floor
San Francisco, CA 94111
Contact:
Paul A. Renne          (415) 693-2073
Gordon C. Atkinson          (415) 693-2088

Davis Wright Tremaine
Suite 600
One Embarcadero Center
San Francisco, CA 94111-3834
Contact:
Martin Fineman          (415) 276-6500

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Contact:
Philip Bosl          (213) 229-7543

Gibson, Dunn & Crutcher LLP
Jamboree Center
4 Park Plaza
Irvine, CA 92614-8557
Contact:
Wayne W. Smith          (714) 451-4108

Gibson, Dunn & Crutcher LLP
525 University Ave., Ste. 220
Palo Alto, CA 94301
Contact:
John C. Dickey          (415) 463-7324

Heller, Ellman, White & McAuliffe
333 Bush Street
San Francisco, CA 94104
Contact:
Douglas M. Schwab
M. Laurence Popofsky
Michael J. Shepard          (415) 772-6000

Heller, Ellman, White & McAuliffe
525 University Avenue
Palo Alto, CA 94301
Contact:
Michael L. Charlson
Norman J. Blears          (650) 324-7000

(Revised (6/00)

1

AIG/GE HFS 00170

APPENDIX A

SECURITIES CLAIMS PANEL COUNSEL LIST

Heller, Ellman, White & McAuliffe
4250 Executive Square
7th Floor
San Diego, CA 92037-9103
Contact:
David E. Kleinfeld          (858) 450-8400

Heller, Ellman, White & McAuliffe
601 South Figueroa Street, 40th Fl.
Los Angeles, CA 90017-5758
Contact:
Jerry L. Marks
Darryl L. Snider          (213) 689-0200

Irell & Manella
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067
Contact:
Richard Borow
David Schwartz
David Gindler
David Siegel
James F. Elliot
Jim Adler          (310) 277-1010

Latham & Watkins
633 West Fifth Street
Suite 4000
Los Angeles CA, 90071-2007
Contact:
Hugh Steven Wilson          (213) 485-1234

Latham & Watkins
75 Willow Road
Menlo Park, CA 94025
Contact:
Paul H. Dawes          (650) 328-4600

McCutchen Doyle, Brown & Enerson LLP
355 South Grand Avenue
Suite 4400
Los Angeles, CA 90071-1560
Contact:
John C. Morrissey          (213) 680-6416

McCutchen, Doyle, Brown & Enerson LLP
Three Embarcadero Center
San Francisco, CA 94111
Contact:
David M. Balabanian          (415) 393-2170
Karen L. Kennard          (415) 393-2626

McCutchen, Doyle, Brown & Enerson,  LLP
3150 Porter Drive
Palo Alto, CA 94303-1212
Contact:
Mary Huser          (650) 849-4914

Morrison & Foerster
425 Market Street
San Francisco, CA  94104-2482
Contact:
Paul T. Friedman
Melvin R. Goldman          (415) 268-7000

Morrison & Foerster LLP
555 West 5th Street – Suite 3500
Los Angles, CA 90013-1024
Contact:
Robert S. Stern
B. Scott Silverman          (213) 892-5200

Morrison & Foerster, LLP
19900 MacArthur Boulevard, 12th Floor
Irvine, CA 90017
Contact:
Josephine Staton Tucker          (714) 251-7500

Munger, Tolles & Olson
355 South Grand Avenue-35th Floor
Los Angeles, CA 90071-1560
Contact:
Dennis L. Kinnaird          (213) 683-9264
John W. Spiegel          (213) 683-9152
George M. Garvey          (213) 683-9153

O'Melveny & Myers LLP
400 South Hope Street, 15th Floor
Los Angeles, CA 90071-2899
Contact:
Robert Vanderet
Seth Aronson          (213) 430-6000

O'Melveny & Myers LLP
610 Newport Center
Newport Beach, CA 92660
Contact:
Phillip Kaplan
Brett J. Williamson
Michael G. Yoder          (714) 760-9600

O'Melveny & Myers LLP
275 Battery Street
San Francisco, CA 94111
Contact:
Richard Warmer
Daniel Bookin          (415) 984-8700

AIG/GE HFS 00171

APPENDIX A
SECURITIES CLAIMS PANEL COUNSEL LIST

Orrick Herrington & Sutcliffe LLP
Old Federal Reserve Bank Building
400 Sansome Street
San Francisco, CA 94111
Contact:
William Alderman          (415) 773-5944
John H. Kanberg           (415) 773-5469

Orrick Herrington & Sutcliffe LLP
1020 Marsh Road
Menlo Park, CA 94025
Contact:
W. Reece Bader            (650) 614-7440

Paul, Hastings, Janofsky & Walker LLP
555 S. Flower Street
Twenty-Third Floor
Los Angeles, CA 90071-2371
Contact:
J. Allen Maines           (213) 683-6000

Pillsbury Madison & Sutro LLP
650 Town Center Drive, 7th Floor
Costa Mesa, CA 92626-7122
Contact:
Steven O. Kramer
Walter Robinson           (714) 436-6800

Pillsbury Madison & Sutro LLP
101 W. Broadway, Suite 1800
San Diego, CA 92101-8219
Contact:
David E. Kleinfeld        (619) 234-5000

Pillsbury Madison & Sutro LLP
235 Montgomery Street
San Francisco, CA 94104
Contact:
Bruce A. Ericson
William O. Fisher         (415) 983-1000

Sherman & Sterling
555 California Street
San Francisco, CA 94104
Contact:
Susan Samuels Muck        (415) 616-1100
Dean Krystowski
Jeffrey S. Facter

Simpson Thacher & Bartlett
3373 Hillview Avenue
Palo Alto, CA 94304
Contact:
James G. Kreissman
Charles E. Koob
George M. Newcombe        (650) 251-5000

Simpson Thacher & Bartlett
10 Universal City Plaza
Suite 852
Universal City, CA 91608
Contact:
Barry R. Ostrager
Seth A. Ribner            (818) 755-7000

Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Avenue
Los Angeles, CA 90071
Contact:
Frank Rothman
Eric S. Waxman            (213) 687-5000

Skadden, Arps, Slate, Meagher & Flom LLP
525 University Avenue, Suite 220
Palo Alto, CA 94111
Contact:
James E. Lyons            (650) 470-4500

Skadden, Arps, Slate, Meagher & Flom LLP
Four Embarcadero Center
San Francisco, CA 94301
Contact:
James E. Lyons            (415) 984-2698

Sullivan & Cromwell
1888 Century Park East,
Los Angeles, CA 90067-1725
Contact:
Robert A. Sacks           (310) 712-6600

Wilson, Sonsini, Goodrich & Rosati
650 Page Mill Road
Palo, Alto, CA 94304-1050
Contact:
Bruce G. Vanyo
Steven M. Schatz
Boris Feldman
Daniel Mitz
David Priebe
David S. Steuer
Eileen Marshall
Martin W. Korman
Sarah Good                (650) 493-9300

AIG/GE HFS 00172

APPENDIX A
CURITIES CLAIMS PANEL COUNSE'  'ST

## Delaware

Blank Rome Comisky & McCauley LLP
1220 Market Street, 8th Floor
Wilmington, DE  19801
Contact:
Cathy L. Reese
          (302) 425-6400

Wolf, Block, Schorr and Solis-Cohen LLP
One Rodney Square
10th & King Streets
Wilmington, DE  19801
Contact:
David J. Margules
          (302) 777-5860

## District of Columbia

Arnold & Porter
555 Twelfth Street, NW
Washington, D.C. 20004-1202
Contact:
Scott Schreiber
          (202) 942-5672

Brobeck, Phleger & Harrison LLP
Market Square East, Suite 220
701 Pennsylvania Avenue, NW
Washington, DC  20004
Contact:
John B. Missing
          (202) 220-6000

Cahill Gordon & Reindel
1990 K Street, NW, Suite 950
Washington, DC 20006
Contact:
Donald J. Mulvihill
          (202) 862-8900

Davis, Polk & Wardwell
1300 I Street, N.W.
Washington, DC 20005
Contact:
Scott W. Muller
          (202) 962-7000

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Contact:
F. Joseph Warin
          (202) 887-3609

Greenberg Traurig
800 Connecticut Avenue, NW, Suite 500
Washington, D.C. 20036
Contact:
Joe Reeder
C. Allen Foster
          (202) 331-3100
Eric C. Rowe

Patton Boggs, L.L.P.
2550 M Street N.W.
Washington, D.C. 20037
Contact:
Lanny Davis
Eric A. Kuwana
          (202) 457-6000
Ronald S. Liebman

Sherman & Sterling
801 Pennsylvania Avenue, N.W.
Contact: Washington, DC 20004-2604
Contact:
Thomas S. Martin
          (202) 508-8000
Jonathan L. Greenblatt

Sullivan & Cromwell
1701 Pennsylvania Avenue, N.W.
Washington, DC 20006-5805
Contact:
Margaret K. Pfeiffer
Daryl A. Libow
          (202) 956-7500

Willkie Farr & Gallagher
Three Lafayette Centre
1155 21st Street N.W.
Washington, D.C. 20036-3384
Contact:
Kevin B. Clark
          (202) 328-8000

## Florida

Akerman Senterfitt & Eidson, P.A.
Sun Trust International Center
28th Floor
Miami, FL 33131
Contact:
Stanley H. Wakshlag
          (305) 374-5600

Fowler White, Gillen, Boggs, Villareal
and Banker, P.A.
501 East Kennedy Boulevard
Suite 1700
Tampa, Fl 33602
Contact:
Burton W. Wiand
W. Donald Cox
          (813) 228-7411

Greenberg Traurig
1221 Brickell Avenue
Miami, FL 33131
Contact:
Hillarie Bass
          (305) 579-0500

(Revised (6/00)

AIG/GE HFS 00173

APPENDIX A
ECURITIES CLAIMS PANEL COUNSL  LIST

Greenberg Traurig
777 South Flagler Drive
West Palm Beach, FL 33401
Contact:
Mark F. Bideau                     (561) 650-7900

Greenberg Traurig
111 North Orange Avenue
Orlando, FL 32801
Contact:
Tucker H. Byrd                     (407) 420-1000

Greenberg Traurig
101 East College Avenue
Post Office Drawer 1838
Tallahassee, FL 32302
Contact:
Barry Richard                      (850) 222-6891

Holland & Knight
400 North Ashley Drive, Suite 2300
Tampa, FL 33602
Contact:
Frederick S. Schrils
G. Calvin Hayes
Francis Curran                     (813) 227-8500

Holland & Knight
50 North Laura Street, Suite 3900
P.O. Box 52687 (Zip 32201)
Jacksonville, Fl 32202
Contact:
George E. Schultz, Jr.
Michael G. Tanner
Fred Lotterhos                     (904) 353-2000

Holland & Knight
701 Brickell Avenue, Suite 3000
P.O. Box 015441 (Zip 33101)
Miami, FL 33131
Contact:
Greg Baldwin
Tracy A. Nichols                   (305) 374-8500

Holland & Knight
315 South Calhoun Street, Suite 600
P.O. Drawer 810 (Zip 32302)
Tallahassee, FL 32301
Contact:
Robert R. Feagin III
Elizabeth Bevington                (850) 224-7000

Holland & Knight
625 North Flagler Drive
P.O. Box 3208 (33402)
West Palm Beach, FL 33401
Contact:
D. Culver Smith, III (Skip)        (513) 833-2000

Holland & Knight
200 South Orange Avenue
SunTrust Building, Suite 2600
P.O. Box 1525 (Zip 32802)
Orlando, FL 32801
Contact:
William Wilson                     (407) 425-8500

McGuire Woods Battle & Boothe
3300 Barnett Center
50 North Laura Street
Jacksonville, FL 32202-3635
Contact:
David M. Wells                     (904) 798-2693

Steel, Hector & Davis LLP
200 South Biscayne Boulevard
Miami, FL 33131-2398
Contact:
Lewis F. Murphy, P.A.              (305) 577-2957
Wendy Leavitt

Stroock & Stroock & Lavan LLP
200 South Biscayne Boulevard
Miami, FL 33131-2385
Contact:
Richard B. Simring
Robert W. Turken                   (305) 358-9900

Zuckerman Spaeder Taylor & Evans LLP
900 Miami Center
201 South Biscayne Boulevard
Miami, Florida 33131
Contact:
Ronald B. Ravikoff
Thomas J. Meeks
Guy A. Rasco                       (305) 358-5000

### Georgia

Alston & Bird
One Atlantic Center
1201 W. Peachtree Street
Atlanta, GA 30309-3424
Contact:
Peter Q. Bassett                   (404) 881-7343
Mary C. Gill                       (404) 881-7000
John Goselin                       (404) 881-7000
Rodd R. David                      (404) 881-7000

(Revised (6/00)

AIG/GE HFS 00174

APPENDIX A
ECURITIES CLAIMS PANEL COUNSE    .IST

King & Spalding
191 Peachtree Street
Atlanta, GA 30303-1763
Contact:
M. Robert Thornton
Michael R. Smith          (404) 572-4600

Paul Hastings Janofsky & Walker, LLP
600 Peachtree Street, N.W., Suite 2400
Atlanta, GA 30308-2222
Contact:
J. Allen Maines          (404) 815-2500

Smith Gambrell & Russell LLP
3343 Peachtree Road, N.E.
Suite 3100 – Promenade II
Atlanta, GA 30309-3592
Contact:
David A. Handley          (404) 815-3671
John G. Despreit          (404) 815-3730

## Illinois

Freeborn & Peters
311 South Wacker Drive
Suite 3000
Chicago, IL 60606-6677
Contact:
David H. Kistenbroker     (312) 360-6000
Michael L. O'Shaughnessy

Jenner & Block
One IBM Plaza
Chicago, IL 60611
Contact:
Jerold Solovy            (312) 222-9350
Ronald Marmer            (312) 923-2686
J. Kevin McCall          (312) 923-2686

Kirkland & Ellis
2000 East Randolph Drive
Chicago, IL 60601
Contact:
Garrett B. Johnson
Robert J. Kopecky        (312) 861-2000

Sidley & Austin
One First National Plaza
Chicago, IL 60603
Contact:
Walter C. Carlson        (312) 853-7734
Hillie Sheppard          (312) 853-7850
Eugene A. Schoon         (312) 853-7279

Skadden, Arps, Slate, Meagher & Flom LLP
333 West Wacker Drive
Chicago, IL 60606
Contact:
Susan Getzendanner
Timothy A. Nelsen        (312) 407-0700

Sonnenschein Nath & Rosenthal
8000 Sears Tower
Chicago, IL 60606
Contact:
Christopher Q. King      (312) 876-8224
David L. Schiavone       (312) 876-7483

## Louisiana

Locke Liddell & Sapp LLP
601 Poydras Street, Suite 2400
New Orleans, LA 70130-6036
Contact:
Brad Foster
John McElhaney
Morris Harrell
Peter Flynn              (504) 558-5100

## Massachusetts

Hale & Dorr
60 State Street
Boston, MA 02109
Contact:
Jeffrey B. Rudman
John F. Batter
James W. Prendegast      (617) 526-6000

Hutchins Wheeler & Ditmar P.C.
101 Federal Street
Boston, MA 02110
Contact:
David S. Rosenthal
John Hughes              (617) 951-6624

Mintz, Levin, Cohn, Feris, Glovsky &
Popeo P.C.
One Financial Center
Boston, MA 02111
Contact:
Peter M. Saparoff        (617) 542-6000
Patrick J. Sharkey

Ropes & Gray
One International Plaza
Boston, MA 02110-2624
Contact:
John D. Donovan, Jr.     (617) 951-7566

AIG/GE HFS 00175

APPENDIX A
SECURITIES CLAIMS PANEL COUNS   LIST

Skadden, Arps, Slate, Meager & Flom LLP
One Beacon Street
Boston, MA 02108
Contact:
Thomas J. Dougherty
George J. Skelly          (617) 573-4800

Testa, Hurwitz & Thibeault
High Street Tower
125 High Street
Boston, MA 02110
Contact:
Brian E. Pastuszenski     (617) 248-7253
Jordan D. Hershman        (617) 248-7363

## Minnesota

Dorsey & Whitney LLP
Pillsbury Center South
220 South Sixth Street
Minneapolis, MN 55402
Contact:
Brian E. Palmer
Edward J. Pluimer
J. Jackson
Peter S. Hendrixson
Peter W. Carter
Roger J. Magnuson         (612) 340-2600

Faegre & Benson LLP
90 South Seventh Street
Minneapolis, MN 55402-3901
Contact:
Robert L. Schnell
Thomas L. Kimer           (612) 336-3000

Oppenheimer Wolff & Donnelly LLP
Plaza VII Building, Suite 3400
45 South Seventh Street
Minneapolis, MN 55402
Contact:
Craig W. Gagnon
Michael J. Bleck
Michael E. Keyes          (612) 607-7300

Winthrop & Weinstine, PA
3000 Dain Rauscher Plaza
60 South Sixth Street
Minneapolis, MN 55402
Contact:
David P. Pearson
Steven C. Tourek
Thomas H. Boyd            (612) 347-0700

## New York

Arnold & Porter
399 Park Avenue
New York, NY 10022-4690
Contact:
Scott Schreiber
Kent A. Yalowitz          (212) 715-1000

Brobeck, Phleger & Harrison LLP
1633 Broadway, 47th Floor
New York, NY 10019
Contact:
Francis S. Chlapowski
Gregory A. Markel         (212) 581-1600

Cadwalader, Wickersham & Taft
100 Maiden Lane
New York, NY 10038
Contact:
Dennis J. Block
Howard R. Hawkins
Jeffrey Q. Smith
Jonathan M. Hoff          (212) 504-6000

Cahill Gordon & Reindel
80 Pine Street
New York, NY 10005
Contact:
Charles A. Gilman
Immanuel Kohn
Thomas J. Kavaler         (212) 701-3000

Cravath, Swaine & Moore
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475
Contact:
Evan R. Chesler
Francis P. Barron
Julie A. North
Keith R. Hummel
Paul C. Saunders
Peter T. Barbur
Richard W. Clary
Robert H. Baron
Ronald S. Rolfe
Rory O. Millson
Thomas G. Rafferty        (212) 474-1000

AIG/GE HFS 00176

APPENDIX A
SECURITIES CLAIMS PANEL COUNS    LIST

Davis Polk & Wardwell
450 Lexington Avenue
New York, NY 10017
Contact:
Daniel F. Kolb
Frank S. Moseley
Gary G. Lynch
James W.G. Benkard
Robert F. Wise
Robert B. Fiske          (212) 450-4000

Fried, Frank, Harris, Shiver & Jacobson
One New York Plaza
New York, NY 10004
Contact:
Sheldon Raab
Gregory P. Joseph
John A. Borek             (212) 859-8000

Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY  10166-0193
Contact:
A. Bendell
B.  David Grais
C. Wesley G. Howell       (212) 351-4000

Greenberg Traurig
MetLife Building
200 Park Avenue
New York City, NY 10166
Contact:
Marshall H. Fishman
Alan Mansfield            (212) 801-9200

Kaye, Scholer, Fiernan, Hays & Handler
425 Park Avenue
New York, NY 10022
Contact:
Frederic W. Yerman        (212) 836-8663

Kirkland & Ellis
Citicorp Center
153 East 53rd Street
New York, NY 10022-4675
Contact:
Yosef J. Riemer
Frank M. Holozubiec       (212) 446-4800

