UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL INGOLDSBY,<br><br>      Intervenor/Plaintiff,<br><br>v.<br><br>NATIONAL UNION FIRE<br>INSURANCE COMPANY OF<br>PITTSBURGH, PA., and<br>INTERNATIONAL INSURANCE<br>GROUP, LTD.,<br><br>      Defendants. | )<br>)<br>)<br>)<br>)    Civil Action No. 05-CV-11128-NG<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT NATIONAL UNION FIRE INSURANCE COMPANY OF
PITTSBURGH, PA'S SUPPLEMENTAL MEMORANDUM OF LAW
<u>IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT</u>**

Defendant National Union Fire Insurance Company of Pittsburgh, PA ("National Union") submits this Supplemental Memorandum of Law in Support of its Motion for Summary Judgment and in Response to the Supplemental Memorandum of Law ("Supplemental Memorandum") submitted by Plaintiff-Intervenor Michael Ingoldsby ("Mr. Ingoldsby").

**I.    INTRODUCTION**

Mr. Ingoldsby has admitted that National Union's Policy contained a contractual liability exclusion. That exclusion excluded from coverage any claim "alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of the Company or any Insured under any express (written or oral) contract or agreement." Mr. Ingoldsby also has admitted that Heller brought only two causes of action against him: (1) breach of guarantee, specifically claiming that Mr. Ingoldsby personally guaranteed the DIP Loan and was therefore directly liable for all moneys due to Heller; and (2) negligence for failing to accurately track and record

downward adjustments to MHCS' receivables in violation of the DIP Loan Agreement between Heller and MHCS. Because both causes of action were premised upon, and would not have existed but for, contractual obligations created by the Guaranty and DIP Loan Agreement, both causes of action against Mr. Ingoldsby were excluded from coverage under National Union's Policy.

In an attempt to avoid this inevitable conclusion, Mr. Ingoldsby claims that the Policy was ambiguous and that the plain language of the contractual liability exclusion should be ignored. He also falsely asserts that even if the contractual liability exclusion applied, coverage should not have been denied because claims that were never actually brought by Heller might have been covered under the Policy. Neither position, however, is supported by the undisputed facts in the case or by the case law cited in Mr. Ingoldsby's Supplemental Memorandum.

## II.  ADMITTED FACTS

All of the following facts are admitted by Mr. Ingoldsby in his Statement of Disputed Material Facts in Opposition to Motion for Summary Judgment filed on December 1, 2006 ("Admitted Facts"):

National Union issued to MHCS a Directors & Officers Insurance Policy bearing policy number 873-87-52, effective August 4, 2001 to August 4, 2002 (the "Policy").

(Undisputed Facts, ¶ 9; Admitted Facts, pp. 5-6). The Policy excluded from coverage any claim:

> alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of the Company or an Insured under any express (written or oral) contract or agreement . . .

(Id.).

MHCS was informed of the Policy's contractual liability exclusion by means of a fax communication dated July 31, 2001 to MHCS Vice President of Finance and Chief Financial

Officer Pamela Jones ("Ms. Jones") from Nicholas Sciotto of International Insurance Group, Ltd. ("IIG"), MHCS' insurance broker. (Undisputed Facts, ¶ 11; Admitted Facts, pp. 6-7). In that fax communication, IIG forwarded to MHCS National Union's proposed terms for the Policy, including the explicit language of the contractual liability exclusion. (Undisputed Facts, ¶ 12; Admitted Facts, pp. 7-8). The Policy, under which Mr. Ingoldsby was insured, was subsequently issued to MHCS by National Union. (Undisputed Facts, ¶ 13; Admitted Facts, p. 8).

Heller's Complaint against Ingoldsby repeatedly based Heller's claims on obligations purportedly created by the DIP Loan Agreement or Ingoldsby's Guarantee.

> 19. Defendant Ingoldsby...guaranteed the obligations of MHCS and Medical Temporaries under the DIP Loan Agreement.
>
> ...
>
> 21. Under Section 3.1(a) of the DIP Loan Agreement, the DIP Loan was secured by, among other assets, MHCS' and Medical Temporaries' Accounts (defined in Section 1.1 as "any right to payment for goods sold or leased or services rendered ... whether or not earned by performance") and accounts receivable.
>
> 22. Under section 3.3(b) of the Loan Agreement, MHCS and Medical Temporaries were each obligated to "keep accurate and complete records of its Accounts and all payments and collections thereon, and [to] submit to Lender on such periodic basis as Lender will request a sales and collections report for the preceding period, in form satisfactory to Lender." Section 6.1 of the Loan Agreement required MHCS and Medical Temporaries to submit a sales and collections report and an accounts receivable aging schedule to Heller by the fifteenth day of every month.
>
> 23. [T]he Defendant[ ] [Ingoldsby] owed duties to Heller to prepare the borrowing base certificates submitted by MHCS and Medical Temporaries to Heller in connection with the DIP Loan in a manner which accurately reported to Heller the "eligible" Medicaid, Medicare, Commercial and Staffing receivables of MHCS and Medical Temporaries, as determined under the DIP Loan Agreement.
>
> ...
>
> 27. Unknown to Heller, Defendant[ ] ... Ingoldsby failed to exercise reasonable care and competence in the preparation and communication to Heller of MHCS' and Medical Temporary's receivable collateral on the borrowing base certificates *submitted in connection with the DIP Loan* [emphasis added] ....

