UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GE HFS HOLDINGS, INC. f/k/a HELLER        )
HEALTHCARE FINANCE, INC.,                 )
                                          )
                    Plaintiff,            )
and                                       )          CIVIL ACTION
MICHAEL INGOLDSBY,                        )          NO. 05-11128-NG
                                          )
                    Intervenor/Plaintiff, )
        v.                                )
                                          )
NATIONAL UNION FIRE INS. CO.              )
of PITTSBURGH, PA, and                    )
INTERNATIONAL INS. GROUP, LTD.,           )
                                          )
                    Defendants.           )

## REPORT AND RECOMMENDATION ON MOTION OF INTERNATIONAL INSURANCE GROUP, LTD. FOR SUMMARY JUDGMENT

June 14, 2007

DEIN, U.S.M.J.

## I.  INTRODUCTION

The plaintiff/intervenor, Michael Ingoldsby ("Ingoldsby"), was the Chairman of

the Board of Managed Health Care Systems, Inc. ("MHCS") and, as such, was covered

under a Directors and Officers ("D&O") insurance policy issued by the defendant,

National Union Fire Insurance Co. ("National Union").  The defendant, International

Insurance Group, Ltd. ("IIG"), an insurance broker, obtained the policy.  Ingoldsby filed

a claim under the policy which National Union denied, relying on an exclusion in the

policy about which Ingoldsby claims he was unaware.  In addition to bringing suit against

National Union challenging the denial, Ingoldsby has sued IIG alleging unfair and deceptive acts and practices (Count III), fraud/deceit (Count IV) and negligent misrepresentation (Count V) arising out of IIG's alleged failure to obtain appropriate coverage and in failing to disclose and/or explain the exclusion.  (See Docket No. 20 (First Amended Complaint in Intervention)).

The matter is presently before the court on Defendant International Insurance Group, Ltd.'s Motion for Summary Judgment (Docket No. 70).[1]  Therein, IIG is seeking summary judgment in its favor on all counts of the complaint against it on the grounds that, as a matter of law, it did not have the duty to either obtain specific coverage or explain the policy to either the plaintiff or MHCS.[2]  Because this court finds that there are material facts in dispute as to the parties' relationship and the scope of IIG's obligations, and for all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the Motion for Summary Judgment be DENIED.

---

[1]  National Union has also moved for summary judgment.  The court has issued a separate Report and Recommendation on that motion.

[2]  IIG asserts that it had no duty to advise Ingoldsby at all, and that any duty it had would only run to MHCS.  See IIG Mem. at 5.  Nevertheless, IIG does not seek summary judgment on this basis and recognizes that this case must, at a minimum, be analyzed on the basis of IIG's duty to MHCS.  Obviously, as a director, Ingoldsby would have standing to seek to enforce the terms of the D&O policy.  See Brown v. Am. Int'l Group, Inc., 339 F. Supp. 2d 336 (D. Mass. 2004) (former directors of insured corporation bring suit seeking a declaration of coverage under a D&O policy).  Since IIG is not arguing that Ingoldsby cannot assert that IIG breached its duty to MHCS in obtaining the D&O policy, and the record indicates that the positions of MHCS and Ingoldsby are the same on this issue, the issue whether IIG had a distinct duty running to Ingoldsby will not be addressed further.

## II.  <u>STATEMENT OF FACTS</u>[3]

In ruling on a motion for summary judgment, the court must "view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor."  <u>Barbour v. Dynamics Research Corp.</u>, 63 F.3d 32, 36 (1st Cir. 1995). Applying this principle, the facts are as follows.

### <u>The Relationship Between MHCS and IIG</u>

At all relevant times, Ingoldsby was the Chairman of the Board of MHCS.  (DF ¶ 1).  MHCS was a private home health care agency which provided home health care services to Medicare beneficiaries in Massachusetts.  (DF ¶ 2).  It filed for bankruptcy on February 23, 2001.

