## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

GE HFS HOLDINGS, INC.
*Formerly known as*
HELLER HEALTHCARE FINANCE,
INC.,

      Plaintiff,

and

MICHAEL INGOLDSBY,

      Intervenor/Plaintiff,

v.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA, and
INTERNATIONAL INSURANCE
GROUP, LTD.,

      Defendants.

CIVIL ACTION No: 05-CV-11128-NG

## PLAINTIFF-INTERVENOR MICHAEL INGOLDSBY'S OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON MOTION OF NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA FOR SUMMARY JUDGMENT

---

**NOW COMES** the Plaintiff-Intervenor Michael Ingoldsby in the above-entitled

action and, pursuant to Fed. R. Civ. P. 72(b), objects to Magistrate Judge Dein's Report

and Recommendation on Motion of National Union Fire Insurance Co. of Pittsburgh, PA

for Summary Judgment (the "R&R"), filed June 14, 2007.

      The Magistrate Judge erred in recommending that the Court allow National Union

Fire Insurance Company of Pittsburgh, PA's ("National Union") Motion for Summary

Judgment (Docket No. 66) and denying Plaintiff-Intervenor Michael Ingoldsby's

("Ingoldsby") Cross-Motion for Summary Judgment (Docket No. 78). Specifically, the Magistrate Judge erred by: (i) concluding that Exclusion 4(h) is clear and unambiguous; (ii) concluding that the negligent misrepresentation claim "arose" out of the DIP Loan Agreement; and (iii) concluding that Exclusion 4(h) applied to Ingoldsby, individually.

Accordingly, the Court should decline to adopt the R&R, sustain Ingoldsby's objections, deny National Union's Motion for Summary Judgment and grant the Plaintiff-Intervenor's Cross-Motion for Summary Judgment.

## I.    STANDARD OF REVIEW

A dissatisfied litigant may obtain review of a report and recommendation regarding a dispositive motion issued by a magistrate judge by filing an objection to the report and recommendation in the district court. The district court applies a *de novo* standard of review, which does not require a new hearing. Rules for United States Magistrates in the United States District Court for the District of Massachusetts 3(b); *see also Mathews v. Weber,* 423 U.S. 261 (1976). The court may accept, reject or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions. *See Paterson-Leitch v. Massachusetts Municipal Wholesale Electric Co.,* 840 F.2d 985, 990-91 (1st Cir. 1988) (*citing* Fed. R. Civ. P. 72); *see also* 28 U.S.C. § 636(b)(1)(B).

## II.    ARGUMENT

### A.    There is Insufficient Evidence to Support the Magistrate Judge's Conclusion that National Union Properly Denied Coverage.

The Magistrate Judge erred in finding that National Union met its burden of demonstrating the applicability of Exclusion 4(h) to the Directors and Officers liability policy issued by National Union to MHCS, being policy number 873-87-52, effective

August 4, 2001, through August 4, 2002 (hereinafter referred to as the "Policy"). While the insured bears the initial burden of proving that a claim falls within the grant of coverage, once this is established the burden shifts onto the insurer to show the applicability of any exclusion. *Camp Dresser & McKee, Inc. v. Home Ins. Co.,* 30 Mass. App. Ct. 318, 321 (1991). This is a heavy burden as exclusions from and limitations to coverage are to be narrowly construed. *Commerce Inc. Co. v. Betty Caplette Builders, Inc.,* 420 Mass. 87, 93 (1995). As such, National Union must show that the allegation of negligent misrepresentation squarely falls under the contractual liability exclusion set forth in Endorsement No. 8, as amended by Exclusion 4(h).[1] Despite the above-referenced case law, the Magistrate Judge adopted National Union's overly broad interpretation of Exclusion 4(h) and erred in finding that National Union properly denied defense and coverage for the negligent misrepresentation claim asserted against Mr. Ingoldsby.

**1.    *The Magistrate Judge Erred in Concluding that Exclusion 4(h) is Clear and Unambiguous.***

Because the Policy is ambiguous so as to create a genuine issue of material fact as to whether Exclusion 4(h) excludes coverage for the negligent misrepresentation claim, summary judgment should be precluded. In examining the Policy, the Magistrate Judge should have considered "what an objectively reasonable insured, reading the relevant

---

[1] Exclusion 4(h) excludes from coverage, all claims:

> (h) alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of the Company or an Insured under any express (written or oral) contract or agreement (including, but not limited to, any liquidated damages, severance agreement or payment, golden parachute agreement, or any compensation agreement payable upon termination of any insured)…

*See* Affidavit of Gregory J. Aceto ("Aceto Affidavit"), ¶ 4 and *Exhibit B* attached thereto; Affidavit of James R. Martocci ("Martocci Affidavit"), ¶ 8.

