UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GE HFS HOLDINGS, INC., Formerly known as HELLER HEALTHCARE FINANCE, INC.,<br>    Plaintiff,<br><br>and<br><br>MICHAEL INGOLDSBY,<br>    Intervenor/Plaintiff,<br><br>v.<br><br>NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA, and INTERNATIONAL INSURANCE GROUP, LTD.,<br>    Defendants. | Civil Action No. 05cv11128-NG |

GERTNER, D.J.

**MEMORANDUM AND ORDER RE: STANDING OF INTERVENOR/PLAINTIFF**
May 30, 2008

I.   **INTRODUCTION**

The intervenor/plaintiff, Michael Ingoldsby ("Ingoldsby"), was the Chairman of the Board of Managed Health Care Systems, Inc. ("MHCS") and, as such, was covered under a Directors and Officers ("D&O") insurance policy issued by National Union Fire Insurance Co. of Pittsburgh, PA ("National Union"). International Insurance Group, Ltd. ("IIG"), an insurance broker, obtained the policy. Ingoldsby filed a claim under the policy which National Union denied, relying on the policy's contractual liability exclusion. In addition to bringing suit against

National Union challenging the denial of coverage, Ingoldsby has sued IIG alleging unfair and deceptive acts and practices (Count III), fraud/deceit (Count IV), and negligent misrepresentation (Count V) for IIG's alleged failure to obtain proper and adequate insurance coverage for MHCS's directors and officers and disclose and/or explain the contractual liability exclusion.

Both National Union and IIG eventually moved for summary judgment. On September 5, 2007, I adopted both of Magistrate Judge Dein's Reports and Recommendations, granting summary judgment in favor of National Union but denying summary judgment on Ingoldsby's claims against IIG. In the same order, I requested additional briefing on the issue of whether Ingoldsby has standing to bring his claims against IIG in light of the fact that he did not schedule these potential claims in prior bankruptcy proceedings. For the reasons that follow, I conclude that Ingoldsby should be allowed to go forward with his claims against IIG.

## II. **BACKGROUND**

The facts of this case have been fully set out in Magistrate Judge Dein's Reports and Recommendations of June 14, 2007. The following is an abbreviated version of the facts relevant to resolving the issue currently before the Court.

At all times relevant to this case, Ingoldsby was the Chairman of the Board of MHCS, a private home health care agency in Massachusetts. MHCS filed for bankruptcy in February 2001. As Chairman, Ingoldsby was covered by a D&O policy issued by National Union that had been procured by IIG, an insurance broker, in August 2000. IIG had acted as MHCS's insurance broker since at least 1996 and, according to Ingoldsby, had regularly advised MHCS on matters of insurance coverage.

At issue in this litigation is the renewal D&O policy in effect from August 4, 2001, to August 4, 2002.[1] The D&O policy contained a provision excluding from coverage any claims "alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of the Company or an insured under any express (written or oral) contract or agreement." Exh. A to Def.'s Mem. in Supp. 10 (document # 71-2).

On August 1, 2002, Heller Healthcare Finance, Inc. ("Heller"), now known as GE HFS Holdings, Inc., filed suit against Ingoldsby and others for money owed under a $3,000,000 revolving credit loan. According to Heller, Ingoldsby was liable for false financial information concerning MHCS's financial health provided to Heller in order to induce Heller to advance MHCS more credit.

---

[1] National Union issued the policy with the knowledge that MHCS had filed for bankruptcy.

Ingoldsby sent a copy of the Heller Complaint to National Union on August 2, 2002. Little over two months later, National Union issued a "preliminary coverage evaluation" in which it declined coverage for the litigation and the associated defense costs, relying on the contractual liability exclusion. By letter dated March 6, 2003, National Union confirmed that there was no coverage under the exclusionary provision. Ingoldsby followed up with a demand letter, and National Union again declined coverage. Ingoldsby then obtained and paid for his own defense in the Heller litigation.

