UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GE HFS HOLDINGS, INC., *formerly known as* HELLER HEALTHCARE FINANCE, INC., Plaintiff, and MICHAEL INGOLDSBY, Intervenor Plaintiff, v. NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA. and INTERNATIONAL INSURANCE GROUP, LTD. Defendants. | Civil Action No. 05-CV-11128 NG |

**OPPOSITION OF INTERVENOR PLAINTIFF, MICHAEL INGOLDSBY, TO DEFENDANT NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA'S MOTION FOR ENTRY OF SEPARATE FINAL JUDGMENT**

Intervenor Plaintiff, Michael Ingoldsby, hereby submits this Opposition to the Defendant, National Union Fire Insurance Company of Pittsburgh, PA's ("National Union") Motion for Entry of Separate Final Judgment.

**I.      INTRODUCTION**

National Union has moved this Court for entry of separate final judgment while the case against its co-defendant International Insurance Group, Ltd. ("IIG") moves toward trial.  Entry of separate judgment is an exception that threatens potentially unnecessary, piecemeal appeals, and should only be allowed infrequently when relevant hardships are clear.  Here, National Union has failed to provide any compelling reason to justify its rush for an immediate judgment other

than mere convenience to National Union. Accordingly, this Court should deny National Union's Motion because: (1) the claims against National Union and IIG arise out the same set of facts; (2) the entry of a final judgment could result in piecemeal appeals as Ingoldsby intends to appeal the adverse summary judgment decision; and (3) National Union has failed to assert any sufficiently compelling reason to support an entry of separate final judgment.

II.     **FACTUAL AND PROCEDURAL BACKGROUND**

On or about December 5, 2005, the Intervenor Plaintiff, Michael Ingoldsby ("Ingoldsby"), filed a civil action against National Union for declaratory judgment, breach of contract, fraud, and violations of Massachusetts General Laws Chapter 93A. The dispute stems from National Union's defense obligations under a Directors and Officers liability policy (policy number 873-87-52) issued by National Union to Managed Health Care Systems, Inc. ("MHCS") and its officers and directors (hereinafter, the "Policy"). Ingoldsby was the Chairman of the Board of MHCS, and, as such, was insured for liability under the Policy. The Defendant, IIG, an insurance broker, obtained the Policy for MHCS.

Ingoldsby sought coverage under the Policy as a result of the underlying lawsuit in this matter brought against Ingoldsby by GE HFS Holdings, Inc. f/k/a Heller Healthcare Finance, Inc. ("Heller"). Heller asserted claims against Ingoldsby for Negligent Misrepresentation and Breach of Guaranty (the "*Heller Action*"). Because Ingoldsby had been sued solely in his capacity as Chairman of the Board, Ingoldsby filed a claim under the Policy which provided coverage for any claim made against the directors or officers of MHCS for any alleged wrongful act made in their respective capacities. Specifically, under Section 2(g) of the Policy, a "Wrongful Act" is described as:

>any breach of duty, neglect, error, misstatement, misleading statement, omission or act by the Directors or Officers of the Company in their respective capacities as such, or any matter claimed against them solely by reason of their status as Directors or Officers of the Company.

However, unbeknownst to Ingoldsby, the Policy also included a so-called contractual liability exclusion, Exclusion 4(h), which limits coverage for contract claims. Specifically, Exclusion 4(h) excludes from coverage, all claims:

>alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of the Company or an Insured under any express (written or oral) contract or agreement (including, but not limited to, any liquidated damages, severance agreement or payment, golden parachute agreement, or any compensation agreement payable upon termination of any insured)…

Relying on this exclusion, National Union denied coverage, and refused to defend Ingoldsby in the *Heller Action*.