Kramer Levin Naftalis & Frankel LLP
919 Third Avenue
New York, NY 10022
Contact:
Gary Naftalis             (212) 715-9100

Latham & Watkins
885 Third Avenue, Suite 1000
New York, NY  10022-4802
Contact:
Hon. Kenneth Conboy
John J. Kirby             (212) 906-1200

Mayer, Brown & Platt
1675 Broadway
New York, NY  10019
Contact:
Dennis P. Orr
Richard A. Spehr
Steven Wolowitz           (212) 506-2500

Milbank, Tweed Hadley & McCloy
One Chase Manhattan Plaza
New York, NY 10005
Contact:
Russell Brooks            (212) 530-5554

Morrison & Foerster LLP
1290 Avenue of the Americas
New York, NY  10104
Contact:
Anthony M. Radice
Jack C. Auspitz           (212) 468-8000

Paul Hastings, Jaofsky & Walker LLP
399 Park Avenue, 31st Floor
New York, NY  10022-4697
Contact:
J. Allen Maines           (212) 318-6000

Paul Weiss Rifkind Wharton & Garrison
1285 Avenue of the Americas
New York, NY 10019-6064
Martin Flumenbaum
Claudia Hammerman
Daniel J. Beller
Max Gitter
Richard A. Rosen          (212) 373-3000

Roger & Wells LLP
200 Park Avenue
New York, NY 10166
Contact:
James N. Benedict
James B. Weidner          (212) 878-8000
John K. Carroll
Mark Holland
Mark Pomerantz

(Revised (6/00)

AIG/GE HFS 00177

APPENDIX A

SECURITIES CLAIMS PANEL COUNSEL LIST

Schulte Roth & Zabel LLP
900 Third Avenue
New York, NY 10022
Contact:
Daniel J. Kramer
David M. Brodsky
Irwin J. Sugarman
Robert M. Abrahams          (212) 756-2000

Shearman & Sterling
599 Lexington Avenue
New York, NY 10017
Contact:
Jeremy G. Epstein
R. Paul Wickes              (212) 848-8000

Simpson Thacher & Bartlett
425 Lexington Avenue
New York, NY 10017
Contact:
Michael J. Chepiga
Bruce D. Angiolillo
Roy L. Reardon
George M. Newcombe
Paul C. Curnin
Peter Kazanoff             (212) 455-2000

Skadden, Arps, Slate, Meagher & Folm LLP
919 Third Avenue
New York, NY 10022
Contact:
Barry H. Garfinkel
Jonathan J. Lerner
Lea Haber Kuck             (212) 735-3000

Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, NY 10038
Contact:
Melvin A. Brosterman
Lawrence Greenwald
Robert Lewin               (212) 806-5400

Sullivan & Cromwell
125 Broad Street
New York, NY 10004-2498
Contact:
D. Stuart Meiklejohn
Gandolfo V. DiBlasi
John L. Warden
John L. Hardiman
Philip L. Graham, Jr.
Richard H. Klapper         (212) 558-4000

Weil, Gotshal & Manges
767 Fifth Avenue
New York, NY 10153
Contact:
Irwin H. Warren
Greg A. Danilow
Joseph Allerhand           (212) 310-8000

Wilkie, Farr & Gallagher
787 Seventh Avenue
New York, NY 10019-6099
Contact:
David L. Foster
Richard L. Posen
Michael R. Young           (212) 728-8000

Ohio

Jones Day, Reavis & Pogue
North Point
901 Lakeside Avenue
Cleveland, OH 44114
Contact:
John M. Newman
John W. Edwards            (216) 586-3939

Oregon

Davis Wright Tremaine
2300 First Interstate Tower
1300 S.W. Fifth Avenue
Portland, OR 97201
Contact:
John F. McGrory            (503) 241-2300

Foster Pepper & Shefelman
One Main Place
101 S.W. Main Street, 15th Floor
Portland, OR 97204-3223
Contact:
Peter S. Ehrlichman
Stellman Keehnel
Tim Filer                  (503) 221-7799

Lane Powell Spears Lubersky LLP
601 S.W. Second Avenue, Suite 2100
Portland, OR 97204
Contact:
D. Meredith Wilson
Milo Petranovich
Robert E. Maloney          (503) 778-2100

AIG/GE HFS 00178

APPENDIX A
SECURITIES CLAIMS PANEL COUNSEL LIST

## Pennsylvania

Blank Rome Comisky & McCauley LLP
One Logan Square
Philadelphia, PA 19103-6998
Contact:
Alexander D. Bono
Richard P. McElroy
Jerome R. Richter
Leonard Dubin
Matthew J. Siembieda        (215) 569-5500

Buchanan Ingersoll, PC
One Oxford Centre, 20th Floor
301 Grant Street
Pittsburgh, PA  15219-8800
Contact:
John R. Leathers        (412) 562-1880

Cozen and O'Connor
The Atrium
1900 Market Street
Philadelphia, PA 19103
Contact:
Patrick J. O'Connor
Thomas C. Zielinski
H. Robert Fiebach
Anita B. Weinstein
Steven N. Haas        (800) 665-2000

Dechert Price & Rhoads
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA 19103-2793
Contact:
Seymour Kurland
Jeffrey G. Weil
Frederick G. Herold        (215) 994-4000

Morgan, Lewis & Bockius
2000 One Logan Square
Philadelphia, PA 19103-6993
Contact:
Marc J. Sonnenfeld
Elizabeth Hoop Fay        (215) 963-5000

Pepper, Hamilton LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103-2799
Contact:
Barbara W. Mather
Jon A. Baughman
Laurence Z. Shiekman
M. Duncan Grant
Robert L. Hickok
Thomas E. Zemaitis        (215) 981-4000

Wolf, Block, Schorr and Solis-Cohen LLP
12th Floor - Packard Building S.E.
Corner 15th & Chestnut Streets
Philadelphia, PA 19102-2678
Contact:
Jay A. Dubow
Ian A.L. Strogatz
Jerome J. Shestack
M. Norman Goldberger
Mark L. Alderman        (215) 977-2058

## Texas

Akin, Gump, Strauss, Hauer & Feld, L.L.P.
1700 Pacific Avenue, Suite 4100
Dallas, TX 75201-4675
Contact:
Lou Bickel
Mike Lowenberg        (214) 969-2800

Akin, Gump, Strauss, Hauer & Feld, L.L.P.
Pennzoil Place -South Tower
711 Louisiana Street
Suite 1900
Houston, TX  77002
Contact:
Charlie Moore
Paula Hinton        (713) 220-5800

Baker & Botts, L.L.P.
910 Louisianna
Houston, TX 77002-4995
Contact:
David D. Sterling        (713) 229-1946

Baker & Botts, L.L.P.
2001 Ross Avenue
Dallas, TX 75201-2916
Contact:
Robert W. Jordan        (214) 953-6518

Brobeck, Phleger & Harrison LLP
301 Congress Avenue, Suite 1200
Austin, TX  78701
Contact:
Paul R. Bessette        (512) 477-5495

Fulbright & Jaworski, L.L.P.
1301 McKinney
Suite 5100
Houston, TX 77010
Contact:
Frank G. Jones
Richard N. Carrell        (713) 651-5151

AIG/GE HFS 00179

APPENDIX A

SECURITIES CLAIMS PANEL COUNSEL LIST

Fullbright & Jaworski, L.L.P.
2200 Ross Avenue
Suite 2800
Dallas, TX 75201
Contact:
Karl G. Dial                          (214) 855-8000

Haynes & Boone, L.L.P.
901 Main Street, Suite 3100
Dallas, TX 75202-3789
Contact:
George Bramblett
Noel Hensley                          (214) 651-5000

Jenkins & Gilchrist
1445 Ross Avenue, Suite 3200
Dallas, TX 75202
Contact:
John Gilliam                          (214) 855-4306

Jenkins & Gilchrist
1100 Louisiana, Suite 1800
Houston, TX 77002
Conctact:
John Gilliam                          (713) 951-3300

Locke Liddell & Sapp LLP
2200 Ross Avenue, Suite 2200
Dallas, TX 75201-6776
Contact:
Brad Foster
John McElhaney
Morris Harrell
Peter Flynn                           (214) 740-8000

Locke Liddell & Sapp LLP
100 Congress Avenue, Suite 300
Austin, TX 78701-4042
Contact:
Brad Foster
John McElhaney
Morris Harrell
Peter Flynn                           (512) 305-4700

Locke Liddell & Sapp LLP
700 Lavaca, Suite 800
Austin, TX 78701
Contact:
Brad Foster
John McElhaney
Morris Harrell
Peter Flynn                           (512) 404-2000

Locke Liddell & Sapp LLP
600 Travis
3400 Chase Tower
Houston, TX 77002
Contact:
Brad Foster
John McElhaney
Morris Harrell
Peter Flynn                           (713) 226-1200

Thompson & Knight, PC
1700 Pacific Avenue, Suite 3300
Dallas, TX 75201
Contact:
Timothy R. McCormick                  (214) 969-1103

Thompson & Knight, PC
98 San Jacinto Boulevard, Suite 1200
Austin, TX 78701
Contact:
Timothy R. McCormick                  (512) 469-6100

Thompson & Knight, PC
801 Cherry Street, Suite 1600
Fort Worth, TX 76102
Contact:
Timothy R. McCormick                  (817) 347-1700

Thompson & Knight, PC
1700 Texas Commerce Tower
600 Travis
Houston, TX 77002
Contact:
Timothy R. McCormick                  (713) 217-2800

Thompson & Knight, PC
1200 Smith Street, Suite 3600
Houston, TX 77002
Contact:
Timothy R. McCormick                  (713) 654-8111

Vinson & Elkins L.L.P.
2500 First City Tower
1001 Fannin
Houston, TX 77002-6760
Contact:
David T. Hedges, Jr.                  (713) 758-2676
Charles W. Schwartz                   (713) 758-3852

Vinson & Elkins L.L.P.
3700 Trammell Crow Center
2001 Ross Avenue
Dallas, TX 75201-2975
Contact:
Orrin L. Harrison III                 (214) 220-7715

AIG/GE HFS 00180

APPENDIX A
ECURITIES CLAIMS PANEL COUNS    LIST

Vinson & Elkins L.L.P.
One American Center, Suite 2700
600 Congress Avenue
Austin, TX 78701-3200
Contact:
Richard D. Milvenan    (512) 495-8542

Wilson, Sonsini, Goodrich & Rosati
8911 Capital of Texas Highway
North Westech 360, Suite 3350
Austin, TX 78759-7427
Contact:
Bruce G. Vanyo
Paul Tobias    (512) 338-5499

Virginia

Cooley Godward, LLP
One Freedom Square
Reston Town Center
11951 Freedom Drive
Reston, VA 20190
Contact:
Robert R. Vieth    (703) 456-8082

Greenberg Traurig
1750 Tysons Boulevard, 12th Floor
McLean, VA 22102
Contact:
Harry M. Glazer
Joseph T. Casey, Jr.    (703) 749-1300

McGuire Woods Battle & Boothe, L.L.P.
One James Center
901 East Cary Street,
Richmond, VA 23219-4030
Contact:
Warren E. Zirkle    (804) 775-4364

McGuire Woods Battle & Boothe, L.L.P.
Tysons II, Suite 1800
1750 Tysons Boulevard
McLean, VA 22102-3892
Stephen M. Colangelo    (703) 712-5371

Washington

Davis Wright Tremaine
2600 Century Square
1501 Fourth Avenue
Seattle, Washington 98101-1688
Contact:
Stephen M. Rummage    (206) 622-3150
Ladd B. Leavens    (206) 622-3150

Foster Pepper & Shefelman
1111 Third Avenue, Suite 3400
Seattle, Washington 98101-2399
Contact:
Peter S. Ehrlichman
Stellman Keehnel
Tom Filer    (206) 447-8998

Heller, Ehrman, White & McAuliffe
701 Fifth Avenue
Seattle, WA 98104-7098
Contact:
George E. Greer
Daniel J. Dunne    (206) 447-0900

Lane Powell Spears Lubersky LLP
1420 Fifth Avenue, Suite 4100
Seattle, Washington 98101-2338
Contact:
Christopher B. Wells
James B. Stoetzer
James L. Robart
Larry S. Gangnes
Rudy A. Englund    (206) 223-7000

Perkins Coie LLP
1201 Third Avenue, Ste. 4800
Seattle, Washington 98101-3099
Contact:
Ronald L. Berenstain
Harry H. Schneider
Barry M. Kaplan    (206) 583-8888

(Revised (6/00)

AIG/GE HFS 00181

APPENDIX A
## EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL

### ALABAMA

LLOYD GRAY & WHITEHEAD
Two Perimeter Park South
Suite 100
Birmingham, AL 35423
Phone: (205) 967-8822
Contact: Steven E. Whitehead, Esq.
*Class Action Approved

LUTHER OLDENBURG & RAINEY
63 S. Royal Street
Mobile, AL
Phone: (334) 433-8088
Contact: Rudene C. Oldenburg, Esq.

### ALASKA

LANE POWELL SPEARS LUBERSKY LLP
420 L. Street
Suite 300
Anchorage, AK 99501-1937
Phone: (206) 223-7019
Contact: James B. Stoetzer, Esq.
*Class Action Approved

### ARIZONA

GOODWIN RAUP PC
One Columbus Plaza
Suite 1200
Phoenix, AZ 85012-1942
Phone: (602) 650-2000
Contact: Calvin Raup
*Class Action Approved

CAMPBELL YOST
234 North Central Avenue
Suite 600
Phoenix, AZ 85004
Phone: (602) 322-1600
Contact: Martin P. Clare, Esq.
*Class Action Approved

LITTLER MENDELSON
Phoenix Corporate Center
3003 North Central Avenue, Suite 1200
Phoenix, AZ 85012-2907
Tel: (602) 604-2143
Fax: (602) 241-3221
Contact: Mark Ogden, Esq
*Class Action Approved

### ARKANSAS

HUCKABAY MUNSON ROWLETT &
TILLEY
1900 West Capital Avenue
Suite 1900
Little Rock, AR 72201
Phone: (501) 374-6535
Contact: Bruce Munson, Esq.
*Class Action Approved

### CALIFORNIA

EPSTEIN BECKER & GREEN PC
Two Embarcadero Center
Suite 1650
San Francisco, CA 94111
Phone: (415) 398-3500
Contact: Ron Souza, Esq
*Class Action Approved

IRELL & MANELLA
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4275
Phone: (310) 277-1010
Contact: James F. Elliot, Esq.
*Class Action Approved

JACKSON LEWIS SCHNITZLER &
KRUPMAN
1888 Century Park East
Suite 1600
Los Angeles, CA 90067
Local Phone: 310-203-0200
Phone: (914) 328-0404
Contact: Steven D. Baderian, Esq.
*Class Action Approved-All Locations

AIG/GE HFS 00182

# APPENDIX A
## EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL

1215 K Street, Suite 1800
Sacramento, CA 95814
Local Phone: 916-341-0404
Phone: (914) 328-0404
Contact: Steven D. Baderian, Esq.

199 Freemont Street, 10th Floor
San Francisco, CA 94105
Local Phone: 415-394-9400
Phone: (914) 328-0404
Contact: Steven D. Baderian, Esq.

KUTAK ROCK
117 E. Colorado Avenue
Suite 210
Pasadena, CA 91105
Phone: (626) 432-1630
Contact: Gregory Hurley, Esq.

LEWIS D'AMATO BRISBOIS & BISGAARD
LLP
221 N. Figueroa Street, Suite 1200
Los Angeles, CA 90012
Phone: (213) 500-1800
Contact: Robert F. Lewis, Esq. &
          Gary S. Rattet, Esq.

One Sansome Street, Suite 1900
San Francisco, CA 94104
Phone: (415) 362-2580
Contact: Duane C. Musfelt, Esq.

550 West C Street, Suite 800
San Diego, CA 92101
Phone: (619) 233-1006
Contact: R. Gaylord Smith, Esq.

650 Town Center Drive, Suite 1400
Costa Mesa, CA 92626
Phone: (714) 545-9200
Contact: Mercedes Cruz, Esq.

Suite 600, 650 East Hospitality La
Phone: (909) 387-1130
Contact: Joseph Arias, Esq.

2500 Venture Oaks Way, Suite 200
Sacramento, CA 95833
Phone: (916) 564-5400
Contact: David L. Cohen, Esq

LITTLER MENDELSON
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
Phone: (310) 553-0308
Contact: Connie L. Michaels, Esq.
*Class Action Approved-All Locations

50 West San Fernando Street
14th Floor
San Jose, CA 95113
Phone: (800) 638-6865
Contact: Dennis M. Brown, Esq. and
          Brian T. McMillan, Esq.

650 California Street, 20th Floor
San Francisco, CA 94108-2693
Tel:  (408) 998-4150
Fax:  (650) 322-4742
Contact: Brian T. McMillan, Esq.
          Dennis M. Brown, Esq.

1690 West Shaw, Suite 201
Fresno, CA 93711-3516
Tel:  (209) 431-8300
Fax:  (209) 431-8329
Contact: Gregory Smith, Esq.

1330 North Dutton Avenue, Suite 200
Santa Rosa CA 95401-4674
Tel:  (800) 638-6865
Fax:  (800) 640-3508
Contact: Brian T. McMillan, Esq

1111 Broadway, Suite 1510
Oakland, CA 94607-4036
Tel:  (408) 998-4150
Fax:  (408) 288-5686
Contact: Brian T. McMillan, Esq

2175 North California Blvd., Suite 835
Walnut Creek, CA 94596-3565
Tel:  (800) 638-6865
Fax:  (800) 640-3508
Contact: Brian T. McMillan, Esq

APPENDIX A
## EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL

400 Capital Mall, 16th Floor
Sacramento, CA 95814
Tel: (916) 448-7100
Fax: (916) 448-7741
Contact: Bruce Sarchet, Esq.

701 B Street, 13th Floor
San Diego, CA 92101-8194
Tel: (619) 232-0441
Fax: (619) 232-4302
Contact: Jody Landry, Esq

O'MELVENY & MYERS LLP
610 Newport Center Driver
Newport Beach, CA 92660
Tel: (714) 760-9600
Contact: Stephen P. Page, Esq.
*Class Action Approved-All Locations*

Embarcadero Center West
275 Battery Street
San Francisco, CA 94111-3305
Tel: (415) 984-8700
Contact: Douglas Dexter, Esq.

400 South Hope Street
15th Floor
Los Angeles, CA 90071-2899
Tel: (213) 430-6000
Contact: Gordon E. Krischer, Esq.

WILSON ELSER MOSKOWITZ
EDELMAN & DICKER
1055 West Seventh Street
Los Angeles, CA 90017
Phone: (213) 624-3044
Contact: James A. Stankowski, Esq.

650 California Street
San Francisco, CA 94108
Phone: (415) 433-0990
Contact: Louis H. Castoria, Esq.

### COLORADO

KUTAK ROCK
717 Seventeenth Street
Suite 2800
Denver, CO 80202
Local Phone: (303) 297-2400
Phone: (626) 432-1630
Contact: Gregory Hurley, Esq.

SHERMAN & HOWARD
633 17th Street
Suite 3000
Denver, CO 80202
Phone: (303) 297-2900
Contact: Andrew Bolin, Esq.

PATTON BOGGS
1660 Lincoln Street
Suite 1900
Denver, CO 80264
Phone: (303) 830-1776
Contact: Timothy D. Kraus, Esq.