...

## COUNT I
### (Negligent Misrepresentation – against Defendants Jones, Edwards and Michael Ingoldsby)

...

55.    Defendant[ ]... Ingoldsby, in the ordinary course of their business and employment, and in the ordinary course of the business of MHCS and Medical Temporaries, supplied false information to Heller regarding the borrowing base of the eligible Accounts and accounts receivable of MHCS and Medical Temporaries. That false information, in the form of inaccurate borrowing base certificates and DIP Operating Reports, was supplied to Heller for Heller's guidance in its business transactions, i.e., *making advances to MHCS and Medical Temporaries pursuant to the DIP loan* [emphasis added], with the intent and expectation that Heller rely on such information, as it did. The false information, and Heller's justifiable reliance thereon, caused and resulted in pecuniary loss to Heller. Defendant[ ] ... Ingoldsby failed to exercise reasonable care or competence in obtaining or communicating the information regarding the borrowing base.

## COUNT II
### (Breach of Guaranty – Against Defendants Michael and Mary Lee Ingoldsby)

...

57.    Defendants Michael and Mary Lee Ingoldsby personally guaranteed MHCS' and Medical Temporaries' obligations under the DIP Loan.

58.    Defendants Michael and Mary Lee Ingoldsby are directly liable as guarantors of the DIP Loan, for all monies due to Heller, other than monies due with respect to the pre-petition term loans.

(Undisputed Facts, ¶ 28; Admitted Facts, p. 15; Affidavit of Counsel in Support of National Union's Motion for Summary Judgment, ¶ 6 and Exhibit E).

Mr. Ingoldsby provided National Union with notice of the suit. (Undisputed Facts, ¶ 29; Admitted Facts, pp. 16-17). Through letters dated October 11, 2002 and March 6, 2003, National Union denied coverage for Heller's claims against him based upon the Policy's contractual liability exclusion. (Undisputed Facts, ¶ 30; Admitted Facts, p. 17). After the first

letter, counsel for Mr. Ingoldsby sent an e-mail to E. Joseph O'Neil, counsel for National Union, disputing National Union's position.

Mr. O'Neill responded in the March 6, 2003 letter by stating that:

> [Y]our e-mail addresses only the factual allegations asserted by the Plaintiffs against Mr. Ingoldsby in the *Heller* Complaint, disputing the accuracy of the allegations, and does not discuss the substance of the coverage issue. As you may be aware, however, National Union in conducting its coverage analysis, is limited by the allegations asserted in the Complaint, and must consider what policy terms and conditions limit or exclude coverage if the allegations plead [sic] in the Complaint are proven true. National Union understands that the allegations asserted in the *Heller* Complaint are without substantiation at this time, and nothing in this letter or our previous correspondence is intended to suggest that the allegations have any legal or factual merit; rather it is National Union's position that there is no coverage for the claims as they are asserted.

(Admitted Facts, p. 17; Affidavit of Michael Ingoldsby in Opposition to National Union's Motion for Summary Judgment, Exhibit C).

After National Union denied coverage for Heller's claims against Mr. Ingoldsby, he provided his own defense in the Heller Litigation. (Undisputed Facts, ¶31; Admitted Facts, pp. 17-18). Mr. Ingoldsby subsequently filed the instant action seeking coverage under the Policy. In connection therewith, Mr. Ingoldsby filed the Affidavit of James R. Martocci on December 1, 2006 in Support of his Oppositions to IIG's and National Union's Motions for Summary Judgment (the "Martocci Affidavit"). The Martocci Affidavit states in relevant part that:

> In August of 2001, I believe that similar D&O policies were available in which the entity exclusions such as anti-trust and contractual liability applied only as respects claims brought against the Company, not individuals. ... It is clear that both insurance brokers had a duty to obtain the best coverage for their client, and failed to do so.