IIG has acted as MHCS's insurance broker in connection with procuring various types of insurance policies since at least 1996.  (<u>See</u> PF ¶ 5).  Ingoldsby introduced IIG to MHCS.  (PF ¶ 5).  As Ingoldsby describes the relationship:

> IIG and MHCS had a longstanding business relationship of over ten (10) years, during which period, MHCS purchased several insurance policies through IIG.  During the course of MHCS's relationship with IIG, MHCS often obtained advice from IIG regarding coverage issues and the appropriate policies of insurance, particularly during the course of its bankruptcy.  In addition, IIG had advised MHCS in

---

[3]  The facts are derived from the "Rule 56.1 Statement of Undisputed Material Facts in Support of Defendant International Insurance Group, Ltd.'s Motion for Summary Judgment" ("DF") (Docket No. 72); "Plaintiff-Intervenor Michael Ingoldsby's Statement of Disputed Material Facts in Opposition to International Insurance Group, Ltd.'s Motion for Summary Judgment" ("PF") (Docket No. 74); the exhibits attached to IIG's Memorandum of Law ("Def. Ex. ___") (Docket No. 71); the exhibits attached to the Affidavit of Gregory J. Aceto, Ingoldsby's counsel ("Pl. Ex. ___") (Docket No. 75); and the "Affidavit of Michael Ingoldsby in Opposition to IIG's Motion for Summary Judgment" ("Ingoldsby Aff.") (Docket No. 76).

> the past regarding endorsements added to its insurance policies,
> including a contractual liability endorsement added to its general
> liability policy.

(Ingoldsby Aff. ¶ 6 and Exs. A & B (correspondence from IIG)).  Moreover, according to

Ingoldsby, he "relied on IIG to advise MHCS on the most appropriate coverage for the

company and for its officers and directors liability policy."  (Ingoldsby Aff. ¶ 8).  With

the exception of an initial meeting with IIG, however, Ingoldsby was not personally

involved with the procurement of the D&O policy.  (PF ¶ 5).

## The Policy

IIG first obtained the D&O policy from National Union on or about August 4,

2000.  (DF ¶ 5, PF ¶ 5).  The initial policy ran from August 4, 2000 until August 4, 2001.

(DF ¶ 11).  That policy contained an exclusion for claims:

> Alleging, arising out of, based upon or attributable to any actual or
> alleged contractual liability of the Company or an insured under any
> express (written or oral) contract or agreement....

(DF ¶ 12).[4]  According to Ingoldsby, this provision was never explained or described to

him.  (See Ingoldsby Aff. ¶ 9).  He would have advised the company not to purchase the

policy if he had known about the provision.  (Id.).

At issue in this litigation is the renewal National Union D&O policy which was in

effect from August 4, 2001 to August 4, 2002.  (DF ¶ 7).  The policy was issued with

knowledge that MHCS was in bankruptcy.  (See Def. Ex. A).  That policy included a new

---

[4] It is unclear from the record where this provision was located in the policy.

"For Profit Healthcare Organization Amendatory Endorsement."  (DF ¶ 8).  That

endorsement deleted the old exclusion 4(h) and replaced it with an exclusion 4(h) which

provides that the policy excluded coverage for claims:

> (h) alleging, arising out of, based upon or attributable to any actual
> or alleged contractual liability of the Company or an insured under
> any express (written or oral ) contract or agreement...."

(DF ¶ 8; Def. Ex. A).

It is undisputed that this exclusion was not specifically identified or explained to

MHCS and/or Ingoldsby.  (See DF ¶ 8).  Rather, on July 31, 2001, IIG sent a fax to

Pamela Jones, Vice President of Finance and Chief Financial Officer of MHCS.  (DF ¶ 9;

Def. Ex. A).  Ingoldsby did not see a copy of the fax.  (PF ¶ 9).  The IIG fax attached a

letter to IIG dated July 27, 2001[5] providing a "renewal quote" for the D&O policy for

MHCS.  (Def. Ex. A).  After describing the basis for a 17% premium increase, the letter

provides in its entirety as follows:

> Additionally, for 2001 AIG has mandated that a revised Health Care
> Amendatory endorsement be placed on *all Health Care risks.*  We
> have ensured that there are no exceptions.  This endorsement differs
> from the expiring endorsement for Managed Health Care Systems.
> The new revised endorsement includes an enhancement for IRS
> Fines and Penalties coverage.  This is in addition to the expiring
> enhancements such as amended Insured Person definition to include
> Peer Review/Credentialing, independent contractors, department
> heads; EMTALA coverage; and Government Funding Defense
> Costs.  The limitations this endorsement introduces this renewal are:

---

[5]  The sender of the letter is not identified in the letter.  From other pleadings filed by the
parties, it appears to have been sent by Carpenter Moore Insurance Services, Inc., a wholesaler
IIG used to place the insurance with National Union.  See IIG's Mem. (Docket No. 71) at 1-2.

a sub limit on EMTALA coverage of $150,000; *failure to maintain insurance exclusion; "antitrust, price fixing, price discrimination, unfair competition, deceptive trade practices and/or monopolies, including any actions, proceedings, claims or investigations relating thereto"* exclusion; human clinical trials exclusion; and pre-authorized defense attorneys "panel counsel" for all claims – last year panel counsel was required for Securities claims only.  Finally, there are language changes with the new endorsement, however; the coverage essentially remains the same.