policy language, would expect to be covered." *Trustees of Tufts Univ. v. Commercial Union Ins. Co.,* 415 Mass. 844, 849, 616 N.E.2d 68, 72 (1993) (quoting *Hazen Paper Co. v. United States Fidelity & Guaranty Co.,* 407 Mass. 689, 700, 555 N.E.2d 576, 583 (1990)).   Here, a reasonable insured would clearly not expect that virtually all, if not all, claims would be excluded by the Policy's contractual liability exclusion.  *See* Ingoldsby Memorandum of Law in Opposition to Defendant National Union's Motion for Summary Judgment and in Support of Plaintiff-Intervenor's Cross-Motion for Summary Judgment ("Ingoldsby Memo"), at 23-24 and Plaintiff-Intervenor Michael Ingoldsby's Supplemental Memorandum of Law ("Ingoldsby Supp. Memo"), at 6-7.

In finding the exclusion unambiguous, the Magistrate Judge purports to distinguish the instant matter from *Jefferson Ins. Co. of New York v. National Union Fire Insurance Co. of Pittsburgh, PA,* 42 Mass. App. Ct. 94, 99-100 (1997).  R&R at 30; footnote 13.  *See also* Ingoldsby Memo at 16-17.  Therein, the court found that National Union's proffered interpretation "would have the exclusion swallow the policy," and, therefore, was void as against public policy.  *Id.*  Moreover, the court held that under National Union's construction of the policy "there would be ***few actions*** of ambulance employees that would be covered, for virtually all of the ordinary activities of ambulance company personnel could be deemed professional ***in the broad, general sense.***" (emphasis added). *Id.* at 103.  As such, the policy was void as against public policy because National Union's interpretation would have negated the "very coverage that the policy purports to provide…" *Id.*, quoting *Liberty Mut. Ins. Co. v. Tabor*, 407 Mass. 354, 358 (1990).

4

In the R&R, the Magistrate Judge concluded, without explanation or analysis, that this was "not a situation where the exclusion 'swallows the policy'." In doing so, the Magistrate Judge seems to have disregarded the Affidavit of James Martocci and deposition testimony of National Union's representative, both of whom could not identify any claims that would not be excluded by Exclusion 4(h).[2]  *See* Martocci Affidavit, ¶ 10; *see also* Second Aceto Affidavit and *Exhibit A* attached thereto; Deposition of Robert Gadaleta, pp. 49-58.  The Magistrate Judge also states in the R&R that "numerous activities of directors and officers remain covered by the D&O Policy." R&R at footnote 13.  However, the Magistrate Judge fails to identify any types of claims that would be covered under National's interpretation of the Policy.

The Magistrate Judge also prematurely dismissed Ingoldsby's argument that the majority, if not all, misrepresentations will likely involve some sort of contract and, thereby be excluded from coverage.  R&R at 30.  The Magistrate Judge rests this finding on the fact that there is no case law directly supporting Ingoldsby's proposition.  R&R at 30.  However, by definition, a negligent misrepresentation claim must take place in the context of a business transaction.[3]  Moreover, courts in Massachusetts have indicated that

---

[2] National Union claims that the Policy affords some protection for its insured because the Policy covers claims related to employment practices.  While the Policy does state that Exclusion 4(h) shall not apply to employment practices claims, it again limits coverage by specifying that employment practices claims are only covered "to the extent that any liability *does not arise from such express contract or agreement*". (emphasis added).  Ingoldsby Memo at 18.  *See also* Aceto Affidavit, ¶ 4 and *Exhibit B* attached thereto.  Therefore, the employment practices claims, which are allegedly excepted from Exclusion 4(h), are nonetheless still subject to a contractual liability exclusion.  *Id.*  Further, if National Union interprets the language of the exception to Exclusion 4(h) as broadly as it interprets the exclusion itself, the exception will not afford any coverage to the insured because almost all claims related to employment would touch upon an agreement of some kind.  In light of the foregoing, National Union's interpretation would surely negate the very coverage that the Policy purports to provide its insured and, therefore, is void as against public policy.  *Id.*

[3] In order to recover for negligent misrepresentation, a plaintiff must prove that the defendant (1) in the course of his business, (2) supplie[d] false information for the guidance of others (3) *in their business transactions*, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance upon

there is a "general requirement that the tort of negligent misrepresentation arise from a relationship of contract privity," to which only narrow exceptions apply. *Capitol Indem. Corp. v. Freedom House Development Corp.*, 487 F. Supp. 839 (D. Mass. 1980).