In December 2002, Ingoldsby filed a Chapter 7 bankruptcy petition in the Middle District of Florida, in part, he asserts, as a result of the costs and potential liability stemming from the Heller litigation. He filed his Schedules and Statement of Financial Affairs with the bankruptcy court on January 2, 2003, disclosing that he was a defendant in the Heller litigations but omitting any potential claims against either National Union or IIG.[2] Ingoldsby failed to disclose the potential claims again in an amended schedule filed on April 18, 2003. At that point, the Heller litigation had been stayed and Ingoldsby asserts that he was not contemplating any litigation against National Union or IIG.

---

[2] Schedule B calls for disclosure of "contingent and unliquidated claims of every nature." According to Ingoldsby, this was done on the advice of counsel, who believed that the D&O policy was not a personal asset, but rather an asset of the MHCS bankruptcy.

On July 16, 2003, Heller was granted relief from the stay in the Ingoldsby bankruptcy and the Heller litigation, causing Ingoldsby to incur legal fees. On February 7, 2004, Ingoldsby entered into a settlement agreement with Heller whereby he agreed to pay $105,000. At this point, according to Ingoldsby, he began to discuss potential claims against National Union, and on March 14, 2004, his counsel made a formal demand upon National Union. Again, the claim was denied. According to Ingoldsby, roughly at the same time the bankruptcy trustee was informed that Ingoldsby might eventually seek reimbursement from National Union. However, on the advice of his counsel, Ingoldsby did not amend his Statement of Financial Affairs to reflect the potential claims.

Ingoldsby received a discharge in bankruptcy on May 5, 2004. He filed this suit against National Union and IIG in December 2005.[3] Ingoldsby alleges that IIG never explained or described the contractual liability exclusion to him and asserts that he never would have advised MHCS to purchase the policy if he had known about the provision and its implications. According to Ingoldsby, he did not become aware of the legal basis of his claim against IIG until the weeks leading up to the filing of his complaint.

---

[3] The original suit was filed by GE HFS Holdings, Inc. (f/k/a Heller) against National Union on May 31, 2005. Ingoldsby intervened later that year.

Both National Union and IIG eventually moved for summary judgment. On September 5, 2007, I adopted both of Magistrate Judge Dein's Reports and Recommendations, granting summary judgment in favor of National Union but denying summary judgment on Ingoldsby's claims against IIG. More specifically, I held that Ingoldsby was not barred by judicial estoppel from asserting his claims against National Union, but that the language of the contractual liability exclusion did, in fact, bar coverage for costs incurred as a result of the Heller litigation. With regard to IIG's motion, I denied summary judgment finding that there were material facts in dispute as to IIG's obligations to advise Ingoldsby about the nature of the contractual liability exclusion. In addition, I requested additional briefing on the issue of whether Ingoldsby has standing to bring his claims against IIG in light of the fact that he did not schedule these potential claims in prior bankruptcy proceedings.

On May 30, 2007, Ingoldsby entered into a written agreement with R. Jay Harpley, the trustee of Ingoldsby's bankruptcy estate.[4] Pursuant to the agreement, 25% of any recovery in this litigation is to be allocated to the bankruptcy estate, while the remaining 75% is to go to Ingoldsby. Exh. 1 to Ingoldsby Aff. ¶ 5 (document # 105-2). More importantly, the trustee agreed to

---

[4] In the agreement, the parties acknowledge that: "I) they are in disagreement as to whether the claims asserted in the Litigation are part of the Estate; ii) each claims entitlement to any recovery that may result . . .; iii) and the Trustee is uncertain of the outcome of litigating the dispute with Ingoldsby."

allow the present litigation to proceed in Ingoldsby's name.[5] Id. at ¶ 1. The bankruptcy court approved the agreement in an order dated July 19, 2007. Exh. 2 to Ingoldsby Aff. 1 (document # 105-3).

### III. DISCUSSION

The question currently before the Court is whether Ingoldsby has standing to pursue his claims against IIG in light of the fact that he did not formally schedule any potential claims against IIG in his bankruptcy proceedings. I conclude that Ingoldsby does have standing.[6]

The filing of a bankruptcy petition creates an estate comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Causes of action belonging to the debtor are included as property of the estate. In re Rare Coin Galleries of Am., Inc., 862 F.2d 896, 900 (1st Cir. 1988). Once the estate is created, the bankruptcy trustee "steps into the shoes of the debtor for the purposes of asserting or maintaining the debtor's causes of action, which become property of the estate." Id. at 901.