National Union and IIG failed to adequately disclose the existence of the contractual liability exclusion or advise MCHS or Ingoldsby as to its effect. In fact, Ingoldsby had no knowledge of the exclusion until National Union denied his claim. More importantly, Ingoldsby had no knowledge of the effect of the exclusion which National Union contends eliminates coverage under the Policy for claims against Ingoldsby or MHCS that relate to contracts. Had Ingoldsby been fully informed of the existence of Exclusion 4(h) and the purported effect thereof, Mr. Ingoldsby would have advised MHCS not to purchase the Policy.

Because National Union denied his claim under the Policy, Ingoldsby bore the cost of his defense in the *Heller Action*. In litigating the claims asserted by Heller over a two-year period, Ingoldsby expended over $19,000.00 in attorneys' fees and costs. As a result of his growing legal fees and potential liability, Ingoldsby was forced to file for Chapter 7 bankruptcy and ultimately made a settlement payment in the amount $105,000.00 in the bankruptcy proceeding.

On October 7, 2005, Ingoldsby brought suit against National Union challenging the

denial of coverage and against IIG because IIG failed to obtain the proper insurance coverage for Ingoldsby and failed to disclose or explain the effect of the contract exclusion. National Union moved for summary judgment, arguing that there was no coverage under the Policy for the claims asserted against Ingoldsby by Heller. Ingoldsby opposed the Motion arguing that (i) the claims against Mr. Ingoldsby fall squarely within the Policy's definition of "Wrongful Act" to which no exclusion applies; (ii) National Union's broad interpretation of the Exclusion swallows up the Policy and acts to exclude any and all claims that relate in any way to a contract; and (iii) the language of the Policy is ambiguous because the contractual liability exclusion and the definition of "Wrongful Act" are contradictory when read together.

    IIG also moved for summary judgment. IIG argued that it did not owe MHCS or Ingoldsby any duty to advise or inform them about the Exclusion. Ingoldsby opposed IIG's Motion arguing that due in part to their longstanding business relationship, IIG did have a duty to advise the insureds about the Exclusion and its effect on coverage, and that IIG breached this duty by failing to so advise Ingoldsby or MHCS.

    The motions were referred to Judge Magistrate Dein, who agreed with National Union's interpretation of the Exclusion and recommended that National Union's motion for summary judgment be allowed. Conversely, Judge Magistrate Dein recommended that the Court deny IIG's motion because genuine issues of material fact exist as to whether IIG had a duty to advise Ingoldsby about the exclusion. This Court adopted Judge Magistrate Dein's recommendations.

    Ingoldsby has viable arguments with respect to the Court's interpretation of the Policy and intends to raise those arguments on appeal. However, should Ingoldsby prevail and recover at trial against IIG, an appeal may be moot as Ingoldsby may only benefit from one recovery.

III.  **ARGUMENT**

The Court should deny National Union's Motion for Entry of Separate Final Judgment because: (1) the adjudicated and non-adjudicated claims arise out of the same factual assertions thus rendering them inextricably intertwined; (2) the entry of a final judgment would result in piecemeal appeals and impose an unnecessary burden on the appellate docket and judicial efficiency; and (3) National Union failed to assert any sufficiently compelling reason to invoke an entry of final judgment.

    A.    Standard of Review under Fed. R. Civ. P. Rule 54(b)

Rule 54(b) of the Federal Rules of Civil Procedure states:

> When an action presents more than one claim for relief – whether as a claim, counterclaim, cross-claim, or third-party claim – or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

When ruling on Rule 54(b) motions, courts employ a two-step analysis: (1) whether the "ruling underlying the proposed judgment…was final in the sense that it disposes completely of all claims against a given defendant or of some discrete substantive claim or set of claims against the defendants generally;" and (2) whether the desire for immediate appellate review outweighs "the undesirability of promoting piecemeal appeals." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 580 (1st Cir. 1994). In general, "[J]udgments under Rule 54(b) must be reserved for the *unusual case* in which the costs and risks of multiplying the number of proceedings and of overcrowding the appellate docket are outbalanced by pressing needs of the litigants for an early

and separate judgment as to some claims or parties." <u>Spiegel v. Trustees of Tufts College</u>, 843 F.2d 38, 42 (1st Cir. 1988) (*emphasis added*).