LITTLER MENDELSON
One Tabor Center
1200 17th Street, Suite 2020
D enver, CO 80202-5835
Tel: (303) 629-6200
Fax: (303) 629-0200
Contact: Judith Holmes, Esq
*Class Action Approved*

### CONNECTICUT

EPSTEIN BECKER & GREEN PC
One Landmark Plaza
Suite 1800
Stamford, CT 06901-2601
Phone: (212) 351-4500
Contact: Howard Pianko, Esq
*Class Action Approved*

APPENDIX A
## EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL

JACKSON LEWIS SCHNITZLER &
KRUPMAN
55 Farmington Avenue
Suite 1200
Hartford, CT 06105
Local Phone: 860-522-0404
Phone: (914) 328-0404
Contact: Steven Baderian, Esq.
*Class Action Approved-All Locations
177 Broad Street
Post Office Box 251
Stamford, CT 06904-0251
Local Phone: 203-961-0404
Phone: (914) 328-0404
Contact: Steven D. Baderian, Esq.

### DELAWARE

WOLF BLOCK SCHORR & SOLIS-COHEN
One Rodney Square
10th & King Street
Wilmington, DE 19801
Phone: (302) 777-5860
Contact: Barry M. Klayman, Esq.
*Class Action Approved

GREENBERG TRAURIG
The Brandy Wine Building
1000 West Street, Suite 1540
Wilmington, DE 19801
Phone: (302) 661-7000
        (302) 661-1604

### DISTRICT OF COLUMBIA

DRINKER BIDDLE PITNEY HARDEN
1500 K Street, N.W.
Suite 110
Washington, DC 20005
Phone: (202) 842-8857
Contact: Jennifer Smith, Esq.

PATTON BOGGS LLP
2550 M Street, N.W.
Washington, DC 20037
Phone: (202) 457-6000
Contact: Douglas B. Mishkin, Esq. or
        Sally D. Garr, Esq.
*Class Action Approved

JACKSON LEWIS SCHNITZLER &
KRUPMAN
13501 I Street, NW
Suite 510
Washington, DC 20005
Local Phone: 202-347-5200
Phone: (914) 328-0404
Contact: Steven D. Baderian, Esq.
*Class Action Approved

WILSON ELSER MOSKOWITZ
EDELMAN & DICKER
1341 G. Street NW
Washington, DC 20005
Phone: (202) 626-7660
Contact: Paul D. Krausse, Esq.
        Robert B. Wallace, Esq.
*Class Action Approved

JORDON COYNE & SAVITS, LLP
1100 Connecticut Avenue, NW
Washington, DC 20036
Phone: (202) 496-2810
Contact: Deborah Murrell Whelihan, Esq.
*Class Action Approved

FORD & HARRISON
1300 19th Street NW
Suite 700
Washington, DC 20036
Phone:  (202) 719-2012
        (202) 719-2000
Contact: David Rosenberg, Esq.

GREENBERG TRAURIG
800 Connecticut Avenue, NW Ste 500
Washington, DC 20036
Tel:  (202) 331-3100
Contacts: C. Allen Foster, Esq., Eric C.
Rowe, Esq., & Joe Reeder, Esq.

AIG/GE HFS 00185

APPENDIX A
## EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL

*Class Action Approved*

### FLORIDA

AKERMAN SENTERFITT
Suntrust International Center
One Southeast 3rd Ave, 28th FL
Miami, FL 33131-1714
Phone: (305) 982-5543
Contact: Michael Marsh, Esq.
*Class Action Approved*

JACKSON LEWIS SCHNITZLER &
KRUPMAN
First Union Financial Center
200 South Biscayne Boulevard
Suite 2600
Miami, FL 33131
Local Phone: 305-577-7600
Phone: (914) 328-0404
Contact: Steven D. Baderian, Esq.
*Class Action Approved-All Locations*

390 North Orange Avenue
Suite 1285
Orlando, FL 32801-1641
Local Phone: 407-246-8440
Phone: (914) 328-0404
Contact: Steven D. Baderian, Esq.

VERNIS & BOWLING
517 Northlake Blvd
North Palm Beach, FL 33408
Phone: (561) 845-8781
Contact: G. Jeffrey Vernis, Esq.

CARLTON FIELDS WARD EMMANUAL
SMITH & CUTLER PA
100 S.E. 2nd Street
Suite 4000
Miami, FL 33131
Phone: (305) 539-7225
Contact: Nancy H. Henry, Esq.

KUBICKI DRAPER
25 West Flagler Street Penthouse
Miami, Florida 33130
Phone: (305) 374-1212
Contact: Gene Kubicki
*Class Action Approved*

GREENBERG TRAURIG
515 East Las Olas Boulevard
Ft. Lauderdale, FL 33301
Tel: (954) 765-0500
Contact: Frank Scruggs, Esq.
*Class Action Approved-All Locations*

1221 Brickell Avenue
Miami, FL 33131
Tel: (305) 579-0500
Contact: Ron Rosengarten, Esq.

KATZ BARRON SQUITERO FAUST
2699 So. Bayshore Drive
7th Floor
Miami, FL 33133-5408
Phone: (305) 856-2444
Contact: Todd Boyd, Esq.

### GEORGIA

ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
Phone: (404) 881-7000
Contact: Peter Q. Bassett, Esq. or
         Robert P. Riordan, Esq.
*Class Action Approved*

FISHER & PHILLIPS LLP
1500 Resurgens Plaza
945 East Paces Ferry Road
Atlanta, GA 30326
Phone: (404) 240-4235
Contact: D. Albert Brannen, Esq. or
         Ilene W. Berman, Esq.

JACKSON LEWIS SCHNITZLER &
KRUPMAN
1900 Marquis One Tower
245 Peachtree Center Avenue, NE
Atlanta, GA 30303-1226
Local Phone 404-525-8200
Phone: (202) 328-0404
Contact: Steven D. Baderian, Esq.
*Class Action Approved*

# APPENDIX A
## EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL

LONG ALDRIDGE & NORMAN
One Peachtree Center
5300
Atlanta GA 30308
Phone: (404) 527-8312
Contact: Phillip A. Bradley, Esq.

LITTLER MENDELSON
1100 Peachtree Street, NE, Suite 2000
Atlanta, GA 30309-4520
Tel: (404) 817-0990
Fax: (404) 817-9898
Contact: Teresa Butler, Esq
*Class Action Approved

### HAWAII

LOVE YAMAMOTO & MOTOOKA
1000 Bishop Street
Honolulu, HI 96813
Phone: (808) 532-7900
Contact: Chad Love, Esq.
*Class Action Approved

### IDAHO

QUANE SMITH LLP
US Bank Plaza, Suite 1600
101 South Capital Blvd
Boise, ID 83702
Phone: (208) 345-0960
Contact: Jeremiah A. Quane, Esq.
*Class Action Approved

### ILLINOIS

CLAUSEN MILLER PC
10 South La Salle Street
Suite 1600
Chicago, IL 60603-1098
Phone: (312) 855-1010
Contact: James S. Barber, Esq. or
        James Nolan, Esq.

FREEBORN & PETERS
311 South Wacker Drive
Suite 3000
Chicago, IL 60606-6677
Phone: (312) 360-6000
Contact: David H. Kistenbroker, Esq. or
        Steven M. Hartmann, Esq.

JACKSON LEWIS SCHNITZLER &
KRUPMAN
320 West Ohio Street
Suite 500
Chicago, IL 60610
Local Phone: 312-787-4949
Phone: (914) 328-0404
Contact: Steven D. Baderian, Esq.
*Class Action Approved

LITTLER MENDELSON
200 North La Salle Street, Suite 2900
Chicago, IL 60601-1014
Tel: (312) 372-5520
Fax: (312) 372-7880
Contact: Fred Schwartz Esq.
*Class Action Approved

SIDLEY & AUSTIN
One First National Plaza
Chicago, IL 60603
Phone: (312) 853-7000
Contact: James S. Whitehead, Esq.,
        Julie O. Allen, Esq., Lawrence
        Lawrence I. Kipperman, Esq.,
        Thomas A. Roberts, Esq.
*Class Action Approved

SONNENSCHEIN NATH & ROSENTHAL
800 Sears Towers
Chicago, IL 60601-1692
Phone: (312) 876-3112
Contact: Roger T. Brice, Esq.
*Class Action Approved

VEDDER PRICE KAUFMAN &
KAMMHOLZ
222 N. La Salle Street
Chicago, IL 60601-1003
Phone: (312) 609-7745
Contact: Barry Hartstein, Esq.
*Class Action Approved

APPENDIX A
EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL

### INDIANA

KIGHTLINGER & GRAY
Market Square Center, Suite 660
151 North Delaware
Phone: (317) 638-4521
Contact: Donald L. Dawson, Esq.
*Class Action Approved

### IOWA

NYEMASTER GOODE VOIGTS WEST
HANSELL & O'BRIEN
700 Walnut Street
Des Moines, IA 50309
Phone: (515) 283-3100
Contact: Hayward Draper, Esq.
*Class Action Approved

### KENTUCKY

BOEHL STOPHER & GRAVES
400 West Market Street
Suite 2300
Louisville, KY 40222
Phone: (502) 589-5980
Contact: Ed Stopher, Esq.
*Class Action Approved

HARLIN, PACKER ALCOTT &
SHOULDOIN
519 East Tenth Street
PO Box 390
Bowling Green, KY 42102-0390
Phone: (270) 842-5611
Contact: William J. Parker, Esq.
*Class Action Approved

### LOUISIANA

ADAMS & REESE
4500 One Shell Square
New Orleans, LA 70139
Phone: (504) 581-3234
Contact: Janis VanMeerveld, Esq.
*Class Action Approved

DEUTSCH KERRIGAN & STILES LLP
755 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-5141
Contact: Ellis B. Muorv, Esq.

LOCKE LIDDLE & SAPP LLP
Pan American Life Center
601 Poydras Street, Suite 2400
New Orleans, LA 70130-6036
Phone: (504) 558-5106
Contact: Amelia W. Koch, Esq.

MCGLINCHEY STAFFORD
643 Magazine Street
New Orleans, LA 70130
Phone: (504) 586-1200
Contact: E. Frederick Preis, Jr., Esq.

THE JUNEAU FIRM
The Harding Center
1018 Harding Strret, Suite 202
Lafayette, LA 70503-2412
Tel: (337) 269-0052
Contact: Mike Juneau

### MAINE

MOON MOSS MCGILL & BACHELDER PA
10 Free Street
PO Box 7250
Portland, ME 04112-7250
Phone: (207) 228-1526
Contact: Richard O. Moon, Esq.

### MARYLAND

WHITEFORD TAYLOR & PRESTON LLP
Seven St. Paul Street
Baltimore, MD 21202
Phone: (410) 347-8700
Contact: William Ryan, Jr., Esq.

LITTLER MENDELSON
The World Trade  Center
401 East Pratt Street, Suite 1653
Baltimore, MD 21202-3005
Tel: (410) 528-9545
Fax: (410) 528-1908
Contact: Thomas Dowd, Esq.
*Class Action Approved

APPENDIX A
EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL

JORDAN COYNE & SAVITS, LLP
33 Wood Lane
Rockville, MD 20850
Phone: (301) 424-4161
Contact: Deborah Murrell Whelihan

## MASSACHUSETTS

FOLEY HOAG & ELIOT LLP
One Post Office Square
Boston, MA 02109
Phone: (617) 832-1000
Contact: Peter M. Rosenblum

HUTCHINS WHEELER & DITTMAR PC
101 Federal Street
Boston, MA 02110
Phone: (617) 951-6624
Contact: David S. Rosenthal, Esq.
*Class Action Approved

JACKSON LEWIS SCHNITZLER &
KRUPMAN
One Beacon Street
33rd Floor
Boston, MA 02108
Local Phone: 617-367-0025
Phone: (914) 328-0404
Contact: Steven D. Baderian, Esq.
*Class Action Approved

MINTZ LEVIN COHN FERRIS GLOVSKY
AND POPEO, PC
One Financial Center
Boston, MA 02110
Phone: (617) 542-6000
Contact: Patrick Sharkey, Esq. &
         Robert Gault, Esq.
*Class Action Approved

GETMAN, STACEY, TAMPOSI,
SCHULTESS & STEERE, PA
163 South River Road
Bedford, NH 03110
Phone: (603) 634-4300
Contact: Laurence W. Getman, Esq. or
         Dona Feeney, Esq.
*Western Mass. Only

NIXON PEABODY LLP
101 Federal Street
Boston, Ma. 02110
Tel: (516) 832-7564
Contact: Joseph J. Ortego, Esq.
*Class Action Approved

MURPHY HESSE TOOMEY & LEHANE
300 Crown Colony, Suite 410
Quincy, MA 02269
Phone: (617) 479-6467
Contact: James Toomey, Esq.

PEABODY & ARNOLD
50 Rowes Wharf
Boston, MA 02110
Phone: (617) 951-2100
Contact: William A. Cotter, Esq.

## MICHIGAN

DYKEMA GOSSETT, LLP
1577 N. Woodward Avenue
Bloomfield Hills, MI 48304
Phone: (248) 203-0705
Contact: Robert L. Duty, Esq.

MADDIN HOUSER WARTELL ROTH
28400 Northwestern Highway
PO Box 215
Southfield, MI 48034
Phone: (248) 354-4080
Contact: Harvey Heller, Esq.

MILLER CANFIELD PADDOCK AND
STONE PLC
1200 Campau Square Plaza
99 Monroe Avenue, NW
Grand Rapids, MI 49503
Phone: (616) 454-8656
Contact: Charles S. Mishkind, Esq.
*Class Action Approved-All Locations

150 West Jefferson, Suite 2500
Detroit, MI 48226
Phone: (313) 963-6420
Contact: Charles S. Mishkind, Esq. or
         Carl H. Von Ende, Esq.

# APPENDIX A
## EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL

PLUNKETT & COONEY
505 N. Woodward Avenue
Suite 3000
Bloomfield Hills, MI 48304
Phone: (248) 901-4005
Contact: Teresa Smith Lloyd, Esq.

BRADY HATHAWAY & BRETZ
1330 Buhl Building
Detroit, MI 48226-3602
Phone: (313) 965-3700
Contact: Dannel Bertz

### MINNESOTA

DORSEY & WHITNEY LLP
Philsbury Center South
220 South Sixth Street
Minneapolis, MN 55402
Phone: (612) 340-2600
Contact: Robert R. Reinhart, Esq., or
        Peter S. Hendrickson, Esq.
*Class Action Approved*

JACKSON LEWIS SCHNITZLER &
KRUPMAN
150 Fifth Street Towers
150 South Fifth Street, Suite 2800
Minneapolis, MN 55402
Local Phone: 612-341-8131
Phone: (516) 364-0404
Contact: Steven D. Baderian, Esq.
*Class Action Approved*

MEAGHER & GEER LLP
4200 Multifoods Tower
Minneapolis, MN 55402
Phone: (612) 338-0661
Contact: James F. Roegge, Esq.

LITTLER MENDELSON
Multifoods Tower,
33 South 6th Street, Suite 3970
Minneapolis, MN 55402-3720
Tel:  (612) 630-1000
Fax:  (612) 630-9626
Contact: Kate Wilson, Esq
*Class Action Approved*

### MISSOURI

ARMSTRONG & TEASDALE LLP
2345 Grand Blvd
Suite 2000
Kansas City, MO 64108
Phone: (816) 221-3420
Contact: Lynn W. Hursh, Esq.
*Class Action Approved*

BROWN & JAMES, PC
705 Olive Street
Suite 1100
St. Louis, MO 63101-2270
Phone: (314) 421-3128
Contact: Charles E. Reis, IV, Esq.

GALLOP JOHNSON & NEUMAN LC
Interco Corporate Tower
101 South Hanley
St. Louis, MO 63105
Phone: (314) 862-1200
Contact: Ron Hack, Esq.

LEWIS RICE & FINGERSH, L.C.
500 N. Broadway, Suite 2000
St. Louis, MO 63102-2147
Phone: (314) 444-7600
Contacts: Robert J. Golterman, Esq.
         Neal F. Perryman, Esq.
*Class Action Approved*

### MISSISSIPPI

BUTLER SNOW O'MARA STEVENS &
CANNADA PLLC
210 East Capitol Street
Jackson, MS 39201
Phone: (601) 948-5711
Contact: Jeffrey Walker, Esq.
*Class Action Approved*

WATKINS & EAGER PLLC
400 East Capitol Street
Jackson, MS 39201
Phone: (601) 948-6470
Contact: Kenneth E. Milan, Esq.

APPENDIX A
EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL

## MONTANA

MATOVICH AND KELLER PC
225 First Citizens Bank
2812 First Avenue N.
Billings, MT 59101
Phone: (406) 252-5500
Contact: E. Matovich, Esq.

## NEBRASKA

KUTAK ROCK
1630 Farnam Street
Omaha, NE 68102
Phone: (402) 346-6000
Contact: Gregory Hurley, Esq.

## NEW HAMPSHIRE

GETMAN STACEY TAMPOSI
SCHULTESS & STEERE, PA
163 South River Road
Bedford, NH 03110
Phone: (603) 634-4300
Contact: Laurence W. Getman, Esq. or
        Dona Feeney, Esq.

## NEW JERSEY

DRINKER BIDDLE PITNEY HARDEN
105 College Road
Suite 300
Princeton, NJ 08542
Phone: (609) 716-6500
Contact: Jon Epstein, Esq.

EPSTEIN BECKER & GREEN PC
One Riverfront Plaza, 7th Floor
Newark, NJ 07102
Phone: (973) 639-8262
Contact: Howard Pianko, Esq.
*Class Action Approved

HARWOOD LLOYD
130 Main Street
Hackensack, NJ 07601
Phone: (201) 487-1080
Contact: Frank Lloyd, Esq.
        Elizabeth Lorell, Esq.

JACKSON LEWIS SCHNITZLER &
KRUPMAN
60 Washington Street
Morristown, NJ 07960-6844
Local Phone: 973-538-6890
Phone: (914) 328-0404
Contact: Steven D. Baderian, Esq.
*Class Action Approved

LINDABURY MCCORMICK &
ESTABROOK
53 Cardinal Drive
PO Box 2369
Westfield, NJ 07091
Phone: (908) 233-6800
Contact: Richard Cino, Esq.

LITTLER MENDELSON
89 Headquarters Plaza, North Tower
12th Floor
Morristown, NJ 07960-6834
Tel:  (212) 583-9600
Fax:  (212) 832-2719
Contact: David Rosen, Esq
*Class Action Approved

SAIBER, SCHLESINGER, SATZ &
GOLDSTEIN
One Gateway Center, 13th Floor
Newark, NJ 07102-5311
Phone: (973) 622-3333
Contact: Jeffrey Lorell, Esq.

THOMPKINS MCGUIRE WACHENFELD &
BARRY
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102-4070
Phone: (973) 622-3000
Contact: William B. McGuire, Esq.

## NEVADA

BARKER BROWN BUSBY CHRISMAN &
THOMAS
300 South Fourth Street
Suite 800
Las Vegas, NV 89101
Phone: (702) 386-1086
Contact: James P. Chrisman, Esq.