(The Martocci Affidavit, at ¶10).

### III. ARGUMENT

### A. National Union Properly Denied Coverage Based on the Contractual Liability Exclusion.

National Union was under no obligation to investigate Heller's claims against Mr. Ingoldsby beyond reviewing the allegations of the Heller Complaint. Massachusetts courts have consistently held that an insurer is under no duty to investigate where the allegations in the Complaint lie expressly outside the policy coverage. See Lusalon, Inc. v. Hartford Accident & Indem. Co., 400 Mass. 767, 773 (1987); Transamerica Ins. Co. v. KMS Patriots, L.P., 52 Mass. App. Ct. 189, 193 (2001) ("when the allegations in the underlying complaint 'lie expressly outside the policy coverage and its purpose, the insurer is relieved of the duty to investigate' or defend the claimant"). Both causes of action against Mr. Ingoldsby in the Heller Complaint were based on or arose out of contractual obligations. Those allegations, therefore, were not susceptible to any interpretation that would have brought them within the Policy's coverage.

Mr. Ingoldsby now claims, however, that because the claims brought by Heller were frivolous, National Union had an obligation to consider other potential claims that were never brought by Heller, such as negligent supervision. To support this position, Mr. Ingoldsby cites Terrio v. McDonough, 16 Mass. App. Ct. 163 (1983). The Terrio court, however, held that "an insurance company's obligation to defend against a liability claim *is determined by the allegations in the complaint.*" Id., at 166 (emphasis added). Moreover, the facts and conclusions in the Terrio case directly contradict Mr. Ingoldsby's position.

In Terrio the plaintiff brought an action alleging "sexual assault and battery" and "assault and battery" against the defendant. Id., at 164-65. The defendant then impleaded his homeowner's insurance carrier. Id. The insurer denied coverage because the complaint alleged

- 6 -

that the plaintiff acted intentionally. Id., at 166. The insurer asserted that such acts were excluded by the intentional acts exclusion in its policy. Id.

The defendant/insured disagreed and, like Mr. Ingoldsby, claimed that because the underlying allegations were false, he was entitled to coverage. Id. The defendant/insured argued that he did not act intentionally, claiming in his answer to the complaint that the plaintiff was injured by the defendant's negligence and not by his intentional conduct. Id. The defendant/insured sought coverage because negligence was covered under the policy. Id.

The Terrio court disagreed. Id. It acknowledged that in most cases courts must look at both the facts alleged in the complaint and those known or readily knowable by the insurer. According to the court, however, this did not mean that a court could ignore the actual allegations in the complaint. Id. The Terrio court explained that "[w]hen, as in the instant case, the allegations lie expressly outside the policy coverage and its purpose, the insurer is relieved of the duty to investigate." Id., at 168. The Terrio court further held that "an insurer has no obligation to defend when the allegations of a complaint describe with precision ... conduct of a defendant which the insurance policy expressly excludes from coverage." Id.

There is no difference between Mr. Ingoldsby's argument here and the one unsuccessfully advanced by the plaintiff in Terrio. Mr. Ingoldsby argues that, although the Heller Complaint accused him of violating duties created by the DIP Loan Agreement, he never owed any such duties and, therefore, those claims were frivolous. Mr. Ingoldsby then insists that the only claim that could have been brought against him would have been one for negligent supervision, which he asserts should have been covered under the Policy.

Mr. Ingoldsby's argument should be rejected for the same reasons given by the Terrio court. Even if Heller had subsequently amended its Complaint to assert a negligent supervision

claim against Mr. Ingoldsby, it would have been a claim for negligently supervising duties to Heller created by the DIP Loan Agreement. As explained previously, the Policy's exclusion for any claim "arising out of" any express contract or agreement would have eliminated coverage for such a claim. See Reply Memorandum in Support of National Union's Motion for Summary Judgment Against Plaintiff Ingoldsby and in Opposition to Plaintiff Ingoldsby's Cross Motion for Summary Judgment ("National Union's Reply Brief"), at 23-27[1]

The decision in Open Software Found., Inc. v. U.S. Fidelity & Guar., 307 F.3d 11 (1st Cir. 2002), which Mr. Ingoldsby also cited in his Supplemental Memorandum at page 4 further illustrates this point. In Open Software, the United States Court of Appeals for the First Circuit, interpreting Massachusetts law, acknowledged that the duty to defend "is based on the facts alleged in the complaint and those facts which are known by the insurer." Id., at 14 (citing Boston Symphony Orchstr., Inc. v. Commercial Union Ins. Co., 406 Mass. 7, 10-11, 545 N.E.2d 1156, 1157-58 (1989)).