Lastly, at renewal AIG has added a limited private placement coverage endorsement that adds an exclusion for "public or private offering of securities by the Company ..." however, the exclusion carves back coverage for private offerings of securities if less than or equal to $15,000,000.

After you have had an opportunity to renew, please call with any questions.

(Def. Ex. A).

Also attached was a two page document entitled "National Union Renewal Proposal" which highlighted elements of the renewal policy.  With respect to the exclusion at issue, the proposal provides:

**Endorsement added at renewal:**

1.   For-Profit Health Care Organization Extension – 2001 Version. This endorsement is mandatory by National Union/AIG on all health care risks.  This endorsement replaces the Health Care Extension, Endorsement No. 5 on the expiring program.  Please read this endorsement carefully.

(Def. Ex. A).  Finally, the fax attached the six page "For-Profit Health Care Organization Amendatory Endorsement."  (Def. Ex. A).  There do not appear to be any comments on the endorsement.

-6-

## The Claim for Coverage

On or about August 1, 2002, Heller Healthcare Finance, Inc. ("Heller")

commenced an action in this court against Ingoldsby and others, Civil Action No. 02-

11553-NG.  In the complaint, Heller alleged that prior to the bankruptcy filing, MHCS

and a related company, Medical Temporaries, owed Heller in excess of $1,000,000 under

various loans.  (See Heller Complaint ¶ 17).[6]  Post-petition, Heller, as lender, and MHCS

and Medical Temporaries, as borrowers, entered into a $3,000,000 Revolving Credit

Loan, which was evidenced by a Debtor-in-Possession Loan and Security Agreement (the

"DIP Loan").  (Id. at 18).  The DIP Loan refinanced the pre-petition Revolving Credit

Note.  (Id.)  Ingoldsby and his wife guaranteed the borrowers' obligations under the DIP

Loan. (Id. ¶ 19).  According to Heller, Ingoldsby was liable due to false financial

information that was provided to Heller about the borrowers' financial condition and

accounts receivable in order to induce Heller to enter into the DIP Loan and to make

advances thereunder.  (See generally id. ¶ 55).  In addition, the Ingoldsbys had not made

payments under their guarantees.  (Id. ¶ 59).  As a result, Heller contends it has not been

able to collect the amounts due under the Loan.

Ingoldsby sent a copy of the Heller Complaint to National Union on August 2,

2002.  (Ingoldsby Aff. ¶ 15).  National Union has taken the position that there is no

coverage for the Heller litigation, relying on exclusion 4(h).  (Id. ¶¶ 16-19).  According to

---

[6]  A copy of the Heller Complaint is attached to Ingoldsby's Affidavit in Opposition to
National Union's Motion for Summary Judgment (Docket No. 85).

Ingoldsby, he "was never advised that the Policy contained a so-called contractual liability exclusion" and he "would have advised the company not to purchase the Policy had [he] known it contained such an exclusion." (Id. ¶ 9). Moreover, he was never advised of "its potential effect on the coverage provided by the Policy." (Id. ¶ 12).

Additional facts will be provided below when appropriate.

### III.  ANALYSIS

#### A.    Summary Judgment Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant . . . would permit a rational fact finder to resolve the issue in favor of either party." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (internal citations omitted).  A material fact is one which has the "potential to affect the outcome of the suit under the applicable law."  Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996) (internal citations and quotation omitted).

The moving party bears the initial burden of establishing that there is no genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).  If that burden is met, the opposing party can avoid summary judgment only by providing properly supported evidence of disputed material

facts that would require trial.  <u>See</u> <u>id</u>. at 324, 106 S. Ct. at 2553.  In evaluating motions

for summary judgment, however, the court will not consider "conclusory allegations,

improbable inferences, and unsupported speculation."  <u>Galloza v. Foy</u>, 389 F.3d 26, 28

(1st Cir. 2004) (internal citation omitted).  Applying these standards to the instant case,

the defendants' motion for summary judgment should be denied.