Therefore, Massachusetts case law and common sense dictate that under National Union's interpretation of the Policy, almost all misrepresentation claims against the directors and officers of MHCS will be precluded from coverage since any conceivable claim would touch upon an agreement of some kind. *See* Ingoldsby Memo at 21; Martocci Affidavit, ¶ 8. Ultimately, National Union's interpretations of the Wrongful Act clause[4] and Exclusion 4(h) are in direct conflict with one another and with the nature of the claims for which the Policy purports to provide coverage. In light of the foregoing, the Magistrate Judge's finding that Exclusion 4(h) is clear and unambiguous is erroneous.

It appears that the Magistrate Judge incorrectly examined only Exclusion 4(h) and failed to examine the Policy as a whole. R&R at 29, footnote 12. The Magistrate Judge also failed to consider that the Policy was constructed in such a manner as to be cumbersome, convoluted and difficult to comprehend. *See* Martocci Affidavit, ¶ 11. The Magistrate Judge apparently did not consider the opinion of Ingoldsby's expert who stated that "[i]n [his] twenty-seven (27) years as a D&O underwriter, [he could not] recall a more confusing and unwieldy presentation of policy terms and conditions." *Id.* Mr.

---

the information, and (6) with failure to exercise reasonable care or competence in obtaining or communicating the information." *Nota Constr. Corp. v. Keyes Assocs.,* 45 Mass.App.Ct. 15, 19-20 (1998) (emphasis added).

[4] Under Section 2(g) of the Policy, a "Wrongful Act" is described as:

> any breach of duty, neglect, error, misstatement, misleading statement, omission or act by the Directors or Officers of the Company in their respective capacities as such, or any matter claimed against them solely by reason of their status as Directors or Officers of the Company.

*See* Affidavit of Gregory J. Aceto ("Aceto Affidavit"), ¶ 4 and *Exhibit B* attached thereto

Martocci further stated that the Policy would be nearly impossible to decipher for a

layman. *Id.* National Union provided no evidence to controvert Mr. Martocci's affidavit.

In fact, during National Union's Rule 30(b)(6) deposition, the representatives of National

Union were also confused by the Policy. *See* Second Aceto Affidavit and *Exhibit A*

attached thereto; Deposition of Robert Gadaleta, pp. 49-58.

  Accordingly, the Magistrate Judge's finding that the Policy is clear and

unambiguous is in error.

  **2.**    ***The Magistrate Judge Erred in Concluding that the Negligent Misrepresentation Claim "Arose" Out of the DIP Loan Agreement.***

  While there is clearly a relationship between the DIP Loan and the negligent

misrepresentation claim at issue, the Magistrate Judge erred in interpreting the "arising

out of" language so broadly. Even though the Magistrate Judge construed the negligent

misrepresentation claim to be one of negligent supervision[5], she still concluded that the

claim was excluded because the wrongful conduct "arose out of" and was "attributable

to" the Company's contractual relationship with Heller (the DIP Loan). R&R at 24.

However, a careful review of the case law and an analysis of the undisputed facts reveals

that the claim is independent of the DIP Loan and, therefore, not subject to the

contractual liability exclusion.

  The Magistrate Judge distinguished the present matter from those cited by Mr.

Ingoldsby, including *Church Mutual Insurance Company v. United States Liability*

*Insurance Co.*, 347 F. Supp. 2d. 880, 884-85 (S.D. Cal. 2004); *Admiral Insurance Co,*

*Inc. v. Briggs*, 264 F. Supp. 2d. 460, 462 (N.D. Tex. 2003); *The American Chemical*

---

[5] The Magistrate Judge specifically stated that "the complaint can be read as a claim by Heller that
Ingoldsby negligently failed to supervise those who provided information for the borrowing base
certificates and reports which were required under the DIP Loan."

*Society v. Leadscope, Inc.*, *et al.*, 2005 WL 1220746, *10 (Ohio App. 10 Dist.). In doing so, however, the Magistrate Judge repeatedly relied on her incorrect conclusion that the "performance under the contract [was] the crux of the complaint." R&R at 27-29. For example, the Magistrate Judge found *Church Mutual Insurance Company v. United States Liability Insurance Co.* distinguishable because it involved "a claim that the insured was involved in a pattern and practice to defraud creditors by entering into contracts without intending to pay…" Thus, the Magistrate Judge found that, in *Church,* the "crux of the complaint was the insurer's fraudulent intent." R&R at 28. The claim against the insured in *Church*, however, is not dissimilar from the negligent misrepresentation claim against Ingoldsby. Here, Heller has alleged that Ingoldsby was involved in the submission of false and misleading, e.g. fraudulent, financial information which induced Heller to loan more money under the DIP Loan. R&R at 10, 26. In accordance therewith, the Magistrate Judge should have concluded that the gravamen of the underlying complaint is indeed misrepresentation, not breach of contract.