---

[5] The trustee also agreed to be substituted as a party if necessary.

[6] Though the Court did not request additional briefing on the issue of judicial estoppel, both parties have submitted briefs on the subject. For the reasons put forth in Magistrate Judge Dein's Report and Recommendation of June 14, 2007, which was subsequently adopted by this Court, Ingoldsby should not be judicially estopped from pursuing this claim.

Under 11 U.S.C. § 521(a)(1)(B)(I), it is clear that Ingoldsby had an affirmative duty to provide the bankruptcy court with a schedule of all of his assets and liabilities. See Jeffrey v. Desmond, 70 F.3d 183, 186 (1st Cir. 1995) ("The law is abundantly clear that the burden is on the debtors to list the asset and/or amend their schedules. . . ."); Eubanks v. CBSK Financial Group, Inc., 385 F.3d 894, 897 (6th Cir. 2004).  The duty to disclose continues throughout the pendency of the bankruptcy petition and extends to all potential causes of action that the petitioner may have.  See Jeffrey, 70 F.3d at 186; In re Costal Plains, Inc., 179 F.3d 197, 208 (5th Cir. 1999) (citation omitted).

It seems equally clear that Ingoldsby had a duty to formally schedule the claims at issue here, regardless of when he actually became subjectively aware of the legal basis for his claim against IIG: "The debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information . . . prior to confirmation to suggest that it may have a possible cause of action, then that is a 'known' cause of action such that it must be disclosed." In re Costal Plains, Inc., 179 F.3d at 208 (citing Union Carbide Corp. v. Vikase Corp. (In re Envirodyne Indus., Inc.), 183 B.R. 812, 821 n.17 (Bankr. N.D. Ill. 1995)) (internal quotation omitted).  Any claim must be disclosed, even if it is "contingent, dependent, or conditional." Id. (citation and quotation omitted).  By his own admissions,

Ingoldsby knew of all of the necessary relevant facts underlying his claims, namely that National Union had formally denied his claim for coverage and that IIG had acted as MHCS's insurance broker, prior to his bankruptcy discharge.  Because the causes of action accrued prior to the bankruptcy discharge, Ingoldsby had a duty to disclose them.

Despite Ingoldsby's failure to disclose, the claims nonetheless became part of his bankruptcy estate.  It is well settled that "any asset not properly scheduled remains property of the bankruptcy estate, and the debtor loses all rights to enforce it in his own name."  Jeffrey, 70 F.3d at 186 n.3 (citing Vreugdenhill v. Navistar Int'l Transp. Corp., 950 F.2d 524, 526 (8th Cir. 1991)); see also Carlock v. Pillsbury Co., 719 F. Supp. 791, 856 (D. Minn. 1989).  Unless a claim has been formally scheduled and abandoned by the bankruptcy trustee, the debtor lacks standing to assert unscheduled claims; the trustee is vested with exclusive standing to assert claims forming part of the bankruptcy estate.  Barger v. Cartersville, 348 F.3d 1289, 1292 (11th Cir. 2003); Vidal v. Doral Bank Corp., 363 F. Supp.2d 19, 22 (D.P.R. 2005); Welsh v. Quabbin Timber, Inc., 199 B.R. 224, 229 (D. Mass. 1996).  Thus, the consequence of Ingoldsby's failure to schedule his potential claim against IIG before his bankruptcy discharge is that he lacks standing to pursue the instant action on his own.  See Welsh, 199 B.R. at 229.  That the trustee may have learned of the potential claims through other

means does not excuse the failure to schedule the asset. See Jeffrey, 70 F.3d at 186 (citing Vreugdenhill, 950 F.2d at 526). And unlike in the judicial estoppel context, the debtor's subjective knowledge/intent is irrelevant to the inquiry.[7] Id. (citing In re Medley, 29 B.R. 84, 86 (Bankr. M.D. Tenn 1983)).