> B. <u>The Court should deny National Union's Motion for Entry of Separate Final Judgment because the adjudicated and non-adjudicated claims are inextricably intertwined.</u>

The Court should deny National Union's Motion because the factual issues of the adjudicated and non-adjudicated claims arise from the same set of facts. <u>Consolidated Rail Corporation v. Fore River Railway Co.</u>, 861 F.2d 322, 326 (1st Cir. 1988)(Entry of Final Judgment reversed on appeal where the Plaintiff's claims arose from essentially the same factual assertions). Indeed, a "similarity of legal or factual issues will weigh heavily against entry of judgment under [Rule 54(b)], and in such cases a Rule 54(b) order will be proper only where necessary to avoid a harsh and unjust result, documented by further and specific findings." <u>Morrison-Knudsen Company, Inc. v. Archer</u>, 655 F.2d 962, 965 (9th Cir. 1981); <u>Spiegel</u>, 843 F.2d at 45 (holding that "a similarity of either legal or factual issues militates strongly against invocation of Rule 54(b).")

Here, the adjudicated and non-adjudicated claims of Ingoldsby share such a close similarity of facts that the two are inextricably intertwined. At the heart of each claim is the validity, application, and implication of the Contractual Liability Exclusion Clause, Exclusion 4(h) of the Policy that was issued by National Union, and procured for MHCS by National Union's co-Defendant, IIG. Ingoldsby contends that both National Union and IIG failed to adequately inform and advise Ingoldsby of the existence of the Contractual Liability Exclusion, which, essentially swallowed up the policy and left Ingoldsby with no coverage in the *Heller Action*. National Union hid behind the Exclusion in denying Ingoldsby coverage, forcing Ingoldsby to bear the costs of defending the *Heller Action*. Further, because IIG did not inform

Ingoldsby or MHCS about the exclusion and its effect, Ingoldsby was compelled to file a breach of fiduciary duty claim against IIG. Thus, it is the existence and interpretation of the Exclusion that gives rise to Ingoldsby's claims against both IIG and National Union. Where, as here, "the dismissed and surviving claims are interlocking, only unusual and compelling circumstances can dictate entry of an early, separate judgment on the dismissed part of the case." Spiegel, 843 F.2d at 45-46. Therefore, this Court should not enter separate final judgment.

  C. The Court should deny National Union's Motion because to enter a separate final judgment would result in piecemeal appeals, offend the legislative intent of Rule 54(b), and unjustly impose a burden upon judicial efficiency.

A Court should not grant a party's Rule 54(b) Motion where doing so would result in piecemeal appeals. Sears, Roebuck, & Co. v. Mackey, 351 U.S. 427, 438 (1956)(Rule 54(b) "preserves the historic federal policy against piecemeal appeals…"). Rule 54(b) "attempts to strike a balance between the undesirability of piecemeal appeals and the need for making review available at a time that best serves the needs of the parties." Allis-Chalmers v. Philadelphia Electric Company, 521 F.2d 360, 363 (3rd Cir. 1975). In ruling on a Rule 54(b) Motion, the Court places great weight on considerations of judicial economy and the importance of discouraging piecemeal appeal, and "urge[s] the district courts, in borderline cases, to exercise restraint rather than allowing appeals to proceed in inchmeal fashion." Maldonado-Denis, 23 F.3d at 580-81.

In the instant case, this Court granted National Union's summary judgment. Ingoldsby intends to appeal that decision. However, if this Court allows an entry of final judgment, Ingoldsby would be forced to prepare and file his appeal prior to the adjudication of the remaining claims against IIG. This would be extremely prejudicial to Ingoldsby as he prepares for trial against IIG. Moreover, if Ingoldsby does not prevail at trial against IIG, he would likely

file an appeal of that decision, which would result in the very situation that the Court seeks to prevent - piecemeal appeals. Indeed, the Appeals Court would hear multiple appeals involving the same set of operative facts and legal issues. Conversely, if Ingoldsby prevails at trial against IIG, there may be no need for an appeal of the summary judgment decision. IIG, however, would likely appeal the trial decision, again, resulting in piecemeal appeals.