# APPENDIX A
## EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL

LITTLER MENDELSON
350 South Center Street, Suite 530
Reno, NV 89501-2114
Tel:  (702) 348-4888
Fax:  (702) 786-0127
Contact:  Patrick H. Hicks, Esq
*Class Action Approved-All Locations*

3930 Howard Hughes Parkway
Suite 150
Las Vegas, NV 89109-0944
Tel:  (702) 862-8800
Fax:  (702) 862-8811
Contact:  Patrick H. Hicks, Esq

## NEW MEXICO

BUTT THORNTON & BAEHR PC
4101 Indian School Road NE
Suite 3005
Albuquerque, NM 87110
Phone: (505) 884-0777
Contact: Agnes Fuentevilla Padilla, Esq.

## NEW YORK

D'AMATO & LYNCH
70 Pine Street
New York, NY 10270
Phone: (212) 269-0927
Contact: Luke Lynch Jr., Esq.

EPSTEIN BECKER & GREEN PC
250 Park Avenue, 12th Floor
New York, NY 1010019
Phone: (212) 351-4500
Contact: Howard Pianko, Esq.
*Class Action Approved*

GARBARINI & SCHER PC
1114 Avenue of the Americas
New York, NY 10036
Phone: (212) 764-4000
Contact: James Kachadoorian, Esq.

JACKSON LEWIS SCHNITZLER &
KRUPMAN
101 Park Avenue
37th Floor
New York, NY 10178
Local: (212) 697-8200, (212) 545-4000
Phone: (914) 328-0404
Contact: Steven D. Baderian, Esq.
*Class Action Approved-All  Locations*

1000 Woodbury Road
Suite 402
Woodbury, NY 11797
Local Phone: (516) 364-0404
Phone: (914) 328-0404
Contact: Steven D. Baderian, Esq.

One North Broadway
White Plains, NY 10601-2305
Contact: Steve Baderian, Esq.
Phone: (914) 328-0404

JONES HIRSCH CONNORS BULL
101 East 52nd Street
New York, NY 10022
Phone: (212) 507-1000
Contact: Richard Steer

KAUFMAN BORGEEST & RYAN
747 Third Avenue
New York, NY 10017
Phone: (212) 980-9600
Contact: Julianna Ryan

KRAMER LEVIN NAFTALIS & FRANKEL
919 Third Avenue
New York, NY 10022
Phone: (212) 715-9100
Contact: Kevin LeBlang, Esq.

LITTLER MENDELSON, PC
885 Third Avenue
New York, NY 10022
Phone: (212) 583-9600
Contact: Richard L. Hartz, Esq.
*Class Action Approved*

AIG/GE HFS 00192

APPENDIX A
## EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL

OHRENSTEIN & BROWN LLP
One World Trade Center
85th Floor
New York, NY 10048
Phone: (212) 682-4500
Contact: Michael D. Brown, Esq.

WILLKIE FARR & GALLAGHER
787 Seventh Avenue
New York, NY 10019-6099
Phone: (212) 728-8000
Contact: Stephen Greiner, Esq.
*Class Action Approved

HODGSOM, RUSS, ANDREWS, WOODS
& GOODYEAR, LLP
One M&T Plaza, Suite 2000
Buffalo, NY 14203-2391
Tel.: (716) 848-1496
Contact: Patrick J. Tomovic, Esq

NIXON PEABODY LLP
990 Stewart Avenue
Garden City, NY 11530
Tel: (516) 832-7564
Contact: Joseph J. Ortego, Esq
*Class Action Approved-All Locations

Omni Plaza
300 South Pearl St.
Albany NY 12207
Tel: (518) 427-2650
Contact: Joseph J. Ortego, Esq

437 Madison Avenue
New York NY 10022
Tel: (212) 940-3000
Contact: Joseph J. Ortego, Esq.

Clinton Square, PO Box 31051
Rochester, NY 14603
Tel: (716) 263-1000
Contact: Joseph J. Ortego, Esq

NORTH CAROLINA

COZEN & O'CONNOR
2100 One First Union Center
301 South College St. Suite 2100
Charlotte, NC 28202
Phone: (704) 376-3400
Contact: Jay Goldstein, Esq.

PARKER POE ADAMS & BERNSTEIN
401 S. Tyon Street, Suite 3000
Charlotte, NC 28202
Phone: (704) 372-9000
Contact: Jonathan M. Crotty

OHIO

DINSMORE SHOAL
175 South 3rd Street
10th Floor
Columbus, OH 43215
Phone: (614) 628-6220

GALLAGHER SHARP FULTON &
NORMAN
Seventh Floor Bulkley Building
1501 Euclid Avenue
Cleveland, OH 44115
Phone: (216) 241-5310
Contact: Alton Stephens, Esq.
*Class Action Approved

JANIK & DORMAN
Building Two
8223 Brecksville Road
Cleveland, OH 44141
Phone: (440) 838-7600
Contact: Steven G. Janik, Esq.
*Class Action Approved

LITTLER MENDELSON, PC
Fifth Third Center
21 E. State Street
Suite 1600
Columbus, OH 43215
Phone: (614) 463-4201
Contact: James Ferber, Esq.
*Class Action Approved

AIG/GE HFS 00193

APPENDIX A
# EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL

### OKLAHOMA

RHODES HIERONYMUS JONES TUCKER
& GABLE PLLC
P.O. Box 21100
Phone: (918) 582-1173
Contact: Chris L. Rhodes, III, Esq.

### OREGON

BULLIVANT HOUSER BAILEY
300 Pioneer Tower
888 SW Fifth Avenue
Portland, OR 97204-2089
Phone: (503) 228-6351
Contact: Chrys A. Martin, Esq.

LANE POWELL SPEARS LUBERSKY LLP
601 SW Second Avenue
Suite 2100
Portland, OR 97204
Phone: (206) 223-7019
Contact: James B. Stoetzer, Esq.
*Class Action Approved*

LINDSAY HART NEIL & WEIGLER LLP
1300 West Fifth Avenue
Suite 3400
Portland, OR 97201-5696
Phone: (503) 226-7677
Contact: Lisa F. Rackner, Esq.
          Jerard S. Weigler, Esq.

### PENNSYLVANIA

LITTLER MENDELSON
DOMAIN TOWER
625 Liberty Avenue, Suite 2000, Office
2810
Pittsburgh, PA 15222
Phone: (412) 255-3730
Contact: John M. Cerilli, Esq

COZEN AND O'CONNOR
1900 Market Street
Philadelphia, PA 19103
Phone: (215) 665-2000
Contact: Jeffrey Pasek, Esq.

JACKSON LEWIS SCHNITZLER &
KRUPMAN
One PPG Place
29th Floor
Pittsburgh, PA 15222-5414
Local Phone: 412-232-0404
Phone: (914) 328-0404
Contact: Steven D. Baderian, Esq.
*Class Action Approved*

MARSHALL DENNEHY
1845 Walnut Street
Philadelphia, PA 19103
Phone: (215) 575-2600
Contact: Phil Torin, Esq.
          Jay Rothman, Esq.

PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
Phone: (215) 981-4000
Contact: Anthony B. Haller, Esq.
*Class Action Approved*

WILSON ELSER MOSKOWITZ EDELMAN
& DICKER LLP
The Curtis Center
Suite 1130 East
Philadelphia, PA 19106
Phone: (215) 627-6900
Contact: Lou Isaacsohn, Esq.
*Class Action Approved*

WOLF BLOCK SCHORR & SOLIS – COHEN
LLP
1650 Arch Street
Philadelphia, PA 19103 – 2097
Phone: (215) 977-2588
Contact: Alan Kessler, Esq.
*Class Action Approved*

HAMBURG & GOLDEN
1601 Market Street, Suite 565
Philadelphia, PA 19103-1443
Phone: (215) 255-8590
Contact: Neil Hamburg, Esq.

## APPENDIX A
## EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL

### RHODE ISLAND

ROPES & GRAY
30 Kennedy Plaza
Providence, RI 02903-2328
Phone: (401) 455-4400
Contact: William S. Eggeling, Esq.
*Class Action Approved

NIXON PEABODY LLP
One Citizens Plaza
Providence, RI 02903
Tel:  (516) 832-7564
Contact: Joseph J. Ortego, Esq
*Class Action Approved

### SOUTH CAROLINA

JACKSON LEWIS SCHNITZLER &
KRUPMAN
2100 Daniel Building
301 S. Main Street
Greenville, SC 29601
Phone: (914) 328-0404
Contact: Steve Baderian, Esq.
Phone: (914) 328-0404
*Class Action Approved

YOUNG CLEMENT RIVERS & TISDALE
LLP
P.O. Box 993
28 Boad Street
Charleston, SC 29402
Phone: (864) 557-4000
Contact: Shawn D. Wallace, Esq.

### SOUTH DAKOTA

COSTELLO PORTER HILL HEISTERKAMP
BUSHNELL & CARPENTER LLP
200 Security Building
P.O. Box 290
Rapid City, SD 57709
Phone: (605) 343-2410
Contact: Robert L. Lewis, Esq.

DAVENPORT EVANS HURWITZ & SMITH
LLP
P.O. Box 1030
513 South Main Avenue
Sioux Falls, SD 57101-1030
Phone: (605) 336-2880
Contact: Susan Brunick Simons, Esq.
          Jean H. Bender, Esq.

### TENNESSEE

LEITNER WILLIAMS DOOLEY &
NAPOLITAN PLLC
Pioneer Building
3rd Floor
Chattanooga, TN 37402
Phone: (423) 265-0214
Contact: Paul R. Leitner, Esq.

WEINTRAUB, STOCK BENNETT
GRISHAM & UNDERWOOD
One Commerce Square
Suite 2560
Memphis, TN 38103
Phone: (901) 526-0431
Contact: James H. Stock, Esq.

### TEXAS

CLARK WEST KELLER BUTLER & ELLIS
LLP
4800 Renaissance Tower
1201 Elm Street
Dallas, TX 75270-2146
Phone: (214) 741-1001
Contact: Mark Shank, Esq.

FULBRIGHT & JAWORSKI LLP
2200 Ross Avenue
Suite 2800
Dallas, TX 75201
Phone: (214) 855-8188
Contact: Bob Herrell, Esq.
          A.J. Harper, Esq.
*Class Action Approved-All Locations

AIG/GE HFS 00195

APPENDIX A
EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL

1301 McKinney
Suite 5100
Houston, TX 77101-3095
Phone: (713) 651-5442
Contact: Frank Jones, Esq.

JACKSON LEWIS SCHNITZLER &
KRUPMAN
3811 Turtle Creek Boulevard
Suite 500
Dallas, TX 75219
Local Phone: 214-520-2400
Phone: (914) 328-0404
Contact: Steven D. Baderian, Esq.
*EPLI Class

LOCKE LIDDELL & SAPP LLP
2200 Ross Avenue
Suite 2200
Dallas, TX 75201-6776
Phone: (214) 740-8000
Contact: John McElhaney, Esq.

LITTLER MENDELSON
The Chevron Tower
1301 McKinney Street, Suite 3300
Houston, TX 77010-3031
Tel: (713) 951-9400
Fax: (713) 951-9212
Contact: Timothy McInturf

2001 Ross Avenue, Suite 2600 Lock Box
116
Dallas, TX 75201
Tel:  (214) 880-8100
Fax:  (214) 880-0181
Contact:  Scott M. McDonald, Esq

MILLS SHIRLEY ECKEL & BASSETT, LLP
400 Washington Building
2228 Mechanic, P.O. Box 1943
Galveston, TX 77553
Phone: (409) 763-2341
Contact: Carla Cotropia, Esq.

PATTON BOGGS LLP
2626 Cole Avenue
Suite 700
Dallas, TX 75204
Phone: (214) 871-2141
Contact: D. Patrick Long, Esq.
*Class Action Approved

THOMPSON & KNIGHT LLP
1700 Pacific Avenue
Suite 3300
Dallas, TX 75201-4693
Phone: (214) 969-1700
Contact: Timothy R. McCormick, Esq.

## UTAH

CHRISTENSON & JENSEN PC
50 South Main Street
Suite 1500
Salt Lake City, UT 84101
Phone: (801) 355-3431
Contact: Phillip S. Ferguson, Esq.

## VERMONT

CLEARY SHAHI ASSOCIATES
110 Merchants Row
P.O. Box 6740
Rutland, VT 05702
Phone: (802) 775-8800
Contact: David L. Cleary, Esq.

## VIRGINIA

GENTRY LOCKE RAKES & MOORE
P.O. Box 40013
Roanoke, VA 24022-0013
Phone: (540) 983-9300
Contact: W. David Paxton, Esq.
*Class Action Approved-All Locations

305 Harrison Street, SE
LeeBurg, VA 20175
Tel: (202) 496-2810
Debra M. Whelihan, Esq

15

AIG/GE HFS 00196

APPENDIX A
EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL

MCGUIRE WOODS BATTLE & BOOTHE
LLP
901 East Cary Street
Richmond, VA 23219
Phone: (804) 775-4378
Contact: Stephen D. Busch, Esq.

## WASHINGTON

COZEN AND O'CONNOR
1201 Third Avenue
Suite 5200
Seattle, WA 98101
Phone: (206) 340-1000
Contact: Thomas M. Jones, Esq.

JACKSON LEWIS SCHNITZLER &
KRUPMAN
1420 Fifth Avenue, Suite 2000
Seattle, WA 98101
Local Phone: 206-405-0404
Phone: (914) 328-0404
Contact: Steven D. Baderian, Esq.
*Class Action Approved*

LANE POWELL SPEARS LUBERSKY LLP
1420 Fifth Avenue
Suite 4100
Seattle, WA 98101-2338
Phone: (206) 223-7019
Contact: James B. Stoetzer, Esq.
*Class Action Approved*

LITTLER MENDELSON
First Interstate Center
999 3rd Avenue, Suite 3800
Seattle, WA 98104-4023
Tel: (206) 623-3300
Fax: (206) 447-6965
Contact: Daniel Thieme, Esq.
*Class Action Approved*

## WEST VIRGINIA

STEPTOE & JOHNSON LLP
Bank One Center
P.O. Box 2190
Clarksburg, WV 26302-2190
Phone: (304) 624-8000
Contact: C. David Morrison, Esq.
*Class Action Approved*

## WISCONSIN

MELLI WALKER PEASE & RUHLY SC
19 Martin Luther King Blvd
Madison, WI 53701
Phone: (608) 257-4812
Contact: Jack D. Walker, Esq.

## WYOMING

HIRST & APPLEGATE
1720 Carey Avenue
Suite 200
Cheyenne, WY 82001
Phone: (307) 632-0541
Contact: Thomas A. Nicholas, Esq.

AIG/GE HFS 00197

ENDORSEMENT# 1

This endorsement, effective *12:01 am*     *August 4, 2001*          forms a part of
policy number   *873-87-52*
issued to   *MANAGED HEALTH CARE SYSTEMS*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

## CONVERSION ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that the
policy is hereby amended as follows:

I.
## DECLARATIONS

1.     The third paragraph of the Declaration page is deleted in its entirety and replaced
with the following:

NOTICE: THE INSURER DOES NOT ASSUME ANY DUTY TO DEFEND.  HOWEVER
THE INSUREDS MAY UNDER CERTAIN CONDITIONS TENDER THE DEFENSE OF A
CLAIM.  IN ALL EVENTS, THE INSURER MUST ADVANCE DEFENSE COSTS
PAYMENTS PURSUANT TO THE TERMS HEREIN PRIOR TO THE FINAL
DISPOSITION OF A CLAIM.

2.     Items 1 and 2 of the Declaration page are deleted in their entirety and replaced with
the following:

ITEM 1.          NAMED ENTITY:     MANAGED HEALTH CARE SYSTEMS

                 MAILING ADDRESS:175 DERBY STREET; SUITE 24
                                 HINGHAM, MASSACHUSETTS, 02043-3406

                 STATE OF INCORPORATION OR STATE OF FORMATION OF THE
                 NAMED ENTITY:   MASSACHUSETTS

                 ITEM 2.        SUBSIDIARY COVERAGE: any past, present or future
                 Subsidiary of the Named Entity

3.     Items 5 and 6 of the Declaration page are deleted in their entirety and replaced with
the following:

ITEM 5.     RETENTION:

            Judgments, Settlements and
            Defense Costs (non-Indemnifiable Loss)                    None

Employment Practices Claims
            Judgments, Settlements and Defense Costs
            (Company and Indemnifiable Loss)                          $ 35,000
                                                                      for Loss  arising  from
                                                                      Claims alleging the same
                                                                      Wrongful Act or Related
                                                                      Wrongful Acts (waivable

ENDORSEMENT# 7    (Continued)

This endorsement, effective  12:01 am    August 4, 2001    forms a part of
policy number  873-87-52
issued to   MANAGED HEALTH CARE SYSTEMS

by    National Union Fire Insurance Company of Pittsburgh, Pa.

under Clause 6 in certain
circumstances)

Securities Claims (other than private placements)
    Judgments, Settlements and Defense Costs
    (Company and Indemnifiable Loss)

$ 150,000
for Loss arising from
Claims alleging the same
Wrongful Act or Related
Wrongful Acts (waivable
under Clause 6 in certain
circumstances)

All Other Claims (including private placements)
    Judgments, Settlements and Defense Costs
    (Company and Indemnifiable Loss)

$ 25,000
for Loss arising from
Claims alleging the same
Wrongful Act or Related
Wrongful Acts (waivable
under Clause 6 in certain
circumstances)

Item 6.  PREMIUM: $ 24,995

ADDITIONAL PREMIUM FOR PUNITIVE, EXEMPLARY AND MULTIPLIED
DAMAGES: $_____
(included in above)
(No Punitive damages coverage provided: X)

4.    The following Items are hereby added to the Declaration page of this policy

ITEM 7.    CONTINUITY DATES:

A.    Coverages A and B(ii):    August 4, 2000

B.    Coverage B(i):    August 4, 2000

C.    Outside Entity Coverage: Per Outside Entity:    August 4, 2000

ITEM 8.    (This policy is issued only by the insurance company indicated below.)

National Union Fire Insurance Company of Pittsburgh, Pa.
175 Water Street

(2/90)

AIG/GE HFS 00199

ENDORSEMENT # 7    (Cor   ued)

This endorsement, effective  *12:01 am*    *August 4, 2001*              forms a part of
policy number  *873-87-52*
issued to  *MANAGED HEALTH CARE SYSTEMS*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*


<u>New York, NY 10038</u>
II.
INSURING AGREEMENTS

5.    Insuring Clauses A and B are deleted in their entirety and replaced by the following:

COVERAGE A: INDIVIDUAL INSURED INSURANCE

This policy shall pay the  Loss of each and every Director,  Officer or Employee of
the Company ("Individual Insured") arising from a  Claim first  made  against such
Insureds during the Policy Period or the Discovery Period (if applicable) and reported
to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful
Act in their respective capacities as Directors,  Officers or Employees of the
Company except when  and to the  extent that  the  Company has  indemnified such
Insureds. The; Insurer shall, in  accordance with and subject  to Clause 9, advance
Defense Costs of such Claim prior to its final disposition.

COVERAGE B: PRIVATE COMPANY INSURANCE

This policy shall pay the Loss of the Company arising from a:

        (i) Claim first made against the Company; or

        (ii)Claim first made against an Individual Insured,

during the Policy  Period or the  Discovery Period (if  applicable) and reported  to the
Insurer pursuant to the terms  of this policy for any  actual or alleged Wrongful Act,
but, in the  case of (ii)  above, only when  and to the  extent that the  Company has
indemnified the  Individual Insured for such Loss pursuant to law, common or
statutory, or  contract, or the  Charter or By-laws of the  Company duly effective
under such law which determines and defines such  rights of indemnity. The Insurer
shall, in accordance with and  subject to Clause 9,  advance Defense Costs of  such
Claim prior to its final disposition.