The First Circuit explained, however, that Massachusetts courts use those extrinsic facts to aid in the interpretation of the complaint, and not as independent factual predicates for a duty to defend. Id., at 15. In other words, extrinsic evidence cannot be used to speculate about allegations that might be made. Instead, it is only an aid to determine whether or not the allegations that already have been made are susceptible to an interpretation that might give rise to coverage.

In OpenSoftware, the insured sued its commercial general liability insurer alleging that the insurer had improperly refused to defend the insured in a private antitrust action. One of the

---

[1] Less than three weeks ago, the Supreme Judicial Court reaffirmed that an "arising out of" insurance policy exclusion requires a "but for" causation analysis. Fuller v. First Financial Insurance Company, 448 Mass. 1, 858 N.E.2d 288, 293-93 (2006). "But for" the duties created by the DIP Loan Agreement to provide Heller with accurate borrowing base certificates, Heller would have had no claims against Mr. Ingoldsby. Therefore, Heller's claims against Mr. Ingoldsby were excluded from coverage by the Policy's contractual liability exclusion.

issues before the First Circuit was whether the policies' personal injury coverage was implicated. Id., at 20-24. The policies at issue, however, only provided personal injury coverage for claims arising out of defamatory or disparaging material. Id., at 20. Neither the complaint nor the initial demand letter to the insured made any reference to a claim for defamation or disparagement. Id.

The insured argued, however, that coverage should be afforded because there was extrinsic evidence that defamatory or disparaging statements may have been made. Id. According to the First Circuit, this extrinsic evidence did not trigger a duty to defend because the plaintiff in the underlying actions was not alleging that any defamatory or disparaging statements caused its injuries. Id., at 21. The First Circuit further concluded that any such statements were relatively immaterial to the theory of liability asserted in the complaint and, therefore, not sufficient to create coverage. Id. According to the First Circuit, "the insured cannot, 'in the absence of a complaint that requires coverage, force its insurer to defend the insured by simply telling the insurer facts that would create coverage.'" Id., at 15 (citing Boston Symphony, 406 Mass., at 15).

Furthermore, each of the cases that Mr. Ingoldsby cites in support of his argument that National Union had a duty to investigate involve "duty to defend" policies. See Supplemental Memorandum, at 3-5. The Policy in this case, however, is not a duty to defend policy. Instead, both the Declarations Page and Section 9 of the Policy explicitly state that the insurer does not assume any duty to defend. See Policy, at Decl. Page and §9.

**B.    The Policy Plainly Excludes Claims Based On Contractual Liability**

Mr. Ingoldsby has admitted that the Policy contained the contractual liability exclusion. See Admitted Facts, pp. 5-6. Mr. Ingoldsby also has admitted that MHCS and its insurance

agent were advised that the exclusion was contained in the Policy. See id.; see also Ingoldsby's Affidavit, at ¶12.  Under Massachusetts law, "an insured is charged with his agent's knowledge of the terms and conditions of an insurance policy." Aguiar v. Generali Assicurazioni Ins. Co., 47 Mass. App. Ct. 687, 690 (1999) ("an insured is charged with his agent's knowledge of the terms and conditions of an insurance policy"); see also Century Indemnity Co. v. Jameson, 333 Mass. 503, 504 (1956) ("knowledge of the agent was the knowledge of [the insured]").  Mr. Ingoldsby, therefore, is bound by the exclusion.

The consequences of that exclusion are clear.  Mr. Ingoldsby's own proffered expert admits that the terms of the exclusion eliminate coverage for the types of contractual claims brought by Heller.  In his affidavit, Mr. Martocci states that "by adding coverage for the entity (to more effectively market other types of insurance), National Union has reduced coverage in certain other areas and the assured MHCS has suffered one such reduction, in the area of contractual liability."  See Affidavit of James Martocci, at ¶9.  By the testimony of Mr. Ingoldsby's own expert, the contractual liability exclusion excluded coverage for Heller's claims against Mr. Ingoldsby.

To avoid this result, Mr. Ingoldsby claims that the Policy was ambiguous and that the language of the contractual liability exclusion should be ignored.  Mr. Ingoldsby insists that the parties never intended to actually limit coverage in this manner.  Instead, he insists that the parties intended to include coverage for these claims and asks this Court to ignore the exclusion altogether.  Mr. Ingoldsby's position, however, is not supported by any facts in this case.