###    B.    <u>IIG's Obligations</u>

"The relationship between an insurance broker and the insured is not normally

thought to be fiduciary in nature, . . . absent 'special circumstances of assertion,

representation and reliance.'"  <u>Baldwin Crane & Equip. Corp. v. Riley & Rielly Ins.</u>

<u>Agency, Inc.</u>, 44 Mass. App. Ct. 29, 31-32, 687 N.E.2d 1267, 1269 (1997) (internal

citations omitted).  Thus, "[t]here is no general duty of an insurance agent to ensure that

the insurance policies procured by him provide coverage that is adequate for the needs of

the insured."  <u>Martinonis v. Utica Nat'l Ins. Group</u>, 65 Mass. App. Ct. 418, 420, 840

N.E.2d 994, 996 (2006).  "Nevertheless, in an action against the agent for negligence, the

insured may show that special circumstances prevailed that gave rise to a duty on the part

of the agent to ensure that adequate insurance was obtained."  <u>Id.</u> at 421, 840 N.E.2d at

996.  Similarly, there may be special circumstances which would create a duty on the part

of the agent to explain the significance of policy provisions.  <u>See</u> <u>generally</u> <u>id.</u> at 421-22,

840 N.E.2d at 996-97 (while there may be no general duty to explain the type of

insurance involved, insurance agent may be found to have additional duties when

specifically questioned by the insured as to the appropriate level of insurance).  This

court finds that Ingoldsby "has made a sufficient showing to raise a jury question as to the existence of such special circumstances in the present case." Constr. Planners, Inc. v. Dobax Ins. Agency, Inc., 31 Mass. App. Ct. 672, 676-77, 583 N.E.2d 255, 258 (1991) (award of summary judgment in favor of broker reversed where there were genuine issues of material fact as to whether broker negligently failed to renew builder's risk policy following a conversation with the insured and considering the parties' past history together).

Viewing the record in the light most favorable to Ingoldsby, there is evidence that there was a long history between MHCS and IIG, and that during this period IIG rendered specific advice about different types of insurance available. (See Ingoldsby Aff. ¶ 6 and Exs. A & B). Such a long-standing relationship is a relevant consideration in determining whether special circumstances existed which would impose additional duties on the broker. See McCue v. Prudential Ins. Co. of Am., 371 Mass. 659, 662, 358 N.E.2d 799, 801-02 (1976) (a jury could find, based on a 28 year relationship between insurance agents and insured, that insured was justified in relying on agents to obtain insurance in a timely manner). Moreover, IIG knew that MHCS was in bankruptcy at the time the D&O policy was being renewed, and Ingoldsby attested that, in particular, IIG's advice was sought "regarding coverage issues and the appropriate policies of insurance" during the bankruptcy. (Ingoldsby Aff. ¶ 6). Again, the fact that an insurance agent makes frequent recommendations may constitute a special circumstance which imposes additional duties on the agent. See Bicknell, Inc. v. Havlin, 9 Mass. App. Ct. 497, 501,

402 N.E.2d 116, 119 (1980) (since insurance agent made frequent recommendations about coverage, jury appropriately found that insured could rely on agent to obtain sufficient coverage).  Finally, IIG forwarded information to MHCS explaining, in detail, various provisions of the new endorsement but made no mention of the meaning or effect of exclusion 4(h).  (See Def. Ex. A).  A jury should determine whether, having elected to explain certain provisions of the policy, IIG had a duty to explain the significance of exclusion 4(h) which, at least according to National Union, had broad-reaching implications.  See Underwood v. Risman, 414 Mass. 96, 100, 605 N.E.2d 832, 835-36 (1993) (partial disclosure may give rise to liability for fraud).  In light of all these facts, the decision as to whether IIG had a duty to obtain different coverage and/or to explain the exclusion is appropriately decided by a jury.

## IV.  CONCLUSION

For the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that IIG's Motion for Summary Judgment (Docket No. 70) be DENIED.[7]

                                         / s / Judith Gail Dein

                                     Judith Gail Dein
                                     United States Magistrate Judge

---

[7] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-605 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985).  Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).