In addition, the Magistrate Judge also failed to consider that Mr. Ingoldsby was not a party to the DIP Loan between Heller and MHCS and was not sued by Heller for any alleged breach of contract. As Ingoldsby stated in his affidavit, as Chairman of the Board, he was not involved in the day-to-day operations of MHCS. In fact, he had not been involved in the operations of MHCS since 1999 due to a medical condition which disabled him. Most importantly, Mr. Ingoldsby was not involved in compiling or assuring the accuracy of the borrowing base certificates submitted to Heller. *See* Affidavit of Michael Ingoldsby, ¶¶ 3-4.

Moreover, a duty cannot arise from a contract, where, as here, the person owing the duty is not a party to the contract. Although the Magistrate Judge cites in her own report that Mr. Ingoldsby was sued in his capacity as Chairman of the Board for negligently supervising MHCS's financials, she seems to have disregarded case law holding that the duty of an officer or director not to make false statements regarding his company's financial health flows from social policy rather than contractual obligation. *Jamestown Iron & Metal Co. v. Knofsky*, 291 Pa. 60, 63 (1927). As such, Mr. Ingoldsby's duty to supervise the submission of financial information to Heller does not arise from the DIP Loan and, therefore, any breach of that duty sounds in tort, not contract.

### 3.    *The Magistrate Judge Erred in Concluding that Exclusion 4(h) Applied to Ingoldsby, Individually.*

The Magistrate Judge also failed to address evidence that Exclusion 4(h) may not be applicable to Ingoldsby, individually. In his affidavit, Mr. Martocci stated that Exclusion 4(h) of the National Union policy may have been intended to apply only to the Company (the corporate entity). Mr. Martocci specifically stated that:

> Other D&O insurers that provide coverage for the Company have constructed their policy wordings such that the contractual liability exclusion applies only to the Company, and not to the individuals…Until relatively recently, D&O policies afforded **no** coverage for the Company itself. It is only within the past ten years or so that D&O insurers have afforded coverage for claims made against the **Company** for its own wrongful acts….Now when offering these combined-risk, entity coverage policies, D&O insurers invariably add broad exclusions for the significant entity exposures– excluding claims from primarily corporate causes of action such as anti-trust violations and contractual liability. In certain policies, such as the [Policy], these exclusions allegedly apply to both the entity and the individual directors and officers, an actual reduction of coverage from the older policies. Thus, by adding coverage for the entity (to more effectively market other types of insurance), National Union has reduced coverage in certain other areas, and the assured MHCS has suffered one such reduction, in the area of contractual liability. Thus, National Union's conduct in purporting to expand coverage to

include the entity, while eliminating coverage for the individual Directors and Officers, is a willful breach of the policy.  *See* Martocci Affidavit, ¶ 9.

In deciding a motion for summary judgment, the court must view the evidence "in the light most favorable to the nonmovant, and all doubts and reasonable inferences must be resolved in the nonmovant's favor…If the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the nonmovant." *Casas Office Machines, Inc. v. Mita Copystar America, Inc.*, 42 F.3d 668, 684 (1st Cir. 1994) (internal quotation marks and citations omitted).  National Union has not offered any evidence to rebut the assertion that Exclusion 4(h) was not intended to exclude coverage for individual directors and officers.  In light of the foregoing, the Court should view said evidence in the light most favorable to Mr. Ingoldsby.  Thus, the Magistrate Judge erred in not only failing to consider Mr. Martocci's testimony, but also failing to construe said evidence in a light most favorable to Ingoldsby.

## III.    CONCLUSION

As set forth herein, National Union must demonstrate that the allegation of negligent misrepresentation squarely falls under the contractual liability exclusion set forth in Endorsement No. 8, as amended by Exclusion 4(h).  The Magistrate Judge erred in adopting National Union's overly broad interpretation of Exclusion 4(h) and failed to acknowledge that the Policy may be so ambiguous as to create a genuine issue of material fact as to the applicability of the exclusion.

For the foregoing reasons, the Court should decline to adopt the Report and Recommendation, sustain Ingoldsby's objections, deny National Union's Motion for Summary Judgment and grant the Plaintiff-Intervenor's Cross-Motion for Summary Judgment.

Respectfully submitted,
MICHAEL INGOLDSBY
By his Attorney,

/s/ Gregory J. Aceto, Esq.
Gregory J. Aceto
BBO# 558556
JOHNSON & ACETO, LLP
67 Batterymarch St., Suite 400
Boston, MA 02110
(617) 728-0888
aceto@johnsonaceto.com