However, that is not the end of the inquiry. In at least two recent cases, courts have refused to dismiss cases in which the plaintiff lacks standing because of a failure to schedule potential claims in bankruptcy proceedings and, instead, given the bankruptcy trustee an opportunity to intervene as the real party in interest. See Fed. R. Civ. P. 17(a). For example, in Graupner v. Town of Brookfield the Court held that the plaintiffs lacked standing because of their failure to schedule various civil rights actions in their bankruptcy proceedings. Nonetheless, the Court went on to hold:

> [T]he bankruptcy estate is the real party in interest; under Fed. R. Civ. P 17(a), "'[n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest . . . .'" See Vidal v. Doral Bank Corp., 363 F. Supp.2d 19, 22 (D.P.R. 2005) (staying dismissal to allow forty-five days for bankruptcy trustee to file motion seeking to substitute for debtor plaintiff . . . ) . . . . Accordingly, and rather than dismiss the claims outright at this time, the Court will

---

[7] See also Brooks v. Beatty, 25 F.3d 1037, 1994 WL 224160, at *3 (1st Cir. 1994) (unpublished).

>           in the first instance provide an opportunity
>           for the bankruptcy court to determine whether
>           it has any interests it wishes to assert or
>           protect.  The Court will stay this lawsuit
>           and allow for a reasonable time for the
>           bankruptcy court to reconsider whether to
>           reopen the case and, if so, whether to
>           appoint a trustee, and for any such trustee
>           to decide whether to pursue the claim as the
>           real party in interest on behalf of the
>           estate.

450 F. Supp. 2d 119, 129 (D. Mass. 2006); see also Barger, 348 F.3d at 1292 (allowing trustee to succeed plaintiff as real party in interest on appeal).  The Court's holding in Graupner would seem to apply with equal force here.

Case law suggests that the agreement between Ingoldsby and the bankruptcy trustee constitutes a "ratification" of the commencement of this action against IIG under Rule 17(a).  As noted above, Rule 17(a) states, "No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest...."[8] Generally, courts have allowed bankruptcy trustees to be substituted as parties.  However, in different contexts, some courts have allowed the real party in interest to "ratify" the commencement of the action in order "to validate an arrangement by which the real party in interest authorizes the continuation

---

[8] The trustee in bankruptcy is a trustee of an express trust under Rule 17(a).  Delzell v. Raver, 97 F. Supp. 893, 894 (D. Or. 1946).

of an action brought by another and agrees to be bound by its result, thereby eliminating any risk of multiple liability." 6A Wright, Miller & Kane, Federal Practice and Procedure § 1555, at 418 (2d ed. 1990); see, e.g., <u>Wieburg v. GTE Sw. Inc.</u>, 272 F.3d 302, 307 (5th Cir. 2001); <u>ICON Group, Inc. v. Mahogany Run Devel. Corp.</u>, 829 F.2d 473, 477 (3d Cir. 1987). Ratification essentially allows one party to proceed in another's stead.

Under Rule 17(a), ratification takes place when the ratifying party 1) authorizes continuation of the action and 2) agrees to be bound by the outcome of the litigation. <u>Mutuelles Unies v. Kroll & Linstrom</u>, 957 F.2d 707, 712 (9th Cir. 1992) (citing <u>ICON</u>, 829 F.2d at 478). The agreement between Ingoldsby and the bankruptcy trustee satisfies both requirements. The agreement explicitly allows the litigation to continue in Ingoldsby's name and establishes a fixed mechanism for allocating any recovery, eliminating any risk of multiple liability or inconsistent judgments. Most importantly, the agreement has the blessing of the bankruptcy court, which approved the compromise of the controversy. <u>See</u> Exh. 2 to Ingoldsby Aff. 1 (document # 105-3). As such, Ingoldsby, who does in fact have a real stake in the outcome of this litigation, should be allowed to proceed in the trustee's stead.

## IV. <u>CONCLUSION</u>

For the reasons stated above, I conclude that Ingoldsby has standing to pursue his claims against IIG.

**SO ORDERED.**

**Date:  May 30, 2008**        */s/Nancy Gertner*
                               **NANCY GERTNER, U.S.D.C.**