To grant National Union's Motion would offend the legislative intent of Rule 54(b). The overriding intent of the drafters of Rule 54(b) was to prevent the flooding of the appellate docket. Consolidated Rail Corporation, 861 F.2d at 325. The First Circuit has made clear that "54(b) orders should not be entered routinely or as a courtesy or accommodation to counsel," but only in the "infrequent harsh case." Id. This is not the sort of infrequent, harsh case that mandates allowing an entry of separate final judgment. Again, if the Court enters final judgment it would result in an undue burden upon the appellate docket due to multiple appeals involving the same set of facts. Moreover, Ingoldsby would be unjustly forced to prepare and file an appeal during the pendency of the action against IIG, and, it is possible that Ingoldsby would ultimately pay for the preparation of multiple appeals.

> D.   The Court should deny National Union's Motion for Entry of Separate Final Judgment because National Union failed to assert a sufficiently compelling reason to invoke an entry of final judgment.

National Union fails to assert any argument that would provide the Court with a proper basis to grant National Union's Rule 54(b) Motion. Because Rule 54(b) "is an exception that threatens potentially unnecessary, piecemeal appeals, the courts must administer it with care, reserving it for instances in which the relevant hardships, or administrative needs, are clear." Comite Pro Rescate De La Salud v. Puerto Rico Aqueduct & Sewer Authority, 888 F.2d 180, 183 (1st Cir. 1989). Here, the only hardship National Union alleges is that it may incur defense

costs if it "remains a nominal party to the action as it proceeds through pre-trial proceedings and trial…" Memorandum in Support of National Union's Motion for Entry of Separate Final Judgment, p. 5.  This is not a compelling reason.

First, there is no need for National Union to continue to defend this action.  The Discovery deadline has run, and National Union is not required to attend the trial or any pre-trial hearings.  Second, any fees incurred in monitoring the case should be minimal.  Third, at this stage, it is unclear whether there will be an appeal of the summary judgment decision.  This will depend largely on the outcome of the case against IIG.  However, if separate final judgment is entered, there will certainly be an appeal which will cause National Union (and Ingoldsby for that matter) to incur significant legal fees and costs that may ultimately be unnecessary if Ingoldsby prevails against IIG at trial.

It is evident from National Union's Motion that it is seeking entry of separate final judgment out of mere convenience.  National Union has presented no urgent need for immediate review.  Moreover, trial of the remaining claims has the potential of rendering further appellate review of the summary judgment decision moot.  "Given these circumstances, and given the long settled and prudential policy against scattershot [appeals]" National Union's rush to enter an immediate judgment should be denied.  Maldonado-Denis, 23 F.3d at 580.

### III.  CONCLUSION

For the foregoing reasons, Michael Ingoldsby respectfully requests that this Court deny Defendant's Motion for Entry of Separate Final Judgment.

        Respectfully submitted,
        MICHAEL INGOLDSBY,
        By his attorney,

        /s/ Gregory J. Aceto, Esq.
        Gregory J. Aceto, Esq.
        BBO No. 558556
        JOHNSON & ACETO, LLP
        67 Batterymarch Street, Suite 400
        Boston, MA 02110
        (617) 728-0888

**CERTIFICATE OF SERVICE**

      I hereby certify that on September 4, 2008, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record in the matter via e-mail.  I further certify that copies will be sent via U.S. Mail to all counsel in the matter who are not registered with the CM/ECF system.

      /s/ Gregory J. Aceto
      Gregory J. Aceto, Esq.
      Johnson & Aceto, LLP
      67 Batterymarch Street, Suite 400
      Boston, MA 02110
      Telephone: (617) 728-0888
      Facsimile: (617) 338-1923
      Email: aceto@johnsonaceto.com