DEFENSE PROVISIONS

The Insurer does  not assume  any duty  to defend, provided,  however, the  Named
Entity may at its sole option  tender to the Insurer the defense of  a Claim for which
coverage is  provided  by  this policy in  accordance  with Clause 9  of the policy.
Regardless  of  whether  the  defense is so  tendered,  the  Insurer  shall advance
Defense Costs (excess of the applicable retention amount) of such Claim prior to its
final disposition. Selection of counsel to defend a "Designated Claim" shall be made
in accordance with Clause 7 of the policy.

AIG/GE HFS 00200

ENDORSEMENT# 7 (Continued)

This endorsement, effective *12:01 am*    *August 4, 2001*    forms a part of
policy number  *873-87-52*
issued to  *MANAGED HEALTH CARE SYSTEMS*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

III.
DEFINITIONS

6.    Clause 2, DEFINITIONS 2(a), 2(b), 2(c), 2(d), 2(e), 2(f), 2(g) are modified as follows:

(a)"Company" means the Named Entity and any Subsidiary thereof.

(b)"Defense Costs" means reasonable and necessary fees, costs and expenses consented to by the Insurer (including premiums for any appeal bond, attachment bond or similar bond, but without any obligation to apply for or furnish any such bond) resulting solely from the investigation, adjustment, defense and appeal of a Claim against the Insureds, but excluding salaries of officers or Employees of the Company.

(c)"Insured(s)" means:
(1)    an Individual Insured; and
(2)    the Company.

(d)    "Loss" means damages (including back pay and front pay), judgments, settlements, pre- and post-judgment interest, and Defense Costs; however, Loss shall not include: (1) civil or criminal fines or penalties imposed by law; (2) taxes; (3) any amount for which the Insureds are not financially liable or which are without legal recourse to the Insureds; (4) employment-related benefits, stock options, perquisites, deferred compensation or any other type of compensation other than salary, wages or bonus compensation; (5) any liability or costs incurred by any Insured to modify any building or property in order to make said building or property more accessible or accommodating to any disabled person, or any liability or costs incurred in connection with any educational, sensitivity or other corporate program, policy or seminar relating to an Employment Practices Claim; (6) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

If an additional premium is stated in Item 6 of the Declarations page, then Loss shall specifically include, (subject to the policy's other terms, conditions and exclusions, including but not limited to exclusions relating to personal profit or advantage, deliberate fraud, criminal acts or willful violation of any statute, rule or regulation) punitive, exemplary and multiple damages (including the multiple or liquidated damages awards under the Age Discrimination in Employment Act and the Equal Pay Act). It is further understood and agreed that the enforceability of the foregoing coverage shall be governed by such applicable law which most favors coverage for punitive, exemplary and multiple damages. If an additional premium is not stated in Item 6 of the Declaration page then Loss shall not include punitive, exemplary damages or the multiplied portion of multiple damages.

(2/90)

AIG/GE HFS 00201

ENDORSEMENT # 7    (Cor    ued)

This endorsement, effective  *12:01 am*    *August 4, 2001*        forms a part of
policy number  *873-87-52*
issued to   *MANAGED HEALTH CARE SYSTEMS*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

(e) "Policy Period" means  the period of time from  the inception date shown  in Item 3 of the Declarations to the earlier of the expiration  date shown in Item 3 of the Declarations or the effective date of cancellation of this policy.

(f)    "Subsidiary" means:

(1)    any for-profit organization which, on or  before  the inception of the Policy Period, is  more than 50%  owned by the  Named Entity, either directly, or indirectly through one or more of its Subsidiaries;

(2) automatically any for-profit organization whose securities are not publicly traded and  whose assets  total  less  than 25%  of  the  total consolidated assets of  the  Company as of  the inception  date of this policy and which becomes a  Subsidiary during the Policy  Period. The Named Entity shall provide the Insurer with full particulars of  the new Subsidiary before the end of the Policy Period; or

(3)    an organization which becomes  a Subsidiary during  the Policy Period (other than a for-profit organization described in paragraph (2) above), but only  upon the  condition that  within 90 days of its  becoming a Subsidiary, the Named Entity shall have  provided the Insurer with full particulars  of  the  new Subsidiary  and agreed to  any  additional premium  or  amendment  of  the provisions of this policy required by the Insurer relating to such new Subsidiary. Further, coverage as shall be afforded  to the new Subsidiary is conditioned  upon  the Named Entity paying when due any  additional  premium  required by  the Insurer relating to such new Subsidiary.

An organization becomes a  Subsidiary when the  Named Entity owns more than a  50% ownership  interest in such Subsidiary,  either directly, or indirectly through one  or  more of  its Subsidiaries. An organization ceases to be a Subsidiary when the Named Entity ceases to own more than a 50% ownership  in such Subsidiary,  either directly, or indirectly through one or more of its Subsidiaries.

In all events, coverage as is afforded under this policy with respect to a Claim made against Individual Insureds or a Claim made against any Subsidiary, shall only apply to Claims for Wrongful Acts committed or allegedly committed  after the  effective time  that such Subsidiary became a  Subsidiary  and prior to the  time that  such Subsidiary ceased to be a Subsidiary.

(g) "Wrongful Act" means:

(2/90)

AIG/GE HFS 00202

ENDORSEMENT# 1    (Con    ued)

This endorsement, effective *12:01 am*    *August 4, 2001*    forms a part of
policy number    *873-87-52*
issued to    *MANAGED HEALTH CARE SYSTEMS*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

(1)    with respect to Individual Insureds, any breach of duty, neglect, error, misstatement, misleading statement, omission or act by such Insureds in their respective capacities as such, or any matter claimed against such Insured solely by reason of their status as directors, officers or Employees of the Company;

(2)    with respect to the Company, any breach of duty, neglect, error, misstatement, misleading statement, omission or act by the Company;

(3)    with respect to service on an Outside Entity, any matter claimed against an Individual Insured as defined in definition (n)(2) arising out of his or her serving as a director, officer, trustee or governor of an Outside Entity in such capacity, but only if such service is at the specific written request or direction of the Company.

With respect to an Employment Practices Claim, the term "Wrongful Act" shall include any Employment Practices Violation.

7.    The Section of the policy entitled DEFINITIONS is hereby amended by adding the following definitions to the end thereof:

(h)    "Affiliate" means: (i) any person or entity that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is in common control with, another person or entity; or (ii) any person or entity that directly, or indirectly through one or more intermediaries, is a successor in interest to another person or entity.

(i)    "Claim" means:
(1)    a written demand for monetary or non-monetary relief (including any request to toll or waive any statute of limitations); or
(2)    a civil, criminal, administrative, regulatory or arbitration proceeding for monetary or non-monetary relief which is commenced by:
(i)        service of a complaint or similar pleading; or
(ii)       return of an indictment (in the case of a criminal proceeding); or
(iii)      receipt or filing of a notice of charges;

(3) an administrative or regulatory investigation when conducted by the Equal Employment Opportunity Commission ("EEOC") (or similar state, local or foreign agency) which is commenced by the filing of a notice of charges, service of a complaint or similar document of which notice has been given to the Insured. However, in no event, shall the term "Claim" include any labor or grievance proceeding which is subject to a collective bargaining agreement.

(2/90)

AIG/GE HFS 00203

ENDORSEMENT# 1    (Cor    ued)

This endorsement, effective *12:01 am*    *August 4, 2001*    forms a part of
policy number   *873-87-52*
issued to   *MANAGED HEALTH CARE SYSTEMS*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

The term "Claim" shall include an Employment Practices Claim and a Securities Claim.

(j)    "Continuity Date" means the date set forth in:

(1) Item 7A of the Declarations with respect to Coverages A and B(ii); or
(2) Item 7B of the Declarations with respect to Coverage B(i);
(3) Item 7C of the Declarations with respect to a Claim made against an Individual Insured(s) arising out of such Insured's service as a director, officer, trustee or governor of an Outside Entity.

(k)    "Employee(s)" means any past, present or future employee, whether such employee is in a supervisory, co-worker or subordinate position or otherwise, including any part-time, seasonal and temporary employee in his or her capacity as such. An individual who is leased to the Company shall also be an Employee, but only if the Company provides indemnification to such leased individual in the same manner as is provided to the Company's employees. Any other individual who is contracted to perform work for the Company, or who is an independent contractor for the Company shall also be an Employee, but only if the Company provides indemnification to such individual in the same manner as that provided to the Company's employees, and such individual is scheduled by written endorsement attached hereto and the Company pays any additional premium required by the Insurer relating to such individual.

(l)    "Employment Practices Claim" means a Claim alleging an Employment Practices Violation.

(m)    "Employment Practices Violation(s)" means any actual or alleged:
(1)    wrongful dismissal, discharge or termination (either actual or constructive) of employment, including breach of an implied contract;
(2)    harassment (including sexual harassment whether "quid pro quo", hostile work environment or otherwise);
(3)    discrimination, (including but not limited to discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy, or disability);
(4)    Retaliation (including lockouts);
(5)    employment-related misrepresentation(s) to an Employee or applicant for employment with the Company;
(6)    employment-related libel, slander, humiliation, defamation, invasion of privacy;
(7)    wrongful failure to employ or promote;
(8) wrongful deprivation of career opportunity, wrongful demotion or negligent employee evaluation, including the giving of negative or defamatory statements in connection with an employee reference;

(2/90)

AIG/GE HFS 00204

ENDORSEMENT# *1*    (Cor    ued)

This endorsement, effective *12:01 am*    *August 4, 2001*    forms a part of
policy number  *873-87-52*
issued to  *MANAGED HEALTH CARE SYSTEMS*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

      (9)  wrongful discipline;

      (10) failure to grant tenure;

      (11) failure to provide or enforce adequate or consistent corporate policies and procedure relating to any Employment Practices Violation;

      (12) violation of an individual's civil rights relating to any of the above,

but only if the Employment Practices Violation relates to an Employee(s), or applicant for employment with the Company or an Outside Entity, whether direct, indirect, intentional or unintentional.

With respect to any customer or client of the Company, whether individually or as a class or group, Employment Practices Violation shall mean only any actual or alleged discrimination, sexual harassment or violation of an individual's civil rights relating to such discrimination or sexual harassment, whether direct, indirect, intentional or unintentional.

(n)    "Individual Insured(s)" means:

      (1)    any past, present or future duly elected or appointed directors, officers, management committee members or members of the Board of Managers of the Company, but only in their capacities as such. Coverage will automatically apply to all new directors, officers, management committee members or members of the Board of Managers of the Company after the inception date of this policy;

      (2)    any past, present or future duly elected or appointed directors, officers, management committee members or members of the Board of Managers of the Company serving in the capacity as director, officer, trustee or governor of an Outside Entity, but only if such service is at the specific written request or direction of the Company;

      (3)    in the event the Company operates outside the United States, then the terms director, officer, management committee member or member of the Board of Managers shall also mean those titles, positions or capacities in such foreign Company which are equivalent to such positions in an organization incorporated or formed within the United States; and

      (4) any Employee(s) of the Company.

(o) "Named Entity" means the organization stated in Item 1 of the Declarations, as amended by this endorsement, whether a corporation, association, limited liability company or other type of business organization.

(2/90)

AIG/GE HFS 00205

ENDORSEMENT # 1    (Con   ued)

This endorsement, effective  *12:01 am*    *August 4, 2001*         forms a part of
policy number   *873-87-52*
issued to   *MANAGED HEALTH CARE SYSTEMS*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

(p)    "No Liability" means: (1) a final judgment of no liability  obtained prior to trial,
in favor of all Insureds, by reason of a motion to dismiss or a motion for
summary judgment, after the exhaustion of all appeals; or (2) a final
judgment of no liability obtained after trial, in favor of all Insureds, after the
exhaustion of all appeals. In no event shall the term "No Liability" apply to a
Claim made against an Insured for which a settlement has occurred.

(q)    "Outside Entity" means:

(1)    a not-for-profit organization under section 501(c)(3) of the Internal
Revenue Code of 1986 (as amended); or

(2)    any other corporation, partnership, joint venture or other organization
listed by endorsement to this policy.

(r)    "Related Wrongful Acts" shall mean Wrongful Acts which are the same,
related or continuous, or Wrongful Acts which arise from a common nucleus
of facts.  Claims can allege Related Wrongful Acts regardless of whether
such Claims involve the same or different claimants, Insureds or legal causes
of action

(s)    "Retaliation" means a Wrongful Act of an Insured relating to or alleged to be
in response to any of the following activities: (1) the disclosure or threat of
disclosure by an Employee to a superior or to any governmental agency of
any act by an Insured which act is alleged to be a violation of any federal,
state, local or foreign law, common or statutory, or any rule or regulation
promulgated thereunder; (2) the actual or attempted exercise by an
Employee of any right that such Employee has under law, including rights
under worker's compensation laws, the Family and Medical Leave Act, the
Americans with Disabilities Act or any other law relating to employee rights;
(3) the filing of any claim under the Federal False Claims Act or any other
federal, state, local or foreign "whistle-blower" law; or (4) Employee strikes.

(t)    "Securities Claim" means a Claim (including a civil lawsuit or criminal
proceeding brought by the Securities & Exchange Commission) made against
an Insured anywhere in the world alleging a violation of any law, regulation
or rule, whether statutory or common law, which is:

(1)    brought by any person or entity alleging, arising out of, based upon or
attributable to, in part or in whole, the purchase or sale, or offer or
solicitation of an offer to purchase or sell, any securities of the
Company; or

AIG/GE HFS 00206

ENDORSEMENT# 7    (Con  ued)

This endorsement, effective    *12:01 am*       *August 4, 2001*          forms a part of
policy number    *873-87-52*
issued to    *MANAGED HEALTH CARE SYSTEMS*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

(2)    brought by a  securities holder of  the Company, whether directly, by
class action, or derivatively  on the  behalf  of  the Company,  or
otherwise, alleging any Wrongful Act of an Insured.

IV.
EXTENSIONS

8.    The Section of  the policy entitled EXTENSIONS is deleted in its entirety and
replaced with the following:

Subject otherwise to the terms hereof, this policy  shall cover Loss arising from  any
Claims  made against  the estates, heirs,  or legal representatives of  deceased
Individual Insureds, and the legal representatives  of Individual Insureds in the  event
of incompetency,  insolvency or  bankruptcy,  who were  Individual Insureds at the
time the Wrongful Act upon which such Claims are based were committed.

Subject otherwise to the  terms hereof, this  policy shall cover Loss  arising from all
Claims made against the  lawful spouse (whether  such status is  derived by  reason
of statutory  law,  common law  or  otherwise of  any  applicable jurisdiction in  the
world) of an Individual Insured for all Claims arising solely out of his or her status as
the  spouse  of  an Individual Insured,  including a  Claim that  seeks  damages
recoverable from marital community property, property jointly held  by the Individual
Insured and the  spouse, or property  transferred from  the Individual  Insured to the
spouse; provided,  however, that  this extension  shall not  afford  coverage for  any
Claim for any actual or  alleged Wrongful Act of the spouse,  but shall apply only  to
Claims arising out of any  actual or alleged Wrongful Acts of  an Individual Insured,
subject to the policy's terms, conditions and exclusions.

V.
EXCLUSIONS

8. Clause 4, EXCLUSIONS is amended as follows:

The first sentence thereof is deleted in its entirety and replaced with the following:

The Insurer shall not be liable to make any  payment for Loss in connection  with a
Claim made against an Insured:

Exclusions 4(b), 4(g), 4(h), 4(i), 4(j), 4(k), 4(l), and 4(m) are modified as follows:

(b)arising out of, based upon or attributable to the committing in fact of any
criminal, fraudulent or dishonest  act, or willful  violation of any  statute, rule
or law;

(2/90)

ENDORSEMENT# 1    (Cor. ued)

This endorsement, effective   12:01 am      August 4, 2001          forms a part of
policy number   873-87-52
issued to   *MANAGED HEALTH CARE SYSTEMS*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*


Ý The Wrongful Act of an Insured shall not be imputed to any other Insured for the purpose of determining the applicability of the following exclusions 4(a) through 4(d). "

(g)  alleging, arising out of, based upon or attributable to the facts alleged, or to the same or Related Wrongful Act alleged or contained in any claim which has been reported, or in any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time;

(h)      alleging, arising out of, based upon or attributable to as of the Continuity Date, any pending or prior: (1) litigation; or (2) administrative or regulatory proceeding or investigation of which an Insured had notice, or alleging any Wrongful Act which is the same or Related Wrongful Act to that alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation;

(i)   which is brought by any Insured or by the Company; or which is brought by any security holder of the Company, whether directly or derivatively, unless such security holder's Claim is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any Insured; provided, however, this exclusion shall not apply to:

   (1)   any Claim brought by an Individual Insured where such Claim is in the form of a cross-claim or third-party claim for contribution or indemnity which is part of and results directly from a Claim which is not otherwise excluded by the terms of this policy; or

   (2)   an Employment Practices Claim brought by an Employee of the Company other than an Employee who is or was a director, member of the Board of Managers or management committee member of the Named Entity;

(j)   for any actual, alleged or threatened discharge, dispersal, release or escape of pollutants; or for any direction or request to test, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants; provided, however this exclusion shall not any Claim brought by a securities holder of the Company in its capacity as such or to any Employment Practices Claim;

(k)   for any Wrongful Act arising out of an Individual Insured serving in a capacity as a director, officer, trustee or governor of an Outside Entity if such Claim is brought by the Outside Entity or a director, officer, trustee or governor thereof;

AIG/GE HFS 00208

ENDORSEMENT# 1    (Con  ued)

This endorsement, effective *12:01 am*    *August 4, 2001*         forms a part of
policy number  *873-87-52*
issued to  *MANAGED HEALTH CARE SYSTEMS*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

(i)    for violation(s) of any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act (except the Equal Pay Act), the National labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules and regulations of the foregoing promulgated thereunder, and amendments thereto or any similar provisions of any federal, state, local or foreign statutory law, or common law; provided; however, that this exclusion shall not apply to Loss arising from a Claim for Retaliation;

(m)    alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly, bodily injury, sickness, disease or death of any person, or damage to or destruction of any tangible property, including the loss of use thereof; provided, however, that this exclusion shall not apply to Securities Claims;

10.    Clause 4, EXCLUSIONS (e), (f) and (n) are deleted in their entirety and replaced with the following:

(e)    alleging, arising out of, based upon or attributable to any actual or alleged act or omission of an Insured serving in any capacity, other than a director, officer, management committee member, member of the Board of Managers or Employee of the Company, or as a director, officer, trustee or governor of an Outside Entity;

(f)    alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of the Company or any other Insured under any express contract or agreement; provided, however, that with respect to Employment Practice Claims, this exclusion shall not apply to the extent any liability does not arise under such express employment contract or agreement;

(n)    alleging, arising out of, based upon or attributable to public offering of securities by the Company, an Outside Entity or an Affiliate or alleging a purchase or sale of such securities subsequent to such public offering;

provided, however, that this exclusion will not apply to:

(1) any purchase or sale of securities exempted pursuant to section 3 (b) of the Securities Act of 1933. Coverage for such purchase or sale transaction shall not be conditioned upon payment of any additional premium; however, the Named Entity shall give the Insurer written notice of any public offering exempted pursuant to section 3 (b), together with full particulars and as soon as practicable, but not later than 30 days after the effective date of the public offering;

(2/90)

AIG/GE HFS 00209

<u>ENDORSEMENT</u># 1    (Con   ued)

This endorsement, effective  *12:01 am*    *August 4, 2001*    forms a part of
policy number   *873-87-52*
issued to   *MANAGED HEALTH CARE SYSTEMS*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

(2) to any public offering of securities (other than a public offering described in paragraph (1) above), as well as any purchase or sale of such subsequent to such public offering, in the event that within 30 days prior to the effective time of such public offering: (i) the Named Entity shall give written notice of such public offering together with full particulars and underwriting information required thereto and  (ii) the Named Entity accepts such terms, conditions and additional premium required by the Insurer for such coverage. Such coverage is also subject to the Named Entity paying when due any such additional premium. In the event the Company gives written notice and full particulars and underwriting information pursuant to (i) above, then the Insurer must offer a quote for coverage under this paragraph.