Had MHCS wished to purchase broader coverage for Mr. Ingoldsby, it could have done so.  Mr. Ingoldsby's own expert, Mr. Martocci, testified in his affidavit that at the time MHCS purchased the Policy, there were other D&O policies on the market that did not have contractual

liability exclusions. See Affidavit of James Martocci, at ¶10 ("I believe that similar D&O policies were available in which the entity exclusions such as ... contractual liability applied only as respects claims brought against the Company, not the individuals."). MHCS, assisted by its insurance broker, affirmatively chose not to purchase one of those other policies. Mr. Ingoldsby, therefore, is bound by that decision.

Mr. Ingoldsby, however, now seeks to avoid the consequences of that decision by falsely claiming that the Policy was ambiguous. Under Massachusetts law, an insurance policy must be interpreted by applying the usual and ordinary meaning of the words contained therein. Hakim v. Massachusetts Insurers' Insolvency Fund, 424 Mass. 275, 280 (1997). The actual language in the contractual liability exclusion, as noted above, is clear. Indeed, Mr. Ingoldsby's proffered expert acknowledged that the clear terms of the Policy's contractual liability exclusion excluded coverage for contractually based claims. See Affidavit of James Martocci, at ¶9.

A provision of an insurance policy should not be found ambiguous if on the facts of the case no ambiguity is present. Highwoods Properties, Inc. v. Executive Risk Indemnity, Inc., 407 F.3d 917, 924 (2005) ("[A] term should be found unambiguous *if the facts of the case* 'comfortably fit within the commonly accepted definition of the concept,'...") (emphasis added). Here, as set forth in the Admitted Facts, Heller's Complaint repeatedly cites as the basis for the allegations and claims against Mr. Ingoldsby duties created by the DIP Loan Agreement. The only relevant issue is whether the contractual liability exclusion contains any ambiguity with respect to the claims set forth in the Heller Complaint. The answer to that question is clearly "no."

Mr. Ingoldsby asserts that the Policy as structured is confusing because Exclusion 4(h) effectively changed the coverage created by the Policy's Insuring Agreement. This, however, is

the very purpose of an exclusion. See Continental Cas. Co. v. Canadian Universal Ins. Co., 924 F.2d 370, 377 (1st Cir. 1991) (an "exclusion operates to relieve insurer of liability for what otherwise would be its coverage for wrongful acts" under the insurance policy); see also National Union's Reply Brief, at 21.

There is also no evidence that the contractual liability exclusion as written would "swallow the policy." On the contrary, Mr. Ingoldsby himself concedes that National Union's Rule 30(b)(6) representatives testified that the exclusion would not implicate a number of different types of claims. See Reply, at 27. In fact, several cases cited in the Reply identify the types of claims that would not be excluded by the contractual liability exclusion depending on the facts involved, including: securities fraud, Admiral Ins. Co. v. Briggs, 264 F. Supp.2d 460, 461-62 (N.D. Tex. 2003); conversion, American Chemical Society v. Leadscope, 2005 WL 1220746, *10 (Ohio App. May 24, 2005); fraudulent inducement of contract, Church Mutual Ins. Co. v. U.S. Liability Ins. Co., 347 F. Supp.2d 880, 889 (N.D. Tex. 2003); and breach of fiduciary duty, Temple Univ. Health Sys. V. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, C.A. No. 04-061705, *6 (Pa. Com. Pl. Jan. 7, 2005). Finally, as noted above, MHCS had the option of obtaining broader coverage by purchasing a policy without this exclusion, but chose to purchase this Policy through its insurance broker instead.

## IV. CONCLUSION

For the aforementioned reasons, as well as those set forth in National Union's Memorandum in Support of its Motion for Summary Judgment and Reply in support thereof, National Union's Motion for Summary should be granted. For the same reasons, Mr. Ingoldsby's Motion for Summary Judgment should be denied.

          NATIONAL UNION FIRE INSURANCE
          COMPANY OF PITTSBURGH, PA

          By its attorneys,

Dated: January 5, 2007        /s/ Mary Patricia Cormier
          John D. Hughes (BBO# 243660)
          Mary Patricia Cormier (BBO#635756)
          EDWARDS ANGELL PALMER
            & DODGE LLP
          111 Huntington Avenue
          Boston, MA 02199
          Tel: (617) 239-0100
          Fax: (617) 227-4420

## CERTIFICATE OF SERVICE

I, Mary Patricia Cormier, hereby certify that on this 5th day of January, 2007, I served a copy of the foregoing Supplemental Memorandum via ECF on Gregory J. Aceto, Johnson & Aceto, P.C., 67 Batterymarch Street, Suite 400, Boston, MA 02110 and Richard E. Heifetz, Tucker, Heifetz & Saltzman, LLP, Three School Street, Boston, MA 02108.

          /s/ Mary Patricia Cormier
          Mary Patricia Cormier