11.Clause 4, EXCLUSIONS is further amended by the addition of the following Exclusions:

(o)    for emotional distress, or for injury from libel or slander, or defamation or disparagement, or for injury from a violation of a person's right of privacy; provided, however, this exclusion shall not apply to any Securities Claim or Employment Practices Claim;

(p)    alleging, arising out of, based upon or attributable to any obligation pursuant to any worker's compensation, disability benefits, unemployment compensation, unemployment insurance, retirement benefits, social security benefits or similar law; provided, however, this exclusion shall not apply to a Claim for Retaliation;

(q)    alleging, arising out of, based upon or attributable to the purchase by the Company of securities of a "publicly traded entity" in a transaction which resulted, or would result, in such entity becoming an Affiliate or Subsidiary of the Company; provided, however, this exclusion shall not apply in the event that within 30 day prior to it becoming an Affiliate or Subsidiary, the Named Entity gives written notice of the transaction to the Insurer together with full particulars and underwriting information required and agrees to any additional premium or amendment of the provisions of this policy required by the Insurer relating to the transaction. Further, coverage as shall be afforded to the transaction is conditioned upon the Named Entity paying when due any additional premium required by the Insurer relating to the transaction. An entity is a "publicly traded entity" if any securities of such entity have been previously subject to a public offering;

(r)    with respect to Coverage B(i) only:

(1)    for any actual or alleged plagiarism, misappropriation, infringement or violation of copyright, patent, trademark, trade secret or any other

AIG/GE HFS 00210

ENDORSEMENT# 1    (Con  ...ued)

This endorsement, effective *12:01 am    August 4, 2001*    forms a part of
policy number  *873-87-52*
issued to  *MANAGED HEALTH CARE SYSTEMS*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

> intellectual property rights;
>
> (2)    for any actual or alleged violation of any law, whether statutory, regulatory or common law, respecting any of the following activities: anti-trust, business competition, unfair trade practices or tortuous interference in another's business or contractual relationships;
>
> (3)    for the rendering or failure to render any service to a customer or client of the Insured provided, however, that this exclusion shall not apply to any:
>
> > (i)    Claim solely alleging Employment Practices Violations;
> > (ii)   Securities Claim; or
> > (iii)  Claim for the rendering or failure to render any professional service to the extent such professional services errors and omissions coverage has been added to this policy by written endorsement attached hereto;
>
> (4)    seeking fines or penalties or non-monetary relief against the Company; provided, however, that this exclusion shall not apply to any Securities Claim or Employment Practices Claim.

## VI.

Clauses 5, 6,  8, 9,10,11,12,13,14,15,17 are deleted in their entirety and replaced with the following:

12.    Clause 5, LIMIT OF LIABILITY and REINSTATED LIMIT OF LIABILITY (FOR ALL LOSS - INCLUDING DEFENSE COSTS)

Defense Costs are not payable by the Insurer in addition to the limit of liability. Defense Costs are part of Loss and as such are subject to the applicable Limit of Liability for Loss.

A.    General Terms

The Limit of Liability stated in Item 4 of the Declaration page is the limit of the Insurer's liability for all Loss, under Coverage A and Coverage B combined, arising out of all Claims first made against the Insureds during the Policy Period and the Discovery Period (if applicable); however, the Limit of Liability for the Discovery Period shall be part of, and not in addition to, the Limit of Liability for the Policy Period, or the Reinstated Limit as described below (if elected). Further, a Claim which is made subsequent to the Policy Period or the Discovery Period (if applicable) which pursuant to Clause 8(b) or 8(c) is considered made during the Policy Period or Discovery Period shall also be subject to the one applicable aggregate Limit of Liability stated in Item 4 of the Declaration page, or subject to the one aggregate Reinstated Limit if such Reinstated Limit is applicable to such Claim.

(2/90)

AIG/GE HFS 00211

ENDORSEMENT # 1    (Cor ued)

This endorsement, effective  *12:01 am*    *August 4, 2001*         forms a part of
policy number  *873-87-52*
issued to  *MANAGED HEALTH CARE SYSTEMS*

by  *National Union Fire Insurance Company of Pittsburgh, Pa.*

B.      Reinstated Limit of Liability

In the event of a Claim under this policy, the Named Entity shall have the right to purchase a Reinstated Limit equal to the Limit of Liability stated in Item 4 of the Declarations. The Reinstated Limit shall be subject to the following conditions:

1.      The right to elect the Reinstated Limit commences on the date a Claim is reported to the Insurer and expires on the last day of the Policy Period; provided, that in all events only one reinstatement is permitted under this policy. The effective date of the reinstatement shall be the date on which the Insurer acknowledges receipt of the written notice of the Insured's election to exercise the reinstatement.

2.      If the Policy Period of this policy is more than one year, then the additional premium to elect the Reinstated Limit at any time after one year from the inception date of this policy shall be fixed at 150% of the premium set forth in Item 6 of the Declarations. Regardless of the length of the Policy Period of this policy, the additional premium to elect the Reinstated Limit within one year from the inception date of this policy shall be an amount determined by the Insurer at the time of the election of the Reinstated Limit unless otherwise indicated by written endorsement to this policy.

3.      The Reinstated Limit shall only apply to Claims made against an Insured after the effective date of the reinstatement and prior to the end of the Policy Period or the Discovery Period, if applicable, ("Reinstatement Claims"); provided, however, that the Reinstated Limit shall not apply to Claims which allege a Related Wrongful Act to Claim(s) reported to the Insurer prior to the effective date of the reinstatement.

4.      The Reinstated Limit shall be the maximum liability of the Insurer for all Reinstatement Claims. The Limit of Liability described in clause 5A as applicable to claims made against the Insureds prior to effective date of the reinstatement shall not apply to any Reinstatement Claim.

5.      Upon exercise of the Reinstated Limit, the entire premium set forth in Item 6 of the Declarations shall be deemed fully earned; the Insureds shall not be entitled to any return premium as a result of the exercise of the Reinstated Limit nor shall any of the premium paid for the policy be credited toward the additional premium required to exercise the Reinstated Limit.

6.      In no event shall the right to a reinstatement apply if prior to the effective date of the reinstatement, this policy has been cancelled, is otherwise not in effect, or the Discovery Period has been elected.

7.      Other than as stated above, coverage for Reinstatement Claims shall be subject to the same terms, conditions and exclusions of the policy applicable to other Claims under this policy. The Insurer cannot

AIG/GE HFS 00212

ENDORSEMENT # 1    (Cor    ued)

This endorsement, effective  *12:01 am*    *August 4, 2001*    forms a part of
policy number  *873-87-52*
issued to  *MANAGED HEALTH CARE SYSTEMS*

by  *National Union Fire Insurance Company of Pittsburgh, Pa.*

otherwise modify any terms, conditions or exclusions of this policy as a condition of providing the reinstatement.

13.    Clause 6, RETENTION CLAUSE

The Insurer shall only be liable for the amount of Loss arising from a Claim which is in excess of the Retention amount stated in Item 5 of the Declarations, such Retention amount to be borne by the Company or the Insureds and shall remain uninsured with regard to all Loss under: (1) Coverage A or B(ii) for which the Company has indemnified or is permitted or required to indemnify the Individual Insured(s) ("Indemnifiable Loss"), or (2) Coverage B(i). A single Retention amount shall apply to Loss arising from all Claims alleging the same Wrongful Act or Related Wrongful Act.

Subject to the above paragraph, the Retention amounts stated in Item 5 of the Declarations shall apply. In the event a Claim triggers more than one amount stated in Item 5 of the Declarations, only the highest such amount shall apply, which amount shall apply to the entire Claim.

The retention amount shall be reduced in the event that an Insured consents to the first "Settlement Opportunity", as defined in Clause 9, by the percentage described in Clause 9, subject to the conditions described in Clause 9.

No Retention shall apply to a Claim which is in the form of a civil action for monetary relief and the Insurer shall thereupon reimburse the Defense Costs paid by the Insured, in the event of:

(1)    a determination of No Liability of all Insureds; or
(2)    a dismissal or a stipulation to dismiss the civil litigation Claim without prejudice and without the payment of any consideration by any Insured;

provided, however, that in the case of (2) above, such reimbursement shall occur ninety (90) days after the date of dismissal or stipulation as long as the Claim is not re-brought (or any other Claim which is subject to the same single retention by virtue of Clause 6 is not brought) within that time, and further subject to an undertaking by the Company in a form acceptable to the Insurer that such reimbursement shall be paid back by the Company to the Insurer in the event the Claim (or any other Claim which is subject to the same single retention by virtue of Clause 6) is brought after such 90 day period and before the expiration of the statute of limitations for such Claim.

14.    Clause 8, NOTICE/CLAIM REPORTING PROVISIONS

Notice hereunder shall be given in writing to the Insurer named in Item 8 of the Declaration page at the address indicated in Item 8 of the Declaration page.

AIG/GE HFS 00213

(2/90)

ENDORSEMENT# 1    (Cor    ued)

This endorsement, effective  *12:01 am*    *August 4, 2001*    forms a part of
policy number  *873-87-52*
issued to  *MANAGED HEALTH CARE SYSTEMS*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

If mailed, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice. A Claim shall be considered to have been first made against an Insured when written notice of such Claim is received by any Insured, by the Company on the behalf of any Insured or by the Insurer, whichever comes first.

(a)    The Company or the Insureds shall, as a condition precedent to the obligations of the Insurer under this policy, give written notice to the Insurer of any Claim made against an Insured as soon as practicable and either:
   (1)    anytime during the Policy Period or during the Discovery Period (if applicable); or
   (2)    within 30 days after the end of the Policy Period or the Discovery Period (if applicable), as long as such Claim is reported no later than 30 days after the date such Claim was first made against an Insured.

(b)    If written notice of a Claim has been given to the Insurer pursuant to Clause 8(a) above, then any Claim which is subsequently made against the Insureds and reported to the Insurer alleging an Related Wrongful Act to the Claim for which such notice has been given, shall be considered made at the time such notice was given.

(c)    If during the Policy Period or during the Discovery Period (if applicable) the Company or the Insureds shall become aware of any circumstances which may reasonably be expected to give rise to a Claim being made against the Insureds and shall give written notice to the Insurer of the circumstances and the reasons for anticipating such a Claim, with full particulars as to dates, persons and entities involved, then any Claim which is subsequently made against the Insureds and reported to the Insurer alleging, arising out of, based upon or attributable to such circumstances or alleging any Related Wrongful Act to such circumstances, shall be considered made at the time such notice of such circumstances was given.

15. Clause 9, DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (INCLUDING THE ADVANCEMENT OF DEFENSE COSTS)

The Insurer does not assume any duty to defend. The Insureds shall defend and contest any Claim made against them.

Notwithstanding the foregoing, the Insureds shall have the right to tender the defense of the Claim to the Insurer, which right shall be exercised in writing by the Named Entity on behalf of all Insureds to the Insurer pursuant to the notice provisions of Clause 8 of this policy. This right shall terminate if not exercised within 30 days of the date the Claim is first made against an Insured, pursuant to Clause 8 of the policy. Further, from the date the Claim is first made against the

(2/90)

AIG/GE HFS 00214

ENDORSEMENT# 1    (^ :r    ued)

This endorsement, effective  *12:01 am*    *August 4, 2001*    forms a part of
policy number  *873-87-52*
issued to  *MANAGED HEALTH CARE SYSTEMS*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

Insureds to the date when the Insurer accepts the tender of the defense of such Claim, the Insureds shall take no action, or fail to take any required action, that prejudices the rights of the Insureds or the Insurer with respect to such Claim. Provided that the Insureds have complied with the foregoing, the Insurer shall be obligated to assume the defense of the Claim, even if such Claim is groundless, false or fraudulent. The assumption of the defense of the Claim shall be effective upon written confirmation sent thereof by the Insurer to the Named Entity. Once the defense has been so tendered, the Insured shall have the right to effectively associate with the Insurer in the defense and the negotiation of any settlement of any Claim, subject to the provisions of this Clause 9. However, the Insurer shall not be obligated to defend such Claim after the Limit of Liability has been exhausted, or after an Insured's rejection of a Settlement Opportunity as defined in this Clause 9.

When the Insurer has not assumed the defense of a Claim pursuant to Clause 9, the Insurer shall advance nevertheless, at the written request of the Insured, Defense Costs prior to the final disposition of a Claim. Such advanced payments by the Insurer shall be repaid to the Insurer by the Insureds or the Company, severally according to their respective interests, in the event and to the extent that the Insureds or the Company shall not be entitled under the terms and conditions of this policy to payment of such Loss.

The Insureds shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any Defense Costs without the prior written consent of the Insurer. Only those settlements, stipulated judgments and Defense Costs which have been consented to by the Insurer shall be recoverable as Loss under the terms of this policy. The Insurer's consent shall not be unreasonably withheld, provided that the Insurer, when it has not assumed the defense of a Claim pursuant to this Clause 9, shall be entitled to effectively associate in the defense and the negotiation of any settlement of any Claim, and provided further that in all events the Insurer may withhold consent to any settlement, stipulated judgment or Defense Costs, or any portion thereof, to the extent such Loss is not covered under the terms of this policy.

The Insurer shall have the right to effectively associate with the Company in the defense of any Claim that appears reasonably likely to involve the Insurer, including but not limited to negotiating a settlement. The Company and the Insureds shall give the Insurer full cooperation and such information as it may reasonably require.

If the Insurer recommends a settlement within the policy's applicable Limit of Liability which is acceptable to the claimant (a "Settlement Opportunity"), and the Insureds consent to such settlement, then the Insured's applicable retention amount shall be retroactively reduced by ten percent (10%) for such Loss. It shall be a condition to such reduction that the Insureds must consent to such settlement within thirty (30) days of the date the Insureds are first made aware of the

AIG/GE HFS 00215

ENDORSEMENT# 1    (Cor   ued)

This endorsement, effective  *12:01 am*    *August 4, 2001*    forms a part of
policy number   *873-87-52*
issued to   *MANAGED HEALTH CARE SYSTEMS*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

Settlement Opportunity, or in the case of a Settlement Opportunity which arises from a settlement offer by the claimant, then within the time permitted by the claimant to accept such settlement offer, but in all events no later than thirty (30) days after the settlement offer was made.

However, if a Settlement Opportunity arises and the Insureds do not consent to the settlement within the time prescribed above, the retention amount shall remain the applicable amount set forth in Item 5 of the Declarations even if consent is given to a subsequent Settlement Opportunity.

Furthermore, in the event the Insureds do not consent to the first Settlement Opportunity within the time prescribed, then, subject to the applicable limit of liability, the Insurer's liability for all Loss on account of such Claim shall not exceed: (1) the amount for which the Insurer could have settled such Claim plus Defense Costs incurred as of the date such settlement was proposed in writing by the Insurer, ("Settlement Opportunity Amount") plus (2) 50% of covered Loss in excess of such Settlement Opportunity Amount, it being a condition of this insurance that the remaining 50% of such Loss excess of the Settlement Opportunity Amount shall be carried by the Company and the Insureds at their own risk and be uninsured. Notwithstanding the foregoing, this paragraph shall not apply until the Settlement Opportunity Amount exceeds the Retention amount stated in Item 5 of the Declaration page.

16.    Clause 10, DISCOVERY CLAUSE

Except as indicated below, if the Named Entity shall cancel or the Named Entity or the Insurer shall refuse to renew this policy, the Named Entity shall have the right to a period of either one, two or three years following the effective date of such cancellation or nonrenewal upon payment of the respective "Additional Premium Amount" described below (herein referred to as the "Discovery Period") in which to give to the Insurer written notice of Claims first made against the Insureds during said Discovery Period for any Wrongful Act occurring prior to the end of the Policy Period and otherwise covered by this policy. The rights contained in this paragraph shall terminate, however, unless written notice of such election together with the additional premium due is received by the Insurer within 30 days of the effective date of cancellation or nonrenewal. The Additional Premium for the Discovery Period shall be fully earned at the inception of the Discovery Period. The Discovery Period is not cancelable. This clause and the rights contained herein shall not apply to any cancellation resulting from non-payment of premium.

The Additional Premium Amount for: (1) one year shall be 75% of the "full annual premium"; (2) two years shall be 150% of the "full annual premium"; (3) three years shall be a reasonable premium amount to be mutually agreed upon by the Insured and the Insurer. As used herein, "full annual premium" means the premium level in effect immediately prior to the end of the Policy Period.

AIG/GE HFS 00216

ENDORSEMENT# *1*    (C^r   ued)

This endorsement, effective *12:01 am*    *August 4, 2001*    forms a part of
policy number  *873-87-52*
issued to    *MANAGED HEALTH CARE SYSTEMS*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

In the event of a Transaction, as defined in Clause 12, the Named Entity shall have the right, within 30 days before the end of the Policy Period, to request an offer from the Insurer of a Discovery Period (with respect to Wrongful Acts occurring prior to the effective time of the Transaction) for a period of no less than three years or for such longer or shorter period as the Named Entity may request. The Insurer shall offer such Discovery Period pursuant to such terms, conditions and premium as the Insurer may reasonably decide. In the event of a Transaction, the right to a Discovery Period shall not otherwise exist except as indicated in this paragraph.

17. Clause 11, CANCELLATION CLAUSE

This policy may be canceled by the Named Entity at any time only by mailing written prior notice to the Insurer or by surrender of this policy to the Insurer or its authorized agent.

This policy may be canceled by or on the behalf of the Insurer only in the event of nonpayment of premium by the Named Entity. In the event of non-payment of premium by the Named Entity, the Insurer may cancel this policy by delivering to the Named Entity or by mailing to the Named Entity, by registered, certified, or other first class mail, at the Named Entity's address as shown in Item 1 of the Declarations, written notice stating when, not less than 30 days thereafter, the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. The Policy Period terminates at the date and hour specified in such notice, or at the date and time of surrender. The Insurer shall have the right to the premium amount for the portion of the Policy Period during which the policy was in effect.

If this policy shall be canceled by the Named Entity, the Insurer shall retain the customary short rate proportion of the premium herein.

If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

18. Clause 12, CHANGE IN CONTROL OF NAMED ENTITY

If during the Policy Period:

a.    the Named Entity shall consolidate with or merge into, or sell all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert; or

(2/90)

AIG/GE HFS 00217

ENDORSEMENT# 1   (ᴄ    ᴜed)

This endorsement, effective *12:01 am*      *August 4, 2001*      forms a part of
policy number   *873-87-52*
issued to   *MANAGED HEALTH CARE SYSTEMS*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*


   b.      any person or entity or group of persons or entities acting in concert shall
           acquire an amount of the outstanding securities representing more than
           50% of the voting power for the election of directors of the Named Entity,
           or acquires the voting rights of such an amount of such securities;

   (either of the above events herein referred to as the "Transaction"),

   then this policy shall continue in full force and effect as to Wrongful Acts occurring
   prior to the effective time of the Transaction, but there shall be no coverage
   afforded by any provision of this policy for any actual or alleged Wrongful Act
   occurring after the effective time of the Transaction. This policy may not be
   canceled after the effective time of the Transaction and the entire premium for this
   policy shall be deemed earned as of such time. The Named Entity shall also have
   the right to an offer by the Insurer of a Discovery Period described in Clause 10 of
   the policy.

   The Named Entity shall give the Insurer written notice of the Transaction as soon
   as practicable, but not later than 30 days after the effective date of the
   Transaction.

## 19. Clause 13, SUBROGATION

   In the event of any payment under this policy, the Insurer shall be subrogated to
   the extent of such payment to all the Company's and the Insured's right of
   recovery thereof, and the Company and the Insureds shall execute all papers
   required and shall do everything that may be necessary to secure such rights,
   including the execution of such documents necessary to enable the Insurer to
   effectively bring suit in the name of the Company or the Insureds. In no event,
   however, shall the Insurer exercise its rights of subrogation against an Insured
   under this policy unless such Insured has been convicted of a criminal act, or been
   determined to have committed a dishonest, fraudulent act or willful violation of any
   statute, rule or law, or obtained any profit or advantage to which such Insured was
   not legally entitled.

## 20. Clause 14, OTHER INSURANCE AND INDEMNIFICATION

   Such insurance as is provided by this policy shall apply only as excess over any
   other valid and collectible insurance. This policy specifically shall be excess of any
   other policy pursuant to which any other insurer has a duty to defend a Claim for
   which this policy may be obligated to pay Loss.

   In the event of a Claim against an Insured arising out of his or her service as a
   director, officer, trustee or governor of an Outside Entity or an Employment
   Practices Claim against a leased Employee as described in definition (k) of Clause 2,
   coverage as is afforded by this policy shall be specifically excess of indemnification

AIG/GE HFS 00218

ENDORSEMENT# *1*    (Cor  ued)

This endorsement, effective *12:01 am*    *August 4, 2001*    forms a part of
policy number  *873-87-52*
issued to    *MANAGED HEALTH CARE SYSTEMS*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

provided by such Outside Entity or such leasing company and any insurance provided to such Outside Entity or such leasing company.

Further, in the event other insurance is provided to the Outside Entity or leasing company referenced in the above paragraph, or is provided under any pension trust or employee benefit plan fiduciary liability insurance policy, and such other insurance is provided by the Insurer or any member company of American International Group, Inc. (AIG) (or would be provided but for the application of the retention amount, exhaustion of the limit of liability or failure to submit a notice of a Claim) then the Insurer's maximum aggregate Limit of Liability for all Losses combined in connection with a Claim covered, in part or in whole, by this policy and such other insurance policy issued by AIG shall not exceed the greater of the Limit of Liability of this policy or the limit of liability of such other AIG insurance policy.

21.  Clause 15, NOTICE AND AUTHORITY

It is agreed that the Named Entity shall act on behalf of the Subsidiaries and all Insureds with respect to the giving of notice of a Claim, the giving and receiving of notice of cancellation, the payment of premiums and the receiving of any return premiums that may become due under this policy, the receipt and acceptance of any endorsements issued to form a part of this policy, the exercising or declining of the right to tender the defense of a Claim to the Insurer and the exercising or declining of any right to a Discovery Period or Reinstated Limit.

22.  Clause 17, ACTION AGAINST INSURER

Except as provided in Clause 18 of the policy, no action shall lie against the Insurer unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the Insureds' obligation to pay shall have been finally determined either by judgment against the Insureds after actual trial or by written agreement of the Insureds, the claimant and the Insurer.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the Insurer as a party to any action against the Insureds or the Company to determine the Insureds' liability, nor shall the Insurer be impleaded by the Insureds or the Company or their legal representatives. Bankruptcy or insolvency of the Company or the Insureds or of their estates shall not relieve the Insurer of any of its obligations hereunder.

VII.

AIG/GE HFS 00219

ENDORSEMENT# *1*    (Cor   ued)

This endorsement, effective *12:01 am   August 4, 2001*    forms a part of
policy number  *873-87-52*
issued to  *MANAGED HEALTH CARE SYSTEMS*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

23. Clause 7, COINSURANCE CLAUSE, is deleted in its entirety and replaced with the
following:

Clause 7, PRE-AUTHORIZED DEFENSE ATTORNEYS FOR DESIGNATED CLAIMS

This clause applies only to an Employment Practices Claim or a Securities Claim
(each of the foregoing hereinafter referred to as a "Designated Claim").

Affixed as Appendix A hereto and made a part of this policy is a list or lists of Panel
Counsel law firms ("Panel Counsel Firms") from which a selection of legal counsel
shall be made to conduct the defense of any Designated Claim against an Insured
pursuant to the terms set forth below.

In the event the Insurer has assumed the defense pursuant to Clause 9 of this
policy, then the Insurer shall select a Panel Counsel Firm to defend the Insureds. In
the event the Insureds are already defending a Designated Claim, then the Insureds
shall select a Panel Counsel Firm to defend the Insureds.

The selection of the Panel Counsel Firm, whether done by the Insurer or the
Insureds, shall be from the list of Panel Counsel Firms designated for the type of
Claim and be from the jurisdiction in which the Designated Claim is brought. In the
event a Designated Claim is brought in a jurisdiction not included on the appropriate
list, the selection shall be made from a listed jurisdiction which is the nearest
geographic jurisdiction to either where the Designated Claim is maintained or where
the corporate headquarters or state of formation of the Named Entity is located. In
such instance, however, the Insurer shall, at the written request of the Named
Entity, assign a non-Panel Counsel Firm of the Insurer's choice in the jurisdiction in
which the Designated Claim is brought to function as "local counsel" on the
Designated Claim to assist the Panel Counsel Firm which will function as "lead
counsel" in conducting the defense of the Designated Claim.

With the express prior written consent of the Insurer, an Insured may select (in the
case of the Insured defending the Claim), or cause the Insurer to select (in the case
of the Insurer defending the Claim), a Panel Counsel Firm different from that
selected by other Insured defendants if such selection is required due to an actual
conflict of interest or is otherwise reasonably justifiable.

The list of Panel Counsel Firms may be amended from time to time by the Insurer.
However, no change shall be made to the specific list attached to this policy during
the Policy Period without the consent of the Named Entity.

VIII.

The following Clauses are hereby added to the policy:

AIG/GE HFS 0022\

ENDORSEMENT# *1*    (C^t   ued)

This endorsement, effective *12:01 am*    *August 4, 2001*    forms a part of
policy number  *873-87-52*
issued to   *MANAGED HEALTH CARE SYSTEMS*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

24.  Clause 18, DISPUTE RESOLUTION PROCESS

The Insured shall have the option, in its sole discretion, to submit all disputes or
differences which may arise under or in connection with this policy, whether arising
before or after termination of this policy, including any determination of the amount
of Loss,   to the alternative dispute resolution process ("ADR") set forth in this
clause.

The Insureds may elect the type of ADR discussed below. The Insurer agrees to
submit to the ADR process chosen by the Insured.  Once elected, the ADR cannot
be terminated prior to a determination without consent of the Insured and the
Insurer.

There shall be two choices of ADR: (1) non-binding mediation administered by the
American Arbitration Association, in which the Insurer and Insureds shall try in
good faith to settle the dispute by mediation under or in accordance with its then-
prevailing Commercial Mediation Rules; or (2) arbitration submitted to the American
Arbitration Association under or in accordance with its then-prevailing Commercial
Arbitration Rules, in which the arbitration panel shall be composed of three
disinterested individuals.   In either mediation or arbitration, the mediator(s) or
arbitrators shall have knowledge of the legal, corporate management, or insurance
issues relevant to the matters in dispute.   The mediator(s) or arbitrators shall also
give due consideration to the general principles of the law of the state where the
Named Entity is incorporated or formed in the construction or interpretation of the
provisions of this policy; provided, however, that the terms, conditions, provisions
and exclusions of this policy are to be construed in an even-handed fashion in the
manner most consistent with the relevant terms, conditions, provisions or
exclusions of the policy. In the event of arbitration, the decision of the arbitrators
shall be final and binding and provided to both parties, and the arbitrators' award
shall not include attorneys fees or other costs. In the event of mediation, either
party shall have the right to commence a judicial proceeding; provided, however,
that no such judicial proceeding shall be commenced until the mediation shall have
been terminated and at least 120 days shall have elapsed from the date of the
termination of the mediation. In all events, each party shall share equally the
expenses of the ADR.

Either choice of ADR may be commenced in New York, New York; Atlanta,
Georgia; Chicago, Illinois; Denver, Colorado; or in the state indicated in Item 1 of
the Declarations page as the mailing address for the Named Entity.  The Named
Entity shall act on behalf of all Insureds in deciding to proceed with ADR under this
clause.

25.  Clause 19, REPRESENTATIONS AND SEVERABILITY

AIG/GE HFS 00221

(2/90)

ENDORSEMENT# 1    (Cor    ued)

This endorsement, effective *12:01 am    August 4, 2001*    forms a part of
policy number  *873-87-52*
issued to    *MANAGED HEALTH CARE SYSTEMS*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

In granting coverage under this Policy, it is agreed that the Insurer has relied upon the statements and representations contained in the application for this policy (including materials submitted thereto and, if this is a renewal application, all such previous policy applications for which this policy is a renewal) as being accurate and complete. All such statements and representations shall be deemed to be material to the risk assumed by the Insurer, are the basis of this policy and are to be considered as incorporated into this policy.

With respect to such statements and representations, no knowledge or information possessed by any Individual Insured, except for those person or persons who executed the application, shall be imputed to any other Individual Insured. If any person who executed the application knew that such statement or representation was inaccurate or incomplete, then this policy will be void as to all Insureds other than Individual Insureds who are "non-employee Directors" of the Company and who did not personally know the statement or representation to be inaccurate or incomplete. The term "non-employee Director" shall have the meaning described in Securities & Exchange Commission rules or regulations promulgated pursuant to section 16 of the Securities Exchange Act of 1934).

26.  Clause 20, WORLDWIDE TERRITORY

This policy shall apply to Claims made against an Insured anywhere in the world.

27.  Clause 21, CONVERSION

This policy shall automatically convert to the policy form entitled DIRECTORS, OFFICERS AND PRIVATE COMPANY LIABILITY INSURANCE ("PrivateEdge")bearing policy form number 68462 (8/97). It is expressly understood that the Insured's consent is not required as a condition precedent to such conversion. Such conversion shall occur on the date and time the DIRECTORS, OFFICERS AND PRIVATE COMPANY LIABILITY INSURANCE ("PrivateEdge") form is approved by the appropriate insurance department in the state of domicile of the Named Entity as stated in Item 1. of the Declarations. The Insurer is hereby authorized to replace this policy with the DIRECTORS, OFFICERS AND PRIVATE COMPANY LIABILITY INSURANCE ("PrivateEdge")bearing policy form numbers 68462 (8/97) upon such approval as soon as practicable. The physical re-issuance of the policy form shall not be a condition precedent to the effectiveness of this Clause.

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.

AIG/GE HFS 00222

_____
AUTHORIZED REPRESENTATIVE

(2/90)

ENDORSEMENT# 2

This endorsement, effective *12:01 am*     *August 4, 2001*     forms a part of
policy number   *873-87-52*
issued to *MANAGED HEALTH CARE SYSTEMS*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

## OUTSIDE ENTITY ENDORSEMENT

In consideration of the premium   charged, it is hereby understood and agreed that the
following entities shall be deemed an "Outside Entity" with respect to its corresponding
Continuity Date below:

OUTSIDE ENTITY

1)     a not-for-profit organization under
       section 501 (c)(3) of the Internal Revenue
       Code of 1986 (as amended).

CONTINUITY DATE

*August 4, 2000*

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

*END 002*

AIG/GE HFS 00223

ENDORSEMENT# 3

This endorsement, effective   12:01 am      August 4, 2001           forms a part of
policy number   873-87-52
issued to   MANAGED HEALTH CARE SYSTEMS


by      National Union Fire Insurance Company of Pittsburgh, Pa.

## CAPTIVE INSURANCE COMPANY

In consideration of the premium charged, it is hereby understood and agreed that the Insurer shall
not be liable to make any payments for Loss in connection with any claim or claims made against
the Directors or Officers alleging, arising out of, based upon or attributable to the ownership,
management, maintenance and/or control by the Company of any captive insurance company or
entity including but not limited to claims alleging the insolvency or bankruptcy of the Named
Corporation as a result of such ownership, operation, management and control.


_____

AUTHORIZED REPRESENTATIVE

*END 003*

51699 (4/91)                                                          AIG/GE HFS 00224

ENDORSEMENT# 4

This endorsement, effective *12:01 am*    *August 4, 2001*    forms a part of
policy number  *873-87-52*
issued to *MANAGED HEALTH CARE SYSTEMS*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

## COMMISSIONS EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that the Insurer shall not be liable to make any payment for Loss in connection with any claim(s) made against any Insured(s) alleging, arising out of, based upon, or attributable to:

(i)    Payments, commissions, gratuities, benefits or any other favors to or for the benefit of any full or part-time domestic or foreign government or armed services officials, agents, representatives, employees or any members of their family or any entity with which they are affiliated; or

(ii)    Payments, commissions, gratuities, benefits or any other favors to or for the benefit of any full or part-time officials, directors, agents, partners, represent-atives, principal shareholders, or owners or employees, or "affiliates" (as that term is defined in The Securities Exchange Act of 1934, including any officers, directors, agents, owners, partners, representatives, principal shareholders or employees of such affiliates) of any customers of the company or any members of their family or any entity with which they are affiliated; or

(iii)    Political contributions, whether domestic or foreign.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

*END 004*

AIG/GE HFS 00225

ENDORSEMENT# 5

This endorsement, effective  *12:01 am*    *August 4, 2001*        forms a part of
policy number  *873-87-52*
issued to   *MANAGED HEALTH CARE SYSTEMS*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (BROAD FORM)

In consideration of the premium charged, it is hereby understood and agreed that the Insurer shall not be liable to make any payment for Loss in connection with any claim or claims made against the Directors or Officers:

A.    alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly the hazardous properties of nuclear material, including but not limited to:

   (1)    nuclear material located at any nuclear facility owned by, or operated by or on behalf of, the Company, or discharged or dispersed therefrom; or

   (2)    nuclear material contained in spent fuel or waste which was or is at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of the Company; or

   (3)    the furnishing by an insured or the Company of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility; or

   (4)    claims for damages to the company or its shareholders which alleges, arises from, is based upon, is attributed to or in any way involves, directly or indirectly, the hazardous properties of nuclear material.

B.    (1)    which is insured under a nuclear energy liability policy issued by the Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability underwriters or Nuclear Insurance Association of Canada or would be insured under any such policy but for its termination or exhaustion of its Limit of Liability; or

   (2)    with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the Company or any insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or byproduct material;

*END 005*                                                AIG/GE HFS 00226

51723                              – 1 –

EDO246

ENDORSEMENT# 5    (continued)

"source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means

(a)    any nuclear reactor,

(b)    any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c)    any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d)    any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

AUTHORIZED REPRESENTATIVE

*END 005*

AIG/GE HFS 00227

51723

- 2 -

EDO246

ENDORSEMENT# *6*

This endorsement, effective *12:01 am*    *August 4, 2001*        forms a part of
policy number    *873-87-52*
issued to    *MANAGED HEALTH CARE SYSTEMS*


by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### Specific Investigation/ Claim/Litigation/Event

In consideration of the premium charged, it is hereby understood and agreed that, without limiting the effectiveness of exclusions (d) or (e) of the policy, the Insurer shall not be liable to make any payment for Loss in connection with: (i) any of the Claim(s), notices, events, investigations or actions referred to in any of items (1) through (3) below; (hereinafter "Events"); (ii) the prosecution, adjudication, settlement, disposition, resolution or defense of: (a) any Event(s) or (b) any Claim(s) arising from any Event(s); or (iii) any Wrongful Act(s), underlying facts, circumstances, acts or omissions in any way relating to any Event(s):

    (1)    Wrongful termination suit brought by former President/ COO in 1996 and anything related.

    (2)    MCAD charge brought by Bonnie Allen and anything related.

    (3)    MA Attorney General Office claim involving non-payment of wage complaint brought by Paula Choquette and Loretta Connor and anything related.

It is further understood and agreed that the Insurer shall not be liable for any Loss in connection with:

    (A)    any restatement, retraction, amendment or revision of in part or in whole:

        (i)    any document or statement filed or submitted or required to be filed or submitted with the Securities and Exchange Commission or any other similar federal, state or local agency (including but not limited to any 10K's, 10Q's or annual reports); or

        (ii)    any written or oral statement made regarding the assets, revenues, sales or financial condition of the Company,

    resulting from, arising out, based upon or attributable to any Event or the resolution of said Events; and

    (B)    any Claim(s) alleging, arising out of, based upon, attributable to or in any way related directly or indirectly, in part or in whole, to an Interrelated Wrongful Act (as that term is defined below), regardless of whether or not such Claim involved the same or different Insureds, the same or different legal causes of action or the same or different claimants or is brought in the same or different venue or resolved in the same or different forum.

For the purposes of this endorsement an "Interrelated Wrongful Act" means: (i) any fact, circumstance, act or omission alleged in any Event(s) and/or (ii) any Wrongful Act which is

AIG/GE HFS 00228

(2/90)

ENDORSEMENT# 6    (Con   ued)

This endorsement, effective  *12:01 am*    *August 4, 2001*        forms a part of
policy number    *873-87-52*
issued to    *MANAGED HEALTH CARE SYSTEMS*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

the same as, similar or related to or a repetition of any Wrongful Act alleged in any
Event(s).

ALL OTHER TERMS, CONDITIONS AND EXCLUSION REMAIN UNCHANGED.

AIG/GE HFS 00229

AUTHORIZED REPRESENTATIVE

(2/90)

ENDORSEMENT# 7

This endorsement, effective *12:01 am*    *August 4, 2001*        forms a part of
policy number    *873-87-52*
issued to *MANAGED HEALTH CARE SYSTEMS*


by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### FINAL DETERMINATION WORDING

In consideration of the premium charged, it is hereby understood and agreed that Exclusions (a), (b), (c) and (d) are deleted in their entirety and replaced by the following:

(a)   arising out of, based upon or attributable to the gaining of any profit or advantage to which a judgment or final adjudication adverse to the Insured(s) or an alternative dispute resolution proceeding establishes the Insured(s) was not legally entitled;

(b)   arising out of, based upon or attributable to the committing of any criminal or deliberate fraudulent act which a judgment or final adjudication adverse to the Insured(s) or an alternative dispute resolution proceeding establishes the such criminal or deliberate fraudulent act occurred;

(c)   arising out of, based upon or attributable to the payment to the Insureds of any remuneration without the previous approval of the stockholders of the Company, which payment without such previous approval shall be held through a judgment or final adjudication adverse to the Insured(s) or an alternative dispute resolution proceeding to have been illegal;

(d)   arising out of, based upon or attributable to profits in fact made from the purchase or sale by the Insureds of securities of the Company within the meaning of Section 16(b) of the Securities Exchange Act of 1934 and amendments thereto or similar provisions of any state statutory law if a judgment or final adjudication adverse to the Insured(s) or an alternative dispute resolution proceeding establishes that such 16(b) violation occurred;

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.


_____

AUTHORIZED REPRESENTATIVE

*END 007*

ENDORSEMENT # 8

This endorsement, effective 12:01 am    *August 4, 2001*    forms a part of
policy number    *873-87-52*
issued to    *MANAGED HEALTH CARE SYSTEMS*

By    *National Union Fire Insurance Company of Pittsburgh, PA*

## FOR-PROFIT HEALTH CARE ORGANIZATION
## AMENDATORY ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that this
policy is amended as follows:

I.    AMENDMENTS TO DEFINITIONS

A.  The Definition of Individual Insured(s) shall be amended to include the following at the
    end thereof:

    Individual Insureds shall also include any past, present or future member of any duly
    constituted committee ("Committee Member"); any individual person engaged by a
    duly constituted committee for purposes of providing an expert opinion with regard to
    peer review or credentialling decision concerning an individual physician ("Outside
    Expert"); any individual in charge of any operational department ("Department Head")
    or any medical director, staff physician or faculty member of the Company, regardless
    of whether or not such person is directly employed by the Company or is considered to
    be an independent contractor.

B.  The Definition of Loss shall be amended to include the following at the end thereof:

    1. IRS FINES

       Loss shall include Defense Costs incurred in connection with a Claim seeking an
       assessment of taxes, initial taxes, additional taxes, tax deficiencies, excise taxes or
       penalties pursuant to the following sections of the Internal Revenue Code of 1986
       (as amended):

       Section 4911 (tax on excess expenditures to influence legislation);
       Section 4940 (a);
       Section 4941 (taxes on self-dealing);
       Section 4942 (taxes on failure to distribute income);
       Section 4943 (taxes on excess business holding);
       Section 4944 (taxes on investments which jeopardize charitable purpose);
       Section 4945 (taxes on taxable expenditures);

AIG/GE HFS 00231

Section 6652 (c) (1) (A) and (B) (penalties for failure to file certain information returns or registration statements);

Section 6655 (a) (1) (penalties for failure to pay estimated income tax); and

Section 6656 (a) and (b) (penalties for failure to make deposit of taxes).

2. EMTALA COVERAGE

a. The Definition of Claim(s) is amended to include the following:  Claim shall also mean a civil lawsuit alleging a violation pursuant to the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C., 1396dd *et seq.*, and any similar state or local statute (herein "EMTALA Claim(s)").

b. The Definition of Loss is amended to include coverage for civil fines and penalties assessed pursuant to an EMTALA Claim.

c. It is further understood that a sublimit of liability in the amount of $150,000 shall apply to all EMTALA Claims made and reported during the Policy Period or Discovery Period (if applicable) combined (hereinafter "Sublimit of Liability"). This Sub-Limit of Liability shall be part of and not in addition to the aggregate Limit of Liability stated in the Item of the Declarations entitled Limit of Liability.

d. Solely for the purposes of the coverage afforded herein to EMTALA Claims, exclusion (m) is modified by deleting the phrase "alleging, arising out of, based upon or attributable to" and replacing it with the word "for".

3. GOVERNMENTAL FUNDING DEFENSE COST COVERAGE

Loss shall not include the return of funds which were received from any federal, state or local governmental agency and any interest, fines or penalties arising out of the return of such funds; provided, however, that with regard to Claims for Wrongful Acts arising out of the return, or request to return such funds, this policy shall pay Defense Costs up to an amount not to exceed $1,000,000 ("Government Funding Defense Costs Sublimit"). This Sub-Limit of Liability shall be part of and not in addition to the aggregate Limit of Liability stated in the Item of the Declarations entitled Limit of Liability.  With respect to any Defense Costs coverage afforded pursuant to this paragraph 3, it is understood that:  the Insurer shall be liable to pay 50% of such Defense Costs, excess of a retention in the amount of $1,000,000, up to the Government Funding Defense Costs Sublimit, and subject to the Limit of Liability listed on the Declarations Page. It being a condition of this insurance that the remaining 50% of such Defense Costs shall be carried by the Insureds at their own risk and be uninsured.

It is further understood and agreed that solely with respect to the Governmental Funding Defense Cost coverage provided pursuant to the above paragraph, the No Liability retention waivers located in the section of the policy entitled RETENTION CLAUSE are deleted in their entirety.

AIG/GE HFS 00232

4. <u>EXCESS BENEFIT PENALTY COVERAGE</u>

Loss shall also include any "Excess Benefits" penalty assessed in the amount of 10% by the Internal Revenue Service ("IRS") against any Insured(s) for management's involvement in the award of an "Excess Benefit" and the Defense Costs attributable thereto.   Loss shall specifically exclude: (1) any 25% penalty assessed by the IRS against an Insured deemed to have received an Excess Benefit; (2) Defense Costs incurred to defend any Insured if it has been in fact determined that such individual received an Excess Benefit; and (3) any 200% penalty assessed by the IRS for failure to correct the award of an Excess Benefit.  In all events, the assessment by the IRS of a 200% penalty against any Insured shall void ab initio all coverage afforded pursuant to this paragraph.

For purposes of this endorsement, the term "Excess Benefits" means an excess benefit as defined in the Taxpayer Bill of Rights Act, 2, 26 U.S.C. 4958.

C. The Definition of Wrongful Act is amended to include the following at the end thereof:

With respect to all Insureds, any alleged defect in peer review or credentialling.

II.    AMENDMENTS TO EXCLUSIONS

1. Exclusions 4 (f) is deleted in its entirety and replaced with the following:

(f) alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of the Company or an Insured under any express (written or oral) contract or agreement (including, but not limited to, any liquidated damages, severance agreement or payment, golden parachute agreement, or any compensation agreement payable upon the termination of any Insured); provided, however, that this exclusion shall not apply to:

- Carve out - (1) Employment Practices Claims to the extent that any liability does not arise from such express contract or agreement; or

(2) Claims for Loss alleging Wrongful Acts of an Insured(s) with respect to hospital practice, privileges, credentialling or peer review matters.

2. The following additional exclusions are added to the end of Clause 4. EXCLUSIONS:

(s) alleging, arising out of, based upon or attributable to any failure or omission on the part of the Insureds or the Company to effect and maintain insurance;

(t) alleging, arising out of, based upon or attributable to, or in any way involving, either directly or indirectly, antitrust violations, price fixing, price discriminations, unfair competition, deceptive trade practices and/or monopolies, including any actions, proceedings, claims or investigations related thereto;

(u) alleging, arising out of, based upon or attributable to the Insureds performance or rendering of or failure to perform or render medical or other professional services or treatments for others; provided, however, that this exclusion shall not apply to:

   (1) Employment Practices Claims;

   (2) Claims for Loss alleging Wrongful Acts of an Insured(s) peer review or credentialling processes;

(v) alleging, arising out of, based upon or attributable to any Human Clinical Trial. For purposes of this exclusion (v), "Human Clinical Trial" shall mean any study utilizing humans to provide clinical data for the assessment of a medical treatment, procedure or pharmaceutical.

III.    AMENDED CLAUSE 9

Clause 9 is deleted in its entirety and replaced with the following:

9.    PRE-AUTHORIZED DEFENSE ATTORNEYS FOR ALL CLAIMS

This Clause 9 applies to all Claims.

Affixed as Appendix A hereto and made a part of this policy is a list or lists of Panel Counsel law firms ("Panel Counsel Firms") from which a selection of legal counsel shall be made to conduct the defense of all Claims against an Insured pursuant to the terms set forth below.

In the event the Insurer has assumed the defense pursuant to Clause 8 of this policy, then the Insurer shall select a Panel Counsel Firm to defend the Insureds. In the event

AIG/GE HFS 00234

the Insureds are already defending a Claim, then the Insureds shall select a Panel Counsel Firm to defend the Insureds.

The selection of the Panel Counsel Firm, whether done by the Insurer or the Insureds, shall be from the list of Panel Counsel Firms designated for the type of Claim and be from the jurisdiction in which the Claim is brought. In the event a Claim is brought in a jurisdiction not included on the appropriate list, the selection shall be made from a listed jurisdiction which is the nearest geographic jurisdiction to either where the Claim is maintained or where the corporate headquarters or state of formation of the Named Entity is located. In such instance, however, the Insurer shall, at the written request of the Named Entity, assign a non-Panel Counsel Firm of the Insurer's choice in the jurisdiction in which the Claim is brought to function as "local counsel" on the Claim to assist the Panel Counsel Firm which will function as "lead counsel" in conducting the defense of the Claim.

With the express prior written consent of the Insurer, an Insured may select (in the case of the Insured defending the Claim), or cause the Insurer to select (in the case of the Insurer defending the Claim), a Panel Counsel Firm different from that selected by other Insured defendants if such selection is required due to an actual conflict of interest or is otherwise reasonably justifiable.

The list of Panel Counsel Firms may be amended from time to time by the Insurer. However, no change shall be made to the specific list attached to this policy during the Policy Period without the consent of the Named Entity.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
Authorized Representative

ENDORSEMENT# 8      (Continued)

This endorsement, effective *12:01 am      August 4, 2001*      forms a part of
policy number   *873-87-52*
issued to   *MANAGED HEALTH CARE SYSTEMS*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

C. The Definition of Wrongful Act is amended to include the following at the end thereof:

   With respect to all Insureds, any alleged defect in peer review or credentialling.

II.   AMENDMENTS TO EXCLUSIONS

1.   Exclusions 4 (h) is deleted in its entirety and replaced with the following:

   (h) alleging, arising out of, based upon or attributable to any actual or alleged
       contractual liability of the Company or an Insured under any express (written or
       oral) contract or agreement (including, but not limited to, any liquidated
       damages, severance agreement or payment, golden parachute agreement, or any
       compensation agreement payable upon the termination of any Insured); provided,
       however, that this exclusion shall not apply to:

       (1) Employment Practices Claims to the extent that any liability does not
           arise from such express contract or agreement; or

       (2) Claims for Loss alleging Wrongful Acts of an Insured(s) with respect to
           hospital practice, privileges, credentialling or peer review matters.

2.   The following additional exclusions are added to the end of Clause 4. EXCLUSIONS:

   (r) alleging, arising out of, based upon or attributable to any failure or omission on
       the part of the Insureds or the Company to effect and maintain insurance;

   (s) alleging, arising out of, based upon or attributable to, or in any way involving,
       either directly or indirectly, antitrust violations, price fixing, price
       discriminations, unfair competition, deceptive trade practices and/or monopolies,
       including any actions, proceedings, claims or investigations related thereto;

   (t) alleging, arising out of, based upon or attributable to the Insureds performance
       or rendering of or failure to perform or render medical or other professional
       services or treatments for others; provided, however, that this exclusion shall
       not apply to:

       (1) Employment Practices Claims;

       (2) Claims for Loss alleging Wrongful Acts of an Insured(s) peer review or
           credentialling processes;

*END*

ENDORSEMENT# 8     (Co..,..nued)

This endorsement, effective  12:01 am     August 4, 2001     forms a part of
policy number  873-87-52
issued to  MANAGED HEALTH CARE SYSTEMS

by     National Union Fire Insurance Company of Pittsburgh, Pa.


(u) alleging, arising out of, based upon or attributable to any Human Clinical Trial. For purposes of this exclusion (u), "Human Clinical Trial" shall mean any study utilizing humans to provide clinical data for the assessment of a medical treatment, procedure or pharmaceutical.

III.     AMENDED CLAUSE 9

Clause 9 is deleted in its entirety and replaced with the following:

9.     PRE-AUTHORIZED DEFENSE ATTORNEYS FOR ALL CLAIMS

This Clause 9 applies to all Claims. .

Affixed as Appendix A hereto and made a part of this policy is a list or lists of Panel Counsel law firms ("Panel Counsel Firms") from which a selection of legal counsel shall be made to conduct the defense of all Claims against an Insured pursuant to the terms set forth below.

In the event the Insurer has assumed the defense pursuant to Clause 8 of this policy, then the Insurer shall select a Panel Counsel Firm to defend the Insureds. In the event the Insureds are already defending a Claim, then the Insureds shall select a Panel Counsel Firm to defend the Insureds.

The selection of the Panel Counsel Firm, whether done by the Insurer or the Insureds, shall be from the list of Panel Counsel Firms designated for the type of Claim and be from the jurisdiction in which the Claim is brought. In the event a Claim is brought in a jurisdiction not included on the appropriate list, the selection shall be made from a listed jurisdiction which is the nearest geographic jurisdiction to either where the Claim is maintained or where the corporate headquarters or state of formation of the Named Entity is located. In such instance, however, the Insurer shall, at the written request of the Named Entity, assign a non-Panel Counsel Firm of the Insurer's choice in the jurisdiction in which the Claim is brought to function as "local counsel" on the Claim to assist the Panel Counsel Firm which will function as "lead counsel" in conducting the defense of the Claim.

With the express prior written consent of the Insurer, an Insured may select (in the case of the Insured defending the Claim), or cause the Insurer to select (in the case of the Insurer defending the Claim), a Panel Counsel Firm different from that selected by

END

INSU

AIG/GE HFS 00237

ENDORSEMENT# 8    (Con. .ued)

This endorsement, effective *12:01 am*    *August 4, 2001*    forms a part of
policy number  *873-87-52*
issued to  *MANAGED HEALTH CARE SYSTEMS*


by    *National Union Fire Insurance Company of Pittsburgh, Pa.*


other insured defendants if such selection is required due to an actual conflict of interest or is otherwise reasonably justifiable.

The list of Panel Counsel Firms may be amended from time to time by the Insurer. However, no change shall be made to the specific list attached to this policy during the Policy Period without the consent of the Named Entity.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*END*

(2/90)    *INSU*

_____

AIG/GE HFS 00238

ENDORSEMENT# 9

This endorsement, effective  12:01 am   August 4, 2001   forms a part of
policy number  873-87-52
issued to  MANAGED HEALTH CARE SYSTEMS

by   National Union Fire Insurance Company of Pittsburgh, Pa.

### EXCLUSION J AMENDED

In consideration of the premium charged herein it is understood and agreed that Clause 4. EXCLUSIONS, as amended by Endorsement #1 (DIRECTORS, OFFICERS AND CORPORATE REIMBURSEMENT INSURANCE POLICY CONVERSION TO PRIVATE EDGE POLICY) is hereby further amended by deleting Exclusion (n) in its entirety and replacing it with the following:

    (n) alleging, arising out of, based upon or attributable to any public or private offering of securities by the Company, an Outside Entity or an Affiliate or alleging a purchase or sale of such securities subsequent to such offering;

    provided, however, that this exclusion will not apply to:

    (1)    any purchase or sale of securities exempted pursuant to section 3(b) of the Securities Act of 1933. Coverage for such purchase or sale transaction shall not be conditioned upon payment of any additional premium; however, the Named Entity shall give the Insurer written notice of any public offering exempted pursuant to section 3(b), together with full particulars and as soon as practicable, but not later than 30 days after the effective date of the public offering;

    (2)    to any private offering of securities if such private offering is less than or equal to $15,000,000 in proceeds; coverage for such private offering shall not be conditioned upon payment of any additional premium; however, the Named Entity shall give the Insurer written notice of any such private offering together with full particulars and as soon as practicable, but not later than 30 days after the effective date of such private offering;

    (3)    to any offering of securities (other than a public offering described in paragraph (1) above or a private offering described in paragraph (2) above), as well as any purchase or sale of such securities subsequent to such offering, in the event that within 30 days prior to the effective time of such offering: (i) the Named Entity shall give the Insurer written notice of such offering together with full particulars and underwriting information required thereto; and (ii) the Named Entity accepts such terms, conditions and additional premium

*END*

*INSU*

(2/90)

AIG/GE HFS 00239

ENDORSEMENT# *9*

This endorsement, effective *12:01 am*     *August 4, 2001*     forms a part of
policy number  *873-87-52*
issued to   *MANAGED HEALTH CARE SYSTEMS*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

## EXCLUSION J AMENDED

In consideration of the premium charged herein it is understood and agreed that Clause 4.
EXCLUSIONS, as amended by Endorsement #1 (DIRECTORS, OFFICERS AND
CORPORATE REIMBURSEMENT INSURANCE POLICY CONVERSION TO PRIVATE EDGE
POLICY) is hereby further amended by deleting Exclusion (n) in its entirety and replacing it
with the following:

(n) alleging, arising out of, based upon or attributable to any public or private
offering of securities by the Company, an Outside Entity or an Affiliate or
alleging a purchase or sale of such securities subsequent to such offering;

provided, however, that this exclusion will not apply to:

(1)     any purchase or sale of securities exempted pursuant to section 3(b)
of the Securities Act of 1933. Coverage for such purchase or sale
transaction shall not be conditioned upon payment of any additional
premium; however, the Named Entity shall give the Insurer written
notice of any public offering exempted pursuant to section 3(b),
together with full particulars and as soon as practicable, but not later
than 30 days after the effective date of the public offering;

(2)     to any private offering of securities if such private offering is less
than or equal to $15,000,000 in proceeds; coverage for such private
offering shall not be conditioned upon payment of any additional
premium; however, the Named Entity shall give the Insurer written
notice of any such private offering together with full particulars and
as soon as practicable, but not later than 30 days after the effective
date of such private offering;

(3)     to any offering of securities (other than a public offering described in
paragraph (1) above or a private offering described in paragraph (2)
above), as well as any purchase or sale of such securities subsequent
to such offering, in the event that within 30 days prior to the
effective time of such offering: (i) the Named Entity shall give the
Insurer written notice of such offering together with full particulars
and underwriting information required thereto; and (ii) the Named
Entity accepts such terms, conditions and additional premium

AIG/GE HFS 00240

ENDORSEMENT# 9   (Continued)

This endorsement, effective  *12:01 am*     *August 4, 2001*         forms a part of
policy number  *873-87-52*
issued to  *MANAGED HEALTH CARE SYSTEMS*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

required by the Insurer for such coverage. Such coverage is also
subject to the Named Entity paying when due any such additional
premium. In the event the Named Entity gives written notice with full
particulars and underwriting information pursuant to (i) above, then
the Insurer must offer a quote for coverage under this paragraph;

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AIG/GE HFS 00241

_____

AUTHORIZED REPRESENTATIVE

(2/90)

ENDORSEMENT #10

This endorsement, effective 12:01 A.M.,   *August 4, 2001*      forms a part of
Policy number: *873-87-52*
Issued to: *Managed Health Care Systems*

by: *National Union Fire Insurance Company of Pittsburgh, PA*

NAMED INSURED AMENDED

In consideration of the premium charged, it is hereby understood and agreed that
the Name of Insured in Item 1 of the Declarations page is amended to read as
follows:

ITEM 1:        Name of Insured:      Managed Health Care Systems, Inc.

               Mailing Address:      99 Derby Street
                                     Suite 300
                                     Hingham, MA 02043

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

Authorized Representative